AMERICAN ARBITRATION ASSOCIATION
CONSTRUCTION INDUSTRY ARBITRATION RULES
-----------------------------------------------------------------------x
LEEWARD CONSTRUCTION COMPANY, LTD,

                         Claimant,

      -against-

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE C/O GCLR, LLC,

                    Respondent.
-----------------------------------------------------------------------x

**CLAIMANT'S MOTION
TO DISMISS RESPONDENT'S
COUNTERCLAIMS**

Case No.: 50 110 T 00118 13

        Claimant, Leeward Construction Company, Ltd. ("Claimant" or "Leeward") submits its

Motion for an order (a) dismissing the Respondent American University of Antigua -- College of

Medicine's (the "AUA" or "Respondent") First Counterclaim for repayment of Antigua and

Barbuda Sales Tax ("ABST") in the amount of EC $3,614,552.41/ US $1,338,723.00[1]; (b)

dismissing the Respondent's Second Counterclaim for damages relating to certain alleged

defective works performed by Leeward; and (c) for such other and further relief as the

Arbitrators may deem appropriate.  Leeward's Motion to Dismiss is submitted in accordance

with the Arbitrators' Procedural Order No. 1, dated July 19, 2013, as modified.


**PRELIMINARY STATEMENT**

        1.     This dispute arises out of the construction of a medical school in St. John's,

Antigua.  Leeward, as General Contractor, entered into a contract with the AUA, as Owner, for

the construction of the medical school for the fixed price of EC $27,436,824.00/ US

---

[1] As of October 15, 2013, the conversion rate for Eastern Caribbean dollars to United States dollars is 0.3704 United States dollars for each Eastern Caribbean dollar, and United States dollar to Eastern Caribbean dollar is 2.700 Eastern Caribbean dollars for each United States dollar.  *See* http://www.likeforex.com.

$10,162,599.61, subject to additions and deductions as provided in the contract documents (the "Contract").

2.     On February 3, 2011, Leeward commenced an Arbitration against the AUA to recover the unpaid Contract balance entitled *Leeward Construction Company, Ltd. v. American University of Antigua, College of Medicine*, AAA Case No. 50 110 T 00075 11 (Jose R. Capo, Esq., Jorge R. Jimenez, Esq. and Hector M. Varela, PE, MBA, FASCE, Arbitrators) (the "Prior Arbitration"). During the Prior Arbitration, the AUA did not make any claims for the repayment or setoff of ABST paid to Leeward or for damages related to allegedly defective work. Further, the AUA's counsel admitted during the Prior Arbitration that it owed Leeward EC $83,059.56/US $30,762.80 due to a mis-tabulation of ABST payments on the Project.

3.     On August 9, 2012, the Prior Arbitration Tribunal issued an Amended Final Award in favor of Leeward in the amount of EC $2,337,756.98/ US $865,835.92 (exclusive of interest) (the "Prior Award") which was confirmed by the United States District Court for the Southern District of New York on March 26, 2013. As is relevant herein, the Prior Award found that since the ABST mis-tabulation was not discovered until the hearings and not originally submitted as a part of the controversy, that the issue should be resolved outside the Prior Arbitration.

4.     After the Prior Arbitration concluded, Leeward demanded payment of the mis-tabulated ABST in the amount of EC $83,059.56/US $30,762.80 from the AUA but the AUA refused.

5.     On February 7, 2013, Leeward commenced this arbitration against the AUA to recover the EC $83,059.56/US $30,762.80 the AUA admitted to owing Leeward during the Prior Arbitration.

6.      In its Answer, the AUA denied that it owes Leeward the monies for the ABST mis-tabulation and, as a counterclaim, the AUA asserts, for the very first time, that it is entitled to a refund of all of the ABST that it paid to Leeward, in the amount of EC $3,614,522.41/ US $1,338,723 (the "ABST claim"). The basis for the ABST claim is that (a) the AUA should not have paid ABST under the terms of the Contract and/or applicable law; and (b) Leeward has been unjustly enriched by keeping the ABST that it collected from the AUA, rather than paying the tax to the government.

7.      Subsequently the AUA amended its answer to assert an additional counterclaim alleging various construction defect claims in the amount of EC$2,642,450.00/US$978,685.00 (the "Defective Work claims"). The AUA's Defective Work claims allege defects with respect to the staircases, wall surfaces, roof, scuppers and pipes, windows, tracery and fascia, elevator shafts, and concrete installed on the Project.

8.      Following limited discovery and pursuant to the Tribunal's Procedural Order #1, as modified, Leeward now moves for dismissal of the AUA's counterclaims as follows:

a.      The ABST claim should be dismissed because: (a) the AUA was required under the Contract, read in conjunction with the ABST Act, to pay Leeward ABST; (b) the doctrine of *res judicata* bars the ABST claim; (c) the AUA lacks standing to bring the ABST claim; (d) the doctrines of waiver and/or modification bar the ABST claim; and (e) the ABST claim does not arise under the Contract and, therefore, is not subject to arbitration.

b.      The Defective Work claims should be dismissed because: (a) the doctrine of *res judicata* bars the Defective Work claims; (b) the AUA failed to comply with the required notice provision under the Contract and, as a result, the Defective Work claims are untimely; and

3

(c) the windows portion of the Defective Work claims is not subject to arbitration because the

windows work was performed under a separate contract.


## EVIDENCE SUBMITTED IN SUPPORT OF
## LEEWARD'S MOTION TO DISMISS

9.     Leeward submits the following documents in support of its motion to dismiss the

AUA's counterclaims:

| | |
|---|---|
| Exhibit 1: | Contract between Leeward and AUA, dated September 25, 2008; |
| Exhibit 2: | Leeward Requisition No. 1, dated April 18, 2008; |
| Exhibit 3: | Leeward Requisition No. 2, dated May 14, 2008; |
| Exhibit 4: | Leeward Requisition No. 3, dated May 16, 2008; |
| Exhibit 5: | Leeward Requisition No. 4, dated May 23, 2008; |
| Exhibit 6: | Leeward Requisition No. 5, dated June 4, 2008[2]; |
| Exhibit 7: | Leeward Requisition No. 6 (Mobilization), dated June 4, 2008[3]; |
| Exhibit 8: | Leeward Requisition No. 7, dated July 11, 2008[4]; |
| Exhibit 9: | E-mail by Corey Greenberg Approving Requisition No. 7, dated July 28, 2008, which was produced by the AUA in the Prior Arbitration; |
| Exhibit 10: | E-mail Compilation re: Scaffolding Payment, dated July 29, 2008[5]; |
| Exhibit 11: | Leeward Requisition No. 8, dated August 1, 2008, and approval of Scaffolding Payment[6]; |

---

[2] In the interest of brevity, Exhibits 1-6, which were stipulated into evidence in the Prior Arbitration as Leeward's Exhibits 1 to 6, have been edited for relevancy.  Leeward can provide a complete copy of each exhibit if the Arbitrators so require.

[3] Exhibit 7 is a true and accurate copy of Leeward's Exhibit 7 from the Prior Arbitration, which was admitted into evidence therein.

[4] In the interest of brevity, Exhibit 8, which was stipulated into evidence in the Prior Arbitration as Leeward's Exhibit 8, has been edited for relevancy.  Leeward can provide a complete copy of each exhibit if the Arbitrators so require..

