# EXHIBIT 1

# AMERICAN UNIVERSITY OF ANTIGUA

COLLEGE OF MEDICINE

FOR

## AUA COLLEGE OF MEDICINE

# PROJECT MANUAL
# (Contract)

VOLUME ONE
Contract Forms and
Conditions of Contract and Schedules

September 2008

American University of Antigua Contract Manual

**LC000001**

AUA 000001

PROJECT MANUAL – TABLE OF CONTENTS

## VOLUME ONE

SECTION ONE     -    CONTRACT FORMS & CONDITIONS OF THE CONTRACT

     -    List of Contract Documents

     -    Standard Form of Agreement Between Owner & Contractor and Supplementary Conditions

     -    General Conditions of the Contract for Construction

SECTION TWO     -    LIST OF DRAWINGS

SECTION THREE     -    PRICING SCHEDULES AND BILLS OF QUANTITIES

     -    Schedule of Labour Rates

     -    Schedule of Basic Plant Charges

     -    Schedule of On-Costs

SECTION FOUR       DIVISION ONE SPECIFICATIONS

American University of Antigua Contract Manual

**LC000002**

AUA 000002

DOCUMENTS

Note:   Each of the following items is part of the Contract Documents whether issued in any Volume of the Project Manual or separately.

1.   Agreement Form

   A.I.A. Document A101 – Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum – 1997 Edition (Amended).

2.   Conditions of the Contract

   General Conditions – A.I.A. Document A201 – General Conditions of the Contract for Construction – 1997 Edition.

3.   Bill of Quantities

4.   Division One Specifications

5.   Drawings

American University of Antigua Contract Manual

LC000003

AUA 000003

# SECTION ONE

## CONTRACT FORMS AND CONDITIONS OF THE CONTRACT

American University of Antigua Contract Manual

LC000004

AUA 000004

# AIA® Document A101™ – 1997

## Standard Form of Agreement Between Owner and Contractor
*where the basis of payment is a STIPULATED SUM*

**AGREEMENT** made as of the ~~25~~ day of September         in the year of     2008
*(In words, indicate day, month and year)*

**BETWEEN the Owner:**
*(Name, address and other information)*

AUA College of Medicine
c/o Greater Caribbean Learning Center
New York, NY 10005

and the Contractor:
*(Name, address and other information)*

Leeward Construction Company Limited
All Saints Road, P.O. Box 1400
St. Johns, Antigua

The Project is:
*(Name and location)*

American University of Antigua
College of Medicine

The Architect is:
*(Name, address and other information)*

Sundaram Architects Pvt. Ltd.
No. 19 Kumara Krupa Road
Bangalore – 560001 India

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:24:55 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                          (1908669884)

Init.

1

## ARTICLE 1  THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein.  The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

## ARTICLE 2  THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 3.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Paragraphs deleted)*
Commencement Date is 1ˢᵗ May, 2008

§ 3.2 The Contract Time shall be measured from the date of commencement.

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than the three hundred and sixty four (364) calendar days from the date of commencement, or as follows:
*(Paragraphs deleted)*

| Portion of Work | Substantial Completion Date |
|---|---|
| Classroom Block | 29/01/2009 |
| Lab Block | 06/03/2009 |
| Service Block | 29/01/2009 |
| Library and Admin. Block | 30/04/2009 |

, subject to adjustments of this Contract Time as provided in the Contract Documents.

### 3.3.1 Liquidated Damages

The Owner will suffer financial damage if the project is not substantially complete within the dates noted herein or any authorized extension there of granted by the Architect in accordance with Article 8.3 of the General Conditions of the Contract.

The Contractor shall be liable for and shall pay or allow to the Owner due sum herein stipulated as fixed, agreed and Liquidated Damages for each calendar day of delay until the work is substantially complete.

One Thousand Five Hundred US Dollars (US$1,500.00)

**The owner may deduct any such sum (s) upon certification by the Architect from any monies due or to become due to the Contractor.**

## ARTICLE 4  CONTRACT SUM

§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be *Twenty seven million, four hundred thirty six thousand eight (EC$ 27,436,824.0) hundred twenty four  EC dollars,* subject to additions and deductions as provided in the Contract Documents.

