AMERICAN ARBITRATION ASSOCATION
CONSTRUCTION INDUSTRY ARBITRATION RULES

| | |
|---|---|
| LEEWARD CONSTRUCTION COMPANY, Ltd.<br><br><br><br>Claimant,<br><br><br>v.<br><br><br>AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE C/O GCLR, INC.<br><br><br>Respondent. | Case No. 50 110 T 00118 13<br><br>**MEMORANDUM OF LAW**<br><br>IN SUPPORT OF RESPONDENT AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE'S OPPOSITION TO THE CLAIMANT'S MOTION FOR DISMISSAL OF AUA'S ABST RELATED CLAIMS ON VARIOUS GROUNDS<br><br>AND<br><br>CROSS-MOTION FOR AN ORDER STRIKING CLAIMANT'S STATED DEFENSES AND AWARDING SUMMARY JUDGMENT TO RESPONDENT ON ITS ABST RELATED CLAIMS |

Respectfully submitted:

Leonard A. Sclafani, Esq.
Law Offices of Leonard A. Sclafani, Esq.
Attorneys for Respondent AUA
One Battery Park Plaza, 33rd Fl.
New York, New York 10004
212-6967-9880
las@lasattorneys.com

PRELIMINARY STATEMENT

This memorandum is submitted in opposition to the motion of Claimant, the Leeward Construction Company, Ltd. (hereinafter "the Leeward") for an order dismissing AUA's claims for recoupment of sums that AUA remitted to the Leeward pursuant to the Leeward's invoices for Antigua and Barbuda Sales Tax (hereinafter "ABST") in the total amount of EC $ 3,788,500.87 or US $1,409,307.67 (See Schedule 1) on grounds that: a) AUA's claims are not subject to arbitration; b) AUA lacks standing to bring its claims; c) the parties contract and the ABST Act required AUA to pay the Leeward the ABST that AUA seeks to recover; d) AUA has waived its contract right and right to recover the sums that it paid the Leeward as ABST; and, e) AUA's claims are barred by the doctrine of res judicata.

This memorandum is also submitted in support of AUA's cross-motion for an order striking the Leeward's defenses of lack of arbitrability of AUA's ABST related claims, AUA's lack of standing to maintain its claims, waiver, res judicata and the alleged requirement of the parties' contract and the ABST Act for AUA to pay the Leeward the sums that AUA claims herein and for summary judgment in the amount of EC of $3,788,500.87 or US $1,409,307.67.

The operative facts surrounding this matter are set forth in the Affirmation of Neal Simon, President of American University of Antigua, the Affirmation of Douglas James McLaren, Deputy Commissioner of Inland Revenue Department of the Government of Antigua and Barbuda, and the Exhibits related thereto. The Tribunal is respectfully referred to those documents.

2

From them, and from AUA's memorandum herein, AUA has demonstrated that there is no basis for any of the defenses that the Leeward has raised to AUA's ABST related claims either on its motion or through its Statement of Defenses in this Proceeding. Accordingly, this Tribunal must deny the Leeward's motion, strike its defenses and award summary judgment to AUA on its counterclaims herein.

## POINT I

## AUA'S CLAIMS FOR RECOVERY OF THE SUMS THAT IT PAID TO THE LEEWARD AS ABST ARE SUBJECT TO ARBITRATION

Since the Tribunal may not proceed further on any aspect of AUA's claims relating to ABST that it paid to the Leeward if it determines that those claims are not subject to arbitration under the Contract, it is appropriate for AUA to address the Leeward's claims in this regard first.

The Leeward's contention that AUA's claims seeking reimbursement of the funds that it paid to the Leeward as and for ABST are not subject to arbitration rest entirely on the proposition that AUA's claims do not "arise under the Contract." With respect to AUA's claim sounding in unjust enrichment, the Leeward asserts that this is not a contract claim but, rather, a claim for equitable restitution. As to all of AUA's ABST claims, the Leeward asserts that these "arise under the ABST Act and the law of Antigua" rather than "under the Contract."

However, this Tribunal need look no further than the plain language of the arbitration provision set forth in the Contract and the authorities cited by the Leeward to determine that the Leeward's contention is meritless.

At the outset, the Tribunal must take note that, despite the Leeward's assertions to the contrary, AUA's ABST related claims all "arise under" the Contract in the strictest sense of that term.

All of AUA's claims, including its unjust enrichment claim, have their origin, at least in part, in Article 3.6.1 of the Contract, which provides that the Leeward was responsible for payment of all taxes, including sales taxes. ABST is clearly one of the taxes that the Leeward agreed through this provision that it would pay. Notably, the Leeward makes no claim to the contrary either in its Statement of Defenses to AUA's claims or in its motion herein.

AUA has claimed that, notwithstanding this provision in the Contract, the Leeward wrongfully invoiced AUA for ABST on the 27 separate requisitions for payment that it submitted during the course of its performance of the Contract and on other ancillary invoices, purportedly pursuant to the provisions of the Contract and in consideration for its performance thereunder, which invoices, to the extent that they included ABST, AUA paid in error.

This was so because, since AUA's Project is situated in the Free Trade and Processing Zone, no ABST was due from either AUA or from the Leeward in connection with any of the work, labor services, materials and equipment that the Leeward provided in connection with AUA's Project (hereinafter sometimes referred to as the Leeward's "Work.")

What existed was, on the one hand, an erroneous and mistaken determination by AUA that AUA; to wit, that despite that its Project was situated in the Free Trade and Processing Zone and, as such, ultimately would be free from ABST, nevertheless, ABST

4

was required to be paid on its Project in the first instance and then recouped from the Government of Antigua and Barbuda through a tax refund; and, on the other hand, either an equally erroneous determination by the Leeward that it was required to invoice ABST on AUA's Project and was required to collect the invoiced amounts from AUA on the Work that it performed on the Project or wrongful and fraudulent conduct on the part of the Leeward in that, from the beginning of its relationship with AUA and at all times thereafter, the Leeward fully knew and appreciated that no tax was due for its Work on AUA's Project but that, nevertheless, it invoiced sums purportedly as ABST as part of the invoices for its Work on AUA's Project, intending to retain the sums it collected for its own use.

As hereinafter more fully set forth, the Leeward did, in fact, fail to treat the sums that it invoiced and collected as ABST from AUA as taxes due the Government. Neither did it file tax returns for the sums that it invoiced from AUA or from any of its other customers at any time during the monthly tax periods that it was performing Work on the Project, nor did it maintain the backup documentation that the ABST Act required it to maintain.

More succinctly stated, what exists in the case before this Tribunal is, at best for the Leeward, a mutual mistake of the parties to a contract as to what the Leeward was entitled to invoice and collect in connection with its performance under the Contract and what AUA was required to pay as consideration for that performance; or a mistake on the part of AUA and the Leeward and deceit on the Leeward's part that, in either case resulted in the Leeward improperly invoicing and collecting from AUA in connection with its Work sums far in excess of those to which it was entitled under the parties' Contract.

