AMERICAN ARBITRATION ASSOCATION
CONSTRUCTION INDUSTRY ARBITRATION RULES

| LEEWARD CONSTRUCTION COMPANY, Ltd.<br><br>                                 Claimant,<br><br>v.<br><br>AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE C/O GCLR, INC.<br><br>                                 Respondent. | Case No. 50 110 T 00118 13<br><br>AFFIRMATION OF NEAL SIMON IN OPPOSITION TO THE CLAIMANT'S MOTION FOR DISMISSAL OF AUA'S ABST RELATED CLAIMS ON VARIOUS GROUNDS AND IN SUPPORT OF AUA'S CROSS-MOTION FOR AN ORDER STRIKING CLAIMANT'S STATED DEFENSES AND AWARDING SUMMARY JUDGMENT TO RESPONDENT ON ITS ABST RELATED CLAIMS |
|---|---|

NEAL SIMON, hereby affirms under penalty of perjury as follows:I am, and have been since its inception, President of Respondent American University of Antigua College of Medicine (hereinafter "AUA.") As such, I am fully familiar with the facts and circumstances surrounding this matter and hereinafter set forth.

1. I submit this affirmation in opposition to the motion of Claimant, the Leeward Construction Company, Ltd. (hereinafter "the Leeward") for an order dismissing AUA's claims for recoupment of sums that it remitted to the Leeward pursuant to its invoices for Antigua and Barbuda Sales Tax (hereinafter "ABST") in the total amount of EC $ 3,788,500.87 or US $1,409,307.67 (See Schedule 1) on grounds that: a) AUA's claims are not subject to arbitration; b) AUA lacks standing to bring its claims; c) the parties contract and the ABST Act required AUA to pay the Leeward the ABST that AUA seeks

to recover; d) AUA has waived its contract right and right to recover the sums that it paid the Leeward as ABST; and, e) AUA's claims are barred by the doctrine of res judicata.

2. I also submit this affirmation in support of AUA's within cross-motion for an order striking the Leeward's defenses of: lack of arbitrability of AUA's ABST related claims; AUA's lack of standing to maintain its claims; waiver, res judicata and the alleged requirement of the parties' contract and the ABST Act for AUA to pay the Leeward the sums that AUA claims herein and for summary judgment in the amount of EC $3,788,500.87 or US $1,409,307.67.

3. As hereinafter more fully set forth, AUA's claims for restitution of the sums that it remitted to the Leeward as ABST are clearly arbitrable because they arise under and pursuant to the parties contract; which includes the arbitration clause on which the Leeward relies as the basis for its own claim as against AUA herein.

4. AUA's ABST related claims are also arbitrable because the arbitration clause in the parties' contract makes arbitrable not only claims that "arise under the contract," but also, claims that are "related to" the contract. The applicable law as hereinafter discussed requires a finding that such language as is in the arbitration clause of the parties' contract is more than sufficiently broad as to encompass AUA's ABST related claims herein.

5. Likewise, AUA clearly has standing to maintain its defenses and counterclaims herein. The Leeward's defense is based on its unsupported allegation that AUA's remedy under the ABST Act is to obtain a tax refund from the Government and that there is no private right of action under the ABST Act that would authorize AUA to commence a suit to obtain that refund from the Leeward. However, the ABST Act provides that, in situations where a supplier such as the Leeward invoices and collects sums as ABST that are, in

fact, not due as such, the supplier is required to repay those sums to the payee of those sums.

6. Through his affirmation submitted herewith, Douglas James McLaren, Deputy Commissioner of Inland Revenue of Antigua and Barbuda, and formerly Director of the ABST Unit of that Department, avers that the ABST Act requires a supplier to disgorge to a receiver of its supplies sums that the supplier invoiced and collected as ABST and that, in the case of the Leeward's actions in this regard, the Government expressly advised AUA that its remedy under the ABST Act was to return to the Leeward and obtain those funds back from it. AUA is doing just that in this proceeding and has standing to do so, as Mr. McLaren attests and the ABST Act provides.

7. The Leeward's contention that the parties' contract and the law required it to collect as ABST the sums from AUA that AUA herein seeks to recover is also at significant odds with the applicable law. The parties' contract expressly required the Leeward to pay all taxes in connection with its Work on AUA's Project. The ABST Act is to the same effect. The Act looks to the supplier, the Leeward, for payment of taxes due; it does not impose any duty on the receiver of a supply actually to pay any ABST on supplies that it receives. Nor does the Act prohibit a receiver from agreeing with a supplier of taxable supplies that the supplier would pay the taxes incident to the supply. The Leeward fails to support its contention to the contrary with any authority.

8. Moreover, where, as here, the sums that are at issue were not due at all as taxes, the ABST Act is not even applicable. Rather the law of contract and equity govern the respective rights and obligations of the parties to wrongfully invoiced and collected sums

as the law would apply in cases of overpayments of any other sums made mistakenly or in error under contracts.

