AMERICAN ARBITRATION ASSOCATION
CONSTRUCTION INDUSTRY ARBITRATION RULES

| | |
|---|---|
| LEEWARD CONSTRUCTION COMPANY, Ltd.<br><br>Claimant,<br><br>v.<br><br>AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE C/O GCLR, INC.<br><br>Respondent. | Case No. 50 110 T 00118 13<br><br>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF AUA'S CROSS-MOTION FOR AN ORDER STRIKING CLAIMANT'S DEFENSES AND AWARDING SUMMARY JUDGMENT TO RESPONDENT ON ITS ABST RELATED CLAIMS AND IN FURTHER OPPOSITION TO CLAIMANT'S MOTION TO DISMISS |

Respectfully submitted:

Leonard A. Sclafani, Esq.
Law Offices of Leonard A. Sclafani, Esq.
One Battery Park Plaza, 33rd Fl.
New York, New York 10004
212-696-9880
las@lasattorneys.com

**PRELIMINARY STATEMENT**

This Memorandum is submitted in reply to the opposition of the Leeward to AUA's cross-motion for an order striking the Leeward's defenses and awarding summary judgment to AUA on its ABST related claims. This Memorandum is also submitted in further support of AUA's cross-motion and in further opposition to the Leeward's motion for dismissal of AUA's claims.

The facts surrounding this matter are set forth in the affirmation of President of AUA Neal Simon, made and dated November 11, 2013, and the sworn statements of Douglas James McLaren, Deputy Commissioner of the Department of Inland Revenue, Ministry of Finance of the Government of Antigua and Barbuda, made and sworn to on 4th November, 2013 and 9th December, 2013, the latter or which statements is submitted herewith.

AUA will limit this Memorandum to its response to those issues addressed in the Leeward's Reply that AUA believes warrant response. That AUA has not responded to each separate claim, allegation or point set forth in the Leeward's Reply should not be viewed as acquiescence in or agreement as to the truth, accuracy or merit of any of the Leeward's claims, allegations or points not expressly addressed herein.

**POINT I**

**AUA'S ABST RELATED CLAIMS AND MOST OF ITS CONSTUCTION DEFECTS CLAIMS ARE SUBJECT TO ARBITRATION HEREIN**

**A.   AUA's Claims Are "Related To" the Parties' Contract and Are Accordingly, Subject to Arbitration With the Exception of AUA's Counterclaim for Damages for Defective Window Work**

1.          Through its Reply, the Leeward continues to contend that AUA's counterclaims in

this matter are not subject to arbitration solely because, according to the Leeward, they do

not "arise out of" the parties' contract.  There is no merit to the Leeward's contention. AUA's

construction defects claims (with the exception of is claim relating to the Leeward's defective

window work herein discussed at subpart B below) arise directly under the parties' contract.

2.          The contract, at Section 4.3 (Exhibit 1 of the Leeward's motion) defines a "claim"

as follows:

> **A Claim is a demand or assertion by one of the parties seeking**, as a matter of
> right, adjustment or interpretation of Contract terms, **payment of money**, extension
> of time or other relief with respect to the terms of the Contract. The term "Claim"
> also includes other disputes and matters in question between the Owner and
> Contractor arising out of or **relating to the Contract.**

3.          The contract, at Article 3.5 thereof (Exhibit 1 of the Leeward's motion) also

provides the Leeward's warranty that its Work will be free of defects and will conform to the

requirements set forth in the Contract Documents. AUA herein claims, in essence, that the

Leeward breached that warranty with respect to the items specified in its counterclaims for

damages due to construction defects, and seeks damages as a result thereof.

4.          It is, thus, axiomatic that, except as hereinafter discussed, AUA's construction

defects counterclaims "arise under" and "out of" the parties' contract. They are, therefore,

indisputably subject to arbitration under the contract. No amount of tortured logic or

linguistic legerdemain employed by the Leeward refutes this plain and obvious fact.

5.          The same is true with respect to AUA's ABST related counterclaims herein. The

Leeward attempts in its Reply to support its argument that AUA's ABST related claims "arise

out of" Antigua and Barbuda's law, in general, and the ABST Act, specifically, and not the

contract. The argument is specious, at best.

6.       In the first instance, AUA's ABST related claims involve the contract provision requiring that the Leeward pay all taxes incident to its Work, including sales and other taxes. The Leeward claims that it was entitled to invoice and collect the sums at issue here because AUA never told it that it was exempt from payment of ABST and because AUA waived the right to insist on the Leeward's obligation to pay the taxes (allegations that, themselves have no merit)(See, AUA's Memorandum of Law previously submitted at Point IV thereof and Point IV hereof); however, inherent in these defenses of justification and waiver is the proposition that AUA had a contract right that it waived.

7.       Secondly, all claims and defenses of parties to a litigated dispute, whether or not they "arise out of" or "arise under" a contract contract, involve the application to the facts of the case of law as set forth through case law, statutory authority, treatises and other sources. It is for this reason that the parties' contract expressly provides that "[t]he Contract shall be governed by and construed according to the laws for the time being in force in Antigua." (Supplemental Conditions 21, modifying Article 13.1.1 of the parties' contract, Exhibit 1 of the Leeward's motion.)

8.       The parties' contract also expressly provides at Section 13.4.1 of Article 13.4 "Rights and Remedies" (Exhibit 1 to the Leeward's motion):

> Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

9.       The ABST Act is one of the laws of Antigua that was in force at the relevant time, to which the parties are subject and that govern their rights and obligations under the express provisions of their contract.

4

10.          However, in this case, AUA refers to the ABST Act not to prove that AUA is entitled under that statute to restitution of the sums that the Leeward wrongfully invoiced and collected, but to show that the monies that the Leeward collected were not due as taxes under the Act and that, as a result, the sums represent nothing more than an overpayment to Leeward of the sums due it for its Work under the parties' contract that the Leeward must now return to AUA, and unjust enrichment of the Leeward in that it collected monies from AUA that it kept for itself and to which it had, and has, no entitlement or legitimate claim.

11.          As addressed more fully in Point II herein relating to AUA's standing to maintain its claims, both Deputy Commissioner McLaren's 4th November and 9th December, 2013 sworn statements submitted by AUA make this point clear.  On this point, in his 9th December, 2013 statement, in reaction to the Leeward's contention that his 4h November, 2013 statement contained a "misleading representation," and refuting the Leeward's self serving, unsupported analysis of Section 34 of the ABST Act, Deputy Commissioner McLaren attests:

> [Section 34 of the ABST Act] makes clear that whether the recipient is registered for ABST or not, where an original ABST invoice has been issued as per section 34 subsection 1 (c), then as per subsection 1(d), a credit not must be issued.
> Leeward are correct in their submission that the ABST Act does not directly state that any amounts wrongly charged should be refunded by the supplier. This is because the Act only deals with the treatment of ABST. In this case since the original supply was not liable to the application of ABST at the standard rate then the amount charged is not ABST despite what the original invoice stated. The amount therefore becomes an overcharge under the principle contractual terms which immediately becomes repayable.

