Positive

As of: December 10, 2014 11:15 AM EST

# Leeward Constr. Co. v. Am. Univ. of Antigua

United States District Court for the Southern District of New York

March 26, 2013, Decided; March 26, 2013, Filed

12 Civ. 6280 (LAK)

**Reporter**
2013 U.S. Dist. LEXIS 43550; 2013 WL 1245549

LEEWARD CONSTRUCTION COMPANY, Petitioner, -against- AMERICAN UNIVERSITY OF ANTIGUA - COLLEGE OF MEDICINE, and MANIPAL EDUCATION AMERICAS, LLC f/k/a GCLR, LLC, Respondents.

## Core Terms

arbitrators, overhead, damages, confirm, deleted, separate contract, bad faith doctrine, cross motion, bidding, internal quotation marks, original contract, mobilization, calculation, contends, modify, amended petition, change order, bad faith, parties, competitive, covenant

**Counsel:** [*1] For Petitioner: Veronica A. McMillan, J. Scott Greer, Alana Bartley, LEWIS & GREER, P.C.

For Respondents: Michael B. Goldsmith, Katherine M. Lieb, SILLS CUMMIS & GROSS P.C.

**Judges:** Lewis A. Kaplan, United State District Judge.

**Opinion by:** Lewis A. Kaplan

## Opinion

**MEMORANDUM OPINION**

Lewis A. Kaplan, *District Judge*.

Petitioner Leeward Construction Company ("Leeward") seeks to confirm an international arbitration award against Respondents American University of Antigua ("AUA") and Manipal Education Americas ("Manipal").[1]

In September 2008, Leeward and AUA contracted for Leeward to construct a medical school for AUA in Antigua.[2] Pursuant to an arbitration clause in the contract, Leeward commenced an arbitration proceeding against AUA before the American Arbitration Association in February 2011 regarding disputes that had arisen between them in the course of performance.[3] The arbitrators held hearings in March 2012 in Puerto Rico and issued an award in favor of Leeward of approximately $1 million in June 2012, which was modified to correct clerical errors in August [*2] 2012.[4] Leeward then petitioned to confirm the award against AUA and also against Manipal, the latter on a theory that Manipal

---

[1] Leeward and AUA are both Antiguan corporations, while Manipal is a New York limited liability company. *See* Am. Petition ¶¶ 4, 5; Scalafani Reply Decl. ¶ 4, Ex. A.

[2] Scalafani Decl. Ex. H (hereinafter "Award") at 2.

[3] *Id.* at 1.

[4]

was the *alter ego* of AUA. Manipal was not a signatory to the underlying agreement, nor was it a party to the arbitration proceeding.

Respondents cross move to dismiss the petition or modify or vacate the award on a number of grounds.[5] For the reasons stated, the petition is granted, but only insofar as **Leeward** seeks to confirm the award against AUA. Manipal's cross motion to dismiss is granted, and AUA's cross motion is denied.

I. *Cross Motions to Dismiss*

As stated at oral argument, the Court grants the cross motion to dismiss the petition against Manipal because "an action for confirmation is not the proper time for a District Court to pierce the corporate veil."[6] This dismissal is without prejudice to **Leeward**'s filing a separate plenary action against Manipal to enforce the judgment against AUA it obtains here under an *alter ego* or other theory.[7]

As stated also at oral argument, the Court denies AUA's cross motion to dismiss the petition on grounds of *forum non conveniens*.[8]

II. *Cross Motion to Vacate or Modify the Award*

AUA additionally contends that the award should be vacated or modified on a number of grounds. In particular, AUA challenges four components of the arbitrators' award: (1)

---

*Id.* at 2; McMillan Decl., Ex. G at 2.

[5] Respondents' motion was directed against **Leeward**'s initial petition to confirm, rather than an amended petition that **Leeward** filed subsequently to add allegations regarding its claim against Manipal. *Compare* DI 2 *with* DI 19. The Court rejects respondents' contention that **Leeward** needed to file a new "request to confirm the Amended Petition" in light of the mooting of the initial petition. DI 22 at 2. The amended petition itself is the request; what is confirmed is not the petition but the award. To the extent that the filing of the amended [*3] petition might have mooted respondents' motion, pursuant to respondents' alternative request, *id.*, the Court construes the motion as applying also to the amended petition.

[6] *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 301 (2d Cir. 1963) (internal quotation marks omitted).

[7] *Id.* (noting that holding does not preclude petitioner from being separate action to enforce award against third party).

