the broader expression 'injurious reliance' in preference to 'estoppel' so as to embrace all circumstances in which A can say to B: 'You led me reasonably to believe that you were assuming particular legally enforceable rights to me . . .'[37]

There is therefore, an obvious tension. On the one hand, the Courts recognise **3.08** that there is no overarching doctrine of injurious reliance. On the other, there is the desire to maintain a merits-based flexible doctrine. The result is, it is submitted, to generate further confusion in this difficult area; the Courts still recognising that there are differences between doctrines but on occasion applying them as if they were one and the same doctrine.[38] Notwithstanding that criticism we would suggest that any definition of waiver must acknowledge the existence and effect of both approaches on this area of the law.

# B. Definition

A preliminary definition of waiver can be arrived at by using two interdependent **3.09** methods—a process of exclusion, identifying the circumstances in which the Courts have drawn a distinction between waiver and some other doctrine; and a process of inclusion, identifying the circumstances in which the courts have found that there was a waiver.

## (1) The process of exclusion

Waiver can simply be distinguished from variation. It is a distinction which in **3.10** principle[39] the Courts have consistently drawn:

Waiver does not vary the terms of the contract . . . Waiver is conduct on the part of a party to a contract which affects his remedies for a breach of contract by the other party.[40]

further holding that variation is 'wholly distinct from the doctrine of forbearance . . .'.[41] The maintenance of that distinction would accord with the facts that a waiver is unsupported by consideration[42] whereas a variation requires consideration in

---

[37] *Paal Wilson & Co A/S v Partenreederei Hannah Blumenthal* [1983] 1 AC 854 at 916 A–C per Lord Diplock.

[38] See *Wilson v Kingsgate Mining Industries Pty Ltd* [1973] 713 at 730D–G per Wootten J where the Court recognised the tendency to create and apply one doctrine but emphasised that there remained clear differences between the doctrines.

[39] In practice the distinction may be less easy to draw; the practical results of applying the two doctrines may be indistinguishable—see *Watson v Healy Lands Ltd* [1965] NZLR 511 at 513, ll 10–20 per Woodhouse J.

[40] *Enrico Furst & Co v WE Fischer Ltd* [1960] 2 Lloyd's Rep 340 per Devlin J at 349 col 2–350 col 1.

[41] *Levey & Co v Goldberg* [1922] 1 KB 688 at 690 per McCardie J. See also *Impala Distributors v Taunus Chemical Manufacturing Co (Pty) Ltd* (1993) (3) SA 273; *Van As v du Preez* (1981) (3) SA 760; *Waimor Holdings Ltd v Dean* [1981] 2 NZLR 416.

[42] Stoljar, 'The Modification of Contracts' (1957) 35 *Canadian Bar Review* 485 at 492.

39

some form or another;[43] variation requires there to be offer and acceptance,[44] whereas waiver may not; the parties by varying the contract can restrict their ability to waive requirements of that contract[45] and variation will affect the substantive performance by both parties under the contract as opposed to merely affecting the remedies[46] which one party can seek in relation to a current or future breach of the contract.[47] Thus, although a party may be forced to accept different performance under the contract by virtue of a waiver, the obligations under the contract have not in fact changed. As Mr Justice Mustill, as he then was, pointed out in *Cook Industries Inc v Meunerie Legois SA*:[48]

> It may seem a paradox to assert that even if, by virtue of a waiver, the sellers could properly tender July bills of lading in fulfilment of a June instalment, it does not follow that the contract became one under which the obligation to ship in June was replaced by one which required the sellers to ship or procure shipment in June or July. I am not convinced however that this is a paradox, nor to my mind is it clear that the question of waiver (which is relevant to the liability of the buyers for a refusal to accept an appropriation) is the same as the question of variation (which is relevant to the liability of the sellers for failing to effect or procure a timely shipment).[49]

**3.11**   Drawing the distinction between waiver and 'estoppel' appears to cause more difficulty. In *Kammins Ballroom Co v Zenith Investments*[50] Lord Diplock stated:

> 'Waiver' is a word which is sometimes used loosely to describe a number of different legal grounds on which a person may be debarred from asserting a substantive right which he once possessed or from raising a particular defence to a claim against him which would otherwise be available to him. We are not concerned in the instant appeal with the first type of waiver. This arises in a situation where a person is entitled to alternative rights inconsistent with one another. If he has knowledge of the facts which give rise in law to these alternative rights and acts in a manner which is consistent only with his having chosen to rely on one of them, the law holds him to his choice even though he was unaware that this would be the legal consequence of what he did. He is sometimes said to have 'waived' the alternative rights . . . but this is better categorised as 'election' rather than as 'waiver' . . . The second type of waiver

---

[43] See paras 2.15 ff above.

[44] See para at 2.14 above.

[45] See *SN Kurkjian (Commodity Brokers) Ltd v Marketing Exchange for Africa Ltd* [1986] 2 Lloyd's Rep 614 at 615 col 2; the parties could, for instance, vary the contract to introduce a 'no-waiver' agreement—see paras 21.72 and 17.20 below.

[46] Even where the Courts have found that a particular waiver had contractual status, it was still only an 'agreement to release or not to assert a right'—*Nippon Menkwa Kabushiki Kaisha (Japan Cotton Trading Company Ltd) v Dawsons Bank Ltd* (1935) 51 Ll L R 147 at 150 col 2 per Lord Russell.