[5] Exhibit 10 is a true and accurate copy of Leeward's Exhibit 8A from the Prior Arbitration, which was admitted into evidence therein.

| | |
|---|---|
| Exhibit 12: | E-mail by Corey Greenberg Approving Requisition No. 8, dated August 21, 2008, which was produced by the AUA in the Prior Arbitration; |
| Exhibit 13: | Leeward Requisition No. 10, dated September 9, 2008; |
| Exhibit 14: | E-mail by Corey Greenberg Approving a Partial Payment on Requisition No. 10, dated October 1, 2008, which was produced by the AUA in the Prior Arbitration; |
| Exhibit 15: | Leeward Requisition No. 11, dated October 3, 2008, and $1,000,000.00 Mobilization Payment; |
| Exhibit 16: | Leeward Requisition No. 12, dated October 31, 2008; |
| Exhibit 17: | Leeward Requisition No. 13, dated November 5, 2008; |
| Exhibit 18: | E-mail Compilation re: Mobilization Payment, dated between November 14, 2008 and December 19, 2008; |
| Exhibit 19: | Email from P. Webster to A.S.Nagesha, dated 01/19/2009, with attachment (LC001031- LC001035); Leeward Requisition No. 14, dated January 8, 2009 (LC001036 - LC001185); |
| Exhibit 20: | Leeward Requisition No. 15, dated December 31, 2008; |
| Exhibit 21: | Leeward Requisition No. 16, dated March 2, 2009; |
| Exhibit 22: | Leeward Requisition No. 17, dated April 2, 2009; |
| Exhibit 23: | Leeward Requisition No. 18, dated May 2, 2009; |
| Exhibit 24: | Leeward Requisition No. 19, dated June 1, 2009; |
| Exhibit 25: | Email from N. Dickinson to A. Roche, dated July 6, 2009, with Interim Application for Payment #19A; |
| Exhibit 26: | Leeward Requisition No. 20, dated July 3, 2009; |
| Exhibit 27: | Leeward Requisition No. 21, dated July 31, 2009; |
| Exhibit 28: | Leeward Phase I/ Library/ Nurses Requisition, dated July 10, 2009; |

---

[6] In the interest of brevity, Exhibit 11, which was stipulated into evidence in the Prior Arbitration as Leeward's Exhibit 9, has been edited for relevancy. Leeward can provide a complete copy of each exhibit if the Arbitrators so require.

Exhibit 29:     Leeward Requisition No. 22, dated September 30, 2009;

Exhibit 30:     AUA Markup of Leeward's Draft Final Account, dated October 22, 2009[7];

Exhibit 31:     A.S. Nagesh Witness Statement, dated February 24, 2012;

Exhibit 32:     Lt. Col. Roche Antony Witness Statement, dated February 24, 2012;

Exhibit 33:     Hearing Transcript, dated March 5, 2012;

Exhibit 34:     Hearing Transcript, dated March 6, 2012;

Exhibit 35:     Hearing Transcript, dated March 7, 2012;

Exhibit 36:     Hearing Transcript, dated March 8, 2012;

Exhibit 37:     Hearing Transcript, dated March 9, 2012[8];

Exhibit 38:     AUA Proposed Findings of Fact and Conclusions of Law, dated April 20, 2012;

Exhibit 39:     Amended Final Award, dated August 8, 2012;

Exhibit 40:     Decision and Order of the Hon. Lewis A. Kaplan, United States District Judge for the Southern District of New York, dated March 26, 2013;

Exhibit 41:     Leeward Demand for Arbitration, dated February 7, 2013;

Exhibit 42:     AUA's Answer and Counterclaim, dated February 27, 2013;

Exhibit 43:     Leeward's Answer to AUA's Answer and Counterclaim, dated March 15, 2013;

Exhibit 44:     Leeward Statement of Claim, dated June 25, 2013;

Exhibit 45:     AUA's Amended Answer and Counterclaims, dated August 1, 2013;

---

[7] In the interest of brevity, Exhibits 15-30, which were stipulated into evidence in the Prior Arbitration as Exhibits 11-13, 13B, 14-19, 19A, 20, 20A, and 21-23, have been edited for relevancy. Leeward can provide a complete copy of each exhibit if the Arbitrators so require.

[8] In the interest of brevity, Exhibits 33-37, which are the Prior Arbitration Transcripts, have been edited for relevancy. Leeward can provide a complete copy of each exhibit if the Arbitrators so require.

Exhibit 46:      Letter from Neal Simon, President of the AUA, to Hon. Justin L. Simon, Attorney General of Antigua and Barbuda, dated September 28, 2010, and produced by the AUA;

Exhibit 47:      Separate Contract for Windows, dated July 13, 2009[9];

Exhibit 48:      E-mail from Leonard Sclafani to Carolina Cardenas, dated February 15, 2013;

Exhibit 49:      Rule 7.1 Disclosure Statement of AUA, dated September 25, 2012;

Exhibit 50:      E-mail from Cleo T. Wallace to the AUA, dated November 17, 2009, and produced by the AUA;

Exhibit 51:      E-mail from Alwyn Crump to the AUA, dated January 28, 2010, and produced by the AUA;

Exhibit 52:      Letter from AUA to the Prime Minister of Antigua and Barbuda, dated May 2, 2007, and produced by the AUA;

Exhibit 53:      E-mail from the AUA to Ambassador Shoul, dated June 1, 2007, and produced by the AUA;

Exhibit 54:      E-mail from Neal Simon, President of the AUA, to Corey Greenberg et al., dated July 11, 2007;

Exhibit 55:      E-mail from the AUA to John Maginley, dated July 16, 2007, and produced by the AUA;

Exhibit 56:      Letter from the Government of Antigua and Barbuda to the AUA, dated August 31, 2007, and produced by the AUA;

Exhibit 57:      E-mail from Basil Stuart to Corey Greenberg and Neal Simon, dated October 1, 2007, and produced by the AUA;

Exhibit 58:      E-mail from Corey Greenberg to the AUA, dated February 6, 2008, and produced by the AUA;

Exhibit 59:      E-mail from Matt Petersen to Shriniwas Joshi, dated November 16, 2009, and produced by the AUA;

Exhibit 60:      E-mail from Jackie Williams to Lyle Novick, dated November 17, 2009, and produced by the AUA;

---

[9] Exhibit 47 is a true and accurate copy of Leeward's Exhibit 228 from the Prior Arbitration, which was admitted into evidence therein.

Exhibit 61:   E-mail from Basil Stuart to the AUA, dated November 17, 2009, and produced by the AUA;

Exhibit 62:   E-mail from Corey Greenberg to Basil Stuart, Nagesh, Col. Antony, et al., dated December 10, 2009, and produced by the AUA;

Exhibit 63:   E-mail from Col. Antony to Matt Petersen, Leonard Sclafani, Corey Greenberg, et al., dated December 11, 2009, and produced by the AUA;

Exhibit 64:   E-mail from Jackie Williams to Matt Petersen, dated December 22, 2009, and produced by the AUA;

Exhibit 65:   E-mails from Leonard Sclafani to Matt Petersen, Jackie Williams, Corey Greenberg, et al., dated December 23, 2009, and produced by the AUA.