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:24:55 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                                        (1908869884)

Init.

2

LC000006

AUA 000006

§ 4.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(Paragraphs deleted)*

§ 4.3 Unit prices, if any, are as follows:

| Description | Units | Price ($ 0.00) |
|---|---|---|

As contained in the Bills of Quantities (Volume 1 of Project Manual)

The unit rates and other prices in the Project Manual shall determine the value of extra work or changes as applicable. They shall be considered complete including as appropriate all materials and equipment, labour, installation costs, overhead and profit and shall be considered uniformly for either additions or deductions subject to the provisions of Article 7 of the General Conditions of the Contractor.

Note: Amounts included in the Contract Sum for Preliminaries/General conditions- 'Time related recurring, setup and Management' Costs are to be based on actuals provided these are approved one week in advance by the Owner.

**ARTICLE 5   PAYMENTS**
**§ 5.1 PROGRESS PAYMENTS**
§ 5.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 5.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

§ 5.1.3 Provided that an Application for Payment prepared by the Contractor , agreed with the Owner and is received by the Architect not later than the   Seventh (7th )   day of a month, the Owner shall make payment to the Contractor not later than the   twenty second (22nd)   day of the same month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than   fifteen (15th ) days after the Architect receives the Application for Payment.

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require.  This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall indicate the measured works of each B/Q portion of the Work as of the end of the period covered by the Application for Payment.

§ 5.1.6 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

    .1    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of five   (   5 % ). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.8 of AIA Document A201-1997;

    .2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved

**Init.**

**/**

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Insitute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:24:55 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                                    (1908669884)

**3**

**LC000007**

AUA 000007

in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of   five  ( 5 %   );

.3     Subtract the aggregate of previous payments made by the Owner; and

.4     Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201-1997.

**§ 5.1.7** The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

.1     Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to ninety seven and one half percent (97½%) of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and *(Section 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

.2     Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201-1997.

.3     Provided that any part of the works is certified as substantially complete in accordance with article 9.8 of the General Conditions and before the completion of the whole of the works then the retention shall be reduced by the proportional value of the works complete relative to the value of the whole works.

**§ 5.1.8** Reduction or limitation of retainage, if any, shall be as follows:
*(Paragraphs deleted)*
    1. Limit of  - 5% Contract Sum
    2. Release of Retention – 50% upon Certificate of Substantial Completion

**§ 5.1.9** Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

A Mobilisation Advance, equal to 12% of the contract sum (less advances issued at time of contract signing), will be paid within 7 days of receipt of an executed copy of this agreement.  The arrangement/formula for pay back of this advance shall be in equal installments resulting in the advance being paid back in its entirety 3 months prior to Substantial Completion of the library works.  Prior to release of this payment a detailed breakdown of expenditure against this advance is to be submitted to the Owner.  Subsequent advance payments for major material order will be considered on an 'as needed' basis conditional upon receipt of supporting documentation.

An option to secure an Advance Payment Bond in the amount of the Mobilisation payment is to be priced and submitted to the Owner for review.

**§ 5.2 FINAL PAYMENT**
**§ 5.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

.1     the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

.2     a final Certificate for Payment has been issued by the Architect.

**§ 5.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:24:55 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                    (1908669884)

Init.

**LC000008**

AUA 000008

## ARTICLE 6   TERMINATION OR SUSPENSION
**§ 6.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-1997.

**§ 6.2** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997.

## ARTICLE 7   MISCELLANEOUS PROVISIONS
**§ 7.1** Where reference is made in this Agreement to a provision of AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**§ 7.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

(     ) per annum

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**§ 7.3** The Owner's representative is:
*(Name, address and other information)*

Lt Col Roche Anthony/ Mr. Corey Greenberg

**§ 7.4** The Contractor's representative is:
*(Name, address and other information)*

Mr. Neil Dickinson

**§ 7.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

**§ 7.6** Other provisions:

## ARTICLE 8   ENUMERATION OF CONTRACT DOCUMENTS
**§ 8.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

**§ 8.1.1** The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997.

**§ 8.1.2** The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

**§ 8.1.3** The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated September 2008 , and are as follows

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:24:55 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                                          (1908669884)

Init.