AUA's counterclaims simply seek restitution of the sums that the Leeward improperly over invoiced and that AUA paid to the Leeward in the mistaken belief that it was required to do so.

These claims, including AUA's unjust enrichment claim, indisputably "arise under" the Contract.

However, this Tribunal should not trouble itself to consider the question of whether or not AUA's claims "arise under" the Contract, because, even were it to determine that the claims, or any of them, did not "arise under the contract," nevertheless, AUA's claims, and each of them, are subject to arbitration.

In the case of *Premium Nafta Products, Ltd. et al. v. Fili Shipping Co Ltd et al.*, 2007 UKHL 40 (House of Lords 2007), the House of Lords discussed the law as it was prior to its decision regarding contract clauses that provided for arbitration of disputes "arising under" as opposed to those "arising out of" the contracts at issue.

The Court noted that, prior to its ruling, many courts had determined that "the former had a narrower meaning than the latter", but other courts had determined that there was "no practical distinction" between the two. Thus, the Court instructed that the court in the case of *Overseas Union Insurance Ltd v. AA Mutual International Insurance Co Ltd* (1998) 2 Lloyd's Rep 63, 67, had found that:

there was a broad distinction between clauses which referred 'only those disputes which may arise regarding the rights and obligations which are created by the contract itself' and those which 'show an intention to refer some wider class or classes of disputes.' The former may be said to arise 'under' the contract while the latter would arise 'in relation to' or in connection with the contract.

However, the *Premium Nafta* Court ruled that it would not rest its determination of the arbitrability of the dispute before it on such distinctions because the distinctions "reflect no credit upon English commercial law." Instead, the Court found that:

> the construction of an arbitration clause should start from the assumption that the parties, as rational businessmen are likely to have intended any dispute arising out of the relationship into which they had entered or purported to enter to be decided by the same tribunal. The clause should be construed in accordance with this presumption unless the language makes it clear that certain questions were intended to be excluded from the arbitrator's jurisdiction.

In short, the Court found that the scope of an arbitration clause is to reflect the intentions of the parties and that, unless there is specific instruction of the parties as to which disputes would not be subject to arbitration, good business judgment creates the assumption that the parties intended that all disputes that relate to the relationship between them should be submitted to arbitration.

In the present case, the Tribunal has an easy task. Here, the parties did not leave to chance the possibility that a court or an arbitration tribunal would attempt to draw the type of distinction between disputes "arising under" and "arising out of" the Contract as the Leeward proposes this Tribunal should now do. Rather, the parties provided explicitly that not only disputes that "arise under" the Contract but also disputes that are "related to" the Contract would be subject to arbitration.

The modern law on interpretation of the scope of arbitration clauses is set out in the case of *North River Insurance Co. v. Allstate Insurance Co*, 866 F. Supp. 123 (SDNY, 1994), a case cited by the Leeward in purported support of its contention. The Court summarized the guiding principles for determining whether a party's claim falls within the scope of an arbitration clause as follows:

7

Any doubts concerning the scope of arbitrable issues" should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language or an allegation of waiver, delay, or a like defense to arbitrability." Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 144, 121 (2d Cir. 1991) (quoting Moses H. Cone at 24-25). See also, Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington, 820 F.2d 31, 35 (2d Cir. 1987)(presumption of arbitrability is so strong that arbitration will be ordered even if claim appears frivolous)(citing AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649-50 (1986)); Government of the United Kingdom v. Boeing Co., 998 F.2d 68, 72 (2d Cir. 1993) (arbitration agreements enforced even if such enforcement creates inefficiencies or 'piecemeal litigation').

.....

In construing the scope of arbitration clauses, courts distinguish between "broad" and "narrow" arbitration clauses. McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co., 858 F. 2d 825, 832 (2d Cir. 1988) citing cases). If the clause is narrow, the court's inquiry is limited to a determination of whether the issue is on its face within the purview of the clause. Id. (citing AT&T Technologies at 650). If a court concludes that an arbitration clause is broad, then "it will order arbitration and any subsequent construction of the contract and of the parties' rights and obligations of arbitrability applies with greater force when an arbitration clause is a broad one." Id. (citing AT&T Technologies at 650). See also Concourse Village, Inc. v. Local 32D, Service Employees Int'l Union, 822 F. 2d 302, 304 (2d Cir. 1987) ("unless it can be said "with positive assurance that the arbitration clause is not susceptible to arbitration.")(quoting United Steel Workers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960)); 9 U.S.C. § 3.

....

The use of the term "any" makes it clear that the parties intended the clause to be broad. See Wagoner at 121 (arbitration clause that purports to refer "all disputes" to arbitration is broad, and should be afforded strong presumption of arbitrability) (citations omitted); Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80, 605 F. 2d 1290, 1295 (2d Cir. 1979) (same).[1]

---

[1] AUA submits that the law in Antigua is to the same effect. AUA asks the Tribunal to note that the Leeward, itself, cited the above authorities on its motion and cannot be heard to complain now that the law as set forth therein is not the law that this Tribunal should apply in determining the issue of the arbitrability of AUA's ABST related claims.

Applying these principals to the matter at hand, it is beyond peradventure that AUA's

ABST related claims are subject to arbitration under the arbitration clause of the

Contract. The language of the clause leaves no room for doubt that the parties intended

that all disputes deriving from or relating to the parties' relationship as owner and

contractor on the Project be submitted to arbitration regardless of their nature or of the

law that must be considered in resolving the disputes.

At paragraph 13 of its motion, the Leeward quotes accurately the provision in the

Contract that provides for arbitration of disputes between the parties; to wit, Article 4.6

thereof.

That Article provides as follows:

§ 4.6 ARBITRATION

§ 4.6.1 **Any Claim arising out of or related to the Contract,** except Claims
related to aesthetic effect and except those waived as provided for in Sections 4.3,
9.10.4 and 9.10.5, **shall,** after decision by the Architect or 30 days after
submission of the Claim to the Architect, **be subject to arbitration.** (Emphasis
added)

As the Court found in the *North River Insurance* case, the parties' use of the term

"any" creates a strong presumption that it was the intent of the parties that all of their

disputes, except for those specifically identified in the clause, be subject to arbitration.

To the same effect is the parties' use of the phrase "related to."

There is nothing in the arbitration clause at it issue or elsewhere in the Contract or in

the parties' dealings that would lend any support for proposition that the parties had

intended that only disputes that "arise under" the Contract be submitted to arbitration, and

not disputes that relate to the parties' relationship as owner and contractor.

The Tribunal must take notice that it was the Leeward who invoked the jurisdiction of this Tribunal to arbitrate its own claim herein and that that claim, itself, seeks recovery of sums that the Leeward claims had been due it as ABST on the contract, but that were credited to the amounts that AUA paid on the contract sums, thereby resulting in the Leeward's receipt of less than the full amount due it for its Work under the contract. In light of the Leeward's own assertion that its claim is subject to arbitration under the parties' Contract and that this Tribunal has jurisdiction to arbitrate the Leeward's claim, the Leeward's contention that AUA's claims herein are not arbitrable is nothing short of frivolous.