9.   AUA also has not waived its right to obtain restitution from the Leeward of the sums that the Leeward wrongfully invoiced and that AUA paid despite that they were not due. AUA made the payments without due consideration of the contract clause that required the Leeward to pay all taxes on its Work under the contract. It also paid the sums in the belief, albeit a belief that has proved to be an erroneous one, that it would receive a refund form the Government for all of the sums that it paid to the Leeward as ABST. Its actions in paying the sums that the Leeward invoiced are not so unequivocal as to demonstrate conclusively that its intention in paying the sums to the Leeward constituted an affirmative waiver of AUA's right to recoup any part of the sums that it subsequently determines was not required to pay. Finally, the Leeward did not rely to its detriment and suffered no ill consequence in its wrongful invoicing and collection of sums as ABST from AUA. To the contrary, the Leeward has been unjustly enriched by its actions.

10. The Leeward's defense of res judicata also provides no basis for this Tribunal to dismiss AUA's claims. Indeed, the doctrine is a bar to the Leeward's defense of res judicata. The mention of ABST by AUA's outside counsel in the prior arbitration was both ancillary to the issues that the arbitrators were required to decide and wholly collateral to them. No aspect of any of the facts or law at issue in the prior arbitration involve or determined or could have determined any of the facts or law that has been or will be presented to the Tribunal herein.

11. Indeed, upon the Leeward's application for recovery of the sums that it seeks herein, the Hearing Panel expressly ruled that the issue of whether ABST was due the Leeward was

outside of the prior arbitration. Having had a full and fair opportunity to litigate the issue as to whether the prior arbitration was the appropriate forum for determination of issues arising from the unfortunate statement of AUA's outside counsel, and the Hearing Panel in the prior arbitration having determined that it was not the proper forum for such claims, the Leeward is now barred by the doctrine of res judicata from contending herein that AUA was required by the doctrine to bring its claims against the Leeward in the prior arbitration.

12. Since none of the Leeward's stated defenses to AUA's claims have any merit and since, in any case, the motion is not supported by a sworn statement from anyone with first hand knowledge of the truth of the allegations that the Leeward alleges in its motion, the Leeward's motion must be denied.

13. Similarly, because there is no basis in fact or in law for any of the Leeward's stated defenses to AUA's claims relating to ABST herein; these defenses must, each and all, be stricken.

14. AUA also submits that, once the Leeward's stated defenses to AUA's claims herein are stricken, there is no issue that remains to be determined and no reason remaining as to why judgment should not be awarded to AUA on its claims relating to ABST.

15. Neither is there any issue in this case as to the amount that AUA remitted to the Leeward purportedly as ABST, nor is there any issue that the sums that the Leeward invoiced and collected from AUA as ABST were, in fact, not due.

16. Likewise, there is no issue to be determined in this matter as to whether the Leeward has been unjustly enriched by its wrongful invoicing and collecting of sums as ABST from AUA. The Leeward has admitted herein that it failed to file tax returns with the

Government of Antigua and Barbuda as the ABST Act would have required it to do if the sums that it collected were ABST (or if the Leeward had treated them as such.)

17. The Leeward claims as a last ditch defense to AUA's claims herein that it was not unjustly enriched because it paid out to vendors from whom it received supplies more in ABST that it collected from AUA. However, the Leeward failed to maintain the documentary evidence in the form of invoices, receipts, ledgers and the like that the ABST Act requires. This became obvious through the Leeward's responses to AUA's requests for production of documents herein.

18. Without those documents, the Leeward cannont prove its contention.

19. More importantly, the contention is erroneous as to the law.

20. The ABST Act, at Articles 8 and 27 requires that a supplier pay over to the government the difference between all of the ABST that it invoiced in a given monthly tax period from all of its customers and receivers of its supplies and all of the ABST that it pays to all of its own suppliers in connection with its entire business activities during the tax period.

21. Accordingly, even if it was the case (or that the Leeward could prove) that it paid more in ABST to its own suppliers than it collected from AUA during any, or every, tax period that it invoiced and collected sums as ABST from AUA, nevertheless, this fact would constitute a defense to AUA's claims or preclude AUA from recovery on its ABST related claims.

22. In order for such a defense to stand, the Leeward would be required to plead as a defense herein and to prove that it paid more in ABST to its own suppliers than it collected in ABST not only from AUA, but from all of its customers combined during each of the

separate monthly tax periods that it was invoicing and collecting sums as ABST from AUA.

23. However, the Leeward has neither plead that such is the case, nor has it provided any evidence to prove such a claim.

24. Accordingly, this Tribunal must grant summary judgment on AUA's claims relating to ABST herein.

**The Underlying Facts:**

25. On February 26, 2003, the Government of Antigua and Barbuda (hereinafter sometimes referred to as "the Government") granted to AUA a Charter to operate as an institution of higher education and to offer a course of study leading to the award of a medical doctorate (M.D.) degree, among other degrees.

26. On March 9, 2006, that Charter was replaced by a new Charter, which, inter alia, provides that the Government of Antigua and Barbuda (hereinafter sometimes referred to as the "Government") would "exercise its discretion in giving most favourable consideration to applications [made by AUA to the Government's Cabinet] for exemption from customs duty and consumption tax" that otherwise would be due in connection with the operation of its medical school. (Exhibit A)

27. Thereafter, in accordance with the above quoted provision of its Charter, AUA did make due application to the Cabinet of the Government for an exemption from the country's consumption tax; and, on March 23, 2006, the Cabinet passed a resolution pursuant to which it agreed to grant to AUA "exemption from payment of Duty and Consumption Tax on the importation of items imported for use by the University… including, but not

limited to, project buildings, furniture, office equipment, medical supplies, medical education equipment and building materials." (Exhibit B)

28. Two years earlier, on January 26, 2004, in connection with the grant of AUA's original Charter, the Cabinet had passed a Resolution pursuant to which it had "agreed to the recommendation that as stated in its agreement between American University of Antigua (AUA) and the Government of Antigua and Barbuda, the American University of Antigua should be granted exemption from Duty, Consumption Tax and Customs Service Tax on importation of goods to be used by the Medical School, its administration, faculty and students.... includ[ing] building materials." (Exhibit C).