12.          No clearer statement of the law applicable to the Leeward's claim can be made; and from that statement and AUA's submissions on its cross-motion herein, it is clear that AUA's claims for restitution and recoupment of the sums it remitted to the Leeward as ABST

do not arise "out of" or "under" the ABST Act; but, rather, "arise out of", and/or "under" the parties' contract.

13.      However, as AUA demonstrated through its previously submitted papers herein, this Tribunal does not have to trouble itself in attempting to determine the issue as to whether AUA's claims for restitution of the sums it remitted to the Leeward as ABST "arise under" or "out of" the parties' contract, because both the contract's definition of the term "claim" above provided and the express provision of the arbitration clause at issue here unequivocally provide that arbitrable claims includes "all" claims that not only "arise out of" the parties' contract, but also, "all" claims that are "related to" the contract.

14.       In its Reply, the Leeward wholly fails to address the fact that the arbitration clause in the parties' contract so provides. The Leeward also fails to address any of the holdings and instructions of the case authorities that AUA analyzed in its opposition to the Leeward's motion, each of which the Leeward, itself, cited on its motion. See. Point I of AUA's Memorandum of Law in opposition to the Leeward's motion and in support of AUA's cross-motion at pg.'s 2-9.

15.      These authorities reject the Leeward's contention and set forth the modern law on the appropriate interpretation of arbitration clauses: that they are to be broadly construed and carry the presumption that the parties intended that all disputes relating to the parties' contract should be arbitrated, and that arbitration clauses that set forth the scope of disputes to be submitted to arbitration that use terms such as "all" disputes and/or disputes "relating to" the parties' contract, as is the case with the arbitration clause in the parties' contract in this case, reaffirm that strong presumption and evidence the intent of the parties that any

disputes involving the dealings of the parties under, arising out of, relating to or in any manner connected with, the parties' contract are subject to arbitration.

16.     The Leeward has failed to rebut that strong presumption; nor can it do so. The Leeward has also failed to provide any authority for the proposition that, under modern interpretation of arbitration clauses such as the clause at issue, only causes of action at law, as opposed to those in equity, such as AUA's unjust enrichment claim, are subject to arbitration.

17.     Instead, the Leeward devotes its Reply to whining that that AUA never "provided Leeward with documentation demonstrating its exemption" and allegedly knew that it was not required to pay ABST prior to the arbitration. (Reply at para. 21). However, the Leeward fails to provide any insight as to how these allegations are relevant to the issue of whether AUA's claims are subject to arbitration.[1]

18.     Accordingly, its defense that AUA's ABST related claims and, as well, its claims for construction defects (with the exception of its claim relating to defective window work hereinafter discussed), are arbitratble and must be determined by this Tribunal in these proceedings.

---

[1]As AUA pointed out in its Memorandum of Law in opposition to the Leeward's motion and in support of its cross-motion (at pg. 10), the one point that AUA and the Leeward can agree on with respect to the workings of the ABST Act and the respective rights and obligations of the Government, the Leeward and AUA is that the Act imposes on the supplier, the Leeward in this matter, and not the receiver of supplies, AUA in this case, the obligation and responsibility: a) to determine if any ABST is due on its supplies and, if so, to provide to the receivers of its supplies invoices properly setting forth the amount of such taxes, b) although the Leeward admits that it failed to do so during time that it was providing supplies for AUA and for other customers, to account to the Government for the ABST that it invoiced through monthly tax returns, and c) to pay over those sums, directly or indirectly, to the Government. See, the Leeward's motion at para. 44; McLaren 4th November 2013 sworn statement at para. 5). Here, the Leeward improperly invoiced AUA for sums that were not due as ABST in violation of the ABST Act.

**B. AUA Agrees That Its Claim For Damages Arising Out of the
The Leeward's Defective Window Installation Should Not
Be Determined In These Proceedings**

19.      AUA and Leeward do have some common ground on the issue of whether AUA's

construction defects claims should be submitted to this Tribunal for arbitration: the Leeward

has devoted a significant portion of the argument in its Reply on the subject of the

arbitrability of AUA's claims to the contention that one of the construction defects that AUA

has listed in its construction defects counterclaims, the Leeward's defective installation of the

windows throughout the Project, was the subject of a contract separate from the contract

involved in this arbitration and, therefore, should not be arbitrated in these proceedings.

20.      AUA agrees. AUA did argue successfully in the prior arbitration that certain items of

construction, including the installation of the project's windows, that were provided by the

Leeward under several so called "additional works contracts" were not properly the subjects

of the prior arbitration inasmuch as that the Hearing Panel in the prior arbitration was vested

with the authority to arbitrate the disputes of the parties pursuant to the arbitration clause of

the parties' original contract and not pursuant to the additional works contracts. AUA,

therefore, withdraws only that portion of its counterclaim based on construction defects as

involved defective window work.  AUA will seek damages on this claim in a separate litigation.


**POINT II**

**AUA HAS STANDING TO MAINTAIN ITS CLAIMS FOR RECOVERY OF THE SUMS THAT
IT PAID THE LEEWARD AS ABST**

21.      Through its Reply on the issue that it raises as to whether AUA has standing to

maintain its ABST related counterclaims, the Leeward continues to advance the meritless

contention that AUA's ABST related claims are an effort to enforce through a private right of action the provisions of the ABST Act by seeking through this arbitration a tax refund from the Leeward. As AUA made clear through its earlier submissions, including its Memorandum of Law, and the sworn statements of its President, Neal Simon and Deputy Commissioner McLaren, the sums that AUA seeks to recover are not taxes because, despite that they were invoiced as such by the Leeward, no taxes were, in fact, due on the Leeward's Work (and, if they were, the Leeward, and not AUA, was required to pay them under the terms of the parties' contract).

22.      As such, AUA has demonstrated through its earlier submissions and through Point I above that its ABST related claims are not claims arising out of the ABST Act; they are claims for recoupment of overpayments of the monies due the Leeward for its Work under the parties' contract to which the Leeward was not entitled but, nevertheless, collected and wrongfully pocketed for its own use.

23.      The Leeward repeats in its Reply in support of its contention its argument that AUA's remedy is to obtain a tax refund from the Government and that the Government should institute enforcement proceedings against the Leeward in order to obtain the taxes from the Leeward that the Leeward failed to pay. The obvious problem with this rather facile and unsupported analysis of the respective rights and obligations of the parties is that AUA cannot obtain a tax refund from the Government for moneys that were not taxes, the Government will not remit a "refund" of monies to AUA that the Leeward never remitted to the Government or accounted for the collection of by filing tax returns, and the Government cannot institute proceedings against the Leeward to collect sums that are not due it as taxes.

24.     All of the foregoing was set forth in the sworn statements of President Simon and Deputy Commissioner McLaren that AUA has submitted.