[8] The Court briefly amplifies the reasons it set forth in open court for denying the motion on this ground. Even as a foreign plaintiff, **Leeward**'s choice of forum is entitled to some deference, particularly to the extent [*4] that it sues here for "legitimate reasons." *Bigio v. Coca-Cola*, 448 F.3d 176, 179 (2d Cir. 2006); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (*en banc*) (setting forth "sliding scale" of deference). The Court credits **Leeward**'s contention that it chose this forum to expedite enforcement of the judgment against the assets it has reason to believe AUA possesses within the United States. This is a legitimate reason to bring the petition here. *See Sonera Holding B.V. v. Cukurova Holding*, A.S., 895 F. Supp. 2d 513, 2012 U.S. Dist. LEXIS 128602, 2012 WL 3925853, *8 (S.D.N.Y. Sep. 10, 2012); *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 155 (2d Cir. 2005) (legitimate reasons are those based on questions of "genuine convenience").

VERONICA MCMILLAN

overhead and profit for "omitted work," (2) "change order work," (3) damages under the "bad faith doctrine," and (4) interest.

The parties agree that, as an international arbitration occurring in Puerto Rico, the defenses to confirmation set forth both in the New York Convention and in the Federal Arbitration Act apply.[9] In either case, review of the award [*6] is "severely limited."[10] Indeed, when considering the merits of an arbitrators' decision, "the award should be enforced, despite a court's disagreement with it . . . , if there is a *barely colorable justification* for the outcome reached."[11]

For the reasons stated, AUA fails to meet its heavy burden to prevent confirmation of each challenged component of the award.

A. Overhead and Profit for Omitted Work

In the arbitration proceeding, the central dispute was whether, in light of various reductions in the scope of the project from what *Leeward* and AUA initially contemplated, *Leeward* was entitled to be paid on the basis of the contract price or on the work actually performed. The arbitrators ruled that the contract between *Leeward* and AUA was a fixed-price contract subject to additions and deletions.[12] Although the contract envisioned that additions and deletions

---

Assuming *arguendo* that Antigua would have been an adequate alternative forum, the Court finds that the public and private interest factors do not support dismissal, let alone outweigh the deference owed to *Leeward*'s choice. As this action is a summary confirmation proceeding requiring no further evidence, there is no practical difficulty in resolving it here. See *Sonera Holding*, 2012 U.S. Dist. LEXIS 128602, 2012 WL 3925853 at *9; *Constellation Energy Commodities Group, Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp.2d 211, 220 (S.D.N.Y. 2011); [*5] *Iragorri*, 274 F.3d at 74 (directing courts to consider practical conveniences regarding "precise issues that are likely to be actually tried"). Moreover, while generally there is a "local interest in having localized controversies decided at home," the Second Circuit has recognized that confirmation of international arbitration awards falling under the New York Convention is a "favored policy" of the United States—a public interest that weighs here heavily in favor of accepting jurisdiction. *Figueiredo Ferraz E Engharia de Projeta Ltda. v. Peru*, 665 F.3d 384, 389-90, 392 (2d Cir. 2011) (internal quotation marks omitted).

[9]

See *Scandinavian Reinsurance Co. Ltd. v. St. Paul Marine & Fire Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 21 (2d Cir. 1997); *see generally* 9 U.S.C. §§ 10, 11.

[10]

*Scandinavian Reinsurance Co.*, 668 F.3d at 71 (internal quotation marks omitted).

[11]

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (emphasis in original; internal quotation marks omitted); *see also Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 452 (2d Cir. 2011) (describing standard for whether arbitrators engaged in "manifest disregard of law" sufficient to warrant vacatur as "first, whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable, and, second, whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it"); *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 122 n.1 (2d Cir. 2011) [*7] (vacatur requires more than mere legal error, but a showing "that the panel intentionally defied the law" (internal quotation marks omitted)).

[12]

Award at 6.