[47] Thus even in cases of unilateral or pure waiver which may operate *in futuro* (see paras 4.28 and 4.36 below), the waivor is forgoing its remedies where the waivee proffers different performance at the later date.

[48] [1981] 1 Lloyd's Rep 359.

[49] At 368 col 2–369 col 2 per Mustill J. See the discussion as to whether a waiver irrevocably changes the terms of the contract at para 5.02 below.

[50] [1971] AC 850.

40

## B. Definition

which debars a person from raising a particular defence to a claim against him arises when he either agrees with the claimant not to raise that defence or so conducts himself as to be estopped from raising it . . . The ordinary principles of estoppel apply to it.[51]

*Kammins* was applied in *Motor Oil Hellas (Corinth) Refineries SA v Shipping Corporation of India ('The Kanchenjunga').*[52] There, Lord Goff relied on *Kammins* in discussing the principles underlying the doctrine of 'election'[53] and stated:

Election is to be contrasted with equitable estoppel . . . There is an important similarity between the two principles, election and equitable estoppel, in that each requires an unequivocal representation, perhaps because each may involve a loss, permanent or temporary, of the relevant party's rights. But there are important differences as well. In the context of a contract, the principle of election applies when a state of affairs comes into existence in which one party becomes entitled to exercise a right, and has to choose whether to exercise the right or not. His election has generally to be an informed choice, made with the knowledge of the facts giving rise to the right. His election once made is final; it is not dependent upon reliance on it by the other party. On the other hand, equitable estoppel requires an unequivocal representation by one party that he will not insist upon his legal rights against the other party, and such reliance by the representee as will render it inequitable for the representor to go back upon his representation. No question arises of any particular knowledge on the part of the representor, and the estoppel may be suspensory only. Furthermore, the representation itself is different in character in the two cases. The party making his election is communicating his choice whether or not to exercise a right which has become available to him. The party to an equitable estoppel is representing that he will not in future enforce his legal rights. His representation is therefore in the nature of a promise which, though unsupported by consideration, can have legal consequences; hence it is sometimes referred to as promissory estoppel.[54]

It follows that there is powerful authority for contrasting waiver, in the sense of waiver by election, with all forms of 'estoppel' creating a simple twofold categorisation. However, on balance, we would suggest that although there are links between the second type of waiver enunciated by Lord Goff and estoppel, it would be wrong to suggest that this second type of waiver is merely an estoppel. It is submitted that, although a simple twofold classification may lead to a unified theory of estoppel, a concept at present unknown to the common law,[55] 'estoppel' proper can be distinguished from all types of waiver[56] by reference to the basic

**3.12**

---

[51] At 882H–883D.
[52] [1990] 1 Lloyd's Rep 391.
[53] See Chapter 6, *passim* below.
[54] *Motor Oil Hellas (Corinth) Refineries SA v Shipping Corporation of India ('The Kanchenjunga')* [1990] 1 Lloyd's Rep 391 at 399 col 2 per Lord Goff; more recently *HIH Casualty and General Insurance Ltd v Axa Corporate Solutions & ors* (Comm Ct, 21 December 2001) per Jules Sher QC at 11–12. For a discussion of the relationship between the two cases see para 4.06 below.
[55] See paras 7.09 ff below.
[56] Including this second type.

41

*Chapter 3: Waiver (I)—Terminology*

principles underlying the doctrine, key to which is the question of knowledge.[57] Thus:

> When its true foundations are stated, it will be seen that estoppel is separated from waiver in point of principle by a very broad line of demarcation. First of all, the law of estoppel looks chiefly at the situation of the person relying on the estoppel; next, as a consequence of the first, the knowledge of the person sought to be estopped is immaterial; thirdly as a further consequence, it is not essential that the person sought to be estopped should have acted with any intention to deceive; fourthly conduct short of positive acts is sufficient.[58]

**3.13**   Other distinctions can be drawn. An estoppel may operate where the parties are not in a contractual relationship.[59] As set out below, it is clear that waiver in all senses involves the abnegation of contractual rights and therefore can only come into play where there is a contract between the parties. Further, it is possible for a party to claim that the other is estopped by silence or inaction where the other was under a duty to inform that party of certain facts and did not.[60] As set out below,[61] waiver in any form requires a clear unequivocal representation by words or conduct, silence or inaction do not suffice. Finally, a claim in estoppel may permit equity to intervene on other grounds to assist the party raising the estoppel.[62] A claim in waiver will succeed or fall on its own terms and does not lead to the general intervention of equity. We would therefore suggest that waiver is certainly to be distinguished from variation and, albeit with more difficulty, from estoppel.