## STATEMENT OF FACTS

10.     Leeward is a corporation duly organized and existing under the laws of the Commonwealth of Antigua and Barbuda ("Antigua"), with an office and principal place of business at All Saints Road, St. Johns, Antigua.  (Exhibit 39, p. 2)

11.     The AUA is owned by the Manipal Education Americas, LLC (formerly GCLR, LLC) ("Manipal"), which is a limited liability company organized and existing under the laws of the State of New York, with an office and principal place of business at 1 Battery Park Plaza, 33rd Floor, New York, New York; and University Park, Jabberwock Beach Road, Coolidge, Antigua.  (Exhibit 39, p. 2; Exhibit 49)

12.     On September 25, 2008, Leeward entered into the Contract with the AUA for the construction of a medical school in Antigua (the "Project"). (Exhibit 39, p. 2-3; Exhibit 1, p. LC000006/AUA000006)

13.    The General Conditions to the Contract contain an arbitration clause that reads as follows:

> § 4.6 ARBITRATION
>
> § 4.6.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration.
>
> § 4.6.2 Claims shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect. Location of any Arbitration will be Antigua.

(Exhibit 1, p. LC000036/AUA000036)

14.    During the Project, Leeward submitted 27 requisitions to the AUA for payment. (Exhibits 2 - 30) Each requisition contained a line item for Antigua and Barbuda Sales Tax ("ABST") equal to 15% of the requisition amount, as required under the Antigua and Barbuda Sales Tax Act ("ABST Act"). *See* ABST Act, Part II (2006), *as amended* (2008).[10]

15.    Pursuant to Article 4 of the General Conditions of the Contract, the Architect is responsible for administering the Contract, including, but not limited to reviewing Leeward's payment requisitions and certifying the amounts due Leeward. (Exhibit 1, p. LC000032/AUA000032 - LC000037/AUA000037)

16.    A.S. Nagesh ("Nagesh") served as the Architect's representative on the Project and one of his responsibilities was to review Leeward's payments and requisitions. (Exhibit 31,

---

[10] A copy of the ABST Act (2006), *as amended* (2008), as well as a copy of the Government of Antigua and Barbuda's ABST Registration Guide is also submitted herewith in the Appendix for the convenience of the Arbitrators.

¶¶ 4, 16-17)   With respect to the payment applications, Nagesh testified during the Prior

Arbitration as follows:

> I would work with Col. Antony [the Owner's Representative] to
> make the appropriate revisions to the "Collections Page" to ensure
> that all the amounts agreed upon for each component of the
> Payment Application accurately reflected the work done. **Col.
> Anthony revised and calculated the amount due Leeward for
> the Payment Application, taking into consideration,** among
> other things, monies withheld as retainage and **monies paid for
> ABST.** Once all parties agreed on the payment amount, I would
> certify the Payment Application for payment.

(Exhibit 31, ¶20 (emphasis added))

　17.   Lt. Col. Roche Antony ("Col. Antony") was appointed by Manipal as the AUA's

Representative on the Project.   (Exhibit 32, ¶ 10)   During the Prior Arbitration, Col. Antony

similarly testified, to wit:

> 32.   Upon receipt of each Payment Application, a representative
> of the Architect (usually Nagesh) and a Leeward
> representative (usually Paul Webster) would check all of
> the measurements to verify that the Measured Works
> Leeward claimed accurately reflected the quantity of the
> Measured Works Leeward actually performed and to make
> corrections as appropriate. The Architect's representative
> would reach agreement with Leeward as to the revised
> measurements, and then make revisions to the Payment
> Application accordingly. Nagesh would review those
> changes with me and **I would provide AUA's approval to
> the revisions**.
>
> 33.   Nagesh and I also reviewed and approved (or rejected) the
> "Preliminaries," "Change Orders," and "Claims" sought by
> Leeward in each Payment Application. **I then revised the
> "Collections Page" to ensure that all the amounts
> agreed upon for each component of the Payment
> Application accurately reflected the work done, and
> calculated the amount due Leeward for the Payment
> Application, taking into consideration,** among other
> things, monies withheld as retainage and **monies paid for
> Antigua and Barbuda Sales Tax ("ABST").** Once all
> parties agreed on the payment amount, the Architect would

certify the Payment Application for payment and I would
counter-sign with my authorization.

(Exhibit 32, ¶¶32-33 (emphasis added))

18.     The AUA paid Leeward ABST, without protest, on the approved amount of the
payment for each of the 27 requisitions.   (*See* AUA Check Request Forms and Payment
Approvals in Exhibits 2 - 30)

19.     For many of the requisitions, Corey Greenberg, the AUA's Chief Operating
Officer ("COO") expressly authorized payment, including payment of ABST. (Exhibits 2 - 4;
Exhibits 6 - 7; Exhibit 9; Exhibit 12; Exhibit 14)  Otherwise, Col. Antony authorized the AUA's
payment of the requisitions, including payment of ABST.  (Exhibit 32, ¶ 32-33)

20.     On or about April 21, 2009, the AUA removed the doors and windows work from
the Contract (Exhibit 32, ¶ 41) and put the work up for competitive bidding.  Leeward re-bid for
the doors and windows work and, on or about July 13, 2009, was re-awarded the work under a
separate contract.  (Exhibit 38, ¶¶ 68-70; Exhibit 47)

21.     The AUA began utilizing the Project for its intended purpose on or about August
1, 2009.  (Exhibit 36, p. 744:1-15)

22.     Leeward completed the Contract on October 31, 2009.  (Exhibit 39, p. 31)

23.     On November 17, 2009, the Department of Inland Revenue advised the AUA to
attempt to seek ABST refunds from the vendors to whom the AUA paid ABST (Exhibit 50),
despite the fact that this advice is in direct conflict with the express provisions of the ABST Act.
*See* ABST Act, Part XI (2006), *as amended* (2008).  The AUA questioned this directive in an
internal e-mail as, under the ABST Act, the "ABST is paid over to the government by these
businesses."  (Exhibit 60)  Indeed, the AUA acknowledged in an internal e-mail that, during the

pendency of the Contract, "the mechanism was not in place for the local vendor not to collect the tax." (Exhibit 61)[11]

24.     On December 10, 2009, Corey Greenberg directed the AUA not to pay any more ABST on future invoices, and to deduct any ABST paid from "balances open or future pending bills." (Exhibit 62)

25.     On December 11, 2009, in an e-mail to, *inter alia,* Leonard Scalfani, the AUA's counsel of record herein, Col. Antony stated that, as the AUA still holds a retention amount due to Leeward under the Contract in the amount of EC$560,000.00, the AUA could deduct the amount of ABST paid to Leeward "at the appropriate time." (Exhibit 63)[12]

26.     In late December 2009, the AUA circulated a draft letter to its vendors, which was edited by Leonard Sclafani, advising them that it would no longer pay ABST on future invoices. Nowhere in this notice did the AUA request a refund of ABST paid to date. (Exhibit 64; Exhibit 65)

27.     The AUA continued to seek a refund of ABST from the Government of Antigua and Barbuda ("Antiguan Government"), or a trade of land equal to the amount owed (Exhibit 59), as late as September 28, 2010. (Exhibit 46)

28.     On February 3, 2011, Leeward commenced the Prior Arbitration. Jose R. Capo, Esq., Jorge R. Jimenez, Esq. and Hector M. Varela, PE, MBA, FASCE served as the arbitrators within the Prior Arbitration (the "Prior Arbitration Tribunal"). (Exhibit 39)

---

[11] The AUA produced 409 pages of documents in response to Leeward's document demands within this arbitration, including internal and external communications, with respect to the ABST Act and its application to this Project. In the interest of brevity, Leeward has not attached all 409 pages but can provide the documents the AUA produced if the Arbitrators require.