5

**LC000009**

AUA 000009

| Document | Title | Pages |
|---|---|---|
| SUPPLEMENTARY CONDITIONS – Clause 1-24 | A101 | 6-10 |

**§ 8.1.4** The Specifications are those contained in the Project Manual dated as in Section 8.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

*(Table deleted)*
**§ 8.1.5** The Drawings are as follows, and are dated      unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*
REFER TO 'LIST OF DRAWINGS' contained in the PROJECT MANUAL
*(Table deleted)*
**§ 8.1.6** The Addenda, if any, are as follows:

| Number | Date | Pages |
|---|---|---|

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

**§ 8.1.7** Other documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

Bills of Quantities
Advance Payment Bond (if option accepted by owner via change order)
Performance Bond (if Option accepted by owner via change order)


SUPPLEMENTARY CONDITIONS

1.      **GENERAL:**

The General Conditions of the Contract shall be A.I.A. Document A201, 1997 Edition, except as hereafter modified by these Supplementary Conditions.


2.      **Reference Article 2, Clause 2.1.2:**

Delete Clause 2.1.2 in its entirety.


3.      **Reference Article 3, Clause 3.6 ADD Sub-Paragraphs 3.6.2-5:**

3.6.2    The project is not subject to Antiguan import permits and payments of custom duties upon goods, material and equipment delivered for use in the work. This includes any applicable CST.

3.6.3    The Contractor shall be responsible for obtaining clearance through Customs for any such material and equipment purchased by him for use in the works and the Owner shall endorse such clearance requirements.

3.6.4    The Contractor will be responsible for handling or moving equipment and/or material to the job site except those purchased directly by the Owner.

**Init.**

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:24:55 on 09/24/2008 under Order No.1000356699_1 which expires on 5/18/2009, and is not for resale.
User Notes:                                                                                               (1908669884)

LC000010

AUA 000010

3.6.5   Equipment and/or material purchased in the Antigua wherein the purchase price includes duty, such duty shall be borne by the Contractor. Where required, the Contractor shall pay duty upon equipment and/or materials imported into Antigua which do not or will not become a permanent part of the work.

4.   **Reference Article 3, Clause 3.7 Sub-Paragraph 3.7.1:**

Delete as written and insert in lieu thereof the following:

3.7.1   The Owner will secure and pay for the Government Building Permit. All other permits and licences necessary for the proper execution and completion of the work shall be secured and paid for and maintained as a responsibility of the Contractor.

5.   **Reference Article 3, Clause 3.8 Sub-Paragraph 3.8.2:**

Delete as written and insert in lieu thereof the following:

3.8.2   Unless otherwise provided in the Contract Documents:

.1   materials and equipment under an allowance shall be selected promptly by the Owner to avoid delay in the Work;

.2   allowances shall cover the cost to the Contractor, less any applicable trade discount, of the materials and equipment required by the allowance delivered at the site and all applicable duties and taxes together with the Contractor's costs for unloading and handling on the site, labour installation costs, overhead, profit and other expenses. Where such allowances cover work to be carried out by specialist sub-contractors, these allowances shall include the handling costs on the site, labour installation costs, overhead, profit and other expenses of such sub-contractors.

.3   whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect the difference between actual costs and the allowances under Clause 3.8.2.2.

.4   the Contractor shall include for carrying out works under a Cash Allowance in his Construction Schedule.

6.   **Reference Article 4, Clause 4.3.9:**

Delete Clause 4.3.9 in its entirety.

7.   **Reference Article 4, Clause 4.4. Amend Sub-Paragraphs 4.4.1, 4.4.5 & 4.4.6:**

Delete all references to "Mediation".

8.   **Reference Article 4, Clause 4.4-Delete Sub-Paragraph 4.4.8.**

9.   **Delete Clause 4.5 in its entirety.**

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:24:55 on 09/24/2008 under Order No.1000356689_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                        (1908669884)

Init.

7

**LC000011**

AUA 000011

10. **Reference Article 4, Clause 4.6. Amend Sub-Paragraphs 4.6.1 & 4.6.2:**

    4.6.1       Delete "Prior to arbitration......... with the provisions of Paragraph 5.4" in its entirety.

    4.6.2       Delete "not resolved by mediation" from first sentence.

11. **Reference Article 8, Clause 8.2.2**

    8.2.2   Delete references to 'mechanics lien'

12. **Reference 8.3, Clause 8.3.1**

    Delete reference to "Mediation".