Accordingly, the Leeward's motion insofar as it seeks dismissal of AUA's ABST related claims, in general, or AUA's ABST related unjust enrichment claim, in particular, must be denied.

For the same reason, the Tribunal must also grant AUA's cross-motion insofar as it seeks the striking of the Leeward's defense that AUA's ABST related claims, or any of them, are not subject to arbitration.

## POINT II

## AUA HAS STANDING TO MAINTAIN ITS CLAIMS FOR RECOVERY OF THE SUMS THAT IT PAID THE LEEWARD AS ABST

The Leeward's contention that AUA lacks standing to maintain its claims for the money that it paid to the Leeward as and for ABST are based wholly on the Leeward's misconstruction of the ABST Act and how it is implemented. In short, the Leeward asserts that, through its claims, AUA seeks a tax refund of the sums that the Leeward

collected from it purportedly as ABST, which refund, the Leeward asserts, would be due not from the Leeward, but from the Government of Antigua and Barbuda. The Leeward claims that, because, allegedly, there is no private right of action provided for in the ABST Act for enforcement of it, AUA may not maintain this action, its remedy for the Leeward's wrongful invoicing and collection from AUA of ABST being limited to obtaining a refund from the Government.

At the outset, it must be noted that the Leeward has provided no authority for its assertion. At paragraph 58 of its motion, the Leeward directs the Tribunal to the entirety of the Act as the authority for its contention without citing any particular provision thereof.

However, the Leeward's contention as well as its assertions on its motion as to how the ABST Act works, its implementation and the respective rights and obligations of the Government, suppliers such as itself and receivers of supplies, such as AUA in the instant matter, are both erroneous and unsupported by the Act and the applicable law.

The one point that AUA and the Leeward can agree on with respect to the workings of the ABST Act and the respective rights and obligations of the Government, the Leeward and AUA is that the Act imposes on the supplier, the Leeward in this matter, the obligation and responsibility: a) to provide to the receivers of its supplies invoices properly reflecting any ABST due in connection with those supplies, b) although the Leeward admits that it failed to do so during time that it was providing supplies, to account to the Government for the ABST that it invoiced, and c) to pay over those sums, directly or indirectly, to the Government.

As is the case with most value added tax structures employed by governments throughout the world, the Government of Antigua and Barbuda looks to the suppliers of goods, labor, services, materials and equipment: a) to properly determine what supplies are taxable and what taxes are due on the supplies that it provides; b) to properly invoice those taxes in the proper amounts; and c) to account to the Government for what it invoiced and received in taxes and also for what it remitted in taxes, either directly to the government or, indirectly, by payment of taxes to other suppliers during each tax period. (The tax periods in Antigua and Barbuda are calendar months.)

In the case at bar, the supplies provided by the Leeward to AUA under the Contract were taxable at a Zero Rate because AUA's Project is located in the Antigua and Barbuda Free Trade Zone (See, Schedule 2 and 8 of the ABST Act and the August 31, 2007 McLaren letter-Exhibit L).

More simply stated, no taxes were due on the supplies that the Leeward provided in connection with AUA's Project.

Nevertheless, the undisputed facts in this case are that the Leeward invoiced AUA for ABST on its supplies and collected from AUA the sums that it so invoiced, totaling EC $3,788,500.87 or US$1,409307.67.

Because the Leeward's supplies were taxable at a Zero Rate, the Leeward's invoicing of its supplies as taxable was erroneous, if not fraudulent.

For the same reason, not only was AUA not responsible to pay the sums that the Leeward invoiced as taxes, but the sums were not "taxes" under the ABST Act, regardless of what the parties believed the sums at issue herein to be at the time that they were invoiced and paid.

Article 2 of the ABST Act defines "tax" as "having the same meaning as "ABST;" it

defines "ABST" as follows:

"ABST" or Antigua and Barbuda Sales Tax means the **tax imposed under this Act**, and includes any amount, including interest or a penalty payable under this Act, to the extent that it is treated as ABST for the purposes of this Act, and the absence of a reference to the inclusion of such amounts in a particular provision should not be taken to imply that they are not included in the ABST referred to in that section. (Emphasis added)

This definition leaves no room for question that, because no tax was due in connection

with the Leeward's Work on AUA's Project, contrary to the Leeward's contention, the

sums that AUA paid to the Leeward in satisfaction of the Leeward's demands for

payment of ABST were not, in fact, "tax[es] imposed under" the ABST Act.

Accordingly, AUA's remedy for the Leeward's wrongful invoicing for and collecting

sums that were not due as taxes and to which the Leeward was not entitled is to obtain

restitution from Leeward in the same way, and to the same extent, that AUA would be

entitled to recoup any other sums that the Leeward might wrongfully have demanded in

its invoices and that AUA may have mistakenly or erroneously remitted.

In short, AUA's claims herein are nothing more than garden variety claims for

recoupment of overpayments made under a construction contract.

Such claims are clearly subject to arbitration pursuant to the arbitration clause of the

Contract.

It is important for the Tribunal to consider that the Leeward, itself, did not treat as

ABST the sums that it invoiced and collected from AUA as such. It failed to account to

the government for those sums by filing monthly tax returns as required by Article 39 of

the ABST Act. It failed to pay over to the government those sums, either directly or

indirectly as it was required to do pursuant to Article 8(4)(b) and 27 of the ABST Act.

13

and it failed to keep and maintain the back up documentation for the monies that it invoiced and collected purportedly as ABST as required by Articles 38 and 97 of the Act.

Under the circumstances, the Leeward must appreciate that, were it possible under the Act for AUA to obtain a refund from the government for any of the sums that it paid as ABST to the Leeward, all such possibility was removed by the failure of the Leeward properly to treat as ABST the sums that it invoiced and collected as such.

As the Leeward has conceded herein, it paid none of the monies that are at issue herein over to the government and filed no tax returns for the periods that it invoiced and collected these sums. Without any tax returns from the Leeward, the government cannot determine that it received indirectly from the Leeward (by its payment of more ABST in any tax period to other suppliers than it received in connection with its business as per Article 8 and 27 of the Act), and it will not refund to AUA or to the Leeward any sums that it has not, itself, received.

Submitted herewith is the affirmation of Douglas James McLaren, currently Deputy Commissioner of the Inland Revenue Department of the government of Antigua and Barbuda, and, at all times relevant to this matter, Director of ABST within the Inland Revenue Department.

Through his affirmation, Mr. McLaren affirms that, in his capacity as Director of ABST, he had "overall responsibility for the operation of the ABST Unit of the Inland Revenue Department and the application and enforcement of the legal provision of the ABST Act.