29. However, on September 5, 2006, the Consumption Tax, from which AUA was exempt, was abolished and replaced by the Antigua and Barbuda Sales Tax (ABST) under and pursuant to the Antigua and Barbuda Sales Tax Act, 2006. A copy of the Antigua and Barbuda Sales Tax Act and its 2008 Amendment and the Regulations thereunder (hereinafter sometimes referred to collectively as "the Act") appear as the entirety of the documents provided by the Leeward under the "Statutes" section of the its "Index of Authorities.[1]"

30. The Government had widely disseminated notices and publications both in advance of, and immediately following, the enactment of the ABST Act to the effect that ABST was a replacement for the Consumption Tax (Exhibit D); however, there was nothing in the new ABST Act or elsewhere in the law that provided that persons and/or businesses such

---

[1] The Leeward has produced under its "Index of Authorities" many voluminous documents that both AUA and the Leeward have cited in support of their respective motions herein and, in AUA's case, in opposition to the Leeward's motion. In such cases, rather than duplicate production of these authorities, AUA will refer the Tribunal to the Leeward's Index of Authorities.

as AUA who had been exempt from payment of Consumption Tax would also be exempt from ABST.

31. Moreover, the Government had not advised AUA as to whether the exemption from the Consumption Tax that the Government had granted to AUA would apply equally to ABST, and, if so, how the exemption would be implemented given that the ABST Act looked to suppliers to invoice and pay the tax rather than the purchaser of goods and services as the Consumption Tax did.

32. During this same period of time, on September 4, 2008, AUA entered into a lease with the Government for property located on Jabberwock Beach Road, St. John's Antigua, within the Antigua and Barbuda Free Trade and Processing Zone (Exhibit E) for the purpose of development of the property as and for a new and greatly improved main campus for its medical school and other schools of higher education.

33. Concomitant with the lease, the Government also granted to AUA a license to operate its business in the Antigua and Barbuda Free Trade and Processing Zone.

34. Under Section 14 of the Free Trade and Processing Zone Act, 1994, licensees were "exempted from payment of taxes and levies imposed by the Government respect of any industrial or commercial activity being carried on within the free trade and processing zone," which exemption included exemption from paying any tax, levy or duty "on the importation of machinery, equipment, spare parts construction material and other items needed to construct and operate facilities within the free trade and processing zone;" as well as "duties and other taxes on the importation of raw materials and other goods to be incorporated in the products produced or assembled within or to be utilized in the performance of services within the free trade and processing zone." A copy of the

Antigua and Barbuda Free Trade and Processing Zone Act, 1994 as amended is annexed hereto as Exhibit F.

35. The theory behind the exemption was that land within the Free Trade and Processing Zone was to be treated as being situated outside of Antigua and Barbuda as if the land in the zone was a separate country such that goods, services imported into and/or performed in the Free Trade and Processing Zone were not subject to those laws and regulations of Antigua and Barbuda that imposed taxes and duties on such goods and services.

36. While the Free Trade and Processing Zone Act made supplies into and used in the Free Trade and Processing Zone exempt from all taxes imposed on supplies imported into or provided in the Free Trade and Processing Zone, the Antigua and Barbuda Sales Tax Act did not include supplies imported into the Free Trade and Processing Zone among the list of supplies that are exempt from ABST (see Article 2; definition of "exempt," and Schedule 4 "Exempt Supplies" of the Act). Rather, the Act, at Schedule 2, Sections 2 and 8, provides that supplies imported outside of Antigua and Barbuda (which include those supplies imported into or performed in the Free Trade and Processing Zone) would be taxed at a "zero rate".

37. The ABST also requires that suppliers of taxable supplies, including those supplies that are taxed at a zero rate, issue ABST invoices to the receivers of those supplies for the taxable supplies that they provide, even in those cases in which the invoices show no tax due (because the supplies are taxed at a zero rate or for some other reason) on the supplies provided. (See Part IX, Article 32 of the Act.)

38. The ABST Act also provided that suppliers both file tax returns for each monthly tax period accounting for all the taxes that they invoiced during the period, and pay over to

the Government the difference between the taxes that they invoiced during the period (regardless of what taxes they actually collected) and the ABST that they were, themselves, invoiced by other suppliers and actually paid to those other suppliers in connection with their business operations during the tax periods for which returns were to be filed. (See ABST Act Article 8, "Imposition of Antigua and Barbuda Sales Tax; Article 27, "Calculation of ABST Net Amount" and Article 39, "ABST Returns and Payments")

39. Contrary to the Leeward's claims in this action, the ABST Act did not, and does not, make the receivers of taxable supplies liable to the Government for the payment of ABST on those supplies. Nor, as above set forth, and contrary to the Leeward's contentions in this proceeding, did, or does, the ABST Act impose any duty on receivers of supplies actually to pay the ABST either to the Government or to the suppliers from whom they receive them. Rather, as above set forth, and as is the case with most *ad valorem* taxes imposed by nations throughout the world, the ABST Act imposes the duty to pay any and all ABST that they invoice and that becomes due in connection with the supplies that they provide regardless of whether or not the receivers remit to the suppliers the ABST that they are invoiced on those supplies. See ABST Act at Articles 27 " Calculation and Payment of ABST Net Amount" and Article 8, "Imposition of Antigua and Barbuda Sales Tax."