25.     The Leeward now argues that the Tribunal should not consider these statements.

26.     The Leeward claims that President Simon's statement to the effect that Deputy Commissioner McLaren advised that the Government would not remit to AUA any of the sums at issue because the Leeward failed to file tax returns and to remit to the Government any part of the sums that it invoiced and collected from AUA is hearsay that the Tribunal should not consider; however, not only does Deputy Commissioner McLaren state in his 4th November, 2013 statement that AUA was not entitled to receive any of the disputed sums from the Government, but, eliminating any issue as to the accuracy or admissibility of Mr. Simon's above statement, Deputy Commissioner McLaren, in his 9th December, 2013 statement advises:

> Any assertion that the Government of Antigua and Barbuda should refund any party in this matter is entirely fallacious, so as no ABST has been charged, accordingly AUA's only remedy in this case is to seek repayment of amounts wrongly charged from the person who charged them namely Leeward.
> **All of the foregoing was explained to AUA's counsel when he requested my statement of 4th November 2013. (Emphasis added.)**

27.     The Leeward next argues that the Tribunal should not consider either President Simon's statement or Deputy Commissioner McLaren's statement because they allegedly "go beyond the permissible scope of Procedural Order No. 1" and "the rules of evidence".

28.     The Leeward bases its contention on its arguments that: a) AUA's inclusion in its submissions of the sworn statements of Neal Simon and Deputy Commissioner McLaren violates the direction in Procedural Order No. 1 that limited the parties to making dispositive motions only "by reason not requiring the examination of any evidence other than documentary evidence submitted therewith;" b) the affirmation of Mr. McLaren "contains

misleading representations concerning the mechanics of the ABST Act;" and, c) both sworn statements "border on expert witness testimony" that may not be submitted without the prior authorization of the Tribunal" as per Part 32.6 of the Civil Procedure Rules[2]. (See, the Leeward's Reply at the second unnumbered paragraph and para. 26).

29.        There is no merit to any of these claims.

30.        The Leeward's claim that AUA's submission of the sworn statements of its President and of Deputy Commissioner McLaren violates the Tribunal's proscription against submission of non-documentary evidence is conclusory and baldly stated; that is to say, the Leeward provides no factual basis or legal authority for its claim.

31.         One can only speculate that the claim is based on the proposition that sworn witness statements do not constitute "documentary evidence." However, such a proposition is clearly erroneous.

32.        The Law Dictionary featuring Black's Law Dictionary's Free Online Legal Dictionary 2nd Ed. 9 (the lawdictionary.org) defines "documentary evidence" as:

> "[s]uch evidence as is furnished by written instruments, inscriptions, documents of all kinds, and also any inanimate objects admissible for the purpose, as distinguished from 'oral' evidence, or that delivered by human beings viva voce. This is evidence that will prove a truth or a lie and includes written documents and **statements**." (Emphasis added.)

33.        The sworn statements of President Simon and Deputy Commissioner McLaren fail squarely within that definition (or within any other generally recognized definition of "documentary evidence.")

---

[2] The Civil Procedure Rules relied on by the Leeward are the Rules applicable to litigation in the Courts of Antigua and Barbuda. They are not the rules under which this arbitration is governed. Those rules are the rules of the American Arbitration Association as this Tribunal has ruled in Procedural Order No. 1.

34.      Likewise, despite the Leeward's inexplicable assertion to the contrary, the sworn statement of Douglas McLaren contains no misleading representations concerning the mechanics of the ABST Act;" nor has the Leeward offered any competent basis or evidence for this Tribunal to determine otherwise. Instead, it offers its own self-serving, non-expert, unsworn statements to support the claim.

35.      The Leeward asserts that Deputy Commissioner's 4th November, 2012 sworn statement is misleading because, through it, Deputy Commissioner McLaren cites Section 34 of the ABST Act in support of his statements that, because the Leeward invoiced and wrongfully collected sums as ABST that, in fact, were not due as such, it was required to return the sums to AUA and that AUA has a right to seek redress against the Leeward if it failed to do so. According to the Leeward's unsupported interpretation of Section 34 of the ABST Act, all that Section, and the ABST Act, in general, required the Leeward to do for its collection of sums as taxes that were not due as such was to issue a credit note for the sums, and only to a registered receiver of supplies. The Leeward claims that AUA has provided no evidence that it is a registered receiver of supplies.

36.      However, AUA was a registered receiver and did provide the Leeward with such evidence that it had in its possession so proving this to be the case. AUA's discovery production included an Enterprise Report filed by AUA with the Antigua and Barbuda Inland Revenue Department and bearing its seal acknowledging the filing. (AUA Bates Stamp No. 00409) that included AUA's ABST taxpayer I.D. number (see AUA Exhibit CC submitted herewith), and, in any case, as Deputy Commissioner McLaren advises in his 9th December, 2013, the Leeward is required to return to AUA the sums that it wrongfully collected from it as ABST whether or not AUA was registered under the ABST Act.

37.      Moreover, as Deputy McLaren leaves no room for doubt in his 9th December 2013

sworn statement, in its own analysis of Section 34 of the ABST Act, the Leeward is wholly in

error and evidences a gross lack of understanding of what a credit note is and how the ABST

Act works. It is the case that, under Paragraph 34 of the ABST Act, a supplier who incorrectly

invoices a recipient of supplies for ABST that is not, in fact, due is required to issue to the

erroneously invoiced recipient a credit note. However, this is not to state that the issuance of

a credit note is the only obligation of the supplier in such a situation.  A credit note is nothing

more than a certification to the recipient who has been improperly invoiced for sums that are

not due as ABST that an amount invoiced or collected from it as ABST was not properly

invoiced or collected and is not due. It evidences the cancelation of the invoice to which it

relates insofar as the invoice includes an incorrect amount to be remitted by the supplier as

ABST. The Act provides for the supplier to issue the credit note because the recipient will

need this certification in accounting to the Department of Inland Revenue for any ABST that,

as a supplier, it might owe. However, regardless of whether or not a supplier issues the credit

note for sums that are, in fact, not due as ABST, it must return any improperly collected sums

to the recipient. If it does not do so, the recipient may seek restitution from the supplier by

any means legally available to it, including, but not limited to commencement of legal

proceedings for restitution.

38.      Deputy Commissioner McLaren attests to the accuracy of the above in his 9th

December 2013 sworn statement. Please see Paragraph 10 above, which quotes the relevant

section of the sworn statement.

39.      Unable to provide any authority to refute the testimony of Deputy Commissioner

McLaren, or the testimony on the subject of President Simon, the Leeward pleads that the

Tribunal should not consider either of their statements because, according to the Leeward, they "border on expert witness testimony." The Tribunal must reject this unsupported plea.

40.          As he affirms in his affirmation, Douglas James McLaren is the Deputy Commissioner of Inland Revenue of the Government of Antigua and Barbuda's Ministry of Finance. At all times relevant to the claims in these proceedings, he served in the Department of Inland Revenue as the Director of ABST and, as he affirms, in that position, he was responsible for the implementation of ABST on behalf of the Government and had "overall responsibility for the operations of the [Department of Inland Revenue's] ABST Unit and the application and enforcement of the legal provisions of the legislative instruments [the ABST Act and the regulations promulgated thereunder]."