VERONICA MCMILLAN

Case 1:14-cv-08410-DLC   Document 28   Filed 12/12/14   Page 4 of 9

Page 4 of 9
2013 U.S. Dist. LEXIS 43550, *6

would occur through formal change orders and AUA never issued any such orders, the arbitrators concluded that *Leeward* was entitled to payment for only the work it performed on the ground that *Leeward* and AUA had waived the change order requirement.[13]

This said, the arbitrators generally accepted *Leeward*'s claim that it was owed compensation for its overhead and profit on work that it did not perform, [*8] including both (1) "deleted work," which was work that AUA removed from the contract and submitted for general bidding, and (2) "omitted work," which was work that never was done at all due to design changes in the project.[14]

AUA challenges the arbitrators' grant of overhead and profit for omitted work. It contends that *Leeward* did not seek this overhead and profit until its post-hearing submissions and that the arbitrators therefore exceeded their powers and engaged in prejudicial misconduct in making that part of the award.[15]

As AUA itself concedes, *Leeward* sought payment for omitted work in its notice of claim, which sought full payment for such work and not just recovery of its overhead and profit. It was not outside of the arbitrators' power to award only a portion of what *Leeward* sought. Moreover, AUA was able to defend against this particular alternative claim in its rebuttal post-hearing submissions and argued there that the claim should not be considered because it was untimely. The arbitrators [*9] specifically rejected the latter contention, concluding that they "will not exclude any claim under the sole contention of timeliness," apparently because "both parties breached various provisions of the Contract and are, therefore, barred from enforcing said provisions against each other."[16] AUA does not even attempt to identify error in this conclusion in its submissions. The Court identifies no misbehavior by the arbitrators or other ground for vacatur in the circumstances.

B. *Change Order Work*

AUA next challenges the arbitrators' award regarding change order work, i.e., work that *Leeward* completed but that was not part of the original contract. AUA contends that the arbitrators' decision provided no reasoning as to why it accepted *Leeward*'s contentions regarding this compensation, stating only that "[f]rom the evidence presented at trial, the Panel finds that *Leeward* is entitled [to such compensation]." AUA contends that therefore the arbitrators exceeded their powers as they failed to provide the "reasoned award" required by the parties' contract.

Courts have read a "reasoned award" requirement as mandating that the arbitrators provide "something short of findings [*10] [of fact] and conclusions [of law] but more

---

[13] *Id.* at 6-7.

[14] See *id.* at 31.

[15] See 9 U.S.C. § 10 (permitting vacatur where arbitrators "exceeded their powers" or were "guilty of . . . misbehavior by which the rights of any party have been prejudiced").

[16] Award at 15-16.

VERONICA MCMILLAN

than a simple result."[17] The decision in this case was well over thirty pages long with considerable detail regarding the panel's findings and conclusions as to the various components of the overall award. The parties had ample opportunity to contest *Leeward*'s entitlement to compensation for change order work, and the summary nature of the discussion in the decision shows that the panel simply accepted *Leeward*'s arguments on this particular point. While the award may have been deficient if it summarily had indicated agreement with all of *Leeward*'s contentions, that does not mean that the arbitrators were obliged to show how every single proposition they adopted could be derived from first principles.[18]

C. *Damages Under "Bad Faith Doctrine"*

AUA contends also that the arbitrators' award for damages under the "bad faith doctrine" cannot stand. While this presents a closer [*11] question, the challenge fails.

1. Background

As discussed above, the original contract contemplated that *Leeward* would do a number of projects that AUA deleted from the scope of engagement and then put out for competitive bidding—namely, (1) flooring work, (2) door and window work, and (3) painting work.[19] It appears that *Leeward* submitted bids and was chosen to do the flooring work and the door and window work, which it completed under contracts separate from the principal contract.[20] Apparently, however, *Leeward* did not do the painting work.[21]

*Leeward* sought in the arbitration both unpaid balances on its separate contracts with AUA and overhead and profit on all deleted work, including the flooring and door and window work that it had completed pursuant to the separate contracts.[22] *Leeward* argued that the fact that it was able to complete work under a separate contract did not eliminate its entitlement to overhead and profit for that same work under the original contract, because among other things, *Leeward* had to [*12] bid competitively for such work "with

---

[17] Rain CII Carbon, LLC v. ConocoPhillips Co., 674 F.3d 469, 473 (5th Cir. 2012) (internal quotation marks omitted).

[18] To the extent AUA suggests that other aspects of the award were deficient also for failing to satisfy the "reasoned award" requirement, this same reasoning applies.

[19] Scalafani Decl. Ex. E at 15.

[20] *See* Award at 16, 18 (finding that door and window work and flooring work were given to *Leeward* under separate contracts).

[21] *See id.* at 8, 26.

[22] *See id.* at 13, 16, 25.