### *(2) The process of inclusion*

**3.14**   The Courts have utilised two broad categories of 'waiver'.[63] The first, we would suggest, is waiver in the proper sense of the word. The second is a doctrine, Lord Goff's second type of waiver, which is a hybrid having elements in common with waiver and estoppel proper but capable of distinction from both. Given the con-

---

[57] See *Shell Oil UK Ltd v Enterprise Oil Plc* [1999] 2 Lloyd's Rep 456 at 478 col 2–479 col 2; paras 149; 153 per Lloyd J; *HIH Casualty and General Insurance Ltd v Axa Corporate Solutions & ors* (Comm Ct, 21 December 2001) per Jules Sher QC at 11–12.
[58] *Craine v Colonial Mutual Fire Insurance Co* (1920) 28 CLR 305 at 327 per Isaacs J.
[59] See *Evenden v Guildford City FC* [1975] QB 917 at 924B–C per Denning MR; *Waltons Stores (Interstate) Ltd v Maher* (1988) 164 CLR 387 at 399–406 per Deane J; *The Commonwealth of Australia v Verwayn* (1990) 170 CLR 394 at 410 per Mason CJ.
[60] See *Pacol Ltd & ors v Trade Lines and R/I Sif TV ('The Henrik Sif')* [1982] 1 Lloyd's Rep 456 at 465 col 2 per Webster J.
[61] See paras 4.07 ff below.
[62] See *BICC v Burndy* [1985] Ch 232 at 253B–C per Kerr LJ.
[63] See also *HIH Casualty and General Insurance Ltd v Axa Corporate Solutions & Ors* (Comm Ct, 21 December 2001) per Jules Sher QC at 11–12; *State Trading Corporation of India v Compagnie Francaise d'Importation et de Distribution* [1983] 2 Lloyd's Rep 679 at 681 col 2 per Lloyd J; *Telfair Shipping Corporation v Athos Shipping Co SA* [1981] 2 Lloyds Rep 74 at 87 col 2–88 col 2 per Neill J; [1983] 1 Lloyd's Rep 127 (CA) at 134 col 2 per Kerr LJ; *Craine v Colonial Mutual Fire Insurance Co* (1920) 28 CLR 305 at 326 per Isaacs J.

42

*B. Definition*

cept's hybrid nature, we would suggest that this second category be termed equitable forbearance.[64] Rights are forgone generating the forbearance. Equity intervenes because the other party has relied on that forbearance.[65]

Waiver in the true sense of the word can be crudely described as 'a voluntary or intentional[66] relinquishment of a known right,[67] claim or privilege'.[68] Put bluntly, waiver is an informed choice manifested in unequivocal conduct.[69] On a more complex level, we would suggest that there are four types of waiver.[70] The first and main type is waiver by election. There are three additional types of waiver which can be best described by the situations in which the Courts have found that there has been a waiver: where X has not been put to its election but nevertheless decides to accept different future performance by Y under the contract ('pure waiver'),[71] where Y has failed to perform its obligations under the contract and X accepts that non-performance as proper performance under the contract forgoing X's right to repudiate and to sue for damages ('total waiver'),[72] and X's forgoing of a right under the contract which inured solely for X's benefit ('unilateral waiver').[73] **3.15**

Adopting this categorisation has four main benefits. First, it enables distinctions to be drawn between the type of defective performance being excused.[74] Second, it allows for analysis of the extent to which the waivor's remedies are lost.[75] Third, by outlining four related categories of waiver and one of equitable forbearance, it draws a broad distinction between those cases where there is reliance by one party on the other's actions and those where there is not. The latter, cases in which the Courts have examined the conduct and knowledge of one party alone, are examples of the four related categories of waiver and not examples of equitable forbearance. **3.16**

---

[64] See Treitel 1 at 100 ff; Birks II 8.5.1 and paras 4.39 ff below. However, a full analysis of equitable forbearance falls outwith the scope of this chapter and is dealt with in Chapter 8.

[65] See Hudson 1.255.

[66] As to the broad requirement of knowledge or intention—see *Purmasing v National Transport Corp (Mauritius)* [1998] UKPC 50 (HL, 9 December 1998) at paras 13–14; *Oliver Ashworth (Holdings) Ltd v Ballard (Kent) Ltd* [2000] Ch 12 [1999] EWCA Civ 1027 at para 37 per Robert Walker LJ.

[67] The rights forgone can be legal or equitable—see J Glover, *Commercial Equity: Fiduciary Relationships* (Butterworths, Sydney, 1995) at 3.29–30, pp 46–7.

[68] See *Northwestern Fire & Marine Insurance Co v Pollard* 238 P 594 at 596 (1925); *Hoxie v Howe Insurance Co* 32 Conn 21 (1864); *Clark v West* 193 NY 349 (1908).

[69] See *Insurance Corporation Channel Islands v The Royal Hotel Ltd* [1998] LRLR 151 at 162 col 2 per Mance J as he then was.

[70] Common and essential to all is the need for an unequivocal representation—*Keller Ltd (T/A Concrete) v Morrison Construction Ltd* [1998] EWCA 161 (CA, 14 January 1998) at paras 36–7 per Hobhouse LJ.

[71] As to which see paras 4.28 ff below.

[72] See paras 4.30 ff below.

[73] See paras 4.36 ff below.

[74] Whether past or future.

[75] Total waiver as opposed to waiver by election and pure waiver.

43

Fourth, whilst it might be said that the practical results of the application of any of the doctrines will be the same, a party loses its rights, the position is clarified so that a party wishing to avoid losing its rights may be able to moderate its actions to achieve that end.[76]

---

[76] There is powerful support for this taxonomic approach—see eg Treitel 1 at 752—albeit that it renders extremely difficult the formulation of any overarching theoretical exegesis of the doctrines.