[12] Leeward notes that the AUA's counsel of record was intimately involved in the determination to deduct the ABST from Leeward's retention and, in the event Leeward is unsuccessful in dismissing the AUA's counterclaims herein, Leeward intends to request that Mr. Sclafani recuse himself due to the fact that he is a material fact witness, not only with respect to the AUA's determination to recoup ABST from Leeward, but also with respect to the AUA's defense that its trial counsel lacked the authority to concede the ABST mistabulation.  (*See* AUA's Itemized Statement of Defenses, dated June 27, 2013.)

29.     An evidentiary hearing was held before the Prior Arbitration Tribunal on March 5

- 9, 2012 at the Isla Verde, Marriott Courtyard in Isla Verde, Puerto Rico.  (Exhibits 33 - 37)

30.     During the hearings, the AUA's attorney, Mark S. Olinsky, Esq. readily conceded

during his opening statement in the evidentiary hearing that the AUA owed Leeward outstanding

monies for ABST:

> Now, the last one is something we figured out. I don't think they're
> aware of it. This is an error in their favor. When we looked at the
> different applications, we found that there was ABST. That was
> money that was -- it was an $83,000 that was accounted for as
> being due as ABST, but was really due to them.  We just found this
> out in going through these numbers and trying to deconstruct their
> claims for 6.7 that they didn't fully explain. ***That money is due to
> them, it's no question***. It was a mutual mistake by both sides. They
> just put it in the tax column and it was supposed to be due to them.
> I don't think anybody realized it until we discovered it in
> preparing.  I doubt any of the principals here are even aware of it.
> It's just a matter of arithmetic that we figured out in the
> applications. Are they entitled to that money? Yeah, but not as a
> reward in arbitration. That can be straightened out separately.

(Exhibit 33 at 72:4 – 73:2 (emphasis added))

31.     In its post-hearing Proposed Findings of Fact and Conclusions of Law, the AUA

again acknowledged the error and again promised to correct the mistake and pay Leeward the

undisputed amount due:

> 78.     As AUA noted in its opening statement at trial, the
> Payment Applications reflect that at the very end of the
> Project, the parties made a mutual calculation error,
> resulting in Leeward getting credit for receiving EC
> $83,059.56 more than it did.  Specifically, AUA approved
> EC $553,888.27 for payment on September 26, 2009
> (exclusive of ABST). AUA Ex.  However, when Leeward
> submitted its Draft Final Account, it claimed that it had
> been paid EC $ 636,947.83 as and for this payment.  AUA
> Ex. 30 at AUA 000264 (Payment 25).  The difference is EC
> $83,059.56, roughly the ABST amount associated with
> Payment 25.

79.   Neither party noticed the error. *See* AUA Exs. 21 and 22.

80.   While ***Leeward is entitled to this money***, because it never notified AUA of the error, specifically demanded payment, or asserted any Claim to recover this amount, Leeward is not entitled to an "award" of this amount. ***AUA will arrange to pay Leeward to correct this small mutual mistake outside the context of this arbitration.***

(Exhibit 38, p. 59, ¶78-80 (emphasis added))

32.   On August 9, 2012, the Prior Arbitration Tribunal issued the Prior Award (Exhibit 39) finding that because the ABST "error" was not originally submitted as a controversy "having been discovered and in good faith informed by AUA representatives during the Hearings," the claim for the EC $83,059.56/US $30,762.80 ABST miscalculation should be settled outside the Prior Arbitration. (Exhibit 39, pg. 11 - 12)

33.   On March 26, 2013, the United States District Court for the Southern District of New York issued a Decision and Order confirming the Prior Award. (Exhibit 40)

34.   After the Prior Arbitration, Leeward requested payment of the EC $83,059.56/US $30,762.80 ABST mis-tabulation that the AUA admitted to owing during the Prior Arbitration. However, the AUA refused to pay Leeward. (Exhibit 63)

35.   As a result, on February 7, 2013, Leeward commenced the instant arbitration by filing a Demand for Arbitration with the American Arbitration Association, International Center for Dispute Resolution (the "AAA"). (Exhibit 41)

36.   On February 27, 2013, the AUA served its Answer with Counterclaim seeking a refund of ABST paid. (Exhibit 42)

37.   On or about March 15, 2013, Leeward served its Answer to the AUA's Answer and Counterclaim. (Exhibit 43)

38.     On or about April 16, 2013, the AAA appointed a panel of three neutrals to hear and determine this dispute:  Diego Brian Gosis, Esq. (Chairman), Judith B. Ittig, Esq., and Carlos A. Romero, Jr., Esq.  (The arbitration panel for the instant arbitration is collectively referred to herein as the "Arbitrators")

39.     On or about June 25, 2013, Leeward served its Statement of Claim. (Exhibit 44)

40.     On or about July 19, 2013, the Arbitrators issued Procedural Order No. 1, which permitted Leeward to submit a dispositive motion with respect to the AUA's counterclaims on or by September 20, 2013.  Procedural Order No. 1 was subsequently amended, extending the date for dispositive motions by Leeward to October 16, 2013.

41.     On or about July 19, 2013, the Arbitrators permitted the AUA to amend its Answer to assert the Defective Work claims.

42.     On August 1, 2013, the AUA served its Amended Answer with Counterclaims, asserting both a counterclaim for the ABST claim and the Defective Work claims.  (Exhibit 45)

## POINT I

### LEEWARD IS ENTITLED TO DISMISSAL OF THE AUA'S ABST CLAIM

43.     The AUA seeks a refund of all ABST it paid to Leeward during the pendency of the Project, totaling EC $3,614,522.41/ US $1,338,712, on the grounds that (a) the AUA should not have paid ABST under the terms of the Contract and/or applicable law; and (b) Leeward has been unjustly enriched by keeping the ABST that it collected for the AUA, rather than paying the tax to the government.  The AUA's counterclaim is without merit and Leeward is entitled to its dismissal because: (a) the AUA was required under the Contract, read in conjunction with the ABST Act, to pay Leeward ABST; (b) the doctrine of *res judicata* bars the ABST claim; (c) the AUA lacks standing to bring the ABST claim; (d) the doctrines of waiver and/or modification

bar the ABST claim; and (e) the ABST claim does not arise under the Contract and, therefore, is not subject to arbitration.

### A.      The Contract And The ABST Act Required The AUA to Pay Leeward ABST.

44.      The Contract requires the AUA to pay ABST.  Pursuant to §3.6.1 of the General Conditions of the Contract, Leeward is required to "pay sales, consumer, use and similar taxes for the Work provided by the Contractor."  (Exhibit 1)  This provision read in conjunction with the ABST Act, requires Leeward to: (a) collect 15% ABST from the AUA on the payments that the AUA made to Leeward for the goods and services that Leeward provided under the Contract, *see, e.g.,* ABST Act, Part II (2006), *as amended* (2008), and (b) pay the Antiguan Government to the extent that the ABST that Leeward collected on all "outputs" during the tax period exceeds the ABST that Leeward paid on the work, labor, services, equipment, and materials that it produced during the tax period. *See* ABST Act, Part VII (2006), *as amended* (2008).

45.      The AUA paid Leeward ABST on 27 separate requisitions without protest. (Exhibits 2 - 30)  Further, the AUA produced 409 pages of documents in response to Leeward's document demands in this arbitration, including internal and external communications, with respect to the ABST Act and its application to the Project.  The AUA does not contend, argue, suggest or imply, in any of the 409 pages of documents, that Leeward improperly collected ABST from the AUA under the Contract.  (Exhibits 46, 50 - 65)  Indeed, the AUA acknowledged in an internal e-mail that, during the pendency of the Contract, "the mechanism was not in place for the local vendor not to collect the tax." (Exhibit 61)  Thus, the AUA was required to pay ABST under the Contract and the ABST Act.