13. **Reference Article 9, Clause 9.6 ADD Paragraph 9.6.8:**

    9.6.8       The Contractor, upon receipt of each progress payment from the Owner, shall promptly furnish the Owner with a receipt indicating the amount paid and the date payment was received.

14. **Reference Article 11, Clause 11.1 Sub-Paragraph 11.1.1.6:**

    Delete as written and insert in lieu thereof the following:

    11.1.1.6       Claims for damages because of bodily injury, death of any person or property damage arising out of the ownership, maintenance or use of any motor vehicle either on or off the site including motor vehicles using public highways; and

15. **Reference Article 11, Clause 11.1 ADD Sub-Paragraph 11.1.4:**

    11.1.4       The Contractor shall in addition to the foregoing of Article 11.1 maintain such insurances as required by the Laws of Antigua and the Owner.

        .1       The Contractor shall maintain Liability cover at not less than the following limits:

            Bodily Injury & Accidental Death:
                EC$1,000,000 per occurrence.

            Property Damage: EC$1,500,000 per occurrence.

        .2       The Contractor's liability insurance shall also include the interests of the Owner and un-named subcontractors in the work. The above noted interests to be endorsed on all other policies of insurance maintained by the Contractor in respect of the Work.

        .3       The Contractor's liability insurance shall incorporate the following "cross liability" clause into the policy wording:

            "It is hereby agreed and declared that for the purpose of this policy each of the parties comprising the insured shall be considered as a separate and distinct unit and the words "The Insured" shall be considered as applying to each party in the same manner as if a separate policy had been issued to each of the said parties

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:24:55 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes: 8

(1908669884)

**LC000012**

AUA 000012

and the company hereby agrees to waive all rights of subrogation or action which the company may have or acquire against either of the aforesaid parties arising out of any accident in respect of which any claim is made hereunder".

16. **Reference Article 11, Clause 11.4, Paragraph 11.4.1 and Sub-Paragraphs 11.4.1.1 through 11.4.1.4:**

Delete as written and insert in lieu thereof the following:

11.4.1    The Contractor shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof.

.1    Such insurance shall be in a company or companies against which the Owner and/or his agents have no reasonable objection. This insurance shall include the interests of the Owner, the Owner's Agents, the Contractor, Sub-contractors and Sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and shall include "all risk" insurance for physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief, collapse, falsework, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and other appointed consultancy services and expenses required as a result of such insured loss.

.2    If not covered under all risk insurance or otherwise provided in the Contract Documents, the Contractor shall effect and maintain similar insurance on portions of the Work stored off the site or in transit when such portions of the Work are to be included in an Application for Payment under Sub-Paragraph 9.3.2

.3    If by the terms of this insurance any mandatory deductibles are required, or if the Contractor should elect, with the concurrence of the Owner, to increase the mandatory deductible amounts or purchase this insurance with voluntary deductible amounts, the Contractor shall be responsible for payment of the amount of the deductible in the event of a paid claim.

17. **Reference Article 11, Clause 11.4, Paragraph 11.4.4:** Delete entirely.

18. **Reference Article 11, Clause 11.4, Paragraph 11.4.6:**

Delete as written and insert in lieu thereof the following:-

11.4.6    The Contractor shall file two certified copies of all policies with the Owner before exposure to loss can occur. If the Owner is damaged by the failure of the Contractor to maintain such insurance and to so notify the Owner, then the Contractor shall bear all reasonable costs properly attributable thereto and such costs shall not be reimbursed by the Owner.

19. **Reference Article 11, Clause 11.4 ADD Paragraph 11.4.11**

11.4.11    The Contractor shall insure all materials and equipment to be incorporated in the project from the time of dispatch from the premises of the supplier or distributor until delivered to the project site for the full value thereof. Certificates of insurance shall be made available to the Owner upon request.

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:24:55 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                              (1908669884)

Init.