Through his affirmation, Mr. McLaren confirms all of the foregoing. He explains that, because AUA's Project was in the Antigua and Barbuda Free Trade Zone, no ABST was

due in connection with the work, labor, services and materials supplied by the Leeward in the construction of AUA's medical school.

He also explains that the sums that AUA paid to the Leeward in satisfaction of its invoicing for ABST were "not taxes" and that, when a supplier erroneously invoices as ABST on the supplies sums that it furnishes that were not due on those, "the supplier has the responsibility to correct their own error and ensure where the amount has already been paid to repay that amount to the customer as the amount previously shown is not in fact tax."

Lastly, Mr. McLaren explains, in such circumstances, having repaid its customer for what it erroneously invoiced and collected as taxes, the supplier, and not the receiver of the supplies, "would be placed in a credit position in respect of its liability to the Government and such credit met the legal tests laid down for a refund to be made to the supplier."

Contrary to the Leeward's contention, Mr. McLaren makes clear, under the circumstances presented here, AUA is not eligible for a refund from the government of the sums it paid purportedly as ABST as, he states, "there could be no position where the recipient of the goods and services would be eligible to be refunded by the Government. Mr. McLaren was, and is, quite familiar with the facts and circumstances underlying AUA's claims herein inasmuch as he was, during the period that AUA's Project was under construction, and continues to be, the government's representative principally and primarily responsible the addressing the issues raised by AUA with the government over its tax exempt status, payments to the Leeward and other contractors of ABST despite this status and attempts by AUA to obtain a refund from the government of the funds that

AUA paid to the Leeward and to other contractors who would not provide Work for AUA's Project unless AUA paid ABST in the absence of a clear direction from the government that they would not be held liable to the government for the taxes.

In his affirmation, Mr. McLaren recounts that, in late August, 2007, faced with AUA's requests for clarification that it and its Project were exempt from ABST and need not tender payments of ABST to its contractors, he wrote to AUA and advised that, in fact, AUA's Project was exempt from ABST by virtue of its location in the Free Trade Zone. Mr. McLaren also recounts that, when, in 2009, AUA's requests for refunds of the sums that AUA paid to the Leeward and to other contractors as ABST despite that AUA was exempt from payment of such tax, he reiterated his advice that AUA's Project was exempt from ABST and instructed AUA that it should recover the sums that it paid to its contractors as ABST directly from the contractors.

Based on the foregoing, there is no question that can remain that AUA has standing to maintain its claims for recoupment of the funds that it paid to the Leeward as ABST.

The Leeward cites the case of *Baldwin Spencer v. the Attorney-General of Antigua and Barbuda et al*, Civ. App. No. 20A of 1997, Antigua and Barbuda Court of Appeal for the proposition that:

[t]he Court can only declare and protect legally established rights and interests. Except in the case of a judicial review of the decision or actions of a public authority, it is a precondition of such declaration or protection that there was a previous infringement of threatened infringement of or dispute in regard to those established rights and interests.

In the matter before this Tribunal, it is clear that AUA has a dispute with the Leeward over AUA's contract right requiring the Leeward to pay all taxes in connection with its work on the Project and over the Leeward's refusal to make restitution of the monies that

it the Leeward wrongfully invoiced to AUA as taxes and that AUA paid as such despite that these sums were neither taxes nor due or owing to the Leeward.

AUA has legally recognized and established rights at law and in equity. Its remedy is not to seek a refund from the government as set forth above, and the failure of the Leeward to remit the funds that it was not entitled to invoice and that AUA paid it despite due demand is the precondition that vests AUA with standing to maintain its claims for restitution of those sums.

Here, it should be noted that if the Tribunal were to agree with the Leeward's contention regarding AUA's standing in this matter, it would be required also to dismiss the Leeward's own claim against AUA inasmuch as that claim seeks to compel AUA to pay it sums that it claims are due as ABST on for its Work on the Project. As above discussed, the Leeward's claim against AUA herein is premised on the proposition that it erroneously invoiced and was paid as part of its contract price a sum that was actually due as ABST. The Leeward claims that it is liable for ABST and that AUA should now be required to pay it the sums.

AUA respectfully submits that, if AUA lacks standing to maintain its claims relating to ABST in this arbitration because its claims against the Leeward arise under the ABST Act and not the Contract, the same would be true of the Leeward's claims.

Based on the foregoing, this Tribunal must deny the Leeward's motion to the extent that it seeks dismissal of AUA's claims on the basis that AUA lacks standing to advance its claims for restitution of the sums that it paid to the Leeward as ABST.

Based also on the foregoing, this Tribunal must also grant AUA's cross-motion to the extent that it seeks an order striking the Leeward's defense of lack of standing.

17

## POINT II

### THE ABST ACT DID NOT RENDER VOID OR UNENFORCEABLE THE PARTIES' AGREEMENT THAT THE LEEWARD WOULD PAY ALL TAXES DUE IN CONNECTION WITH ITS WORK ON THE PROJECT.

The Leeward properly admits that, [p]ursuant to § 3.6.1 of the General Conditions of the Contract, Leeward [was] required to 'pay sales, consumer, use and similar taxes for the Work provided by the Contractor [ to wit, Leeward].' " However, the Leeward argues that the ABST Act deprived AUA of the benefit of that provision because, according to the Leeward, the ABST Act imposed a duty on the Leeward to collect ABST due on the Project from AUA.

The argument fails because, among other reasons, there is nothing in the ABST Act that bars the parties to a commercial contract from agreeing that one will pay any of the taxes that may be due under the Act from the other.

The Leeward fails to supports its contention that the ABST Act overrode its agreement with AUA to be responsible for all taxes, including sales and consumer taxes, in connection with its Work on AUA's Project by citation to any specific section or provision of the ABST Act that so provides. It failed to do so because there is no such provision in the Act or elsewhere in the law.

The ABST Act specifically provides that it is the supplier who is liable for payment to the government of any taxes due thereunder.

Article 8, Section 4 of the ABST Act provides:

-The ABST chargeable-

a) on a taxable supply, is the liability of the supplier and must be accounted for to the Commissioner according to the formula in section 27, unless otherwise specified in the Act.

At the same time, while there are provisions in the Act that provide remedies for the supplier of a taxable supply as against a receiver who fails or refuses to remit to the supplier the taxes properly invoiced (see, for example, Articles 17 and 34 (2), and while the ABST Act does provide (at Article 32 thereof) that "a registered supplier who makes a taxable supply to a registered recipient is required at the time of the supply, to issue the recipient with an original ABST invoice for the supply," there is no specific provision in the Act that imposes a duty on the supplier actually to collect a tax due on a taxable supply from the receiver of that supply; nor is there a provision requiring any tax to be paid by the receiver of a taxable supply where the supplier is willing to pay it.