40. Because suppliers would be held liable to the Government for any ABST due on their supplies, suppliers were unwilling to provide supplies to AUA regardless of whether their supplies were to be imported into, or provided in, the Free Trade and Processing Zone absent an official declaration from the Government in form and substance satisfactory to

the suppliers that AUA was exempt from the tax. (See, for example, Leeward Exhibit 51; a letter from telecommunications supplier LIME advising of its need for clarity in the form of an official statement from the Government expressly providing that it would not be held responsible for ABST on supplies that AUA requested that it furnish in connection with the operation of its business and construction of its campus in the Free Trade and Processing Zone.)

41. This was particularly true with respect to supplies of goods, materials and equipment that AUA's suppliers were to provide in connection with the development of AUA's new campus and facilities in the Free Trade and Processing Zone.

42. Here, the problem was that, while it may have been clear both to AUA and to AUA's immediate suppliers that no ABST was due from the suppliers on items that were to be imported into the Free Trade and Processing Zone for the construction of AUA's new campus, it was less clear to those merchants from whom AUA's suppliers were to obtain the goods, materials and supplies that the suppliers required to construct AUA's new campus and facilities in the Free Trade Zone that no ABST would be due from the merchants in connection with the materials that they were providing to AUA's suppliers.

43. Accordingly, absent an express unequivocal written declaration from the Government to the effect that no ABST need be paid in connection with such goods and materials, these merchants also expressed an unwillingness to provide for AUA's suppliers the goods, materials and equipment that AUA's suppliers required in order to fulfill their obligations to provide supplies for AUA and, in particular, to provide supplies for the development of AUA's new campus on its leased land in the Free Trade and Processing Zone.

44. In order to solve this problem, AUA petitioned many government officials, including the Country's Prime Minister, Attorney General, Minister of Finance and the Ambassador to the United States who was instrumental in enticing the founders of AUA to found our medical school in Antigua, for assurances that AUA was exempt from paying any ABST due in connection with the operation of its business to the same extent as it had been exempt from the Consumption Tax. (See Exhibits G, H, I, J and K. See also Exhibit 55 of the exhibits submitted by the Leeward in support of its motion herein. Exhibit 52 submitted by the Leeward in support of its motion is the same Exhibit as Exhibit H hereto[2].

45. Unfortunately, these officials provided much in the way of oral assurances that AUA would not be required to pay ABST and that official written clarification to this effect would soon be forthcoming, but official clarification was not forthcoming for some time to come.

46. Faced with the problem and in need of proceeding with the construction of its new campus, AUA discussed with the same Government officials to whom it had petitioned that AUA would pay its suppliers the ABST that otherwise would be due on the supplies that it required until such time as the Government provided the official declaration satisfactory to those suppliers that those supplies and their own suppliers were

---

[2] In its opposition to the Leeward's motion and in support of its cross-motion herein, AUA will rely on many of the same exhibits as the Leeward has submitted in support of its motion. Henceforth, in order to avoid submission herewith of duplicates of some of the same voluminous exhibits as the Leeward has submitted in support of its motion, AUA will not produce the duplicates of voluminous exhibits but will refer the Tribunal to the relevant exhibit provided by the Leeward by referring to each of such exhibits as a "Leeward Exhibit" followed by the number of the exhibit that the Leeward has included in support of its motion.)

demanding, and that, upon receipt of such clarification, AUA would apply for, and obtain

a refund from the Government of the sums that it paid to its suppliers as ABST.

47. AUA received assurances from these officials that, if AUA would so proceed to pay its

suppliers any ABST that would otherwise be due in connection with the supplies that it

purchased, AUA would receive a refund from the Government of the ABST that it paid.

48. Having received these assurances, AUA proceeded to advise its suppliers that it would

pay ABST on supplies that they provided to AUA; and began to do so as the suppliers

invoiced AUA for those supplies.

49. Contractors other than the Leeward had begun the development of AUA's new campus

and it was these contractors who AUA advised that it would pay ABST on the supplies

that they furnished.

50. It was not until August 31, 2007 that AUA received anything in writing from anyone in

the Government of Antigua and Barbuda in response to AUA's petition and in

furtherance of AUA's oral agreement that it would pay ABST to its suppliers subject to a

refund of the Government of those payments until it received an official declaration

sufficient to satisfy its suppliers and their suppliers that they were not liable for ABST on

supplies provided to AUA.

51. On that date, AUA received a letter from Douglas James McLaren. As of the date of his

letter, Mr. McLaren was the Director of ABST implementation for the Inland Revenue

Department of Antigua and Barbuda.