41.          Moreover, as the evidence submitted by both parties herein (including emails and other correspondence from and to Mr. McLaren) demonstrates, he was intimately involved in the matters that are the subject of the parties' claims and defenses herein relating to ABST.

42.          As such, he is a fact witness and his evidence is offered not as opinion testimony but to set forth the true facts as to how the ABST laws and regulations surrounding ABST operate and how they are interpreted and enforced by the Government, particularly as they relate to the matter at hand. He is the person in the Government with the most intimate personal knowledge of these facts not only in general but specifically in connection with the facts, circumstances and events giving rise to this arbitration. Indeed, his evidence offers the true facts with respect to how the mechanics of the ABST Act, the Act's implementation and the Government's interpretation and enforcement of it and the respective rights and obligations of the parties herein as they relate to the facts, circumstances and events underlying the

parties' respective claims and defenses herein, none of which facts the Leeward has contested by competent evidence.

43.        It is hornbook law that the laws of a foreign country and the interpretation of those laws are facts that the party relying on them must prove. (See, for example, *Walton v. Arabian American Oil Co.*, 233 F2d 541(2nd Cir, 1956): (Under general federal rule, law of foreign country is a fact that must be proven.); Fed. Rules of Civ. Proc. Rule 44.1; *Northrup Grumman Ship Systems, Inc. v. Ministry of Defense of Republic of Venezuela,* 575 F3d 491, 498 n.8 (5th Cir., 209)

44.        AUA has satisfied its burden of proving those facts through Deputy Commissioner McLaren's sworn statement, which is competent evidence.

45.        AUA also offers the sworn statement of its President, Neal Simon, who has personal knowledge of the facts and circumstances giving rise to the claims and defenses of AUA as set forth in his affirmation and supplemental affirmation.

46.        By contrast, the Leeward offers no competent evidence to support its contentions as to how the ABST Act works and is interpreted, and as to the respective rights and obligations of the parties under the ABST Act. Instead, the Leeward offer moving and reply papers that are unsworn and that fail to identify who the maker of the statements in those papers is and/or the extent, if any, of the personal or other knowledge or information of that person as to the facts asserted therein.

47.        As a result, not only must the Tribunal consider and wholly credit the testimony of Deputy Commissioner McLaren with all of its attendant implications, but it must disregard the unsupported and unproven assertions of the Leeward on its motion and in its Reply

concerning how the ABST Act works, and the respective rights and obligations of the parties herein as they relate to their respective ABST related claims and defenses.

48.     The same is true with respect to the testimony offered through President Simon's affirmation.  President Simon, as the founder of AUA and its president since its inception, is intimately familiar with the facts and circumstances set forth in his affirmation. AUA has offered his affirmation for the truth of the statements contained therein. There is nothing in his affirmation that comes even close to expert witness testimony; nor does the Leeward site any specific aspect of President Simon's sworn statement as constituting or "bordering on" "expert witness testimony."

49.     By contrast, both the Leeward's motion and its Reply are rife with factual allegations about the events and circumstances surrounding the respective claims and defenses of the parties and its own self serving opinions and contentions as to the workings of the ABST Act and the respective rights and obligations of the parties herein under it that the Leeward fails to support by sworn statements of witnesses with personal knowledge of the truth of those factual allegations or appropriate qualifications to offer those opinions.

50.     Accordingly, not only must this Tribunal refuse to reject AUA's submissions herein or any part of them, but it must refuse to credit the claims of the Leeward as to the facts underlying the respective claims and defenses of the parties herein and, as well, the unproven claims, arguments and opinions offered by the Leeward as to the workings of the ABST Act and the respective rights and obligations of the parties herein under that law and the of Antigua and Barbuda in general.

51.     Left with nothing of merit to support its contention that AUA lacks standing to maintain this action, the Leeward again argues in its Reply that AUA failed to offer the

Leeward proof of its exempt status (the Leeward Reply at para. 25); however, once again, the Leeward fails to provide any guidance as to how, it believes, such, even it were true, would deprive AUA of standing to maintain its claims herein. Moreover, the onus was not on AUA to establish its tax-exempt status; it was the Leeward's responsibility under the ABST Act properly to determine whether any ABST was due on its supplies and, if so, to properly invoice the amounts due and nothing more. The Leeward failed to do so. See fn. 1 above.

52.     Accordingly, this Tribunal must find that AUA has standing to maintain all of its claims herein and, in so finding, deny the Leeward's motion to dismiss on the ground of AUA's lack of standing. This Tribunal must also strike the affirmative defense and grant the relief sought by AUA through its cross-motion herein.


**POINT III**


**AUA'S DEFENSES TO THE LEEWARD'S CLAIMS AND AUA'S COUNTERCLAIMS ARE NOT BARRED BY THE DOCTRINE OF RES JUDICATA; THE DOCTRINE BARS THE LEEWARD FROM ASSERTING THAT DEFENSE**


53.     The Leeward's Reply not only fails to support its res judicata defense but it provides affirmative basis for the Tribunal both to deny the Leeward's motion and to strike the defense as AUA seeks through its cross-motion herein.

54.     The Leeward's Reply demonstrates that its res judicata defense is based on non-sequitur arguments and a gross misunderstanding of the applicable law and the case authorities that define the res judicata defense and describe when and how it is applicable.

55.     In its Reply, the Leeward begins its discussion of its defense by arguing through its first non-sequitur:

In opposition, the AUA argues out of both sides of its mouth that the ABST Claim is both not barred by the doctrine of *res judicata*, arises out of the very same Contract that was the subject of the Prior Arbitration and therefore, is subject to arbitration.

56.     The fatal flaw in this argument is obvious: According to the Leeward' argument, any claim that either party may have against the other that is subject to arbitration under the parties' contract is barred by the doctrine of *res judicata* regardless of its nature, the facts underlying it, its relationship to the Prior Arbitration or to any aspect of it simply because the parties previously were involved in a prior proceeding.

57.     Not only is this argument inconsistent with the applicable law surrounding the doctrine of res judicata but, in bringing its own claim against AUA herein upon its assertion that it is subject to arbitration because it arises out of the parties' contract, it is the Leeward who is arguing out of both sides of its mouth.

58.     In its Reply, the Leeward accurately sets forth one Antigua and Barbuda court's summary explanation of the doctrine of res judicata under the laws of Antigua and Barbuda:

> Under Antiguan law, *res judicta* applies to all "issues and points that properly belonged to the earlier litigation and which the earlier court would have out of necessity had to resolve had it been raised." *Mavis Henry v. Tyrone Warner*, Claim, No. ANUHCV 2000/0227" Eastern Caribbean Supreme Court (2009)(citing Henderson v. Henderson, 3 Hare 100 114-115 (1943) (Emphasis added.)