VERONICA MCMILLAN

no guarantee of being awarded the work."[23] As a consequence, *Leeward* suggested that it might have had to bid "at a significantly lower rate [of overhead and profit] to stay competitive."[24] It contended that "AUA removed these items of work from the Contract in an effort to reduce the cost of the works through competitive bidding and to avoid paying *Leeward* preliminaries for work performed after the substantial completion date."[25]

2. Award

To the extent that *Leeward* sought payment of unpaid balances under the separate contracts, the arbitrators ruled that those contracts were not subject to the arbitration clause and that therefore the claims could not be considered.[26] They concluded also that, while as a general matter, *Leeward* was entitled to overhead and profit for omitted and deleted work, they would not award such overhead and profit for deleted work that had been awarded to *Leeward* under separate contracts.[27] The award did not appear to conclude that *Leeward* was not entitled to such compensation, however. Rather, it appeared to exempt this work from its overhead [*13] and profit award "because such work was then given to *Leeward* under a Separate Contract *and, therefore, is not subject to this Arbitration.*"[28] Nevertheless, the arbitrators went on to award damages for this work, concluding that "*Leeward* is entitled to damages in the amount of EC $232,670.13 for work that was deleted from the Contract and then assigned to *Leeward* under Separate Contracts, under the bad faith doctrine."[29]

3. Discussion

AUA objects to the arbitrators' reliance on a "bad faith doctrine," noting that no such doctrine was invoked by

---

23

McMillan Decl. Ex. E at 26.

24

*Id.*

25

Scalafani Decl. Ex. E at 15.

26

Award at 5.

27

*Id.* at 8.

28

*Id.* at 25 (emphasis added).

29

*Leeward* throughout the arbitration proceedings. It contends [*14] also that the award appears to provide tort damages, above and beyond the contract damages to which *Leeward* may have been entitled, that would not have been within the arbitrators' power to grant. In response, *Leeward* urges this Court to construe reference to the "bad faith doctrine" as a determination that AUA breached the implied covenant of good faith and fair dealing.

Under general principles of contract law,[30] the implied covenant of good faith and fair dealing requires "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party."[31] Examples of bad faith include "evasion of the spirit of the bargain" and "abuse of a power to specify terms."[32] Importantly, the implied covenant does *not* provide some form of general damages awardable simply because a court determines that a party acted in bad faith.[33] Rather, it provides a basis for damages if the other party took actions in bad faith that worked to deprive the plaintiff of the benefit of the bargain.

Recognizing that the arbitrators' reasoning regarding the deleted work awarded to *Leeward* under separate contracts is questionable and leaves much to be desired, the Court concludes that there is at least a "barely colorable justification" for the award rendered and that AUA's challenge therefore fails.[34] While *Leeward* had framed its claim as one for overhead and profit and did not use the term bad faith, it essentially argued that AUA's actions with regard to this work breached the implied covenant of good

---

*Id.* at 8. Describing the same award elsewhere in the decision, the arbitrators said, "After careful consideration regarding the works that were deleted from the Contract and then assigned to *Leeward* under Separate Contracts, this Panel finds that *Leeward* is entitled to damages under the bad faith doctrine." *Id.* at 12.

"EC $" refers to Eastern Caribbean dollars and is the denomination of the award. The petition indicates that at the time of the award, 2.700 Eastern Caribbean dollars equaled one United States dollar. Am. Petition ¶ 3 n.1.

30

No party has argued that Antiguan contract law deviates from these principles.

31

RESTATEMENT (SECOND) OF CONTRACTS, § 205.

32

*Id.*

33

See *Southeastern Penn. Transp. Auth. v. Bank of New York Mellon Corp.*, No. 12 Civ. 3066, 921 F. Supp. 2d 56, 2013 U.S. Dist. LEXIS 9345, 2013 WL 440628, *13 (S.D.N.Y. Jan. 23, 2013) [*15] ("The implied covenant protects the benefit of the bargain made. It does not create new benefits out of whole cloth.").

34

*T.Co Metals, LLC*, 592 F.3d at 339 (emphasis, internal quotation marks omitted).

faith and fair dealing. That is, it argued that it was entitled to the benefit of the margins it had negotiated for such work in the original contract and that AUA had deprived it of this benefit when it deleted the work from the contract and then put the work up for separate bidding.