44

# 4

## WAIVER (II)—TYPES OF WAIVER AND THEIR ELEMENTS

| | | | |
|---|---|---|---|
| A. Waiver by Election | 4.01 | D. Unilateral Waiver | 4.36 |
| (1) Elements of waiver by election | 4.02 | E. Equitable Forbearance | 4.39 |
| (2) Examples of waiver by election | 4.27 | F. Elements Common to All Forms of Waiver | 4.45 |
| B. Pure Waiver | 4.28 | | |
| C. Total Waiver | 4.30 | G. Practical Effect | 4.46 |

## A. Waiver by Election

In *Kammins Ballroom Co v Zenith Investments*,[1] Lord Diplock stated that the fundamental requirement of waiver by election is that X, the party alleged to have waived a right,[2] has made an election in the sense that:     **4.01**

> where a party in his own mind has thought that he would choose one of two remedies, even though he has written it down in a memorandum or has indicated it in some other way, that alone will not bind him; but so soon as he has not only determined to follow one of his remedies but has communicated it to the other side in such a way as to lead the opposite party to believe that he has made that choice, he has completed his election and can go no further; and whether he intended it or not, if he has done an unequivocal act—I mean an act which would be justifiable if he had elected one way and would not be justifiable if he had elected another way—the fact of his having done that unequivocal act to the knowledge of the persons concerned is an election.[3]

Thus, there is an immediate and intimate link between election[4] and waiver[5] so that 'The consequence of the election, if established, is the abandonment, ie the

---

[1] [1971] AC 850.

[2] For the purposes of the analysis in this chapter we refer at all times to the party who is waiving the right as X and the other party to the contract as Y.

[3] *Scarf v Jardine* (1882) 7 App Cas 345 at 360–1 per Lord Blackburn.

[4] Election in the sense used by us encompasses equitable and common law election—see para 6.04 below.

[5] See *Van Schalkwyk v Griesel* (1948) (1) SA 460 at 463 per Tindall JA; *contra Ex p Sussen* 1941 TPD 15 at 20 per Murray J.

waiver, of a right'.[6] As with election,[7] the primary function of waiver by election is
to prevent there being inconsistency in the manner in which a party to a contract
asserts its rights and thereby ensure that X does not 'approbate and reprobate' the
contract.[8] Similarly, waiver by election is a reaction on the part of X to non-
contractual performance by Y; that is to previously defective performance by Y
under the contract.[9] As a result of the waiver by election, X's choice of future reme-
dies arising from the default will be curtailed; X will not be allowed to repudiate
the contract.[10] Therefore, this type of waiver:

> applies to an election as to something in futuro; it is not a term to describe an answer
> to a right which is complete in praesenti.[11]

It follows that waiver by election cannot affect X's complete and accrued right to
damages.[12] This link forms the basis of our analysis of the requisite elements of a
waiver by election.

### (1) Elements of waiver by election

4.02    The leading analysis of waiver by election is that of Lord Goff in *Motor Oil Hellas
(Corinth) Refineries SA v Shipping Corporation of India ('The Kanchenjunga').*[13] In
*The Kanchenjunga,* the owners chartered the vessel *The Kanchenjunga* for four
consecutive voyages under a charter party dated 8 August 1978. The charter was
subject to a warranty given by the charterers as to the safety of any port which the
vessel might visit. The charterers then sub-chartered the vessel to Varnima
Chartering Compania Naviera SA. The sub-charterers on 19 November 1980
sub-sub-chartered the vessel for one voyage from one of two safe ports to Refineria
de Petroleos del Norte SA (Petronor). One of the nominated safe ports was Kharg
Island in the Gulf. On 20 November, the charterers ordered the vessel to Kharg,
the order being repeated on 21 November. At the time, however, due to the
Iran–Iraq war, Kharg Island had been bombed on more than one occasion by Iraq.
Therefore Kharg Island was arguably not a safe port. On 21 November, the own-
ers instructed the vessel to proceed to Kharg Island and it arrived on 23 November

---

[6]   *China National Foreign Trade Transportation Corporation v Evlogia Shipping Co SA of Panama*
[1979] 1 WLR 1018 at 1034H per Lord Scarman. See also *Tucker v Angus Healthcare (Glenesk) Ltd*
[2001] ScotCS 6 (Ct Sess, 12 January 2001) at para 11.
[7]   As to which see *Commonwealth of Australia v Verwayn, supra* at 423 per Brennan J.
[8]   See *Craine v Colonial Mutual Fire Insurance Co* (1920) 28 CLR 305 at 320 per Isaacs J.
[9]   A distinction is therefore to be drawn between waiver by election which is retrospective and
pure waiver which waives the future performance of a particular obligation.
[10]   See *Enrico Furst & Co v WE Fischer Ltd* [1960] 2 Lloyd's Rep 340 at 349 col 2–350 col 1 per
Devlin J.
[11]   *Atlantic Shipping and Trading Co Ltd v Louis Dreyfus & Co* [1922] 2 AC 250 at 262 per Lord
Sumner.
[12]   This conclusion is also supported by logic—if X were to elect in a particular way (for instance
to accept the non-contractual performance as proper performance) X might forgo any right to dam-
ages that it might have.
[13]   [1990] 1 Lloyd's Rep 391.