**B.      The ABST Claim is Barred by *Res Judicata***

46.      The doctrine of *res judicata* bars the ABST claim.[13]   Under Antiguan law, *res judicata* requires a party to present its whole case concerning the same subject matter at the same time and precludes a party from asserting causes of action concerning the same subject matter in multiple litigations.  *See, e.g., Mavis Henry v. Tyrone Warner,* Claim No. ANUHCV 2000/0277, Eastern Caribbean Supreme Court (2009) (citing *Henderson v Henderson*, 3 Hare 100, 114-115 (1943))[14].

47.      More specifically stated,

> where a given matter becomes the subject of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires that the parties to that litigation to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the subject of litigation in respect of matter which might have been brought forward as part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted part of their case.  <u>The plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.</u>

*Mavis Henry v. Tyrone Warner,* Claim No. ANUHCV 2000/0277, Eastern Caribbean Supreme Court (2009) (citing *Henderson v Henderson*, 3 Hare 100, 114-115 (1943) [emphasis in original]).

48.      The Antiguan doctrine of *res judicata* is very similar to the United States Common Law, where a "final judgment on the merits bars further claims that were or could have been raised in that action." *Benjamin v. Traffic Executive Assoc. Eastern Railroads*, 869 F.2d

---

[13] Pursuant to Rule R-9(a) of the AAA Construction Industry Rules, the parties have agreed to allow the Arbitration Tribunal to determine the issue of *res judicata*.

[14] A copy of the cases and other authorities cited herein are annexed hereto in the Appendix for the convenience of the Arbitrators.

107, 111 (2d Cir. 1989); *North River Insurance Co. v. Allstate Insurance Co.*, 866 F. Supp. 123, 127 (S.D.N.Y. 1994). It is the identity of the facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which the individual chooses to frame his complaint. *See Woods v. Dunlop Tire Co.*, 972 F.2d 36, 37 (2d Cir. 1992). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Technologies*, 706 F.2d 1254, 1260 (2d Cir. 1988).

49. The ABST claim herein is barred by *res judicata* because it concerns the same subject matter that was previously adjudicated in the Prior Arbitration, to wit: the scope of the Contract, the administration of the Contract, payments under the Contract, and Leeward's performance under the Contract. In addition, the same series of transactions that were at issue within the Prior Arbitration are at issue within the ABST claim, namely the 27 payment requisitions that Leeward submitted to the AUA and the AUA reviewed, processed and paid, including the payment of ABST. (Exhibit 2 – 30) Lastly, the same evidence and facts are needed to support both the claims made within the Prior Arbitration and the ABST claim asserted by the AUA herein. (*See, e.g.,* Exhibits 1-8, 10-11, 13, 15-30, 47) Indeed, each of the payment requisitions at issue in the Prior Arbitration had a line item for ABST, which the AUA paid without protest even though the AUA now claims – after losing the Prior Arbitration – that it was never contractually required to pay ABST in the first place. As a result, the AUA could have and should have asserted the ABST claim in the Prior Arbitration.

50. Leeward completed the Contract on October 31, 2009. (Exhibit 39, p. 31.) On November 17, 2009, the "cash-strapped" Inland Revenue Department advised the AUA to seek

their refund from the vendors to whom it paid ABST, even though the ABST Act clearly and expressly states that refunds must be sought from the Antiguan Government.  (Exhibit 50; Exhibit 59) *See also* ABST Act, Part XI (2006), *as amended* (2008).

51.     On December 11, 2009 -- approximately fourteen months before the commencement of the Prior Arbitration on February 3, 2011 (Exhibit 39)-- the AUA decided to recoup the ABST from the actual retainage owed to Leeward under the Contract "at the appropriate time."  (Exhibit 63)  The AUA never challenged the fact that it owed ABST to Leeward under the Contract during the Prior Arbitration, and never sought a repayment of the ABST.  The AUA acknowledges that it never contested its payment of ABST to Leeward when it states that the AUA's payment of ABST was "not at issue" in the Prior Arbitration.  (Exhibit 45, n.1)

52.     Most significantly, the AUA failed to produce even a single document, in this arbitration or the Prior Arbitration in response to Leeward's document demands, in which it alleges, contends, argues, suggests, or implies that Leeward violated the Contract by including ABST in the 27 payment requisitions.  Even as late as January 28, 2010, the AUA was being advised by vendors that it did not possess the requisite documentation to avoid being charged ABST on invoices.  (Exhibit 51)  The AUA's own documentation demonstrates that the AUA even reduced the scope of the Project because it was required to pay ABST on the construction of the medical school.  (Exhibit 54)

53.     During the Prior Arbitration, not only did the AUA fail to contest its responsibility to pay ABST to Leeward under the Contract, the AUA conceded that it *owed* Leeward the EC $83,059.56/US $30,762.80 for an ABST mis-tabulation.  (Exhibit 33, p. 72:4 – 73:2)  Further, in the Proposed Findings of Fact and Conclusions of Law that the AUA submitted

after the evidentiary hearing concluded, the AUA again acknowledged the mis-tabulation and again promised to correct the mistake and pay Leeward the undisputed amount due. (Exhibit 38, ¶78-80)

54.     The AUA's contention that it could not have asserted the ABST claim in the Prior Arbitration because it did not realize that it had a claim for ABST is without merit.  The AUA stated "the alleged concession made by AUA's counsel during opening arguments at the prior arbitration[] are ...premised on the mistaken belief that the AUA was responsible to pay ABST..." (Exhibit 45)  This contention is wholly without merit and is, quite frankly, an outright lie given the AUA's internal discussion on December 11, 2009 to deduct the ABST that it paid Leeward from the Contract balance.  (Exhibit 63)

55.     The AUA was required to bring forward its whole case in the Prior Arbitration. The AUA knew that it may be entitled to a refund of ABST from the Antiguan Government and that the Antiguan Government had instructed it, despite no statutory support, to look to the vendors for the refund prior to the Prior Arbitration.  Indeed, the AUA had resolved to deduct the ABST paid to Leeward from the retention it still held.  Yet, the AUA failed to assert the ABST claim within the Prior Arbitration.  Under Antigua law, the doctrine of *res judicata* precludes the AUA from now asserting the ABST claim, which it could have previously brought forward, but did not.

**C.     The AUA Lacks Standing to Assert the ABST Claim**

56.     The ABST claim must be dismissed because the AUA does not have standing to bring the ABST claim.

57.     To have standing, or *locus standi*, to assert a cause of action, a person must have sufficient interest in the matter to which the application relates.  The Antigua and Barbuda Court of Appeals has stated:

> The Court can only declare and protect legally established rights and interests.   Except in the case of a judicial review of the decision or action of a public authority, it is a precondition of such declaration or protection that there was a previous infringement or threatened infringement of or dispute in regard to those established rights and interests.

*Baldwin Spencer v. Attorney General of Antigua and Barbuda*, Civ. App. No. 20A of 1997, Antigua and Barbuda Court of Appeals (citing *Frank v. Attorney General*, Civ. App. No.1 of 1990, Antigua and Barbuda Court of Appeals).