LC000013

AUA 000013

20.  **Reference Article 11, Clause 11.4 ADD Paragraphs 11.4.12 & 11.4.13**

11.4.12   Notwithstanding the foregoing of Article 11.4 with regard to insuring against damage by hurricane, the Contractor, on becoming aware of a hurricane warning, is to take all reasonable precautions including securing loose materials and plant, protecting windows and other openings, etc., to minimize the damage likely to be caused thereby.

11.4.13   The cost to the Contractor of installing temporary hurricane protection to partially or substantially completed portions of the building shall be paid by the Owner on the basis of cost plus an agreed percentage to cover overhead and profit.  Such amount shall be agreed between the Contractor and the Owner.

21.  **Reference Article 13, Clause 13.1 Sub-Paragraph 13.1.1:**

Delete as written and insert in lieu thereof the following:

13.1.1   The Contract shall be governed by and construed according to the laws for the time being in force in Antigua.

22.  **Reference General Conditions, ADD Article 15**

15.1   QUALITY AND QUANTITY OF THE WORK

15.1.1   The quality and quantity of the work included in the Contract Sum shall be deemed to be that which is shown upon the contract drawings and described in Project Manual Volumes One but nothing contained in these documents shall override, modify, or affect in any way whatsoever the application or interpretation of that which is contained in these conditions.

15.1.2   Any error in description or omission of items from the Project Manual shall not vitiate this contract but shall be corrected and deemed to be a change required by the Architect and Owner.

23.  **Reference General Conditions, ADD Article 16**

16.1   IMMIGRATION

16.1.1   Attention of the Contractor is called to the Laws of Antigua as to require work and entry permits for persons entering the Country.  The Contractor shall make any and all arrangements for such permits and assume full responsibility for compliance with such laws.

24.  **Reference General Conditions, ADD Article 17**

17.1   HEADINGS

17.1.1   The headings to the clauses shall not form part of this contract or affect the interpretation thereof.

**Init.**

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 18:24:55 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                          (1908669884)

LC000014

AUA 000014

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

OWNER *(Signature)*                                    CONTRACTOR *(Signature)*

American University of Antigua                    Leeward Construction Co. Ltd.
*(Printed name and title)*                             *(Printed name and title)*
LT COL ROCHE ANTONY                          NEIL DICKINSON
This Agreement entered into as of the day and year first written above    PROJECTS DIRECTOR

General Manager · Perfect .

Init.

/

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:24:55 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                        (1908669884)

11

LC000015

AUA 000015

# ✺AIA® Document A201™ – 1997

## *General Conditions of the Contract for Construction*

for the following PROJECT:
*(Name and location or address):*
American University of Antigua
College of Medicine

THE OWNER:
*(Name and address):*
AUA College of Medicine
c/o Greater Caribbean Learning Center
New York, NY 10005

THE ARCHITECT:
*(Name and address):*
Sundaram Architects PVT, Ltd.
No. 19 Kumara Krupa Road.
Bangalore 560-001
India

TABLE OF ARTICLES

1    GENERAL PROVISIONS

2    OWNER

3    CONTRACTOR

4    ADMINISTRATION OF THE CONTRACT

5    SUBCONTRACTORS

6    CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7    CHANGES IN THE WORK

8    TIME

9    PAYMENTS AND COMPLETION

10   PROTECTION OF PERSONS AND PROPERTY

11   INSURANCE AND BONDS

12   UNCOVERING AND CORRECTION OF WORK

13   MISCELLANEOUS PROVISIONS

14   TERMINATION OR SUSPENSION OF THE CONTRACT

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document has been approved and endorsed by The Associated General Contractors of America

Init.

/

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                        (2404291990)

1

LC000016

AUA 000016

## ARTICLE 1   GENERAL PROVISIONS
### § 1.1 BASIC DEFINITIONS
#### § 1.1.1 THE CONTRACT DOCUMENTS
The Contract Documents consist of the Agreement between Owner and Contractor (hereinafter the Agreement), Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or portions of Addenda relating to bidding requirements).

#### § 1.1.2 THE CONTRACT
The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor, (3) between the Owner and Architect or (4) between any persons or entities other than the Owner and Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

#### § 1.1.3 THE WORK
The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

#### § 1.1.4 THE PROJECT
The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors.

#### § 1.1.5 THE DRAWINGS
The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

#### § 1.1.6 THE SPECIFICATIONS
The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

#### § 1.1.7 THE PROJECT MANUAL
The Project Manual is a volume assembled for the Work which may include the bidding requirements, sample forms, Conditions of the Contract and Specifications.