In the absence of any legal authority to support its erroneous proposition, the Leeward attempts to support it by recalling that AUA paid the amount that the Leeward invoiced as ABST "without protest"; that, "AUA produced 409 pages of documents in response to Leeward's document demands in this arbitration, including internal and external communications, with respect to the ABST Act, and its application to the Project," and that, allegedly, "AUA does not contend, argue, suggest or imply in any of the 409 pages of documents, that the Leeward improperly collected ABST from AUA under the Contract," but, instead, "acknowledged in an internal email that, during the pendency of the Contract, 'the mechanism was not in place for the local vendor not to collect the tax.'"

However, the Leeward fails to explain how those asserted facts support its contention that the ABST Act precluded the parties from agreeing that the Leeward would be

obligated to pay any taxes that were due in connection with the Project, whether from the Leeward or from AUA or, rendered the agreement that they made a nullity or unenforceable as between them.

AUA submits that, in determining the Leeward's defense that the ABST Act rendered the parties agreement that the Leeward would be obligated to pay all taxes due in connection with its Work on AUA's Project a nullity, the Tribunal must consider that, AUA's claims herein that the payments that it made to the Leeward "without protest" and that it seeks to recover herein were the product of mutual mistake, or at least mistake on its part and, wrongful conduct on the part of the Leeward, that, in either case, it brings its claims in order to rectify.

Needless to say, it was because of its mistaken beliefs as to its obligation to pay what the Leeward invoiced as ABST and as to its entitlement of a refund from the government for any such sums that it remitted to the Leeward that the pages that it produced in response to the Leeward's discovery demands would evidence those mistaken beliefs. The Tribunal must also consider that, whatever the AUA may, at the time have believed it was obligated do with respect to the invoices from the Leeward that included demands for payment of ABST, has no bearing on whether or not any provision in the ABST Act takes precedence over the parties' agreement that the Leeward would pay all taxes relating to the Leeward's Work on AUA's Project.

Accordingly, this Tribunal must deny the Leeward's motion insofar as it seeks dismissal of AUA's claims seeking restitution of the funds that it paid to the Leeward in satisfaction of its invoices for ABST.

## POINT IV

## AUA's CLAIMS ARE NOT BARRED BY THE DOCTRINE OF WAIVER

The Leeward asserts the affirmative defense of waiver in order to defeat AUA's claims against it herein. As with all affirmative defenses, it is the Leeward's burden to prove the defense. However, not only has the Leeward failed to prove the defense, but based on the applicable facts and the law even as the authorities offered by the Leeward define and describe the defense and its elements, the Leeward cannot prove the defense because it simply does not lie.

The Leeward asserts as the basis for its defense, essentially, that by paying without protest each of the Leeward's requisitions for payment in connection with its Work on AUA's project, which requisitions each contained a line item for ABST, and by its attorney's statement in the earlier arbitration between the parties that there was an error in the Leeward's favor that he had discovered and about which, he believed, the Leeward was unaware; to wit, that, in that an item that should have been invoiced by the Leeward as ABST on one of the Leeward's requisitions for payment was invoiced and subsequently paid by AUA as part of the Contract price, AUA waived its right to enforce the provision of the Contract that required the Leeward to pay all taxes, including sales and consumer taxes incident to its Work on the Project.

The most obvious problem with the Leeward's contention is that, because no ABST was, in fact, due in connection with the Leeward's Work on AUA's Project, it matters not, whether AUA waived or did not waive its right to insist on the Leeward's performance of its contractual obligation under Article 3.6.1 of the Contract to pay all taxes incident to its Work on the Project.

In short, since no ABST was due on the Leeward's Work, neither party was required to pay it, and as a result, there were no rights under the Article at issue that AUA could waive.

Assuming arguendo that the Leeward was to abandon its stated claim and now contend merely that AUA's waiver consisted of nothing more than a waiver of its right to recoup from the Leeward the sums that it had paid to the Leeward as ABST as per the Leeward's invoices because it paid those invoices without protest, such a claim must also fail.

As the authorities offered by the Leeward in support of the defense make clear, in order to prevail on its defense of waiver, the Leeward must prove that AUA had paid the sums at issue notwithstanding that it knew that it had the right to refuse to make the payments because no ABST was actually due and needn't have been paid either by the Leeward or by AUA and also because of Article 3.6.1 of the Contract that shifted the burden to pay any ABST that may have been due on the Leeward's Work from AUA to the Leeward", but that AUA paid the sums anyway.

The Leeward must also prove that AUA's payment of the sums that are at issue herein demonstrated unequivocally that AUA had determined to waive its right to refuse to pay the Leeward those sums.

The Leeward must also prove that it acted in reliance on AUA's purported waiver or

its right, that it did so to its detriment and that, it would be inequitable for AUA to be able

to enforce its right now.

In the case of *Bremer Handelsgesellschaft M.B.H. v. C. Mackprang Jr.*, 1 Lloyd's

Rep. 221 (Court of Appeal 1979), a case cited and relied on by the Leeward in support of

its waiver defense, the Court ruled:

> The modern law as to waiver was stated by this Court in *Panchaud Freres*, [1970]
> 1 Lloyd's Rep. 53 and *Alan & Co. v. El Nasr Export & Import Co. Ltd.*, [1972] 1
> Lloyd's Rep. 313; [1972] 2 Q.B. 189, where [Lord Denning M.R.] said at pp. 323
> and 213:
>
> . . . If one party, by his conduct, leads another to believe that the strict
> rights arising under the contract will not be insisted upon intending that
> the other should act on that belief, and he does act on it, then the first party
> will not afterwards be allowed to insist on the strict legal right when it
> would be inequitable for him to do so. . .

Of similar import on the need for the a party to a contract to have relied to his detriment

on an act or representation of the other party that that he claims constituted a waiver of

that other party of a contract right is the treatise *Chitty on Contracts*, 22.23, which the

Leeward also cites as authority for its waiver defense. Here, it is stated:

> Waiver in the sense of "waiver by estoppel" rather than "waiver by election" may
> also be held to have occurred if, without any request, one party represents to the
> other that he will forbear to enforce or rely on a term of the contract to be
> performed or observed by the other party, **and the other party acts in reliance on
> that representation. (Emphasis added)**

In *Motor Oil Hellas (Corinth) Refineries S.A.V. Shipping Corp. of India (the*

*Kanchenjunga)*, 1 Lloyd's Rep. 391 (House of Lords 1990), another of the authorities

cited by the Leeward in support of its waiver defense, the Court found as necessary

elements of the defense not only that the party charged with having waived a contract

right, had knowledge of the right but waived in nevertheless, but that the party evidenced

the waiver by conduct that was unequivocal. (See, *Woodhouse v. Nigerian Produce Marketing Co Ltd* [1972] 1 Lloyd's Rep. 439; [1972] A.C. 741 at pp. 445 and 735)

In deciding that a ship owner had waived his right to require performance of a shipping charter, the Court, quoting with approval from case appealed from (at [1987] 2 Lloyd's Rep. 509, 516), found:

There is nothing unequivocal about the Owner's conduct. They were dealing with charterers on the basis that the loading port nomination had been made and that Kharg Island was that port.
Furthermore, they know of their right to choose. They knew the facts; they knew what the provisions of the contract were, and what their legal rights were, and what their legal effect was. Therefore both the requirements of waiver, unequivocal conduct and the requisite knowledge, were made out.