52. As such, according to the affirmation of Mr. McLaren submitted herewith, he had

"overall responsibility for the operation of ABST implementation" and " the application

and enforcement of the legal provision of the legislative instruments thereto."

53. Through his letter (Exhibit L, See also, Leeward Exhibit 56), Mr. McLaren analyzed the Free Trade and Processing Act as it related to AUA's petition, and advised "the receipt of goods and services into the free trade and processing zone would be treated as exports from Antigua and Barbuda and as Imports into the said zone." McLaren Affirmation at para. 2.

54. Although Mr. McLaren states in his affirmation that the letter "effectively advised the recipient [AUA] that their receipt of goods and services would be relieved of ABST as exports from Antigua and Barbuda", and that this "meant that construction services supplied in relation to the building situated within the free trade and processing zone would have ABST applied at 0% being exports of goods and services, the letter was not sufficiently clear enough to satisfy AUA's suppliers and, more particularly, the merchants that AUA's suppliers relied upon to obtain the goods, materials and equipment that AUA's suppliers required in order to fulfill their obligations to provide supplies for AUA, that these merchants would not be held liable for ABST on the goods, materials and equipment that AUA's suppliers were purchasing from them.

55. AUA, therefore, continued to seek an official declaration from the Government satisfactory to its suppliers and to their suppliers that neither of them would be liable to the Government for ABST in connection with the supplies provided directly or indirectly to AUA. (See, Exhibits M, N, O P and Q, and Leeward Exhibit 57)

56. Despite its efforts, and all of the Government's oral assurances that AUA would receive the declaration that it required, nothing official was forthcoming from the Government for more than two years, during which time, construction on AUA's main campus building was virtually completed.

57. On November 17, 2009, AUA received an email from Cleo T. Wallace, assistant to Mr. McLaren at the ABST Unit of the Inland Revenue Department (Exhibit R and Leeward Exhibits 50) through which Ms. Wallace informed AUA that Mr. McLaren had requested, in essence, that she advise AUA that his August 31, 2007 letter of two years earlier was all the declaration that AUA would receive from the Government.

58. Ms. Wallace's email went on to inform AUA that Mr. McLaren had instructed that AUA "return to the business places to recover the ABST that was spent" and that [w]hen approaching the Manager [of those businesses], you will have to provide them with the letter dated August 31, 2007 which was sent to Mr. Basil Stuart the Administration Director of American University of Antigua, with regards to the provisions that were made."

59. The email was bittersweet for AUA.

60. The email was sweet in that it clarified officially that no ABST was due and that AUA should not pay ABST for supplies provided for its operations in the Free Trade and Processing Zone. The email was clear that suppliers who collected ABST in connection with such supplies, would be required to disgorge those funds to AUA because of the fact that the sums that they invoiced and collected from AUA were not due as taxes.

61. Based on the email, AUA immediately stopped the payment of any ABST for any supplies imported into or provided within the Free Trade and Processing Zone in connection with AUA's lease and activities there, and for the first time, had proof satisfactory to its suppliers and to their own suppliers that no ABST needed to be paid by them in connection with supplies provided to AUA for, or in connection with, AUA's activities in the Free Trade and Processing Zone.

62. Ms. Wallace's email was also bitter in that it seemed to imply, albeit neither clearly or definitively, that AUA was not entitled to a refund from the Government for the ABST that it had paid to date; $ EC $3,788,500.87 or US $1,409,307.67.

63. Accordingly, AUA sought the refund from the Government that it had been assured it would receive; and continued to receive information from the Government tending to suggest that, in fact, AUA would receive its anticipated refund. See, for example, Exhibit S; an email from Ms. Wallace dated November 17, 2009, advising AUA as to how to apply for the refund. See also, Exhibit T and Leeward Exhibit 46; a letter from Neal Simon, President of AUA to the Attorney General of Antigua and Barbuda dated September 27, 2010, concerning a trade of the refund that AUA understood was due it from the Government for the sums that it had paid as ABST in exchange for a lease of additional land in the Free Trade and Processing Zone for the expansion of AUA's operations in the Zone, and Exhibit U; the Attorney General's letter in response, dated November 8, 2010, in which the A.G. explains why he was not the correct official with whom to make the trade. See also, Exhibit V and Leeward Exhibit 61; an email from AUA's Basil Stuart, dated November 17, 2009, in which he outlines that he had been informed by the Government to pay ABST until the Government was able to provide a mechanism for AUA to be free from paying ABST on supplies for which no tax was actually due and thereafter obtaining a refund from the Government for the ABST that it paid; and Exhibit W; an email from Matthew Petersen, AUA's CFO, memorializing the Government's earlier advice that AUA would receive a refund of the funds that it had paid as ABST despite that the funds were not due and complaining that the Government

had changed the game by its advice that AUA should recover those funds from its suppliers.)

64. Through the affirmation of Mr. McLaren submitted herewith, Mr. McLaren attests that to the accuracy of the forgoing events and circumstances. He affirms, at paragraph 6 of his affirmation

> In the period following my letter of Friday 31st August 2007, I understand that a number of contractors, including Leeward Construction Company Limited requested that AUA pay the ABST on supplies as they did not accept [AUA's] assurances that ABST was relieved. Accordingly, ABST did so and sought a refund from the Government of Antigua and Barbuda. When it was brought to my attention, I instructed the officer dealing with AUA at that time to return to the suppliers and utilize my letter of Friday, 31st August, 2007 to require that they [AUA's suppliers] repay the monies the AUA as they[AUA] had been erroneously charged. This she [Cleo Wallace] did in her email of Tuesday, 17th November 2009 [a copy of which email, Mr. McLaren attaches to his affirmation as McLaren 2.)