59.     Guided by this explanation, this Tribunal must determine both whether AUA's claims and defenses in the present proceeding "properly belonged to the earlier litigation" between the parties herein and whether, in order to resolve the issues presented in the prior arbitration, it would have been necessary for the Hearing Panel in the prior arbitration to have determined the claims and defenses that AUA has now asserted in the present arbitration had AUA raised them in that arbitration.

60.     The obvious answer to both these questions is NO.

61.      As is set forth in AUA's opposition to the Leeward's motion and cross-motion

(Simon Aff. at para. 97 et seq., Memo of Law at pg. 31), in the prior arbitration, the Hearing

Panel was called upon to adjudicate the Leeward's claims: a) that AUA breached the parties

contract by deleting work without the Leeward's consent and by failing to pay for the deleted

work, by failing to pay a mobilization fee and by failing to pay for delays that it caused in the

completion of the Project, b) that AUA was liable to the Leeward for interest on payments that

it made; and c) that the Leeward was entitled to legal fees and costs.  The Hearing Panel was

also called upon to adjudicate AUA's counterclaims to the effect that it was entitled to

damages for delays occasioned by the Leeward and for AUA's costs and legal fees. (See the

Leeward's Amended Demand for Arbitration, AUA's Amended Answer and Counterclaims and

the prior Hearing Panel's Decision and Order in the prior proceedings, which are provided as

Exhibits X, Y and Z respectively to AUA's opposition to the Leeward's claims and AUA's cross-

motion herein. See also, AUA's Memo of Law at Point V. pg.'s 31-32; Simon Aff. at para.'s 97-

115)

62.      Clearly, had AUA raised them in the prior arbitration, it would not have been

necessary for the Hearing Panel in that proceeding to have determined any of the claims and

defenses that AUA has raised herein in order for it to resolve the disputes between the parties

that were presented in the pleadings before it.  Indeed, in reaching its determination on the

claims and defenses of the parties in the prior proceedings, it would have been highly

inappropriate for the Hearing Panel to have considered, or been influenced one way or the

other by, any aspect of the claims and defenses raised by AUA in the present proceedings or

the facts and circumstances underlying them had AUA raised them in the prior arbitration

since none of the claims and defenses in this proceeding have any relevance to the issues that the Hearing Panel was called upon to determine in the prior proceeding.

63.     Whether or not the Leeward owes AUA restitution for sums wrongfully collected as ABST or damages for construction defects has no bearing on whether or not either party in the prior arbitration was liable to the other for delays, or whether or not AUA was liable to the Leeward for a mobilization fee or for work deleted from the Leeward's contract without its consent; i.e.,the claims that were before the Hearing Panel in the prior arbitration.

64.     None of the sums that either party sought in the prior preceding had anything to do with ABST, the sums that AUA's seeks herein relating to ABST, the quality, or lack thereof, of the Leeward's work or AUA's claim herein for construction defects. The Leeward sought no sums for work that it completed or that AUA has asserted herein are defective; accordingly, that some of the work that the Leeward did complete has proven to be defective was no defense to any of the Leeward's claims or relevant to AUA's claim for delays in the prior arbitration. Notably, the Leeward did not seek to add any amount for ABST to its damages claims in the prior arbitration and was awarded no sums for ABST.

65.     The same is true with respect to the Leeward's own claim for payment of a sum that it claims was due because of a billing error that credited AUA with the payment of a sum as part of the Contract Sum due Leeward that, it claims, should have been paid to the Leeward for ABST in connection with its invoiced work.

66.     Such being the case, none of AUA's claims and defenses herein that the Leeward would have this Tribunal reject by application of the doctrine of res judicata can be said "properly to have belonged to the earlier litigation."[3]

67.     Nor, based on the very doctrine of res judicata, can this Tribunal determine to the contrary in light of the determination of the Hearing Panel in the prior litigation that the Leeward's attempt to have the sums that it herein seeks awarded to it and the prior Hearing Panel's rejection of that attempt.

68.     AUA will not rehash the facts relating to the disclosure by AUA's outside counsel in the prior arbitration of what he erroneously believed to be a billing error in the Leeward's favor involving the Leeward's invoicing of ABST, the Leeward's attempt to have the Hearing Panel in the prior arbitration award it the sums that were the product of that supposed error and the Hearing Panel's rejection of the Leeward's efforts. The Tribunal is respectfully referred to Mr. Simon's affirmation at Para's 97-116 and AUA's Memorandum of Law at pages 27-35 and the exhibits referred to therein for those facts.

69.     Suffice it to state that the Hearing Panel found that the matter of whether the Leeward was entitled to reimbursement of sums that AUA's outside counsel erroneously advised the Leeward should have received as ABST but that were instead credited against AUA's payments of the contract sums;, the same sums as the Leeward seeks herein on the

---

[3] The Leeward's res judicata defense is antithetical to its defense that AUA's claims are not arbitrable. If AUA's claims are not arbitrable, not only would it have had no right to raise in the prior proceeding, but it would have been error for the Hearing Panel in the prior arbitration to have considered them inasmuch as the jurisdiction of that Panel was limited to determining claims and defenses that were subject to arbitration as per the parties' contract. Here, it would seem, it is the Leeward who is "speaking out of both sides of its mouth and "wants its cake and eat it too."

same theories, was outside the scope of the proceedings before it and that it would be a denial of AUA's due process rights for the Hearing Panel to award those sums.

70.     The sole response offered by the Leeward to AUA's argument and evidence that the Leeward's contention that AUA's claims and defenses are barred by the doctrine of res judicata due to the ruling of the Hearing Panel in the prior arbitration above discussed is its bald statement that AUA's argument is "silly" (Leeward Reply at para. 7) and that, allegedly, AUA has confused two separate issues; the issue of whether Leeward is entitled to the sums it seeks herein and the issue as to whether AUA is entitled to the sums that it herein seeks. However, the obvious problem for the Leeward with that rather simplistic contention is that AUA's defenses to the Leeward's claims herein are the same as AUA's ABST related counterclaims. They are based on the same facts, circumstances and events and are proven by the same evidence.  In order for this Tribunal to determine whether the Leeward should prevail on its claim in light of the fact that AUA has defended against it on the ground that the Leeward was not entitled to the sums it seeks, it would need to determine AUA's claims that the Leeward was not entitled to ABST at all.  They are, therefore, not separate issues, but are part of one and the same issue.

71.     Moreover, as set forth more fully in AUA's the papers already submitted by AUA herein, submitted by AUA in opposition to the Leeward's motion and its own and cross-motion, AUA's claims and defenses in the present proceedings do not arise out of the same transaction or series of transactions as those involved in the prior arbitration; another standard that courts use in determining whether the doctrine of res judicata is applicable. See AUA's Memorandum of Law at Point V, pg.'s 28-29)

72.     Likewise, as set forth more fully in AUA's papers already submitted herein, AUA's claims and defenses do not involve the same subject matter as was before the Hearing Panel in the prior arbitration.

73.     As therein and above discussed, the subject matter in the prior arbitration involved claims of delays, deleted works and mobilization fees. Neither who or to what extent either party was liable to the other for ABST or for construction defects was the subjectof the prior proceeding.