In awarding damages under what they called the "bad faith doctrine," the arbitrators apparently accepted *Leeward*'s contentions that AUA had evaded the spirit of the bargain. The award of damages can be [*16] construed as restoring to *Leeward* the benefit of the original contract as to this work. To be sure, the arbitrators might have achieved the same outcome by simply accepting *Leeward*'s claim to overhead and profit for this work. They appeared to conclude that they could not do so because the work had been part of separate contracts not subject to arbitration, even though it would seem that *Leeward*'s claim for overhead and profit derived from the original contract, not the separate ones. In any event, the damages award can be construed as amounting to the same thing, and this is a barely colorable justification for this award. The conclusion finds further support in the rough proportionality between the bad faith damages award and what it appears *Leeward* was seeking for overhead and profit as to this work.[35]

While complaining generally about the issuance of "bad faith" damages, AUA's submissions before this Court do not even attempt to engage with the issue with which the arbitrators were clearly concerned: AUA's actions in deleting work from the original contract and then putting that work up for competitive bidding. In the circumstances, AUA has not met its heavy burden to prevent confirmation [*17] of this portion of the award.

D. *Interest Calculation*

Finally, AUA challenges the arbitrators' award of EC $44,617.37 for interest. *Leeward* had sought interest at a rate of 10 percent, which it calculated to be EC $63,739.12. The arbitrators concluded that an interest award was appropriate, but only on a 7 percent rate, and awarded *Leeward* 70 percent of what it had sought.[36]

The problem, AUA contends, is that *Leeward*'s interest demand included interest for "mobilization" payments and that, in addressing whether *Leeward* would receive interest on such payments, the arbitrators stated that "the disputes regarding mobilization were resolved" by a separate settlement between the parties.[37] AUA reads the decision as having concluded that no interest was warranted on mobilization payments, but then failing to exclude this interest from *Leeward*'s claim before scaling the award by 70 pecent. It asserts that the Court should modify the award by removing interest relating to mobilization because the calculation is an "evident material miscalculation of figures,"[38] which would reduce the interest awarded to EC $17,152.92.

Assuming [*18] *arguendo* that a miscalculation amounting to approximately $10,000 U.S. dollars on an approximately $1 million award is "material," the Court nevertheless

---

[35] *See* Award at 7, 16-18.

[36] *Id.* at 28-29.

[37] *Id.* at 29.

[38] 9 U.S.C. § 11(a).

VERONICA MCMILLAN

rejects AUA's request.[39] First, while the language of the decision strongly suggests that the arbitrators denied interest for mobilization, the decision did not expressly say so.[40] Rather, what is clear is that the arbitrators decided to award EC $44,617.37 in interest, whatever that was meant to represent. Second, courts considering the "evident material miscalculation of figures" ground for modification have limited it to "'mathematical error appearing *on the face of the award*,'"[41] such as when the arbitrators award various damages but then err in computation of the total amount. That is not this case; AUA must make assumptions about the arbitrators' calculation methodology to demonstrate error. While the assumptions AUA makes are quite reasonable, and it seems likely that there was a small error here, this does not mean that the error is evident on the face of the award permitting modification under 9 U.S.C. § 11.[42]

III. Conclusion

For the reasons stated, (1) [*20] *Leeward*'s amended petition to confirm the arbitration [DI 19] is granted, but only as against AUA; (2) Manipal's cross motion to dismiss as to itself [DI 9] is granted without prejudice to *Leeward*'s filing a separate plenary action against it; and (3) AUA's cross motion to dismiss, modify, or vacate [DI 9] is denied. The Clerk shall close the case.

SO ORDERED.

Dated: March 26, 2013

/s/ Lewis A. Kaplan

Lewis A. Kaplan

United State District Judge

---

[39]

*Cf. South East Atlantic Shipping Ltd. v. Garnac Grain Corp.*, 356 F.2d 189, 192 (2d Cir. 1966) (concluding that certain [*19] discrepancies due to rounding error were not material, and that "[i]f such calculations were to be subject to judicial review, there would be few arbitration awards which would be immune from the very time and money consuming court reviews which arbitration is designed to avoid").

[40]

*See* Award at 29 (finding, in response to question about whether *Leeward* was entitled to mobilization interest or whether this issue was previously settled, that "the disputes regarding mobilization were resolved with a payment by AUA in December 22, 2009 and a settlement was reached by the parties in January 13, 2009").

[41]

*Grain v. Trinity Health, Mercy Health Servs., Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998)) (emphasis added).

[42]

In fact, AUA presented the purported calculation error to the arbitrators in a letter after the initial decision. *See* Scalafani Decl., Ex. G at 2. While the arbitrators made some other clerical corrections after submission of the letter, they did not modify the award's interest calculation. This further augurs against presuming that any error was evident.