*A. Waiver by Election*

———
ection is
contract
oate' the
to non-
ce by Y
te reme-
pudiate

nswer

right to
nts of a

*l Hellas
a*).[13] In
or four
ter was
iich the
arnima
r 1980
efineria
Kharg
Kharg,
to the
y Iraq.
e own-
ember

*Panama
esk) Ltd*

J.
tive and
l 1 per
er Lord
nstance
to dam-

giving notice of readiness to load on that date. On 25 November, the owners ordered the vessel away from Kharg Island on the basis that Kharg Island was not a safe port. This was the first indication by the owners that they did not consider the nominated port to be safe and that the safe port warranty in the main charter party had not been complied with. However, the vessel remained where it was. By 1 December, the vessel still had not reached its berth at Kharg Island and Kharg Island was bombed. The master of the vessel then took the vessel away from Kharg Island. The owners then called on the charterers to nominate another safe port but the charterers insisted on Kharg Island. The owners then instructed the vessel to return to Kharg Island and the master refused. As a result there was a failure to load the vessel and the charterers suffered loss and damage.

The dispute proceeded to arbitration where the arbitrators found that Kharg   **4.03**
Island could not at any time be said to have been a safe port. Therefore the char-
terers, in theory, had acted in breach of contract in nominating Kharg Island and
insisting that *The Kanchenjunga* berth at Kharg Island. That finding of the arbit-
rators therefore inevitably led to a consideration of whether the owners' conduct
constituted an election or estoppel. The arbitrators rejected the charterers' argu-
ment that there had been an election or estoppel and the charterers appealed, the
case eventually reaching the House of Lords.

Lord Goff found that there had been an election on the part of the owners by their   **4.04**
instruction to the vessel to proceed to Kharg Island. He analysed the position as
follows:

> 'waiver' . . . may refer to a forbearance from exercising a right or to an abandonment
> of a right. Here we are concerned with waiver in the sense of abandonment of a right
> which arises by virtue of the party making the election. Election itself is a concept
> which may be relevant in more than one context. In the present case, we are con-
> cerned with an election which may arise in the context of a binding contract, when a
> state of affairs comes into existence in which one party becomes entitled, either
> under the terms of the contract or by the general law, to exercise a right, and he has
> to decide whether or not to do so. His decision, being a matter of choice for him, is
> called in law an election. . . . Characteristically, the effect of the new situation is that
> a party becomes entitled to determine or to rescind the contract, or to reject an
> uncontractual tender of performance; but, in theory at least, a less drastic course of
> action might become available to him, under the terms of the contract. In all cases,
> he has in the end to make his election, not as a matter of obligation, but in the sense
> that, if he does not do so, the time may come when the law takes the decision out of
> his hands, either by holding him to have elected not to exercise the right which has
> become available to him, or sometimes by holding him to have elected to exercise it
> . . . In particular, where with knowledge of the relevant facts a party has acted in a
> manner which is consistent only with his having chosen one of the two alternative
> and inconsistent courses of action then open to him—for example, to determine a
> contract or alternatively to affirm it—he is held to have made his election accord-
> ingly . . . It can be communicated to the other party by words or conduct; though,
> perhaps because a party who elects not to exercise a right which has become available

47

*Chapter 4:  Waiver (II)—Types of Waiver*

to him is abandoning that right, he will only be held to have done so if he has so communicated his election to the other party in clear and unequivocal terms . . . Once an election is made, however, it is final and binding . . . Moreover, it does not require consideration to support it, and so it is to be distinguished from an express or implied agreement, such as a variation of the relevant contract, which traditionally requires consideration to render it binding in English law.[14]

**4.05**   Lord Goff made one additional point; he stressed that a waiver by election could only properly exist where X at least had knowledge of the facts giving rise to his choice.[15] It follows that two elements must be present for there to be a waiver by election: an unequivocal representation by X in relation to the right allegedly being waived and at least knowledge by X of the facts which show that it has to choose between two inconsistent courses of conduct.

**4.06**   It has been suggested[16] that Lord Goff's analysis differs from that of Lord Diplock in *Kammins*. On one level Lord Diplock distinguishes between waiver and estoppel by pointing out that waiver is the choice between rights whereas estoppel is the loss of a defence.[17] Lord Goff, on the other hand, may be said to distinguish between waiver and estoppel by reference to the breaches which have led to the rights which X is allegedly losing. Waiver relates to past breaches; estoppel to the excusing of future non-performance. The difficulty with this analysis is that it reduces all forms of waiver to waiver by election; that is, to X's reaction to a past repudiatory breach. Further, complications in the relationship between waiver and estoppel are created. If waiver only relates to past breaches and a waiver takes place, it becomes impossible for there to be a waiver and an estoppel arising from the same facts; X's rights will be altered by the waiver and there will be nothing for an alleged estoppel to bite on.[18] However, it appears that a waiver can lead to an estoppel.[19] One way of resolving this difficulty is to distinguish between waiver and estoppel by reference to the fact that estoppel is based on the actual or potential detriment suffered by Y.[20] In this way the elements of the relevant doctrines are examined and potentially difficult questions of the relationship between the loss

---

[14]   At 397 col 2–398 col 2.

[15]   At 398 col 2–399 col 1.

[16]   See Clarke 26-4A2 for this analysis.