58.     Nothing in the ABST Act creates or contemplates a private right of action or otherwise authorizes a private person to enforce the ABST Act.  *See generally* ABST Act (2006), *as amended* (2008).     Indeed, the ABST Act expressly contemplates the opposite, and the Antiguan government is the only person with the right to enforce the Statute.  *See* ABST Act, Part XI (2006), *as amended* (2008).  Therefore, if the AUA inadvertently or mistakenly paid ABST to Leeward, then its only remedy is to seek a refund of the ABST from the Antiguan Government pursuant to the ABST Act.  *See, e.g.,* ABST Act, Part XVII, ¶ 44 (2006), *as amended* (2008).

59.     Similarly, if Leeward failed to remit ABST to the Antiguan Government that it lawfully collected from the AUA, *see* ABST Act, Part II (2006), *as amended* (2008), then the statutory remedy is not for the AUA to seek recovery of the ABST that it was legally obligated to pay to Leeward; but rather, for the Antiguan Government to commence enforcement proceedings against Leeward for failing to remit any ABST that it might owe.  *See, e.g.*, ABST Act, Part XVI (2006), *as amended* (2008).  Thus, the AUA does not have standing to asset the ABST claim.

**D.     The ABST Claim is Barred by the Doctrine of Waiver and/or Modification**

60.     The ABST claim must be dismissed because it is barred by the doctrine of waiver and/or the doctrine of modification.

61.     At common law, a contractual provision is waived when a party represents, in word or deed: (1) that it will forbear to enforce a right it holds by that provision; or (2) that it will not insist on the other party's performance of an obligation under that provision, and the other party acts accordingly. *See* Sean Wilken, *Wilken and Villiers: The Law of Waiver, Variation and Estoppel 2d* ("Wilken"), § 3.15; *Motor Oil Hellas (Corinth) Refineries SA v. Shipping Corp. of India ("The Kanchenjunga"),* 1 Lloyd's Rep. 391, 397-98 (House of Lords 1990) (explaining that waiver occurs when a party forbears from exercising a right upon the other party's breach); 1 *Chitty on Contracts* ("Chitty"), § 22-040 ("Where one party voluntarily accedes to a request by the other that he should forbear to insist on the mode of performance fixed by the contract, the Court may hold that he has *waived* this right to require that the contract be performed in this respect according to its original tenor") (emphasis in original); *Besseler Waechter Glover & Co., Ltd. v. South Derwent Coal Co., Ltd.,* 59 Lloyd's List Law Report 104, 108 (King's Bench 1937). *See also Meyer v. Gilmer,* 18 NZLR 129, 136-37.

62.     The parties' conduct or course of dealing can constitute a waiver of a contractual provision. *See* Chitty, § 22-041 ("A waiver may be oral or written or inferred from conduct."); *see also* Wilken, § 4.07.  Conduct constitutes a waiver if, in light of all circumstances, it clearly evinces a party's decision to forbear from insisting on its rights. *See* Wilken, §§ 4.07-4.08; *see, e.g., Bremer Handelsgesellschaft v. C. Mackprang Jr.,* 1 Lloyd's Rep 221, 230 (Court of Appeal 1979).

63.     A party that waives a provision of a contract loses "his right to require that the contract be performed in this respect according to its original tenor," and cannot recover it *(i.e., revoke his waiver)* except with adequate notice in limited circumstances. Chitty, §§ 22-040 and 22-043; *see also* Wilken, § 4.01.

64.     Specifically in commercial contexts, a party's conduct constitutes a waiver where the party "persists in the residual contractual relationship" and/or continues to accept benefits arising therefrom, notwithstanding the other party's nonconforming performance of an obligation. *Bremer* at 230; Wilken, § 4.08 (unequivocal conduct constituting a waiver includes "[v]oluntary acceptance after breach of benefits arising from the contract").

65.     Here, the AUA waived the applicable contract terms by repeatedly approving, in writing, the inclusion of ABST in each and every one of Leeward's 27 payment requisitions. (*See* the E-mails and the Check Request Forms approving the payments, including ABST, in Exhibits 2 - 30) The AUA's waiver of the applicable contract terms is evidenced in its express approval and payment of each and every payment requisition including ABST without protest. (*See* the E-mails and the Check Request Forms approving the payments, including ABST, in Exhibits 2 – 30; Exhibit 45) Thus, the AUA has waived its right (to the extent it had one) to seek repayment of the ABST under the terms of the Contract.

66.     Even assuming, *arguendo*, that the AUA's course of conduct and written documentation does not meet the formal requirements of waiver, the AUA's written approval of the payment of ABST, without protest, in each of the 27 payment applications constitutes a modification of the Contract's tax payment provisions.

67.     The Contract provides that any modifications must be in writing and signed by both parties. (Exhibit 1, General Conditions, §§ 1.1.1, 1.1.2, pg. LC000025/AUA000025)  The

AUA's written approval of the payment of ABST on each and every payment application submitted by Leeward constitutes a modification of the Contract's tax payment provisions to provide that the AUA will pay the ABST that Leeward is required to charge under the ABST Act.  These written modifications of the Contract's tax payment provisions are binding upon the AUA, and remove the AUA's right to seek repayment under the Contract.

**E.      The ABST Claim Does Not Arise Under The Contract And is Not Subject to Arbitration.**

68.      To the extent that the ABST claim is based upon the doctrine of unjust enrichment or the Antiguan Government's directive to the AUA to seek a refund of ABST from its vendors, the ABST claim does not arise under the Contract and is not subject to arbitration.

69.      As previously provided in Paragraph 13, *supra*, for a claim to be subject to arbitration, it must arise out of or relate to the Contract. (Exhibit 1, pg. pg. LC000036/AUA000036)

**1.      A Claim for Unjust Enrichment Does Not Arise Under the Contract and is Not Subject to Arbitration.**

70.      A claim for unjust enrichment is an equitable, restitution claim that is independent of any contract. *See Fibrosa Spolka Akcyina v. Fairbarin Lawson Combe Barbour Ltd,* [1943] A.C 32, 61 (holding that the obligation to refund or repay a mistaken payment on the basis of unjust enrichment is imposed by law and not by contract); *Westdeutsche Landesbank Girozentrade v. Islington London BC*, [1996] 2 WLR 802(HL) (holding that the obligation to refund or repay a mistaken payment on the basis of unjust enrichment is imposed by law and not by contract).  As a result, to the extent that the AUA's ABST claim arises out of a claim for unjust enrichment, it cannot "arise under" or relate to the Contract and is not subject to arbitration.

### 2.   The AUA's ABST Claim Does Not Arise Under the Contract and Therefore is Not Subject to Arbitration.

71.   Abundantly clear from the AUA's document production in this proceeding is that the AUA's ABST claim is not a claim that arises out of the Contract and is not subject to arbitration.  Rather, the ABST claim arises under the ABST Act and the laws of Antigua, which is not subject to arbitration under the clear and unambiguous terms of the Contract's arbitration clause.  (*See* Documents produced by the AUA in Exhibit 46; Exhibits 50 – 65)

72.   A party may not be compelled to submit a claim to arbitration unless there is a contractual basis for concluding that the party agreed to do so.  *See Oxford Health Plans, LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (citing *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U. S. 662, 684 (2010)).