### § 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS
§ 1.2.1 The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

§ 1.2.2 Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

§ 1.2.3 Unless otherwise stated in the Contract Documents, words which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

**Init.**

**/**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/18/2009, and is not for resale.
User Notes:                                                                                                                          (2404291990)

**10**

**LC000025**

**AUA 000025**

## § 1.3 CAPITALIZATION

§ 1.3.1 Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

## § 1.4 INTERPRETATION

§ 1.4.1 In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

## § 1.5 EXECUTION OF CONTRACT DOCUMENTS

§ 1.5.1 The Contract Documents shall be signed by the Owner and Contractor. If either the Owner or Contractor or both do not sign all the Contract Documents, the Architect shall identify such unsigned Documents upon request.

§ 1.5.2 Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

## § 1.6 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE

§ 1.6.1 The Drawings, Specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service through which the Work to be executed by the Contractor is described. The Contractor may retain one record set. Neither the Contractor nor any Subcontractor, Sub-subcontractor or material or equipment supplier shall own or claim a copyright in the Drawings, Specifications and other documents prepared by the Architect or the Architect's consultants, and unless otherwise indicated the Architect and the Architect's consultants shall be deemed the authors of them and will retain all common law, statutory and other reserved rights, in addition to the copyrights. All copies of Instruments of Service, except the Contractor's record set, shall be returned or suitably accounted for to the Architect, on request, upon completion of the Work. The Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants, and copies thereof furnished to the Contractor, are for use solely with respect to this Project. They are not to be used by the Contractor or any Subcontractor, Sub-subcontractor or material or equipment supplier on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants. The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this authorization shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' copyrights or other reserved rights.

## ARTICLE 2 OWNER
## § 2.1 GENERAL

§ 2.1.1 The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

§ 2.1.2 The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

## § 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER

§ 2.2.1 The Owner shall, at the written request of the Contractor, prior to commencement of the Work and thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or

**Init.**

**/**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                                   (2404291990)

11

Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor shall be reported promptly to the Architect as a request for information in such form as the Architect may require.

§ 3.2.2 Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

§ 3.2.3 If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Sections 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Sections 4.3.6 and 4.3.7. If the Contractor fails to perform the obligations of Sections 3.2.1 and 3.2.2, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

## § 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES
§ 3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any resulting loss or damage.

§ 3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

§ 3.3.3 The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

## § 3.4 LABOR AND MATERIALS
§ 3.4.1 Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

§ 3.4.2 The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order.

§ 3.4.3 The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

Init.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                            (2404291990)

13

**LC000028**

AUA 000028

## § 3.5 WARRANTY

§ 3.5.1 The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

## § 3.6 TAXES

§ 3.6.1 The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

## § 3.7 PERMITS, FEES AND NOTICES

§ 3.7.1 Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded.

§ 3.7.2 The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

§ 3.7.3 It is not the Contractor's responsibility to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations. However, if the Contractor observes that portions of the Contract Documents are at variance therewith, the Contractor shall promptly notify the Architect and Owner in writing, and necessary changes shall be accomplished by appropriate Modification.

§ 3.7.4 If the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Architect and Owner, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

## § 3.8 ALLOWANCES

§ 3.8.1 The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

§ 3.8.2 Unless otherwise provided in the Contract Documents:

    .1    allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

    .2    Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances;

    .3    whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

§ 3.8.3 Materials and equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay in the Work.

## § 3.9 SUPERINTENDENT

§ 3.9.1 The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:    (2404291990)

Init.

    /

14

communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case.

## § 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES

**§ 3.10.1** The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**§ 3.10.2** The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals which is coordinated with the Contractor's construction schedule and allows the Architect reasonable time to review submittals.

**§ 3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

## § 3.11 DOCUMENTS AND SAMPLES AT THE SITE

**§ 3.11.1** The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work.

## § 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

**§ 3.12.1** Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

**§ 3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**§ 3.12.3** Samples are physical examples which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

**§ 3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals which are not required by the Contract Documents may be returned by the Architect without action.