The Court also opined:

Generally, it is a prerequisite of election [to waive a contract right] that the party making the election must be aware of the facts which have given rise to the existence of his right.

See also, *Meyer v. Gilmer*, [1889] 18 NZLR 129, another of the cases cited by the Leeward in support of its waiver defense in which in finding that a party had waived a contract right, the Court determined that the waiving party knew of the right that he was waiving.

In *Bessler, Glover & Co., Ltd. v. South Derwent Coal Company, Ltd.,* [1937] 59 Lloyd's List Law Rep. 104, another case cited by the Leeward in support of its waiver defense, the Court ruled that mere forbearance from insisting on a contract right is insufficient to constitute a waiver of that right.

In the case now at hand, it is beyond question that AUA did not know until after it paid all of the sums that the Leeward had demanded as ABST that neither it nor the

Leeward was required to pay ABST in connection with the Leeward's Work on AUA's Project.

AUA did not know that it was being improperly invoiced by the Leeward for sums that were not due and owing. AUA clearly did not know its rights when it made the payments. It made the payments in error and not as an election to enrich the Leeward beyond what the Leeward was owed for its Work on AUA's Project.

At all relevant times, AUA believed that it had no choice but to pay the ABST that the Leeward had invoiced and, thereafter, obtain a refund of those sums from the Government until such time as the Government acceded to AUA's long standing and repeated requests for written certification that ABST need not be paid to suppliers on its Project at all.

AUA had asked the Government for confirmation that no ABST should be paid *ab initio* in connection with its Project, but did not receive that confirmation until after it had paid all of the sums to the Leeward as ABST that are in dispute herein.

The evidence submitted by AUA (and as well by the Leeward) shows that, during the period that AUA was paying the Leeward's invoices, there was confusion as to whether, despite that AUA's Project was in the Free Trade Zone and, therefore, not subject to ABST, ABST was required to be paid in the first instance and a refund obtained from the Government or whether no ABST needed to be paid *ab initio*, which confusion, the Government did not clear up despite AUA's efforts, until after the Leeward completed its Work on the Project.

The evidence submitted by AUA herein (and also by the Leeward) also shows that it was because of the confusion that AUA determined that it would pay what it believed to

be the ABST that otherwise would be due on the Leeward's Work and seek a refund from the Government.

AUA also did not know until after the Leeward commenced this arbitration, that in paying the sums that the Leeward invoiced to AUA as ABST, it would not be entitled to a refund from the Government because, unbeknownst to AUA, the Leeward, having invoiced and collected the sums as ABST from AUA and from other customers and receivers of its supplies, failed to account to the Government for those sums by filing tax returns, failed to remit to the Government any part of the funds that it collected as ABST from AUA and from its other customers and receivers of its supplies and also failed to maintain the records that the ABST Act required it to maintain in order to be able to demonstrate to the Government that it paid out more in ABST to its own suppliers during each of the tax periods in which it was providing Work on AUA's Project and collecting sums from AUA as ABST as it claims to have done in defense of AUA's claims herein.

The evidence submitted by AUA (and even by the Leeward) clearly shows that AUA paid the ABST that the Leeward invoiced with the understanding and expectation that the Leeward would treat the sums as ABST and both account to the Government for what it had invoiced and collected through the filing of required monthly tax returns and pay over those sums, directly or indirectly, to the Government so that AUA could obtain a refund of those sums from Government.

Likewise, the Leeward did not act to its detriment or in reliance on any waiver by AUA of its right to refuse to pay the Leeward the sums that the Leeward invoiced as ABST; nor had the Leeward asserted, or provided this Tribunal with even a hint of an idea that it had. Rather, the Leeward was unjustly enriched by the payments and, perhaps,

was guilty of fraud and deceit in invoicing them with the knowledge that a) they were not due and owing to the Government, and b) that even if they were so due and owing, the Leeward would not remit the payments that it received from AUA or account to the Government for its receipt of those payments.

Lastly, AUA's payment of the sums that the Leeward invoiced as ABST did not constitute unequivocal acts evidencing AUA's intent that the Leeward was entitled to the sums that it invoiced AUA as taxes. Rather, AUA's acts in paying the amounts that the Leeward invoiced as ABST evidenced AUA's understanding that it was entrusting the sums to the Leeward for remission to the Government and that AUA would obtain a refund of those sums from the Government thereafter.

In short, AUA's actions, and, as well, the actions of its counsel at the prior arbitration, evidenced nothing but that AUA and its counsel lacked the knowledge of AUA's rights and the applicable law, and that AUA made the payments in in error and with the expectation that, upon the Leeward's treatment of them as it represented, AUA would recoup them through a tax refund.

Based on the foregoing, AUA respectfully submits, the Leeward's motion insofar as it seeks dismissal of AUA's claims for restitution relating to its payment to the Leeward of sums that the Leeward wrongfully invoiced as ABST must be denied.

Also, based on the foregoing, AUA respectfully submits, the Leeward's affirmative defense of waiver must be stricken.

# POINT V

## AUA's CLAIMS FOR RESTITUTION OF THE SUMS PAID TO THE LEEWARD

## AS ABST ARE NOT BARRED BY RES JUDICATA, THE LEEWARD'S AFFIRMATIVE DEFENSE OF RES JUDICATA IS BARRED BY THAT DOCTRINE

The Leeward claims that, because AUA did not raise its claims for recoupment of the sums that it paid the Leeward in error as ABST in the prior arbitration between the parties, AUA is barred by the doctrine of res judicata from litigating those claims in these proceedings.

AUA respectfully submits that, because the issues underlying AUA's claims herein were not relevant to a determination of any of the claims advanced by either of the parties in the prior arbitration, the Leeward's contention must be rejected.

Moreover, because, upon the Leeward's application in the prior Tribunal for payment of the sums that the Leeward now seeks herein, which was based on the same facts and contentions as the Leeward asserts as the basis for its claim herein, the Tribunal denied the Leeward's application, finding expressly and unequivocally, that the issue of whether the Leeward was entitled to the sums it seeks herein was outside the scope of the proceedings and that it would constitute a denial of AUA's right to due process to consider the claim, it is the Leeward's affirmative defense of res judicata that is barred from being raised herein by that very doctrine.

As is the case with most of the Leeward's contentions and defenses against AUA's claims against it herein, the authorities that the Leeward cites in support of its res judicata defense not only fail to support the Leeward's contentions, but provide conclusive authority against them.

The Leeward informs this Tribunal that the doctrine of res judicata "requires a party to present its whole case concerning the same subject matter at the same time and

precludes a party from asserting causes of action concerning the same subject matter in multiple litigations." (Emphasis added.) (Leeward motion at para. 46.)