**AUA's Dealings with the Leeward:**

65. With the forgoing as a backdrop, on September 25, 2008, AUA and the Leeward entered into a written construction contract (hereinafter "the Contract") under which AUA retained the Leeward to act as its construction manager and to provide specified work, labor services, materials and equipment in connection with the construction of the main building on AUA's new campus in the Free Trade and Processing Zone. See, the Leeward's motion at para. 12, and the Leeward's Exhibit 1.)

66. The General Conditions of the Contract, at Article 3.6.1 thereof, specifically and unequivocally provided that:

The Contractor [the Leeward] shall pay sales, consumer, use and similar taxes in for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not effective or merely scheduled to go into effect.

67. The Leeward does not dispute either that this provision is a part of the Contract or that it did not understand or agree to the provision.

68. Despite that Mr. McLaren in his affirmation stated his belief to be otherwise, the Leeward was not one of AUA's suppliers who either refused to provide supplies to AUA absent official clarification from the Government that its supplies would be provided to AUA free of ABST or who AUA advised that it would pay ABST on its supplies.

69. Nowhere in the Leeward's motion is there any claim or allegation that the Leeward would not provide supplies to AUA unless AUA agreed to pay ABST in connection with them or that AUA expressly advised the Leeward or agreed orally or in writing that it would pay the Leeward ABST for any supplies that the Leeward provided for AUA. Nor is there any indication in any of the documents offered by the Leeward as evidence in support of its motion that AUA so advised or agreed that it would remit to the Leeward any ABST for any work that the Leeward would provide for AUA.

70. In any case, upon execution of the Contract, the Leeward began to provide work, labor, services, materials, equipment and other supplies for the construction of the main building on AUA's new campus in the Free Trade and Processing Zone; and monthly for 27 consecutive months, submitted requisitions for payment that included a charge purportedly as ABST of 15% of the total sum that the Leeward claimed was due it for its work under each requisition.

71. The Leeward did so despite the terms of Article 3.6.1 of the General Conditions of the Contract above quoted pursuant to which the Leeward had expressly agreed that it would pay all taxes in connection with its work for AUA under the Contract, and notwithstanding that no ABST was due in connection with the Leeward's work and notwithstanding that, as hereinafter more fully set forth, the ABST Act imposed on the Leeward the obligation to determine what, if any ABST was due in connection with its work on AUA's campus as well as the obligation to invoice AUA only for such ABST as was actually due.

72. The Leeward submits as Leeward Exhibits 1-8, 11, 13, 15, 16, 17, 20-24,and 26-29 some of its above-described requisitions for payment.

73. The Leeward also submits through its exhibits correspondence from AUA's project supervisor and others, approving payment of the requisitions.

74. Noticeably absent from any of the exhibits that the Leeward submits in support of its motion is any indication that any discussion was had at any time during the course of the Leeward's performance under the Contract and submission for payment of its requisitions concerning whether or not ABST should or should not be paid, whether ABST was actually due in connection with the Leeward's work or whether, AUA was willing to forbear on the Leeward's obligation pursuant to Article 3.6.1 of the General Conditions of the Contract to pay all taxes in connection with the Leeward's work on AUA's campus.

75. Instead, AUA paid the sums that the Leeward invoiced as ABST unwitting as to its contract right to insist on the Leeward paying any ABST that it asserted was due in connection with its work and in the mistaken belief that it would be entitled to, and would

receive a refund from the Government of Antigua and Barbuda for any ABST that it paid in connection with the Leeward's work, at least until such time as the Government provided an official statement satisfactory to AUA's suppliers that they would not be held liable for ABST in connection with supplies provided for the construction of AUA's new campus.

76. In total AUA remitted to the Leeward EC $3,788,500.87 or US $1,409,307.67 purportedly as ABST as the Leeward had invoiced through its requisitions for payment.

77. The Leeward does not dispute this fact; indeed, it expressly so informs on its motion that AUA paid it these sums "without protest."

78. It is these sums that AUA now seeks to recover through its counterclaims relating to ABST.

79. It is possible that, like AUA, the Leeward unwittingly forgot about its obligations under Article 3.6.1 of the General Conditions of the Contract and/or believed that it was obligated to invoice and collect from AUA ABST at 15% of the total of the consideration it invoiced and received in connection with its work on AUA's new campus. It is also entirely possible that the Leeward was well aware, at all times, that no ABST was due in connection with its work on AUA's new campus, but, nevertheless, fraudulently invoiced and collected from AUA as ABST the sums that AUA herein seeks to recover.

80. Some aspects of the Leeward's treatment of AUA and the sums that it invoices as ABST and that AUA paid as such are not subject to any dispute or debate.

81. Among those is that the Leeward, having collected from AUA the sums that it invoiced AUA as ABST, failed to account to the Government by filing the required tax returns

with respect to those sums and other sums that it collected from other customers during the periods that it was providing work on AUA's new campus.