74.     The Leeward now contends, simplistically, that the subject matter of the prior proceeding included anything having to do with AUA's Project or the parties' contract or how much money the Leeward was due from AUA in connection with the AUA's Project.

75.     Clearly, if such were the case, the Leeward's own claim herein would be barred by the doctrine of res judicata, and this Tribunal would be required to dismiss it, inasmuch as Leeward's claim is for sums allegedly due it under the parties' contract and in connection with AUA's Project.

76.     More importantly, as AUA's moving papers herein show, the very cases that the Leeward has cited in support of its res judicata defense herein demonstrate that the Leeward's contention is nothing more than balderdash.

77.     The Leeward advised in its Reply (at Para's 8-9) that the case of *Mavis Henry v. Tyrone Warner*, Claim, No. ANUHCV 2000/0227, Eastern Caribbean Supreme Court (2009), is instructive of the proper application of the doctrine of res judicata.

78.     AUA agrees.

79.     In that case, the plaintiff was the attorney in fact for one Millicent Ralph, deceased, who, during her lifetime, had been the plaintiff in a prior action in which defendant Tyrone

23

Warner was also a defendant.  Through that earlier action, Millicent Ralph sought to have her

spousal right to 50% of the parcel at issue recognized. Both her then husband, Clarkson Ralph,

and defendant Tyrone Warner were defendants in that proceeding. Mr. Warner had been

joined because he had been put in possession of the parcel and allowed to construct a house

on it by Mr. Ralph.  He had also, mistakenly as the Court found, "procured registration of

himself as the proprietor of [the] parcel" based on his belief that Clarkson Ralph had properly

executed the deed that Mr. Warner had registered and that named Mr. Warner as the owner of

Mr. Ralph's interest in the parcel. In defending against Mrs. Ralph's claim, Mr. Warner raised

as his only defense that he was the duly registered owner of the parcel through Mr. Ralph. The

Court determined otherwise, recognized Millicent Ralph as having a 50% ownership interest

in the parcel (and others), directed that "titles to the property [that Tyrone Warner had

registered] be delivered up to the Registrar of Titles to be cancelled" and enjoined Tyrone

Warner from further improving the parcel.

80.      In the subsequent action, Millicent Ralph's estate sought to obtain possession of the

parcel from Mr. Warner.  Here, for the first time, in defense of the action, Mr. Warner asserted

that he had an unregistered interest in the parcel, essentially, an interest in the nature of

equitable estoppel, based on his claim that he had been put in possession of the parcel by both

Millicent and Clarkson Ralph, that he had made improvement of the parcel with Mr. and Mrs.

Ralph's consent and that Mr. Ralph had promised him hat he would not be disturbed in his

possession of the parcel made, allegedly, by the then also deceased, Mr. Ralph during his

lifetime and prior to the first action.

81.      The Court struck Mr. Warner's defense on the ground of res judicata. The Court

found:

The Cause of Action in the instant substantive case is for, *inter alia*, possession of parcel 70 from a trespasser in the person of the Defendant Tyrone Warner. The cause of action in the earlier suit No. 133/1987 was a claim to establish an interest/share in the same property by way of either a resulting trust or a constructive trust/Common Intention by the Claimant/Petitioner. It appears the cause of action in the two matters may not be the same; the present claim assuming an existing interest/right of the claimant in the same property that was the subject of the earlier action and seeking possession of same. However, it appears to me that the question as to who owns the land (whether at law or in equity) in the circumstances of both cases must be decided in both cases in order for the court to dispose of the matter.

....

In my view, all issues relating to competing interests in the property had to be litigated and decided in the earlier case. The Defendant in the present action was a defendant in the earlier case. The earlier case concerned the ownership and the interest, legal or equitable, in the parcel 70. Indeed, the Claimants interest in the disputed land in the earlier action was an equitable interest. This issue as to whether the defendant had acquired an interest in what is now known as parcel 70 could have been raised and should have been raised in that earlier action. The defendant was, it appears, in occupation of the said lands at the time of the filing of the earlier action and now claims that his interest predates the filing of that earlier action.

82.  The Court went on to state, in summary:

If the Defendant had established his interest in the earlier case, the court could not have made the order it did. Put another way still, the court could not have awarded a 50% interest in parcel 70 to the claimant/petitioner if the Defendant had a greater and earlier interest to the said parcel 70 and had established that interest/claim.

83.  The Leeward claims that the present case is very similar to the case above

discussed. It does so by the following non-sequitur:

The present case is very similar to *Mavis Henry*. The Prior Arbitration determined the amount that the AUA owes Leeward under the Contract and in this proceeding, the AUA, is for the first time, seeking to prosecute claims that it knew and could have asserted in the Prior Arbitration but did not and which directly affects the Contract balance due Leeward from the AUA. (The Leeward Reply at para. 9)

25

84.      There is, despite the Leeward's assertion to the contrary, no relevant similarity to the two cases; indeed, it is their relevant differences that wholly undermine the Leeward's res judicata defense in this matter.

85.      In the *Mavis Henry* case, the subject of both litigations was a specific parcel of property and the principal issue that both courts were called on to decide as related to the parties to both actions was the competing interests of those parties in that parcel.  Both suits involved the same transaction or series of transactions; to wit, parcel of land at issue in both cases, Millicent Ralph's interest in it, the grant of possession of the parcel at issue by Mr. and Mrs. Ralph to defendant Warner and the consent granted by the Ralphs to Mr. Warner to improve the parcel of land.  As the Court found in the latter case, had the defendant in the two cases raised his defense of an equitable interest in that parcel in the prior litigation, the court in that prior litigation could not have resolved the plaintiff's claim without first having resolved the defendant's defense.

86.      In the case before this Tribunal, the sums sought by the Leeward are not the same sums that the Leeward sought in the prior arbitration; the sums that AUA seeks are not the same sums as it sought in the prior arbitration; the ultimate issues in the prior arbitration were not the same as the ultimate issues that this Tribunal will need to determine; had AUA raised its claims herein in the prior arbitration, the Hearing Panel in that arbitration would not have needed to determine them in order to determine the Leeward's claims of entitlement to damages for failure of AUA to pay the Leeward for deleted works, mobilization fees or delays that were the subjects of the Leeward's Amended Demand for Arbitration. Had AUA raised them in the prior arbitration, AUA's claims and defenses herein would not have been defenses to any of the Leeward's claims in the prior litigation. Likewise, had AUA raised its

claims and defenses herein in the prior arbitration, the Hearing Panel would not have needed to consider or resolve any them in order to determine the merits of AUA's counterclaim therein

87.      Moreover, unlike the defendant in the *Mavis Henry* case who was fully aware of every aspect of the circumstances surrounding his rights in the parcel at issue in the two litigations before the first of them was commenced, AUA did not know at any time prior to the commencement of the Prior Litigation involved here (or even prior to the Leeward's commencement of the proceedings herein) that the Leeward had failed to file tax returns for any of the sums that it y invoiced and wrongfully collected from AUA as ABST or that the Leeward had  and also failed to pay any part of those sums to the Government, directly or indirectly, so that AUA would not be able to be reimbursed from the Government for the sums that it paid but did not owe as ABST[4].