[17]   See *The Athos* [1981] 2 Lloyd's Rep 74 at 87–8 per Neil J; *Cia Tirrena di Assicurazioni SpA v Grand Union Insurance Co* [1991] 2 Lloyd's Rep 143 at 153 per Waller J compared with *The Scaptrade* [1983] QB 529 at 536 per Goff LJ; *Janred Properties Ltd v ENIT* [1989] 2 All ER 444.

[18]   A similar difficulty may arise if waiver is confined to an accepting of different future performance as again it is X's rights arising from Y's change of position which are being waived—see Stoljar, 'The Modification of Contracts' (1957) 35 *Canadian Bar Review* 485 at 491; compare 3 Corbin on Contracts (1951) s 752.

[19]   See eg *Ficom SA v Sociedad Cadex Limitada* [1980] 2 Lloyd's Rep 118 at 132 col 2 per Goff J. Further, a waiver or estoppel may arise from the same facts allowing one claim to succeed and the other to fail—see *Commonwealth of Australia v Antonio Giorgio Pty Ltd* (1986) 67 ALR 244.

[20]   That is the analysis in *Craine v Colonial Mutual Fire Insurance Co* (1920) 28 CLR 305 at 326 per Isaacs J.

48

*A. Waiver by Election*

of rights and the loss of defences are avoided. Further, it is suggested that, on this level, there is no inconsistency between Lord Diplock and Lord Goff.

**Unequivocal representation**

An election must be communicated or conveyed[21] to the other party,[22] therefore X's waiver by election must also must be communicated to Y. Further, as election is an unequivocal act, the communication must be unequivocal.[23] However, X's waiver does not have to be orally communicated, provided that there has been an election,[24] a waiver by election can be implied from X's conduct. Thus:

> A party can represent that he will not enforce a specific legal right by words or conduct. He can say so expressly—this of course he can only do if he is aware of the right. Alternatively he can adopt a course of conduct which is inconsistent with the exercise of that right. Such a course of conduct will only constitute a representation that he will not exercise the right if the circumstances are such to suggest either that he was aware of the right when he embarked on the course of conduct inconsistent with it or that he was content to abandon any rights that he might enjoy which were inconsistent with that course of conduct.[25]

4.08  It is important to note that even though a waiver may be spelt out from conduct, that conduct must be unequivocal in the true sense of the word.[26] The conduct must be capable of one construction only, namely that X has chosen to forgo its rights.[27] Thus, examples of unequivocal conduct will include: agreeing in advance

---

21  *Vitol SA v Norelf Ltd* [1996] 3 WLR 105 at 113B–114E per Lord Steyn.

22  See para 6.05 below and cases there cited. See also *David Blackstone v Burnetts (West End) Ltd* [1973] 1 WLR 1487 at 1499C per Swanwick J; *Sargent v ASL Developments Ltd* (1974) 131 CLR 634 at 656 per Mason J; *Newbon v City Mutual Life Assurance Society Ltd* (1935) 52 CLR 723 at 733 per Rich, Dixon, Evatt JJ; *Khoury v Government Insurance Office of NSW* (1984) 165 CLR 622 at 633 per the Court; *Zucker v Straightlace Pty Ltd* (1986) 11 NSWLR 87 at 94F–96E per Young J.

23  See *Finagrain SA Geneva v P Kruse Hamburg* [1976] 2 Lloyd's Rep 508 at 534 col 1 per Megaw LJ; *Mardorf Peach & Co Ltd v Attica Sea Carriers Corp of Liberia* [1977] AC 850 at 871C per Lord Wilberforce; *Bremer Handelsgesellschaft v C Mackprang Jr* [1979] 1 Lloyd's Rep 221 at 228 col 2 per Stephenson LJ; *Avimex SA v Dewulf & Cie* [1979] 2 Lloyd's Rep 57 at 67 col 2–68 col 1 per Goff J; *Sea Calm Co SA v Chantiers Navals de L'Esterel SA ('The Uhenbels')* [1986] 2 Lloyd's Rep 294 at 298 col 1 per Hirst J. See also *Berry v Hodsdon* [1989] 1 Qd R 361 at 365 per Derrington J; *Hawler Pacific Pty Ltd v Helicopter Charter Pty Ltd* (1991) 22 NSWLR 298 at 304 per Priestley JA; *Spelson v George* (1992) 22 NSWLR 666 at 672 per Handley JA; *Hamar & Lockville Trustees Ltd v French* [1997] EWCA 1121 (CA, 18 March 1997) at para 57 per Millet LJ; *Keller Ltd (T/A Keller Concrete) v Morrison Construction Ltd* [1998] EWCA 161 (CA, 14 January 1998) at paras 36–7 per Hobhouse LJ.

24  *Tropical Traders Ltd v Goonan* (1964) 111 CLR 41 at 55 per Kitto J.

25  *Youell & ors v Bland Welch & Co Ltd & ors ('The "Superhulls Cover" Case') (No 2)* [1990] 2 Lloyd's Rep 431 at 450 col 1 per Phillips J; see also *Bremer Handelsgesellschaft mbH v Westzucker GmbH* [1981] 1 Lloyd's Rep 207 at 212 col 2 per Goff J; *Cerealmangimi SpA v Toepfer ('The Eurometal')* [1981] 1 Lloyd's Rep 337 at 341 col 2 per Lloyd J.