73.   On November 17, 2009, despite the fact that there is no provision within the ABST Act (*see generally* ABST Act (2006), *as amended* (2008)) that provides for the AUA to seek a refund of ABST from its vendors an ABST Registration Supervisor from the Inland Revenue Department e-mailed the AUA and stated "[w]e are therefore advising you to return to the business places to recover the ABST that was spent."  (Exhibit 50)

74.   The Inland Revenue Department's directive, to the extent that it is the basis for the ABST Claim, does not "arise under" or relate to the Contract and is not subject to arbitration. Indeed, the Inland Revenue Department's "advice" relates solely to the law, as the e-mail references an August 31, 2007 letter sent to the AUA regarding the Free Trade and Processing Zone Act. (Exhibit 50)  Therefore, a claim based upon this "advice" does not arise under or relate to the Contract, and is not within the arbitrator's jurisdiction to decide.

*              *              *

25

75.     As a result of the foregoing, Leeward is entitled to the dismissal of the AUA's ABST claim because: (a) the AUA was required under the Contract, read in conjunction with the ABST Act, to pay Leeward ABST; (b) the doctrine of *res judicata* bars the ABST claim; (c) the AUA lacks standing to bring the ABST claim; (d) the doctrines of waiver and/or modification bar the ABST claim; and (e) the ABST claim does not arise under the Contract and, therefore, is not subject to arbitration.

## POINT II

### LEEWARD IS ENTITLED TO DISMISSAL OF THE AUA'S DEFECTIVE WORK CLAIMS

76.     The AUA's Defective Work claims allege defects with respect to the staircases, wall surfaces, roof, scuppers and pipes, windows, tracery and fascia, elevator shafts, and concrete installed on the Project.  (Exhibit 45)  The AUA's Defective Work claims must be dismissed because: (a) the doctrine of *res judicata* bars the Defective Work claims; (b) the AUA failed to comply with the required notice provision under the Contract and, as a result, the Defective Work claims are untimely; and (c) the windows portion of the Defective Work claims is not subject to arbitration because the windows work was performed under a separate contract.

A.     **The Defective Work Claims Are Barred by *Res Judicata***

77.     As previously discussed in paragraphs 46 to 48, *supra*, under Antiguan law, *res judicata* requires a party to present its whole case concerning the same subject matter at the same time.  Parties are precluded from asserting causes of action concerning the same subject matter in multiple litigations.  *See, e.g., Mavis Henry v. Tyrone Warner,* Claim No. ANUHCV 2000/0277, Eastern Caribbean Supreme Court (2009) (citing *Henderson v Henderson*, 3 Hare 100, 114-115 (1943)).

78.     The AUA's Defective Work claims are barred by *res judicata* because the AUA could have, and should have, asserted its claims for the alleged defects in the Prior Arbitration, as they concerned the same subject matter, to wit: issues relating to the Project, the Contract, and Leeward's performance.   The witnesses who testified within the Prior Arbitration would be the same witnesses to testify herein to defend against the Defective Work claims.   Additionally, evidence gathered and admitted within the Prior Arbitration would be similar to evidence gathered to adjudicate the Defective Work claims herein.

79.     The AUA began utilizing the Project on or about August 1, 2009.  (Exhibit 36, p. 744:1-15)  Leeward completed the Contract on October 31, 2009.  (Exhibit 39, p. 31.)  Leeward commenced the Prior Arbitration on February 3, 2011.  (Exhibit 39, p. 3)  As a result, the alleged defects the AUA claims would have and should have been known to the AUA at the time of the commencement of the Prior Arbitration, and the AUA could have and should have brought a counterclaim against Leeward for any alleged defects in the Prior Arbitration.

80.     Indeed, on February 13, 2013, the AUA admitted in this arbitration that it had knowledge of the alleged defects prior to the commencement of the Prior Arbitration, but failed to assert claims concerning the alleged defects in the Prior Arbitration because it believed the claims were time barred:

> [The AUA] is in the process of compiling counterclaims arising from Leeward's incompetent, defective and deficient construction of the project that underlies Leeward Construction Company's claim…**We had not contemplated bringing those claims earlier (or as part of the arbitration referred to in Leeward's Statement of Claim) because of our belief that they would be time barred under the parties' contract.**  However, Leeward now claims that the arbitrators in the parties recently concluded arbitration ruled as part of their award that the parties had waived the limitations on the time within which claims must be made under the contract, thereby leaving AUACOM free to raise its

> counterclaims free of any defense that the counterclaims are time
> barred under the parties' agreement.

(Exhibit 48 (emphasis added))  Notwithstanding the AUA's argument, the AUA did raise the issue of alleged defective work in the Prior Arbitration.  (Exhibit 31, ¶ 5; Exhibit 32, ¶¶ 90-91; Exhibit 38, ¶ 117)

81.     Even if the AUA believed that the Defective Work claims would be time barred in the Prior Arbitration, the AUA could and should have alleged the Defective Work claims in the alternative in the event that the claims were not found to be time barred, which is what occurred within the Prior Arbitration.  (Exhibit 39, p. 10, 14-18, 20, 22-25)  Pleading causes of action in the alternative is common within the practice of law and often prudent, as the adjudicator, whether Judge, Arbitrator or otherwise, may not find in a litigants' favor on a particular issue and the litigant can be found to have waived any related claims that were not initially raised.  *See, e.g.,* Fed. R. Civ. P. Rule 8(a)(3); New York CPLR § 3014; *see also* Paragraphs 46-48.  Indeed, nothing in the Construction Industry Arbitration Rules or the International Center for Dispute Resolution Rules prohibits pleading or asserting causes of action in the alternative within an arbitration.

82.     In fact, the AUA did plead in the alternative in the Prior Arbitration when it asserted a counterclaim for liquidated damages and delay damages against Leeward, as well as claims for actual damages resulting from the delay in utilizing the Project, notwithstanding the AUA's failure to provide Leeward with a timely notice of claim as required by § 4.3 of the Contract (Exhibit 39; Exhibit 1, p. LC000034/AUA000034 - LC000035/AUA000035).  The Prior Arbitration Tribunal ultimately granted the AUA a judgment on a portion of their counterclaim, after denying Leeward's cross-motion to dismiss the claim for failure to provide Leeward with notice.  (Exhibit 39, p. 30)  Therefore, the AUA's claim that it did not bring the Defective Work

claims within the Prior Arbitration because it believed the claim would be time barred is without merit, as the AUA did assert claims within the Prior Arbitration and were ultimately successful on a portion of those claims.  (Exhibit 39)

83.    The AUA failed raise any of the alleged Defective Work claims in the Prior Arbitration despite the fact that the AUA could have and should have raised the claims therein. As a result, the AUA is barred by *res judicata* from now alleging the Defective Work claims in this proceeding.

**B.    The Defective Work Claims are Untimely under the Contract**

84.    The AUA has failed to make timely claims under the Contract for the Defective Work claims.

85.    Section 12.2.2.1 of the General Conditions to the contract requires that the AUA give Leeward written notice of defective work and an opportunity to cure with respect to defective work discovered during the one (1) year warranty period that runs from substantial completion of the project.  (Exhibit 1, p. LC000050/AUA000050)   Specifically, §12.2.2.1 of the Contract states

> ...[I]f, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition.  The Owner shall give such notice promptly after discovery of the condition.  During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the right to require correction by the Contractor and to make a claim for breach of warranty.  If the Contractor fails to correct the nonconforming Work within a reasonable time during that period after receipt of notice from the

> Owner or Architect, the Owner may correct it in accordance with
> Section 2.4.

(Exhibit 1, p. LC000050/AUA000050)

86.     Express provisions in a building contract "must be literally met or exactly performed in order to create liability on the contract, and the fact that nonperformance of the condition or incomplete performance of it has caused no injury to the promisor is immaterial." 13 Lord, Williston on Contracts 38:6.  Therefore, the failure to give such notice to Leeward, and give Leeward an opportunity to cure, constitutes a waiver of the defect and the right to assert a warranty claim.