**§ 3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors. Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action.

**§ 3.12.6** By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**§ 3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

**AIA Document A201™ – 1997. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                      (2404291990)

LC000030

AUA 000030

## § 3.16 ACCESS TO WORK
**§ 3.16.1** The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

## § 3.17 ROYALTIES, PATENTS AND COPYRIGHTS
**§ 3.17.1** The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

## § 3.18 INDEMNIFICATION
**§ 3.18.1** To the fullest extent permitted by law and to the extent claims, damages, losses or expenses are not covered by Project Management Protective Liability insurance purchased by the Contractor in accordance with Section 11.3, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 3.18.

**§ 3.18.2** In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

## ARTICLE 4  ADMINISTRATION OF THE CONTRACT
### § 4.1 ARCHITECT
**§ 4.1.1** The Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Architect" means the Architect or the Architect's authorized representative.

**§ 4.1.2** Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

**§ 4.1.3** If the employment of the Architect is terminated, the Owner shall employ a new Architect against whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the former Architect.

## § 4.2 ARCHITECT'S ADMINISTRATION OF THE CONTRACT
**§ 4.2.1** The Architect will provide administration of the Contract as described in the Contract Documents, and will be an Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Section 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified in writing in accordance with other provisions of the Contract.

**§ 4.2.2** The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and

Init.

/

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/19/2009, and is not for resale.
User Notes:                                                                                    (2404291990)

**17**

LC000032

AUA 000032

deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.

**§ 4.2.3** The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

**§ 4.2.4** Communications Facilitating Contract Administration. Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**§ 4.2.5** Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**§ 4.2.6** The Architect will have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**§ 4.2.7** The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**§ 4.2.8** The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Section 7.4.

**§ 4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor, and will issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

**§ 4.2.10** If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

**AIA Document A201™ – 1997. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                    (2404291990)

Init.

/

18

**§ 4.2.11** The Architect will interpret and decide matters concerning performance under and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Section 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

**§ 4.2.12** Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

**§ 4.2.13** The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

**§ 4.3 CLAIMS AND DISPUTES**
**§ 4.3.1** Definition.  A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

**§ 4.3.2** Time Limits on Claims. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.

**§ 4.3.3** Continuing Contract Performance. Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Section 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

**§ 4.3.4** Claims for Concealed or Unknown Conditions. If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Section 4.4.

**§ 4.3.5** Claims for Additional Cost.  If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.6.

**§ 4.3.6** If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Section 4.3.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                            (2404291990)

Init.

/

19

**LC000034**

AUA 000034

**§ 4.3.7 Claims for Additional Time**
**§ 4.3.7.1** If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay only one Claim is necessary.

**§ 4.3.7.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

**§ 4.3.8 Injury or Damage to Person or Property.** If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

**§ 4.3.9** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**§ 4.3.10 Claims for Consequential Damages.** The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:

    .1    damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

    .2    damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 4.3.10 shall be deemed to preclude an award of liquidated direct damages, when applicable, in accordance with the requirements of the Contract Documents.

**§ 4.4 RESOLUTION OF CLAIMS AND DISPUTES**
**§ 4.4.1 Decision of Architect.** Claims, including those alleging an error or omission by the Architect but excluding those arising under Sections 10.3 through 10.5, shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect. The Architect will not decide disputes between the Contractor and persons or entities other than the Owner.

**§ 4.4.2** The Architect will review Claims and within ten days of the receipt of the Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Architect is unable to resolve the Claim if the Architect lacks sufficient information to evaluate the merits of the Claim or if the Architect concludes that, in the Architect's sole discretion, it would be inappropriate for the Architect to resolve the Claim.

**§ 4.4.3** In evaluating Claims, the Architect may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Architect in rendering a decision. The Architect may request the Owner to authorize retention of such persons at the Owner's expense.

**§ 4.4.4** If the Architect requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either provide a response on the requested supporting data, advise the Architect when the response or supporting data will be furnished or advise the Architect that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Architect will either reject or approve the Claim in whole or in part.

Init.