The Leeward also instructs (at paragraph 47 of its motion), through quotation from the case of *Mavis Henry v. Tyrone Walker*, Claim No. ANUHCV 2000/2007, Eastern Caribbean Supreme Court (2009), which case cited Henderson v. Henderson, 34 Hare 100, 114-115 (1942), that:

The plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point **which properly belonged to the subject of the litigation**, and which the parties, exercising reasonable diligence, might have brought forward at the time. (Emphasis added)

However, the Leeward studiously avoids providing any guidance at all as to what the terms "subject matter" and "subject of the litigation" as they are employed in the cases cited and quoted from by the Leeward actually mean.

At the same time, the Leeward neglects either to advise the Tribunal as to exactly what the subject matter of the prior litigation was, and, not coincidentally, also was careful to exclude from its long list of exhibits in support of its motion, its Statement of Claim and AUA's Answer and Counterclaims in the prior litigation.

Fortunately for AUA, however, the very cases and authorities that the Leeward advances in support of its res judicata defense provide the missing guidance as to what the terms "subject matter" and "subject of the litigation" as they are applicable to the defense of res judicata mean.

In the same case case above quoted from and upon which the Leeward so heavily relies, the Court went on to explain precisely what it meant by the term " subject of the litigation"

as follows:

Suffice it to say, the issues that are required now to be determined are issues and points that properly belonged to the earlier litigation and which the earlier court would have of necessity had to resolve had it been raised.

In the case of *NLRB v. United Technologies Corp.*, *706 F2d 1254* (2d Cir. 1983) cited by the Leeward in support of its res judicata affirmative defense, the Court advised:

[T]he circumstance that several operative facts may be common to successive actions between the same parties does not mean that the claim asserted in the second is the same claim that was litigated in the first. Whether or not the first judgment will have preclusive effect depends in part on whether the same transactions or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first. See, e.g., *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 726-28 (2d Cir. 1981); *Herendeen v. Champion International Corp.*, 525 F. 2d 130, 133-34 (2d Cir 1975); *Restatement (Second) of Judgments* § 24 (1).

The above quoted language was quoted with approval in *Woods v. Dunlop Tire Corp.*,

972 F.2d 36 (2d Cir. 1992.)

In that case, the Court, in determining that the plaintiff's claims were barred by the

doctrine of res judicata, the Court found that:

[T]he present action involves the same transaction , and therefore the same cause of action, for res judicata purposes. The factual predicates of the employment termination challenged in *Woods I* and *Woods II* were the same. Essentially the same underlying occurrence was relevant to both the LMRA and Title VII claims. Both actions centered around Dunlop's firing of Woods, the reasons for termination, and her employment history, physical limitations, and qualifications.

. . .

''It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which Woods chose to frame her complaint. (Citations omitted). Whatever legal theory is advanced, when the factual predicates upon which the claims are based are substantially identical, the claims re deemed to be duplicative for purposes of res judicata. *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir.) cert. denied, 434 U.S. 903, 54 L. Ed 190, 98 Sup. Ct. 330 (1997).

Antigua and Barbuda authorities that the Leeward has not cited are clear on when, and under what circumstances a claim or issue in a subsequent proceedings between the same parties is barred by the doctrine of res judicata and when it is not.

Chief Justice of the Eastern Caribbean Supreme Court in the case *Bertha Compton v. Dr Christiana Nathaniel et al.,* (Civil Appeal No 12 of 2004) put the doctrine simply thus:

The basic principles of this doctrine are well settled. A simple statement may be better appreciated with reference to the full Latin statement – res judicata pro veritate accipitur. A literal English translation is that a thing adjudicated is accepted as the truth. Therefore, when a Court of competent jurisdiction has decided an issue between parties, **the same issue cannot be re-litigated between them in the same Court.** The decision stands until it is reversed on appeal. (Emphasis added.)

In *HWR Wade & C F Forsyth,* Administrative Law (7th Edition) a leading text on administrative law, the authors explain the principles and distinctions that attend the doctrine as follows:

One variety of estoppel is res judicata. This results from the rule which prevents the parties to a judicial determination from litigating **the same question over again,** even though the determination is demonstrably wrong. Except in proceedings by way of appeal, the parties bound by the judgment are stopped from questioning it. As between one another, they may neither pursue the same course of action again, **nor may they again litigate any issue which was an essential element in the decision.** These two aspects are sometimes distinguished as 'cause of action estoppel' and 'issue estoppel.'

It is that which presents most difficulty, since an issue **"directly upon the point' has to be distinguished from one which came collaterally in question"** **or which was 'incidentally cognisable."** In any case, there must be a list or issue and there must be a decision. (Emphasis added)

The principle has been applied in many cases in the Eastern Caribbean Supreme Court of which Antigua and Barbuda is a part. For example, it was considered in the

recent case of *Alexander M. Fundora v Nigel Hamilton- Smith* (Claim Ann

CHV2009/0149).

In the Antigua and Barbuda case of Halstead v Attorney General of Antigua and

Barbuda, Chief Justice, Sir Vincent Floissac stated that the doctrine applies in the

following circumstance:

[A] right or cause of action or an issue had arisen or could or should have been raised in previous civil proceedings and that **right or cause of action or issue was expressly or impliedly determined on its merit by a final and inclusive judgment** of a court or competent jurisdiction. In that case, the parties to the previous civil proceedings and their privies are inter estoppel *per rem judicatam* from relitigating **that same adjudicated right or course of action or issue** in subsequent proceedings unless there are special circumstances entitling one of the parties or privies to re-open that adjudicated right or cause of action or issue in the interest of justice." (Emphasis added)

As should be apparent from a review of the Leeward's Amended Demand for Arbitration, AUA's Amended Answer and Counterclaims and the Tribunal's Decision and Order in the prior proceedings (Exhibits X, Y, and BB) the prior arbitration did not involve any of the issues raised by AUA in the proceedings at hand. The arbitrators in that arbitration were called upon to adjudicate the Leeward's claims: a) that AUA breached the contract by deleting work without the Leeward's consent and by failing to pay for the deleted work, by failing to pay a mobilization fee and by failing to pay for delays that it caused in the completion of the Project; b) that AUA was liable to the Leeward for interest on payments that it made; and c) that the Leeward was entitled to legal fees and costs.

The arbitrators were also called upon to adjudicate AUA's counterclaims to the effect that it was entitled to damages for delays occasioned by the Leeward and for AUA's costs and legal fees.

None of the issues presented in the prior arbitration were the same as any of the issues herein presented.

As set forth in the Statement of Facts above, none of the claims and none of the defenses to the claims in the prior arbitration involved any aspect of ABST or any aspect of the respective claims and defenses of the parties herein.

The facts underlying the prior arbitration were significantly different than the facts underlying the present arbitration

No aspect of the claims and defenses in the instant arbitration was required to be determined in order for the claims and defenses in the prior arbitration to be adjudicated. No aspect of any of the claims or defenses raised in the present arbitration were "essential elements" of the prior arbitration.