82. The Leeward has already admitted in these proceedings that failed to file such tax returns.

83. Another of the aspects of the Leeward's treatment of AUA and the sums that it invoiced and collected as ABST from AUA that is not subject to any dispute or debate is that, in violation of the ABST Act, the Leeward had failed to keep the backup documentation for the ABST that it invoiced and collected. Here, the Leeward was compelled to advise in response to AUA's requests for production of documents that, except for certain checks copies of the fronts of which it kept, the Leeward had failed to maintain, and could not produce any other documentation with respect to any of the sums that it collected and or paid out as ABST during the tax periods at issue herein.

84. In short, the Leeward did not treat as ABST the sums that it invoiced and collected from AUA purportedly as ABST.

85. However, whether through honest mistake and/or ignorance of the terms of its Contract with AUA and/or its obligations under the ABST Act and the Free Trade and Processing Zone Act, or through its willful, fraudulent and bad faith conduct, there is no question, as hereinafter AUA demonstrates, that the Leeward was not entitled to submit requisitions for payment that included line items for ABST in connection with its work on AUA's campus; the sums that are at issue here; nor is there any question that the Leeward was not entitled to collect or to keep for itself any part of the sums that it invoiced and collected from AUA purportedly as ABST.

86. Equally important to the adjudication of this matter is that both AUA and the Leeward believed that whether or not the Leeward was rightful at the time in its invoicing and

collecting of sums from AUA as ABST, AUA would be entitled to receive a refund from the Government of Antigua and Barbuda for those sums.

87. In this, as it has developed, both parties were, unfortunately, mistaken and in error.

88. It was not until very recently in meetings with Government officials in connection with AUA's defense of the Leeward's claim in this action that the Government, for the first time, advised AUA unconditionally that it would not be entitled to a refund of the sums that AUA had paid the Leeward as ABST in connection with the supplies that the Leeward furnished in the construction of the main building on AUA's new campus in the Free Trade and Processing Zone.

89. Mr. McLaren explained to AUA's counsel during his meetings with him in preparation for AUA's defense of the Leeward's claims and the prosecution of AUA's claims against the Leeward herein that, because the Leeward had not filed tax returns accounting for any of the sums that it had invoiced and collected as ABST during the periods at issue, the Government had no means of knowing whether it had been entrusted with any portion of the sums that the Leeward had collected from AUA.

90. Mr. McLaren was perfectly clear that, while confusion prevailed at the time that the Leeward was providing supplies for AUA's campus over whether or not AUA should be invoiced and pay ABST in connection with those supplies subject to a refund of the sums from the Government, Government would not, and could not, refund any of the sums that AUA paid as ABST to the Leeward that it could not verify that it received either directly or indirectly from the Leeward.

91. Mr. McLaren was also crystal clear that, whether it or AUA or the Leeward, knew or appreciated that such was the case, and notwithstanding that there was confusion over

how the problem of AUA's freedom from the obligation to pay ABST in connection with supplies provided for its new campus, such to be the case, the applicable law did provide that the Leeward should have invoiced AUA for its supplies at a zero rate and should not have collected any sums as ABST from the Leeward.

92. Mr. McLaren was also clear that, since no tax was due in connection with the sums work that the Leeward provided in connection with the construction of AUA's main building on its new campus, the sums that the Leeward collected purportedly as ABST were, in fact, not taxes.

93. As such, Mr. McLaren advised, and despite the belief of AUA and the stated belief of the Leeward to the contrary, AUA was not entitled to a refund of ABST from the Government.

94. In his affirmation submitted herewith made and affirmed under penalty of perjury on November 4, 2013, Mr. McLaren confirms and affirms to the truth and accuracy of all of the forgoing.

95. On the basis of the forgoing, it is beyond peradventure that, at best for the Leeward, its invoicing and collecting from AUA of the sums that are in issue herein was the product of several mutual mistakes of AUA and the Leeward or, worse for the Leeward, that the Leeward's invoicing and collecting of sums from AUA as ABST was the product of the Leeward's fraud and deceit, while AUA's payment of those sums was the product of its own mistakes and errors.

96. In either case, the Leeward was not entitled to invoice and collect the sums at issue, has been unjustly enriched as a result, and must now be directed to make restitution to AUA for the sums that it wrongfully collected from it as ABST.

**The Prior Proceedings:**

97. On February 3, 2011, the Leeward commenced an arbitration as against AUA (hereinafter, the "prior arbitration") in which it sought damages from AUA for what it claimed were AUA's breaches of the Contract in that a) AUA allegedly deleted without the Leeward's consent or an appropriate change order work that the Leeward was to have performed and to have been paid for under the Contract; b) AUA allegedly failed to pay mobilization fees and charges that the Leeward claimed were due it; c) AUA allegedly also failed to pay for delays that it allegedly caused in the Leeward's completion of its contract obligations; d) AUA was liable to the Leeward for interest on payments that it allegedly belatedly made and e) AUA was liable to the Leeward for legal fees and costs incident to the arbitration.

98. Annexed hereto as Exhibit X (sans its voluminous exhibits) is a true copy of the Leeward's Amended Demand for Arbitration in the prior arbitration.

99. For its part, AUA both defended against the Leeward's claims and submitted its own counterclaim for damages arising from the Leeward's delays in its performance under the Contract.