88.      Under these circumstances, the *Mavis Henry* case provides all of the legal authority that this Tribunal requires in order to determine that the Leeward's res judicata defense to AUA's claims herein is meritless, to deny the Leeward's motion to dismiss AUA's claims on the basis of the doctrine and to grant AUA's cross-motion insofar as it seeks an order striking the Leeward's affirmative defense based on that doctrine.

---

[4] The Leeward labels as "astounding" that, in opposing its motion based on its res judicata defense, AUA allegedly, failed to address its internal December 11, 2011 email in which it stated that it would attempt to recoup the sums that it wrongfully paid the Leeward purportedly as ABST "at the appropriate time." (the Leeward Reply at para. 6). It is the case, however, that AUA had addressed the issue, advising the Tribunal that it was not aware until after the Leeward commenced the present action (and certainly, until long after the prior arbitration had been concluded) that it would not be able to recoup the funds from the Government because the Leeward had not remitted its money to the Government or filed tax returns accounting for the collection of those sums.

     Moreover, Leeward fails to prove how that state of facts, even were they true, would have any bearing on the determination of its res judicta defense.

89.     AUA is mindful of the Leeward's assertion that it did not, in its opposition, address the Leeward's assertion that AUA's construction defects claims are barred by the doctrine of res judicata.

90.     The defense of res judicata is an affirmative defense. It is the Leeward's burden to prove it.

91.     The Leeward may have raised on its motion the issue of whether AUA's construction defects claims are barred by the doctrine of res judicata; however, the evidence and authorities that it presented on its motion and in its Reply fail to prove it, Thus, even had AUA been wholly silent on the issue in its opposition to the motion as the Leeward claims, the Tribunal is bound to reject the defense.

92.     AUA was not, however, silent on the issue. AUA's opposition and cross-motion thoroughly addressed the elements that the Leeward was required to prove in order to prevail on a defense of res judicata.  It analyzed the relevant authorities and the facts as the Leeward claims support its defense and demonstrated that those authorities and facts not only fail to support the defense but prove affirmatively that the defense is not applicable. This is true not only for AUA's ABST related claims but also for its construction defects claims, as AUA has above demonstrated.

93.     Accordingly, the Leeward's motion to dismiss AUA's claims, or any of them, must be denied, and the defense must be stricken.

**POINT IV**

**AUA'S CLAIMS ARE NOT BARRED BY THE DEFENSE OF "WAIVER"**

94.     This Tribunal must also deny the Leeward's motion insofar as it seeks dismissal of

AUA's ABST related claims based on the defense of "waiver." The express provisions of the

parties' contract bar the claim; moreover, the Leeward has not, and can not, satisfy the

elements of the defense as the authorities that the Leeward, itself, cites, set them forth.

95.     Section 13.4. of Article 13. 4 "Rights and Remedies" of the parties' contract (Exhibit

1 to the Leeward's motion) provides:

> No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of
> a right or duty afforded them under the Contract, nor shall such action or failure to act
> constitute approval or acquiescence in a breach thereunder, except a may be specifically
> agreed in writing.

96.     This provision plainly bars the Leeward from asserting the defense of waiver. At no

time did AUA ever agree in writing to waive its right to recover the sums that the Leeward

invoiced and collected as ABST.  Likewise, at no time did AUA ever waive in writing its right to

insist that the Leeward pay all taxes that may be due in connection with its Work under the

parties contract as set forth in Section 3.6 of the contract, or any other right that the Tribunal

may determine the Leeward has claimed AUA waived. Nor has the Leeward pled or claimed

otherwise.

97.     Likewise, the Leeward has not established, and cannot establish that the actions of

AUA that it cites as the basis for its defense of waiver satisfy the elements of the defense.

98.     In its Reply, the Leeward rests its assertion that AUA has waived the right to recoup

the sums that the Leeward invoiced and collected as ABST but, then, used to enrich itself on

the guidance of Chitty on Contracts (§§ 2-041), (See, the Leeward Reply at para. 31). The cited

treatise as the Leeward quotes from it instructs:

> Where one party voluntarily accedes to the request by the other that he should forbear to insist on the mode of performance fixed by the contract, the Court may hold that he has waived this right to require that the contract be performed in this respect according to its original tenor.

99.      In the case at hand, the Leeward asserts that its request for forbearance consisted of

including as a line item on each of its requisitions for progress payments a 15% charge for

ABST and that AUA's agreement to forbear consisted of AUA's payment of those items

"without protest."

100.      Once again, however, the Leeward's position is overly facile and ignores the realities

of the situation.

101.      The reality is that each of the Leeward's invoices that included a line item for ABST

included impliedly, the Leeward's promise, representation and agreement that it would treat

the sums that it invoiced and collected from AUA as ABST trust funds as the law required it to

do.  The Leeward's invoicing carried with it the implied warranty that it would remit those

sums to the Government that it collected as ABST and would account for them by filing

monthly tax returns as the law required.

102.      Unbeknownst to AUA until after the Leeward commenced this action, the Leeward

breached those warranties and representations.

103.      AUA had no idea at any time that it was paying the invoices that the Leeward was

issuing that the Leeward was not treating the funds that it invoiced as ABST trust funds by

filing tax returns accounting for the invoicing and collection of the sums from AUA, by

remitting the sums, directly or indirectly, to the Government or by keeping the records that the law required it to keep in connection with its providing of taxable supplies.

104.    AUA also had no idea that, as a result of the Leeward's wrongful, indeed, fraudulent, actions and failures to act, AUA would not be able to recover the sums that it was paying to the Leeward as ABST from the Government.

105.    In short, AUA had no idea that it was being robbed by the Leeward, who was capitalizing on confusion that existed at the time, initially, as to whether AUA would be free from payment of taxes at all, and subsequently, as to whether AUA had to remit the tax that otherwise would be due on its suppliers' work to its suppliers and obtain refunds from the Government or simply not pay the taxes at all.

106.    In the case at hand, at no time did the Leeward request that AUA forbear from insisting that the Leeward treat the funds that it invoiced as ABST as it warranted and represented in its invoices it would. At no time did the Leeward request that AUA forbear from insisting that the Leeward comply with its obligation under the law to file tax returns with the Government accounting for the funds that it invoiced and collected as ABST, paying those funds over to the Government and maintaining the records the law required the Leeward to maintain concerning its administration of the trust funds that it invoiced and collected as ABST from AUA and from other clients.

107.    At no time did the Leeward request that AUA permit the Leeward, by its acts and failures to act, to deprive AUA of the right and ability to recoup the sums that the funds that it invoiced and collected as ABT from the Government once the Government resolved the confusion as to how the Act would be applied to AUA's Project.