26  See *Keller Ltd (T/A Keller Concrete) v Morrison Construction Ltd* [1998] EWCA 161 (CA, 14 January 1998) at paras 36–7 per Hobhouse LJ (as he then was)..

27  The proposition was explicitly approved in *Christiansen v Klepac* [2001] NSWSC 385 (20 April 2001) at para 18. See also *Tropical Traders Ltd v Goonan* (1964) 111 CLR 41 at 55; *Sargent v ASL Developments Pty Ltd* (1974) 131 CLR 634 and *Immer (No 145) Pty Ltd v Uniting Church in*

49

*Chapter 4: Waiver (II)—Types of Waiver*

that X will not exercise specific rights which might accrue on breach;[28] an insistence after breach that Y continue to perform the contract;[29] X's voluntary[30] acceptance after breach of benefits arising from the contract;[31] commencing an action for specific performance only;[32] and obtaining an order for specific performance.[33] By parity of reasoning, claiming damages and specific performance in the alternative[34] or requesting that Y perform the contract pending X's review of Y's conduct[35] are not sufficiently unequivocal.

4.09   Two difficulties arise: whether silence or delay can amount to a waiver and whether X's reservation of its rights will in all cases protect it from a finding that it has waived its rights.

*Silence or delay*

4.10   There is authority to suggest that silence, delay or a failure to act can constitute a sufficiently unequivocal representation so as to found waiver.[36] However, in both

---

*Australia Property Trust (NSW)* (1993) 182 CLR 26. The fact that the unequivocal representation must only be capable of one construction cuts both ways. Thus, in *The Mayor and Commonalty and Citizens of the City of London v (1) Reeve & Co Ltd; (2) G Lawrence Wholesale Meat Co Ltd; (3) Citigen (London) Ltd* [2000] BLR 211, Part 20 proceedings were barred by the waiver clause previously entered into by the parties.

[28]   Thus, eg, X can by prior agreement waive any rights accruing from a breach of fiduciary duty by Y—see J Glover, *Commercial Equity: Fiduciary Relationships* (Butterworths, Sydney, 1995) paras 3.29–3.30, pp 46–7.

[29]   See *Trustees of Henry Smith's Charity v Wilson* [1983] QB 316 at 331 per Slade LJ; and also *O'Connor v SP Bray Ltd* (1936) 36 SR (NSW) 248 at 261 per Jordan CJ; *Holland v Wiltshire* (1954) 90 CLR 409.

[30]   See *Metcalfe v Britannia Ironworks Co* (1877) 2 QBD 423 at 427 per Lord Coleridge CJ; *Forman & Co Pty Ltd v The Ship Liddesdale* [1900] AC 190 at 204 per Lord Hobhouse.

[31]   See *Davenport v R* (1877) 3 App Cas 115; *R v Paulson* [1921] 1 AC 271 at 286 per Lord Atkinson; *Fuller's Theatre v Musgrove* (1923) 31 CLR 524 at 541 per Isaacs and Rich JJ; *Mulcahy v Hoyne* (1925) 26 CLR 41 at 57 per Starke J; *Wendt v Bruce* (1931) 45 CLR 245; *Tropical Traders Ltd v Goonan* (1964) 111 CLR 41 at 42 per Kitto J; *Sargent v ASL Developments Ltd* (1974) 131 CLR 634; *Expert Clothing Service & Sales Ltd v Hillgate House Pty Ltd* [1986] Ch 340 at 359D per Slade LJ.

[32]   *Ogle v Comboyuro Investments Pty Ltd* (1976) 136 CLR 444. The claim must be for specific performance alone, ie not for specific performance and damages in lieu.

[33]   See *Johnson v Agnew* [1980] AC 367.

[34]   The obvious factual overlap between the remedy of specific performance and the right to treat the contract as at an end collapses the distinction normally drawn between election between remedies and election between rights—see *Oliver Ashworth (Holdings) Ltd v Ballard Kent Ltd* [2000] Ch 12, [1999] EWCA Civ 1027 (CA, 18 March 1999) at para 36 per Robert Walker LJ. As to the need to draw the distinction between election between rights and election between remedies, see *United Australia v Barclays Bank* [1941] AC 1 at 29–30 per Lord Atkin; *Johnson v Agnew* [1980] AC 367 at 396 per Lord Wilberforce and *Tang Man Sit v Capacious Investments* [1996] 514 at 521–2 per Lord Nicholls (contrast, however, *China National Foreign Trade Transportation v Evlogia Shipping* [1979] 1 WLR 1018 at 1043 per Lord Scarman; *The Kanchenjunga* [1990] 1 Lloyd's Rep 391 at 398 per Lord Goff).

[35]   See para 21.46 below esp n 128.

[36]   See *Allen v Robles* [1969] 1 WLR 1193 at 1196G–H per Fenton-Atkinson LJ; *Wahbe Tamari & Sons and Jaffa Trading Co v Colprogeca-Sociedade General de Fibras, Cafes e Produtos Colonias Lda* [1969] 2 Lloyd's Rep 18 at 23 col 1 per Megaw J.