87.     Leeward completed the Contract on October 31, 2009.  (Exhibit 39, p. 31.) Therefore, the one-year period provided for under § 12.2.2.1 of the Contract ended October 31, 2010 at the latest.  The AUA has failed to provide Leeward with written notice of any of the defective work claimed herein.  In addition, as no notice has been provided to Leeward of any of the Defective Work claims, the AUA has deprived Leeward of the opportunity to cure in accordance with §12.2.2.1 of the General Conditions.  As a result, the Defective Work claims are untimely and improper, and the AUA has waived the defect and the right to assert a warranty claim.

88.     Most significantly, the AUA's waiver of the notice of the defects at issue in this proceeding differs from the waiver found by the Prior Arbitration Tribunal in the Prior Arbitration.  (Exhibit 1; Exhibit 39)  In the Prior Arbitration, the Prior Arbitration Tribunal ruled that Leeward and the AUA waived their right to assert a claim during the Project pursuant to Section 4.3 of the General Conditions to the Contract.  (Exhibit 39, p. 10)  Section 4.3 of the General Conditions states that "Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first

recognizes the condition giving rise to the Claim, whichever is later." (Exhibit 1, p. LC000034/AUA000034 - LC000035/AUA000035) Claims must be initiated by written notice to the Architect and the other party." (Exhibit 1, General Conditions, § 4.3.2, p. LC000034/AUA000034) "Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice." (Exhibit 1, General Conditions, §13.3.1, p. LC000051/AUA000051)

89.     The Prior Arbitration Tribunal made no determination with respect to written notice of defect and Leeward's right to cure with respect to alleged defects discovered subsequent to contract completion during the warranty period, as required under §12.2.2.1 of the Contract. (*See* Exhibit 39) In addition, a waiver of one provision does not affect obligations contained in other provisions. *See Besseler Waechter Glover & Co., Ltd. v. South Derwent Coal Co., Ltd.,* 59 Lloyd's List Law Report 104, 108 (King's Bench 1937) (forbearing to insist on a right in the contract leaves "the original contract remain[ing] unaffected, and the obligation to deliver and accept the full contract quantity still continu[ing]."); *see also* Wilken,§ 3.10 ("although a party may be forced to accept different performance under the contract by virtue of a waiver, the obligations under the contract have not in fact changed."). Therefore, the notice required under §12.2.2.1 remains a condition precedent to the resolution of any claim of a defect and the right to assert a warranty claim. *See* 13 Lord, Williston on Contracts 38:6.

90.     As a result of the AUA's failure to provide timely written notice of the alleged defects, as required under §12.2.2.1 of the Contract, the AUA's Defective Work Claims must be dismissed as untimely.

**C.**     **The AUA's Defective Work Claim With Respect to the Windows is Not Subject to Arbitration**

91.     The AUA's claim for defective window work must be dismissed as the claim is not subject to arbitration.

92.     A party may not be compelled to arbitrate a dispute that it has not expressly agreed to arbitrate. *Premium Nafta Products Ltd. v. Fili Shipping Co. Ltd.,* 2007 UKHL 40, at [5] (House of Lords 2007) ("Arbitration is consensual. It depends upon the intention of the parties as expressed in their agreement"). The parties to the instant arbitration only agreed to arbitrate claims "arising out of or related to the Contract." (Exhibit 1, pg. LC000036/AUA000036) Therefore, any claim that does not "arise out of or relate to the Contract" is not subject to arbitration.

93.     . During the Prior Arbitration, the Prior Arbitration Tribunal specifically found that the "Additional Works Contracts," including the window work, were not subject to arbitration as these contracts were separate from the Contract and did not contain an arbitration clause. (Exhibit 39, pg. 12-13)

94.     One of the alleged defects for which the AUA seeks recovery under its defective work claims is the windows, to wit:

> 6.     Windows in the lobby and third floor of the building were improperly installed without removal of the packing materials. As a result, every window leaked both internally into the walls and externally into the interior of the building. The external leaks caused damage to floors and finish of the interior walls. The water that leaked inside the walls caused damage to the finished exterior walls. The improperly installed windows were refitted without the packaging material. The cost of this repair was $129,385 EC.

(Exhibit 45)

95.     While the windows was originally within the scope of work contemplated by the Contract, the AUA removed the windows from Leeward's scope of work during the pendency of the Project and forced Leeward to re-bid for the window work.  (Exhibit 32, ¶ 41; Exhibit 38, ¶¶ 68-70; Exhibit 47)

96.     As a result, the window work Leeward performed was completed under a separate agreement with the AUA, which did not contain an arbitration clause.  (Exhibit 32, ¶ 41; Exhibit 38, ¶¶ 68-70; Exhibit 47) The separate agreement for the window work was included within the Additional Works Contracts that the Prior Arbitration Tribunal specifically found were not subject to arbitration.  (Exhibit 39, pg. 12-13)

97.     As a result of the foregoing, the AUA's claim for defective window work must be dismissed because it is not subject to arbitration.

\*               \*               \*

98.     Leeward is entitled to the dismissal of the AUA's Defective Work claims because: (a) the doctrine of *res judicata* bars the Defective Work claims; (b) the AUA failed to comply with the required notice provision under the Contract and, as a result, the Defective Work claims are untimely; and (c) the windows portion of the Defective Work claims is not subject to arbitration because the windows work was performed under a separate contract.

**WHEREFORE**, Claimant Leeward Construction Company, Ltd. respectfully requests that the Arbitrators grant the Claimant's motion for an order (a) dismissing the Respondent American University of Antigua -- College of Medicine's (the "AUA" or "Respondent") First Counterclaim for repayment of EC $3,614,552.41 in ABST; (b) dismissing the Respondent's Second Counterclaim for damages relating to certain alleged defective works performed by Leeward; and (c) for such other and further relief as the Arbitrators may deem appropriate.

Dated: Poughkeepsie, New York
October 16, 2013

_____
J. Scott Greer, Esq.
**LEWIS & GREER, P. C.**
*Attorney for Claimant*
*Leeward Construction Company, LTD.*
510 Haight Avenue, P. O. Box 2990
Poughkeepsie, New York 12603
Telephone: (845) 454-1200

TO:   Diego Brian Gosis (Chair)
      175 SW 7th Street, Suite 2110
      Miami, FL (33130), U.S.A.
      Tel: +1 305 856 7723
      Email: diego.gosis@gommsmith.com

      Judith B. Ittig
      Ittig & Ittig, P.C.
      1420 Ninth Street, NW
      Washington, DC 20001-3344
      Tel: +1 202 387 5508
      Email: jbi@ittig-ittig.com

      Carlos A. Romero Jr.
      3195 Ponce de Leon Blvd.
      Suite 400
      Coral Gables, FL 33134
      Tel: +1 305 445 0014
      Email: car@postandromero.com

      Carolina Cárdenas-Soto
      Senior Case Manager
      International Centre for Dispute Resolution
      1633 Broadway, 10th Floor
      New York, New York 10019
      Email: cardenasc@adr.org

      Leonard Sclafani, Esq.
      **Law Offices of Leonard Sclafani, Esq.**
      *Attorneys for Respondent AUA*
      One Battery Park Plaza, 33rd Floor
      New York, New York  10004
      Email: las@lasattorneys.com