/

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                                  (2404291990)

20

**§ 4.4.5** The Architect will approve or reject Claims by written decision, which shall state the reasons therefor and which shall notify the parties of any change in the Contract Sum or Contract Time or both. The approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and arbitration.

**§ 4.4.6** When a written decision of the Architect states that (1) the decision is final but subject to mediation and arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

**§ 4.4.7** Upon receipt of a Claim against the Contractor or at any time thereafter, the Architect or the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Architect or the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**§ 4.4.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the Claim by the Architect, by mediation or by arbitration.

**§ 4.5 MEDIATION**
**§ 4.5.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

**§ 4.5.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**§ 4.5.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**§ 4.6 ARBITRATION**
**§ 4.6.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.

**§ 4.6.2** Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect. Location of any Arbitration will be Antigua.

**§ 4.6.3** A demand for arbitration shall be made within the time limits specified in Sections 4.4.6 and 4.6.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Section 13.7.

**Init.**

/

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                              (2404291990)

21

**LC000036**

**AUA 000036**

**§ 4.6.4** Limitation on Consolidation or Joinder.  No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**§ 4.6.5** Claims and Timely Assertion of Claims.  The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

**§ 4.6.6** Judgment on Final Award.  The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 5  SUBCONTRACTORS
### § 5.1 DEFINITIONS
**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**§ 5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

### § 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK
**§ 5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has reasonable objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no reasonable objection.

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**§ 5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**§ 5.2.4** The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitute.

**Init.**

**/**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                     (2404291990)

**22**

§ **11.5.2** Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made.

**ARTICLE 12   UNCOVERING AND CORRECTION OF WORK**
**§ 12.1 UNCOVERING OF WORK**
§ **12.1.1** If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

§ **12.1.2** If a portion of the Work has been covered which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

**§ 12.2 CORRECTION OF WORK**
**§ 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION**
§ **12.2.1.1** The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

**§ 12.2.2 AFTER SUBSTANTIAL COMPLETION**
§ **12.2.2.1** In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.

§ **12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

§ **12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

§ **12.2.3** The Contractor shall remove from the site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

§ **12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is not in accordance with the requirements of the Contract Documents.

§ **12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract

**Init.**

**/**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                              (2404291990)

**35**

**LC000050**

AUA 000050

Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

### § 12.3 ACCEPTANCE OF NONCONFORMING WORK
§ 12.3.1 If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

### ARTICLE 13  MISCELLANEOUS PROVISIONS
### § 13.1 GOVERNING LAW
§ 13.1.1 The Contract shall be governed by the law of the place where the Project is located.

### § 13.2 SUCCESSORS AND ASSIGNS
§ 13.2.1 The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

§ 13.2.2 The Owner may, without consent of the Contractor, assign the Contract to an institutional lender providing construction financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

### § 13.3 WRITTEN NOTICE
§ 13.3.1 Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

### § 13.4 RIGHTS AND REMEDIES
§ 13.4.1 Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

§ 13.4.2 No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

### § 13.5 TESTS AND INSPECTIONS
§ 13.5.1 Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded.

§ 13.5.2 If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

**Init.**

**AIA Document A201™ – 1997. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                          (2404291990)

**36**

§ **13.5.3** If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

§ **13.5.4** Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

§ **13.5.5** If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

§ **13.5.6** Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

§ **13.6 INTEREST**
§ **13.6.1** Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

§ **13.7 COMMENCEMENT OF STATUTORY LIMITATION PERIOD**
§ **13.7.1** As between the Owner and Contractor:
   .1   Before Substantial Completion. As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;
   .2   Between Substantial Completion and Final Certificate for Payment. As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and
   .3   After Final Certificate for Payment. As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Section 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Section 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

**ARTICLE 14  TERMINATION OR SUSPENSION OF THE CONTRACT**
§ **14.1 TERMINATION BY THE CONTRACTOR**
§ **14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:
   .1   issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;
   .2   an act of government, such as a declaration of national emergency which requires all Work to be stopped;
   .3   because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or
   .4   the Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.1.

§ **14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work

**Init.**

/

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:26:35 on 09/24/2008 under Order No.1000356699_1 which expires on 5/16/2009, and is not for resale.
User Notes:                                                                                                                                            (2404291990)

37

**LC000052**

AUA 000052