None of the evidence that has been or will be presented in support of the respective parties' claims in the present proceeding with the exception of the Leeward's invoices and AUA's payments were relied upon or required for the arbitrators to adjudicate the claims in the prior litigation; and, with respect to those invoices and payments, the entries on those documents relating to ABST were not relevant to the issues in the prior case or to the determination of any of those issues.

In short, the matters and issues raised by AUA in the present arbitration were not "the subject matter" or the "subject of the litigation" of the prior litigation.

It was strictly as an ancillary matter not relevant to any of the issues in the prior litigation and wholly collateral to them that AUA's outside counsel advised the Tribunal in his opening statement that he had discovered what he believed to by a "mutual error."

of the parties in payment requisition of the Leeward in that sums that he believed should have been invoiced as ABST were invoiced as part of the contract sum such that, counsel concluded, when the balance of the contract sum that AUA paid omitted the portion that was incorrectly invoiced. (Counsel was, in fact correct. He did uncover a mutual error-or AUA's error and the Leeward's fraud. However, the error was not the one that he thought he had found.)

Notably, in advising the Tribunal of the error that he thought he had uncovered, he specifically advised that the error was "outside the context of [the prior] arbitration." See, para. 80 of AUA's Proposed Findings of Fact and Conclusions of Law in the prior arbitration (Exhibit Z).

For his part, the Leeward advised the Tribunal that "Opening statements [referring to the same opening statement of AUA's counsel] that contains the statement upon which the entirety of the Leeward's claim and its defense of res judicata are based] are not evidence and do not prove anything." See, para. 23 of Claimant's Reply Proposed Findings of Fact and Conclusions of Law" in the prior proceeding (Exhibit AA).

Unfortunately, neither was counsel's assumption accurate nor had he consulted anyone from AUA about the error that he believed that he had uncovered.

More importantly, no aspect of that matter was relevant or necessary for the Tribunal in the prior arbitration to consider in adjudicating the claims and defenses presented by the parties therein.

Indeed, upon the Leeward's request at the end of the proceedings to include the amount that the Leeward now seeks in the instant proceeding as damages in the prior arbitration, the Tribunal found:

34

Controversy:

Should the mutual mistake discovered by AUA on the eve of trial that resulted in Leeward receiving EC $ 83,059.56 less than was reflected in the Draft Final Account be part of any arbitration award, and potentially subject to the assessment of interest, given that Leeward never notified AUA of the error, or specifically demanded payment, or asserted any claim to recover the amount.

Panel's Determination:

This Panel determines that the ABST error was mutually acknowledged by both parties, and not having been submitted as a controversy of this Arbitration and having it been discovered and in good faith informed by an AUA representative during the hearings, **we conclude that this issue should be resolved outside of the context of this Arbitration.** (Emphasis added.) Final Award in the prior arbitration (Exhibit BB at p. 27, 28, para. 30)

Based on the forgoing facts and law, not only must the Leeward's res judicata defense fail because the issues in the present action were not the subject of the prior arbitration as the doctrine of res judicata requires, but the the Leeward is barred by the very doctrine from raising it, in these proceedings.

Here, the matter of whether the Leeward was entitled to the ABST that it seeks as an award in the prior litigation was litigated. The Leeward had a full and fair opportunity to litigate the issue and the Hearing Panel, in its Final Award, determined expressly that the question of the Leeward's entitlement to the sums that it places at issue herein should be determined outside of the prior arbitration because it **was not submitted as a controversy** in the prior arbitration.

The doctrine of res judicata now bars the Leeward from arguing herein that issues concerning its and/or AUA's entitlement to recover sums relating to ABST were "the subject matter" of the prior litigation, or were the "subject of that litigation," as those issues must have been in order for them to be barred by the doctrine from being raised herein.

Based on the foregoing, AUA submits, the Leeward's motion insofar as it seeks dismissal of AUA's claims for restitution of the sums that it paid to the Leeward as ABST must be denied.

Likewise, AUA's cross-motion insofar as it seeks an order striking the Leeward's affirmative defense of res judicata must be granted.

## POINT VI

## THE LEEWARD'S DEFENSES OF MUST EACH BE STRICKEN AND AUA SHOULD BE AWARDED SUMMARY JUDGMENT ON ITS COUNTERCLAIMS HEREIN

For the same reasons, and based on the same facts and authorities as require this Tribunal to deny the Leeward's motion herein, the Tribunal must also strike each of the defenses that the Leeward advances in support of its motion and its defense of AUA's ABST related claims herein. Moreover, once the Leeward is stripped of these defenses, there remains no basis for this Tribunal to deny any AUA summary judgment on its ABST related claims.

Neither is there any issue in this case as to the amount that AUA remitted to the Leeward purportedly as ABST, nor is there any issue that the sums that the Leeward invoiced and collected from AUA as ABST were, in fact, not due.

Likewise, there is no issue to be determined in this matter as to whether the Leeward has been unjustly enriched by its wrongful invoicing and collecting of sums as ABST from AUA. The Leeward has admitted herein that it failed to file tax returns with the Government of Antigua and Barbuda as the ABST Act would have required it to do if the sums that it collected were ABST (or if the Leeward had treated them as such.)

The Leeward claims as a last ditch defense to AUA's claims herein that it was not unjustly enriched because it paid out to vendors from whom it received supplies more in ABST that it collected from AUA. However, the Leeward failed to maintain the documentary evidence in the form of invoices, receipts, ledgers and the like that the ABST Act requires. This became obvious through the Leeward's responses to AUA's requests for production of documents herein, wherein it admitted as much.

Without those documents, the Leeward cannot prove its contention. More importantly, the contention is erroneous as to the law. The ABST Act, at Articles 8 and 27, require that a supplier pay over to the government the difference between all of the ABST that it invoiced in a given monthly tax period from all of its customers and receivers of its supplies and all of the ABST that it pays to all of its own suppliers in connection with its entire business activities during the tax period. Accordingly, even if it was the case (or that the Leeward could prove) that it paid more in ABST to its own suppliers than it collected from AUA during any, or every, tax period that it invoiced and collected sums as ABST from AUA, nevertheless, this fact would constitute a defense to or preclude AUA's claims ort claims AUA from recovery on its ABST related claims.

In order for such a defense to stand, the Leeward would be required to plead as a defense herein and to prove that it paid more in ABST to its own suppliers than it collected in ABST not only from AUA, but from all of its customers combined during each of the separate monthly tax periods that it was invoicing and collecting sums as ABST from AUA. However, the Leeward has neither pled that such is the case, nor has it

37

provided any evidence to prove such a claim. Accordingly, this Tribunal must grant summary judgment on AUA's claims relating to ABST herein.

Respectfully submitted:

Leonard A. Sclafani, Esq.
Law Offices of Leonard A. Sclafani, Esq.
Attorneys for Respondent AUA
One Battery Park Plaza, 33rd Fl.
New York, New York 10004
212-6967-9880
las@lasattorneys.com