100.     Annexed hereto as Exhibit Y is a true copy of AUA's Answer and Counterclaim in the prior arbitration.

101.     As part of his opening statement in the prior arbitration and as a matter ancillary to the proceedings before the arbitrators and wholly collateral to them, AUA's outside counsel advised that he had discovered what he believed to by a "mutual error" of the parties in payment requisition of the Leeward in that sums that he believed should have been invoiced as ABST were invoiced as part of the contract sum such that, counsel

concluded, when the balance of the contract sum that AUA paid omitted the portion that was incorrectly invoiced. (Counsel was, in fact correct. He did uncover a mutual error-or AUA's error and the Leeward's fraud. However, the error was not the one that he thought he had found.)

102.     Notably, in advising the Tribunal of the error that he thought that he uncovered, he specifically advised that the error was "outside the context of [the prior] arbitration." See, para. 80 of AUA's Proposed Findings of Fact and Conclusions of Law in the prior arbitration (Exhibit Z).

103.     For his part, the Leeward's counsel advised the Tribunal that "Opening statements [referring to the same opening statement of AUA's counsel that contains the statement upon which the entirety of the Leeward's claim and its defense of res judicata are based] are not evidence and do not prove anything." See, para. 23 of Claimant's Reply Proposed Findings of Fact and Conclusions of Law" in the prior proceeding (Exhibit AA)

104.     Unfortunately, neither was counsel's assumption accurate nor had he consulted anyone from AUA about the error that he believed that he had uncovered.

105.     More importantly, no aspect of that matter was relevant or necessary for the Tribunal in the prior arbitration to consider in adjudicating the claims and defenses presented by the parties therein.

106.     None of the claims and none of the defenses to the claims in the prior arbitration involved any aspect of ABST or any aspect of the respective claims and defenses of the parties herein.

107.     The facts underlying the prior arbitration were significantly different than the facts underlying the present arbitration.

108.    No aspect of the claims and defenses in the instant arbitration was required to be determined in order for the claims and defenses in the prior arbitration to be adjudicated.

109.    No aspect of any of the claims or defenses raised in the present arbitration were "essential elements" of the prior arbitration.

110.    None of the evidence that has been or will be presented in support of the respective parties' claims in the present proceeding with the exception of the Leeward's invoices and AUA's payments were relied upon or required for the arbitrators to adjudicate the claims in the prior litigation; and, with respect to those invoices and payments, the entries on those documents relating to ABST were not relevant to the issues in the prior case or to the determination of any of those issues.

111.    In short, the matters and issues raised by AUA in the present arbitration were not "the subject matter" or the "subject of the litigation" of the prior litigation.

112.    Indeed, upon the Leeward's request at the end of the proceedings to include the amount that the Leeward now seeks in the instant proceeding as damages in the prior arbitration, the Tribunal found, in its Final Award (Exhibit BB):

Controversy:

Should the mutual mistake discovered by AUA on the eve of trial that resulted in Leeward receiving EC $ 83.059.56 less than was reflected in the Draft Final Account be part of any arbitration award, and potentially subject to the assessment of interest, given that Leeward never notified AUA of the error, or specifically demanded payment, or asserted any claim to recover the amount.


Panel's Determination:

This Panel determines that the ABST error was mutually acknowledged by both parties, and not having been submitted as a controversy of this Arbitration and having it been

discovered and in good faith informed by an AUA representative during the hearings, **we conclude that this issue should be resolved outside of the context of this Arbitration.** (Emphasis added.) Final Award in the prior arbitration (Exhibit BB at p. 27, 28, para. 30)

113.     On the basis of the forgoing, the Leeward cannot now be heard to argue that AUA was required to bring the claims that it has advanced herein under penalty of having its claims forever barred by the doctrine of res judicata.

114.     To the contrary, because the Leeward was afforded a full and fair opportunity in the prior proceeding to advance its claim for recovery of the sums that it seeks herein and availed itself or that opportunity only to have the Hearing Panel in the prior arbitration rule that the claims were outside the context of the prior arbitration, the Leeward is now barred by the doctrine of res judicata and the same authorities that it relies on to support its res judicata defense from contending that AUA was obliged to bring its own ABST related claims in the prior arbitration.

115.     These claims as well would have been outside of the context of the prior arbitration and need not have been brought therein.

116.     Accordingly, the Leeward's res judicata defense must fail and the Tribunal should not only deny the Leeward's motion to the extent that it is based on the defense, but it must strike the defense.

**AUA's Cross-Motion:**

117.     For the same reasons that the Leeward's defenses above discussed (and more fully discussed in AUA's Memorandum of Law submitted herewith) each provide no basis for this Tribunal to grant the Leeward's motion, each of the defenses must be stricken.

118.     However, once the Leeward is stripped of these defenses, there remains no basis for this Tribunal to deny AUA summary judgment on its ABST related claims.

Wherefore, on behalf of AUA, your affirmant respectfully requests that this Tribunal deny the Leeward's motion herein, grant AUA's motion by striking each separate defense raised by the Leeward on its motion, grant summary judgment to AUA on each of its ABST related claims and grant to AUA such other relief as to which the Tribunal determines AUA is entitled including, but not limited to, its costs and legal fees incurred in connection with this matter.

Dated, November 11, 2013

Neal Simon, President AUA