108.     In short, at no time did the Leeward request, by act or word, that AUA agree to

overpay Leeward for the work that it performed by well over One Million Four Hundred

Thousand U.S. Dollars, or to keep for its own use, enjoyment and enrichment, the sums that it

collected from AUA as ABST.

109.     Here, it must be noted that, in order for the defense of waiver to apply, the request

for forbearance and the agreement to forbear must both be unequivocal. (See AUA's

Memorandum of Law previously submitted at pg.'s 21-23)

110.     In its Reply (at para. 34, the Leeward, itself, expressly recognizes this principle.

Quoting from the case of *Bremer Handelsgesellschaft v. C. Mackprang Jr.*, 1 Lloyd's Rep 221

(Court of Appeal 1979), the Leeward instructs: " a person waives contractual [sic] right by

works or conduct that is **knowing**, intentional, and **unequivocal**." (Emphasis added.)

111.     Absent such an unequivocal request and agreement, the Leeward's defense of

waiver must fail[5].

112.     The Leeward's defense of waiver must also fail because the Leeward has failed to

show that it relied to its detriment on AUA's alleged forbearance.  The Tribunal is respectfully

referred to AUA's previously submitted memorandum of law at pg.'s 21-23.

---

[5] Notably, the Leeward's own claim for damages would be barred under the doctrine
of waiver if the Leeward's simplistic explanation of the doctrine and its application to
the facts herein were applied. The AUA paid, and the Leeward accepted payment
without protest, the very invoices on which AUA's claims are based.  Applying the
Leeward's logic and analysis of the defense of waiver to the Leeward's claims, by
paying the Leeward the sums that it invoiced even though, according to the Leeward,
the last invoices shorted the Leeward the sums that it herein seeks to recover, AUA
requested that the Leeward forbear from collecting more, and by accepting the
payment without protest, the Leeward agreed to AUA's request and waived its right
to any further payment.

113.     The Leeward's sole offer on this element of the defense of waiver consists of its

assertion that: "if AUA had refused to pay the ABST or demonstrated to Leeward that the

Project was ABST-exempt, Leeward would not have charged ABST on the next requisition or

any requisition going forward." (the Leeward Reply at para. 32.)

114.     Needless to state, the Leeward fails to explain how it's reliance was **to its**

**detriment**. Nor does the Leeward offer any admissible evidence tending even remotely to

suggest that the Leeward's assertion is true. AUA expects that, had AUA insisted on the

Leeward's correcting its invoices and ceasing to charge ABST that was not due, the Leeward

would have refused to continue to perform its obligations under the parties' agreement.

115.     In defense of a motion for summary judgment, one must lay bare his proof; the

Leeward offers no proof of its assertion, or any of its assertions on its motion or in opposition

to AUA's cross-motion herein.

116.     Accordingly, this Tribunal must reject the Leeward's defense of waiver, deny the

Leeward's motion to the extent that it relies on the defense, strike the defense and grant the

relief requested by AUA through its counterclaim herein.


**POINT V**

**THE LEEWARD'S DEFENSE THAT IT PAID MORE ABST TO VENDORS THAN IT
COLLECTED FROM AUA MUST BE STRICKEN**


117.     AUA's cross-motion for an order striking the Leeward's stated defenses to AUA's

ABST related claims herein includes AUA's application that the Leeward's defense that it paid

more ABST to third party vendors than it collected from AUA be stricken. (Simon Aff. at Para's 17-24.)

118.     The Leeward has offered no opposition at all to this aspect of AUA's cross-motion, nor could it provide any meritorious opposition.

119.     As President Simon noted in his Affirmation herein, the Leeward failed to maintain the documentary evidence in the form of invoices, receipts, ledgers and the like that the ABST Act requires. This became obvious through the Leeward's responses to AUA's requests for production of documents herein. The Leeward produced the front pages of checks but little else; no ABST invoices to third parties, no receipts, no check registers, and no other documentation that would show what the checks were for, whether they were for taxable supplies, during which tax period, if any, that the Leeward was invoicing and collecting sums purportedly for ABST from AUA they would be applicable etc. The Leeward claimed that it did not have such documents in its possession having previously destroyed them. (The Leeward has not stated when that destruction occurred; the ABST Act requires the Leeward to maintain those documents.)

120.     Without those documents, the Leeward cannot prove its contention.

121.     The Leeward also was forced to admit that it filed no tax returns with the Government of Antigua and Barbuda that would account for the sums that it collected from AUA or the amounts of ABST, if any, that it paid to its suppliers as an offset against the sums that it collected from AUA as ABST during any of the monthly tax periods that it was invoicing AUA for ABST.

122.     More importantly, the contention is erroneous as to the law.

123.     The ABST Act, at Articles 8 and 27 requires that a supplier pay over to the government the difference between all of the ABST that it invoiced in a given monthly tax period from **all** of its customers and receivers of its supplies and **all** of the ABST that it pays to all of its own suppliers in

connection with its entire business activities during the tax period, not just the sums that it invoices from any one customer, in general, or in this case, AUA, in particular.

124.     Accordingly, even if it was the case (or that the Leeward could prove) that it paid more in ABST to its own suppliers than it collected from AUA during any, or every, tax period that it invoiced and collected sums as ABST from AUA, nevertheless, this fact would not constitute a defense to AUA's claims or preclude AUA from recovery on its ABST related claims.

125.     In order for such a defense to stand, the Leeward would be required to plead as a defense and to prove that it paid more in ABST to its own suppliers than it collected in ABST not only from AUA, but from all of its customers combined during each of the separate monthly tax periods that it was invoicing and collecting sums as ABST from AUA.

126.     However, the Leeward has neither pled that such is the case, nor has it provided any evidence to prove such a claim.

127.     Accordingly, this Tribunal must grant summary judgment on AUA's claims relating to ABST herein.

**POINT VI**

**AUA IS ENTITLED TO SUMMARY JUDGMENT ON ITS ABST CLAIMS**

128.     At Point V of its Reply, the Leeward informs this Tribunal that it may "give summary judgment in the Claim or on a particular issue if it considers that –(a) Claimant has no real prospect of succeeding on the claim or the issue; or (b) Defendant has no real prospect of successfully defending the claim or the issue.") (Quoting from Part 15.2 of the Civil Procedure Rules ("CPR") 2000) Antigua and Barbuda)

129.     AUA agrees.

130.　　In this case, since AUA has established that each of the defenses that the Leeward has pled in opposition to AUA's cross-motion and each of the arguments that it has raised on its own motion to dismiss AUA's claims are meritless and cannot be sustained based on those facts that are undisputed or indisputable herein, AUA is entitled to an order denying the Leeward's motion, striking each of its stated defenses and awarding summary judgment to AUA on its ABST related claims, together with such other relief as the Tribunal deems appropriate, including the award to AUA of its costs and legal fees incurred in connection with this arbitration as per the Rules governing these proceedings.

Respectfully submitted:

Leonard A. Sclafani, Esq.
Law Offices of Leonard A. Sclafani, Esq.
One Battery Park Plaza, 33rd Fl.
New York, New York 10004
212-696-9880
las@lasattorneys.com