50

*Chapter 19:  Construction Law*

and deduced from the difference that the parties no longer intended to be bound by the original or any contract. We would suggest that such a process of comparison generates confusion between qualitative changes[32] with quantative changes.[33] Thus, for example, *Pepper* does not assist the Court in deciding whether or not a given change abnegates the contract. Conceptually, it is difficult to see how a consensual variation, which constitutes a new agreement,[34] can destroy all contractual relations between the parties. We would therefore suggest that the better approach would be for the Court to consider whether the elements of variation set out above have been complied with and then ascertain which terms of the contract have been moderated and to what extent. If, on analysis, the new agreement operated as a consensual discharge of all obligations under the contract with one party continuing to perform, then it would be appropriate to adopt restitutionary principles to ascertain the extent of that party's recovery.

## C.  Waiver

**19.13**   In considering waiver in this context, care must be taken as it is common for standard form construction contracts to contain express provisions as to when and in what circumstances a party will be taken to have waived its rights.[35] However, absent express provision, the various types of waiver, as defined above,[36] apply equally to construction law.[37] Thus, rights accruing from a non-compliance with agreed mechanisms governing the formation of contracts[38] or the approval or certification of variations[39] are capable of being waived. In the former case, the waiver loses the right to argue that there was no concluded contract and in the latter the right to contest payment where the works had not been certified as per the contract.[40] Similarly, the employer can waive its rights to repudiate the contract for late completion of the works[41] and, in extreme cases, its right to claim liquidated damages for the late completion of the works.[42] All such waivers can be categorised

---

[32] That is the importance that may attach to a change to any one obligation.
[33] That is the number of obligations which have changed.
[34] Which occurs in all variations—see para 2.38 above.
[35] As with other non-waiver or entire agreement clauses, a non-waiver clause in this context may be bypassed—see *Deepak Fertilisers and Petrochemical Corp v ICI Chemicals & Polymers Ltd* [1999] 1 Lloyd's Rep 387; *I-Way Ltd v World Online Telecom Ltd* [2002] EWCA Civ 413 at paras 11 ff.
[36] See Chapter 4, *passim*.
[37] However, see Hudson 1.255 where the author appears to suggest that for there to be a waiver there must be a change of position on the part of the representee.
[38] *MR Hornibrook v Eric Newham* (1971) 45 AJLR 523.
[39] *Meyer v Gilman* (1899) 18 NZLR 129.
[40] Indeed, a Court may well readily find that the employer is precluded from relying on non-compliance with the contractual mechanism for approving variations as a defence to a claim by the contractor for monies arising from those variations—see Hudson 7.042.
[41] See Hudson 9.012.
[42] *Thornhill v Neats* (1860) 8 CB NS 831.

### C. Waiver

either as pure waivers or waivers by election. In each case the elements of an unequivocal representation coupled with knowledge must be made out.[43] However, care must be taken in two respects—whether rights accruing from defective works can be waived by mere inspection on the part of the employer's architect or engineer; and whether a particular breach of contract is continuing.

### (1) Waiver of defects

It is standard practice for the works to be inspected and certified by the employer's **19.14** architect or engineer. That process of inspection has led defaulting contractors (or their sureties and bondsmen) to argue that any defective works are waived by that inspection. Whilst there can be little doubt[44] that the act of certification would count as the necessary unequivocal representation,[45] whether or not the architect or engineer has the authority to waive defects or the requisite knowledge are more difficult. We would suggest that the architect or engineer has neither.

As far as authority is concerned, it is clear that the architect or engineer is **19.15** appointed to supervise the works on the employer's behalf. Although it is possible that an employer could expressly authorise its architect or engineer to waive defects on its behalf, such a widely-ranging express authority is unlikely.[46] If there is no express authority, the contractor will be forced to argue that the architect or engineer had ostensible authority to waive defects in the works. The weakness of that argument is that the architect or engineer is appointed to ensure that only the employer's interests are protected. The architect or engineer cannot instruct the builder how to carry out its works,[47] nor does it owe an obligation to the contractor to inform it that its works are defective.[48] Thus, by parity of reasoning, the architect's or engineer's authority is limited and does not extend to confer the benefit of its expertise on the contractor.[49] The builder will normally be aware of that fact. Thus any representation as to the nature of the works which confers the benefit of that expertise on the contractor will not be supported by ostensible

[43] See *Mitsui Babcock Ltd v John Brown Engineering Ltd* (1997) 51 Con LR 129 at 185 ff per HHJ Esyr Lewis QC.
[44] Absent express agreement to the contrary.
[45] See para 4.08 above for analogous examples.
[46] The position is different where the engineer/architect is explicitly contractually authorised and mandated to issue a certificate of practical completion. There, certification will be taken to be conclusive of the contractor's performance.
[47] See *Clayton v Woodman & Son Ltd* [1962] 1 WLR 585.
[48] See Hudson 5.021; *AMF International Ltd v Magnet Bowling* [1968] 1 WLR 1028 at 1053 per Mocatta J. Thus the fact that the architect or engineer fails to notice defective works and is thereby in breach of its obligations to the employer cannot confer the benefit on the contractor of exempting that contractor from liability: *East Ham Corporation Council v Bernard Sunley* [1966] AC 406 at 444 per Lord Reid.
[49] It is to be noted that the limit on the architect's or engineer's authority arises more as a matter of policy than of strict legal analysis.