AMERICAN ARBITRATION ASSOCIATION
CONSTRUCTION INDUSTRY ARBITRATION RULES
-------------------------------------------------------------------X

LEEWARD CONSTRUCTION COMPANY, LTD.

                            Claimant,

        against

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE C/O GCLR, LLC,

                        Respondents.

-------------------------------------------------------------------X

**CLAIMANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS RESPONDENT'S COUNTERCLAIMS AND IN OPPOSITION TO RESPONDENT'S CROSS-MOTION FOR <u>SUMMARY JUDGMENT</u>**

Case No.: 50 110 T 00118 13

        Claimant, Leeward Construction Company, Ltd. ("Claimant" or "Leeward") submits this Reply in further support of its Motion for an order (a) dismissing the Respondent American University of Antigua -- College of Medicine's (the "AUA" or "Respondent") First Counterclaim for repayment of EC $3,614,552.41 in ABST; (b) dismissing the Respondent's Second Counterclaim for damages relating to certain alleged defective works performed by Leeward; and (c) for such other and further relief as the Tribunal may deem appropriate. This Reply is also submitted in opposition to the AUA's cross-motion to "strike the Claimant's stated defenses" and for summary judgment on its First Counterclaim. Leeward's Motion to Dismiss is submitted in accordance with the Tribunal's Procedural Order No. 1, dated July 19, 2013, as modified.[1]

        As an initial matter, Leeward notes that Procedural Order No. 1 provided that dispositive motions aimed at the rejection of claims asserted herein shall be made "by any reason not

---

[1] Leeward notes that its moving papers addressed, in depth, each issue presented by the pending motions. The purpose of this Reply is not to address each and every statement in the AUA's opposition papers but rather, to highlight specific points. The failure to specifically mention a specific statement herein does not mean that Leeward concedes the alleged fact or legal argument. Rather, in addition to this Reply, Leeward relies on its moving papers.

requiring the examination of any evidence other than documentary evidence submitted therewith." The AUA's submission goes beyond the scope of this order and includes, *inter alia*, hearsay statements in the Affirmation of Neal Simon, President of the AUA, dated November 12, 2013, in support of the AUA's cross-motion (the "Simon Affm."). *See* Simon Affm., ¶¶89-93. Mr. Simon also makes several unsubstantiated assertions concerning tax law matters that border on expert witness testimony for which no foundation has been provided. *See* Simon Affm., ¶39. The AUA also violated Procedural Order No. 1 by submitting a Witness Statement of Douglas James McLaren, dated November 4, 2013, in support of the AUA's cross-motion (the "McLaren Statement"), which contains misleading representations concerning the mechanics of the ABST Act. *See, e.g.,* McLaren Statement, ¶¶3, 6. Leeward respectfully requests that the Tribunal reject the AUA's submission to the extent it goes beyond the permissible scope of Procedural Order No. 1 and indeed, the rules of evidence.

## PRELIMINARY STATEMENT

1.        Both in its moving papers and herein, Leeward has established a right to dismissal of both the AUA's ABST Claim and Defective Work Claims. In opposition, the AUA argues out of both sides of its mouth that the ABST Claim is both not barred by the doctrine of *res judicata*, arises out of the very same Contract that was the subject of the Prior Arbitration and therefore, is subject to arbitration. (The AUA has failed to defend Leeward's argument that the Defective Work Claims are also barred by *res judicata*.) As the following illustrates, the AUA cannot have its cake and eat it too. If the ABST Claim (and also the Defective Work Claims) arises out of the Contract, then they are barred by the doctrine of *res judicata* because they could have and should have been raised in the Prior Arbitration. *See* Leeward's Motion to Dismiss, Point I(B) and II(A) and Point I(A), *infra*. If the AUA's ABST claim does not arise out of the Contract, then there is

no arbitration clause to cover the claim and, it is not subject to arbitration. *See* Leeward's Motion to Dismiss, Point I(E)(2) and Point I(B), *infra*. To the extent the ABST Claim ever existed and is not barred by *res judicata*, the AUA has waived it. *See* Point III, *infra*. In any case, the AUA's claims herein should be dismissed.

      2.     Aside from procedural and substantive issues implicated in the AUA's ABST Claim, the AUA has also failed to demonstrate that it has standing to bring the ABST Claim in the first instance. In support of its attempt to show that it does, the AUA has submitted the McLaren Statement. However, a close review of the McLaren Statement reveals that it does not support the AUA's assertions and in some instances, misleadingly describes the procedure for obtaining a credit note under Paragraph 34 of the ABST Act. *See* Point II, *infra*. A plain reading of the ABST Act does not support the AUA's claim that it can seek a monetary refund from Leeward for ABST properly paid under the Contract.

      3.     Finally, the AUA has waived its ability to bring any claims for defective work by its own actions. *See* Point IV, *infra*. In *toto*, the AUA has failed to articulate a defense to Leeward's motion to dismiss. It has also failed to demonstrate that it is entitled to summary judgment on its own claims. Accordingly, the Tribunal should grant Leeward's motion to dismiss the AUA's ABST Claim as well as its Defective Work Claims.

## POINT I

### LEEWARD IS ENTITLED TO DISMISSAL OF THE ABST CLAIM AND THE DEFECTIVE WORK CLAIMS

      4.     The Tribunal should dismiss the ABST Claim as well as the Defective Work Claims because (A) the claims are barred by the doctrine of *res judicata*; or (B) the claims do not arise under the Contract and as such, are not subject to arbitration. The AUA has failed to

3

articulate a basis to avoid dismissal on these grounds and therefore, Leeward is entitled to their dismissal.

### A. The AUA's Claims Are Barred by The Doctrine of *Res Judicata*.

5.     The most astounding part about the AUA's opposition to Leeward's motion is that it completely fails to contest Leeward's argument that the Defective Work Claims are barred by *res judicata* on the grounds that the AUA should have asserted the claims in the Prior Arbitration.  *See* Leeward Motion to Dismiss, Point II(A),¶¶77-83.  The AUA has admitted in this proceeding that it was aware of the Defective Work Claims prior to the commencement of the Prior Arbitration, but made a tactical decision not to raise them. (Exhibit 48)  The Tribunal should dismiss these claims because the AUA's silence on this issue is tantamount to its admission.

6.     Equally astounding is the AUA's total failure to address the fact that as of August 31, 2007, (Exhibit L to the AUA's opposition papers) the AUA knew that the Project was exempt from ABST requirements and that by November 17, 2009 the Antiguan Government had advised the AUA to seek refunds of ABST payments from its vendors (Exhibits 50, 59), but nevertheless failed to raise the ABST Claim in the Prior Arbitration.[2]  Most significantly, the AUA fails to address its internal December 11, 2009 email wherein the AUA apparently decided to recoup the ABST from the contract retainage owed to Leeward  "at the appropriate time," (Exhibit 63); yet failed to assert the ABST Claim in the Prior Arbitration, which was commenced in February, 2011.

---

[2] Leeward maintains that the Inland Revenue Department's November 17, 2009 statement to the AUA was incorrect as the ABST Act states that refunds must be sought from the Antiguan Government. *See* ABST Act, Part XI (2006), *as amended* (2008).  However, the statement is relevant to Leeward's *res judicata* argument as it evidences the date the AUA knew of its alleged ABST Claim. *See* Leeward's Motion to Dismiss, Point I(C); *see also* Point II *infra*.

7. Rather than address these issues, the AUA argues that the ABST Claim is not barred by *res judicata* because the "same evidence" and "facts essential" to the ABST Claim were not presented in the Prior Arbitration; the ABST Claim does not concern the "same transaction or connected series of transactions at issue;" and as silly as it sounds, Leeward's defense of *res judicata* is barred by the doctrine of *res judicata*. *See* AUA Memorandum of Law in Opposition to Leeward's Motion to Dismiss and in Support of its Motion for Summary Judgment ("AUA Memo of Law"), Point V, pp. 27-35. The AUA is wrong.

8. Under Antiguan law, *res judicata* applies to all "issues and points that properly belonged to the earlier litigation and which the earlier court would have out of necessity had to resolve had it been raised." *Mavis Henry v. Tyrone Warner*, Claim No. ANUHCV 2000/0277, Eastern Caribbean Supreme Court (2009) (citing *Henderson v Henderson*, 3 Hare 100, 114-115 (1943) [emphasis added]). In *Mavis Henry*, the parties were involved in a land dispute. A previous action between them resulted in a finding that the plaintiff had a 50% ownership interest in the subject parcel. The court held the defendant had no interest and restrained him from making any further improvements to the property. Thereafter, a second action was commenced between the parties concerning the same parcel. In the second action, the defendant attempted to assert, for the first time, an equitable interest in the parcel that he claimed pre-dated the first action. The court found his defense precluded by *res judicata* because he did not exercise "reasonable diligence" in asserting his claim within the prior proceeding. *See Id.*

9. The present case is very similar to *Mavis Henry*: The Prior Arbitration determined the amount that the AUA owes Leeward under the Contract; and in this proceeding, the AUA is for the first time seeking to prosecute claims that it knew about and could have asserted in the Prior Arbitration but did not, and which directly affects the Contract balance due to Leeward

from the AUA.  Just as the court in *Mavis Henry* found the defendant's defense was barred by res *judicata* because the defendant did not exercise "reasonable diligence" in asserting a claim that it could have asserted in the first action, so too should this Tribunal find that the AUA's claims herein are barred by *res judicata* because the AUA could have and should have exercised "reasonable diligence" in asserting its claim in the Prior Arbitration.

10.    The AUA's argument that the "same evidence" is not needed to support both claims, and that "facts essential" to the ABST Claim were not presented in the Prior Arbitration is irrelevant.  *See* AUA Memo of Law, p. 29.  The subject matter of the Prior Arbitration and this proceeding is the contract between the parties for the construction of the medical school.  The issue in the Prior Arbitration was the amount due and owing from the AUA to Leeward under the Contract.  To make this determination, the Tribunal in the Prior Arbitration would have necessarily had to address the AUA's ABST Claim if it had asserted the claim in the Prior Arbitration, to determine the amount due under the Contract.  Moreover, the only evidence and facts that are presented herein that were not within the Prior Arbitration are those in the AUA's sole possession (ie., internal AUA correspondence and communications between the AUA and the Inland Department of Revenue). (Exhibits 46; 50-65) The AUA would have and should have asserted the ABST Claim in the Prior Arbitration and thus, it is now barred.

11.    The same is true of the AUA's assertion that the ABST Claim does not concern the "same transaction or connected series of transactions at issue." *N.L.R.B. v. United Technologies*, 706 F.2d 1254, 1260 (2d Cir. 1988).  *See* AUA Memo of Law, p. 29.  The term "'transaction' is given a flexible, common sense construction that recognizes the reality of the situation." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997).  Here, the exact same transaction as was at issue within the Prior Arbitration – the Contract for the

construction of the medical school – and the exact same series of transactions that were at issue – the payment requisitions that Leeward submitted to the AUA - are in issue herein with regard to the ABST Claim. (Exhibit 1-30; 39)  As such, the ABST Claim is barred by *res judicata*.

12.     Further, the AUA's argument has confused *res judicata* (claim preclusion) with collateral estoppel (issue preclusion).  *See AUA Memo of Law*, p. 30 (citing *Berth Compton v. Dr. Christiana Nathaniel, et al.*, (Civil Appeal No. 12 of 2004), *HWR Wade & CF Forsyth*, Administrative Law (7th Edition), and *Alexander M. Fundora v. Nigel Hamilton-Smith*, (Claim Anu CHV 2009/0149)).  *Res judicata* (claim preclusion) is different from collateral estoppel (issue preclusion) in that *res judicata* requires a party to present their whole case concerning the same subject matter at the same time.  The doctrine precludes a party from asserting causes of action concerning the same subject matter in multiple litigations.  *See, e.g., Mavis Henry, supra.* By contrast, issue preclusion prevents a party from asserting an issue that was already decided by a court of competent jurisdiction against a party to the subsequent litigation.  *See Id.* (citing *Thoday v. Thoday* (1964) P. 181 (197-198)).  In the proceeding at hand, *res judicata* applies because the same parties have previously litigated the same subject matter – the amount due and owing from the AUA to Leeward under the Contract - in the Prior Arbitration.

13.     Finally, the AUA incorrectly argues that Leeward's defense of *res judicata* is barred by the doctrine of *res judicata*.  Not only is the AUA's argument incorrect, it confuses two different issues.  The AUA claims that the Prior Arbitration Tribunal denied Leeward's claim for the ABST mis-tabulation therein so as to preserve the "AUA's right to due process." (AUA Memo of Law, p. 27)  Thus, the AUA argues that Leeward is precluded from asserting the claim within this arbitration because it could have and should have asserted the claim within the Prior Arbitration.  Regardless of whether or not AUA's contention with regard to Leeward's

affirmative claim is true, it has absolutely nothing to do with whether or not Leeward is entitled to assert the **defense** of *res judicata* against the ABST Claim.

14.     The bottom line is this: If the AUA properly asserted the ABST Claim in the Prior Arbitration, an adjudication of the claim would have involved the same subject matter previously adjudicated: the scope of the Contract, the administration of the Contract, payments under the Contract, Leeward's performance under the Contract, and the amount due Leeward under the Contract.   In addition, the same series of transactions that were at issue within the Prior Arbitration are at issue within the ABST claim, namely the 27 payment requisitions that Leeward submitted to the AUA and the AUA reviewed, processed and paid, including the payment of ABST. (Exhibits 2 – 30) The same witnesses, evidence and facts are needed to support both the claims made within the Prior Arbitration and the ABST claim asserted by the AUA herein. *(See, e.g.,* Exhibits 1-8,-10-11, 13, 15-30, 47.)   The AUA knew about the ABST Claim at least 14 months prior to the commencement of the Prior Arbitration (Exhibit 60), but failed to assert the claim at its own peril.   It is barred from raising it herein by the doctrine of *res judicata*.

**B.  The ABST Claim And Part of The Defective Work Claims do Not Arise Under The Contract And Are Not Subject to Arbitration.**

15.     Assuming *arguendo*, that the AUA's claims herein are not barred by *res judicata*, as a threshold matter, they are only subject to arbitration if they arise out of the Contract.   The ABST Claim, premised on the November 17, 2009 correspondence from the Inland Revenue Department instructing the AUA to seek ABST refunds from its vendors, does not arise under the Contract and therefore, it is not subject to arbitration.   *See* Leeward Motion to Dismiss, Point I(E)(2), ¶¶71-74.   So too, the AUA's claim for defective window work does not arise under the Contract and is not subject to arbitration.   *See* Leeward Motion to Dismiss, Point II(C), ¶¶91-97.

In its opposition, the AUA fails to contest Leeward's claim that the defective window work does not arise under the Contract. The AUA's concession requires a dismissal of this claim.

16.     With regard to the ABST Claim, the AUA argues that the claim should be subject to arbitration because the Contract allows for the "assumption that the parties intended that all disputes that relate to the relationship between them should be submitted to arbitration." AUA Memo of Law, p. 6. The AUA's argument in this proceeding contradicts its position on the exact same issue in the Prior Arbitration. (Exhibit 38, ¶¶72-77)

17.     In the Prior Arbitration, the parties litigated the amount due from the AUA to Leeward under the Contract as well as certain additional work contracts. The additional work contracts covered work that had originally been part of the Contract's scope but the AUA deleted and put out for rebid in an effort to save money. Leeward was awarded several of these smaller contracts through a competitive bidding process. At the conclusion of the Project, the AUA owed Leeward monies on the additional work contracts as well as the Contract, itself. During the Prior Arbitration, the AUA argued that the additional work contracts were not subject to arbitration because they did not include arbitration clauses and did not fall within the four corners of the Contract. As such, the AUA claimed they were not subject to arbitration because as separate agreements the additional work contracts "did not arise out of or relate to the Contract." (Exhibit 38, ¶74)

18.     "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). This common law rule, known

as judicial estoppel, "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, (2000).  The purpose of judicial estoppel is "'to protect the integrity of the judicial process,' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

19.    Judicial estoppels applies where several factors are present, including: (1) a party's later position must be "clearly inconsistent" with its earlier position; (2) the party succeeded in persuading a court to accept its earlier position; and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *See New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001).

20.    Here, the AUA is invoking a "clearly inconsistent" position to the one it took in the Prior Arbitration.  (*See* AUA Memo of Law, p. 5-8; *compare with* Exhibit 38, ¶¶ 72-77.)  The AUA successfully persuaded the Prior Arbitration Tribunal to hold that the additional work contracts were outside the Tribunal's jurisdiction even though the work was originally part of the Contract. (Exhibit 39)  The AUA would derive an unfair advantage and would impose an unfair detriment to Leeward if it is not estopped herein because, under the standard cited by the AUA, the Prior Arbitration Tribunal should have made a decision on the claims relating to the additional works contracts as they clearly "relate to the relationship" between Leeward and the AUA.  The AUA is judicially estopped from asserting that the interpretation of "relate to" the Contract allows for the "assumption that the parties intended that all disputes that relate to the relationship between them should be submitted to arbitration." (AUA Memo of Law, p. 6)  Just like the additional work contracts, the ABST Claim does not "arise out of" the Contract, but the

ABST Act and the Inland Revenue Department's pronouncements and is not subject to arbitration herein.

21.     The arbitrability of Leeward's claim does not change this analysis.  Leeward is seeking a payment due under the Contract, not under the substantive laws of Antigua.  (Exhibit 38, p. 59, ¶78-80)  Leeward was only made aware of the claim by the AUA's attorney during the hearings in the Prior Arbitration.  (Exhibit 33, 72:4-73:2; Exhibit 39, p. 29-30)  By contrast, the AUA repeatedly acknowledges herein that as of August 31, 2007 it knew that it was not required to pay ABST on the Project.   Yet, it never provided Leeward with any documentation demonstrating its exemption (see, e.g., ABST Act, Part II, ¶8(8) (2006), as amended (2008)) and it continued to pay ABST to Leeward throughout the Project without protest because this same letter was "unclear" about whether the AUA had to pay ABST under the laws of Antigua. See AUA Memo of Law, p. 23-25; Simon Affm., ¶54.  Further, the AUA never presented the ABST Claim in the Prior Arbitration even though as of November 17, 2009, it knew that the Antiguan Government expected it to recoup its ABST loss from all of its vendors. (Exhibit 50)

22.     Finally, the AUA has failed to demonstrate that its claim for unjust enrichment arises under the Contract.  A claim for unjust enrichment is an equitable, restitution claim that is independent of any contract.  See Fibrosa Spolka Akcyina v. Fairbarin Lawson Combe Barbour Ltd, [1943] A.C 32, 61; Westdeutsche  Landesbank Girozentrade v. Islington London BC, [1996] 2 WLR 802(HL).  The AUA has not cited anything to the contrary.  The AUA's unjust enrichment claim does not arise under the Contract and is not subject to arbitration herein.

## POINT II

### THE AUA HAS FAILED TO ESTABLISH THAT IT HAS STANDING TO RECOVER FOR THE ABST CLAIM

23.     There is no provision in the ABST Act for a private right of enforcement.  The only mechanism by which the AUA can obtain a refund of ABST inadvertently or mistakenly paid to Leeward is to seek a refund from the Antiguan Government pursuant to the ABST Act.  *See, e.g.,* ABST Act, Part XVII, ¶44 (2006), *as amended* (2008).  Moreover, there is nothing in the ABST Act that requires a consumer to demonstrate that its supplier paid the ABST to the Antiguan Government in order for the consumer to obtain a refund.  *See generally* ABST Act (2006), *as amended* (2008).  If Leeward failed to remit ABST that it might owe to the Antiguan Government that it lawfully collected from the AUA, *see* ABST Act, Part II (2006), *as amended* (2008), then the only statutory remedy is for the Antiguan Government to commence enforcement proceedings against Leeward.  *See, e.g.,* ABST Act, Part XVI (2006), *as amended* (2008).  In the face of these statutory constraints, the AUA contends herein that it has standing to assert the ABST Claim based on hearsay statements and misleading advice from Douglas McLaren, an employee of the Department of Inland Revenue.

24.     First, the AUA relies upon the self-serving, unsubstantiated hearsay statement of Neal Simon, its president.  *See* AUA Memo of Law, p. 13-14; Simon Affm., ¶¶ 89-93.  In his affirmation Mr. Simon states: "Mr. McLaren explained *to AUA's counsel during his meetings with him*…that, because the Leeward has not filed tax returns…[the] Government would not, and could not, refund any of the sums that AUA paid as ABST to the Leeward…" (Simon Affm., ¶¶ 89-90) (emphasis added)  Mr. Simon does not allege personal knowledge of the alleged conversations between AUA counsel and Mr. McLaren and Mr. McLaren makes no such statement in his witness statement. *See* McLaren Statement    Paragraphs 89-93 of the Simon

12

Affirmation conflict with the ABST Act, *see, e.g.*, ABST Act, Part I and Part XI (2006), *as amended*, (2008); constitute hearsay; and violate Procedural Order No. 1 with respect to the evidentiary limitations of this motion; and therefore, should not be afforded any weight herein.

25.     Notably absent from the AUA's opposition papers is any claim that the AUA provided Leeward with any proof of the Project's exemption from ABST.  *See* ABST Act, Part II, ¶8(8) (2006), *as amended* (2008).[3]  Indeed, the AUA admits that it was unsure based on the August 31, 2007 correspondence from Inland Revenue Department whether the Project was ABST-exempt.  As late as January 28, 2010, the AUA's vendors were still telling it that it had not provided proof that the Project was exempt from ABST.  (Exhibit 51)

26.     The McLaren Statement also fails to support the AUA's claim.  First, McLaren's statement is inadmissible because a party may not offer opinion testimony without the prior authorization of the Tribunal.  *See* Part 32.6 of the Civil Procedure Rules ("CPR") (2000).  Second, the McLaren Statement is misleadingly at best.  According to Mr. McLaren, Paragraph 34 of the ABST Act provides "the procedures which should be used where the supplier has erroneously charged the tax on a supply for which an original tax invoice has already been issued." McLaren Statement, ¶4.  Paragraph 34 of the ABST Act states:

> If
> (a)     a registered supplier has made a taxable supply to a
>         **registered recipient**;
> (b)     an ABST adjustment event has occurred in relation to the
>         supply;

---

[3] ABST Act, Part II, ¶8(8) (2006), *as amended* (2008) states in relevant part: "No person, class of persons, transaction, class of transactions, import, or class of imports is exempt from ABST except as provided by this Act, or by a law or regulations duly enacted by the Parliament of Antigua and Barbuda and signed into effect by the Governor-General, and as a general rule: (a) exemptions of a general nature or application should be provided for in this Act or the Regulations; and (b) exemptions of an isolated or specific nature, or in relation to a particular transaction or event, may be provided for in a law specifically dealing with the person, event, or transaction for which the exemption is granted."

> (c)    at the time of the supply, the supplier issued an original ABST invoice to the recipient; and
>
> (d)    the amount shown on that invoice as the ABST charged exceeds the ABST properly chargeable in respect of the supply, the supplier must provide the recipient with an original ***ABST credit note***.

ABST Act, Part IX, ¶34 (2006), *as amended* (2008) [Emphasis added].

27.    However, McLaren never asserts nor does the AUA allege or provide documentation to indicate that the AUA is a registered recipient under the ABST Act.  In fact, as part of discovery in this matter, Leeward demanded that the AUA provide:

> Each document concerning a communication between the AUA (including its officers, directors, shareholders, employees, and agents) and the Antigua & Barbuda government (including its officers, ministers, employees, and agents) with respect to the ABST Act and/or the payment/collection of ABST, including documents concerning the following:
> - ABST exemptions with respect to the Project at issue.
> - ABST Registration (a/k/a "registering for Antigua & Barbuda Sales") pursuant to the ABST Act, Part III (2006), as amended

(A copy of Leeward's Demand for Production of Documents is annexed hereto as Exhibit "66".) In response to the demand, the AUA indicated that it "has no documents within its possession, custody, or control, that are responsive to Leeward's request for production of documents" (A copy of the AUA's Response to Leeward's Demand for Production of Documents is annexed hereto as Exhibit "67".)

28.    Moreover, even had the AUA provided proof that it is a registered recipient, Paragraph 34 of the ABST Act only entitles it to a credit note not a monetary refund. *See* ABST Act, Part IX, ¶ 34(d) (2006), *as amended* (2008) ("(d) the amount shown on that invoice as the

14

ABST charged exceeds the ABST properly chargeable in respect of the supply, the supplier must provide the recipient with an original ***ABST credit note***.")

29.     The procedure under Paragraph 34 of the ABST Act is completely logical.  Any other approach would cause pandemonium on large, multi-million dollar construction projects involving a multitude of vendors, if suppliers had to give monetary refunds of taxes and then turn to their suppliers to get monetary refunds and so on down the chain.  In Leeward's case, giving the AUA a monetary refund would require Leeward to go back to hundreds of suppliers to get refunds who would then have to go back to all of their suppliers to get refunds.  If the process actually worked like this it would bring commerce in Antigua and Barbuda to a screeching halt.

30.     Paragraph 34 of the ABST Act does not provide the AUA with a private right of action for reimbursement of ABST.  Thus, the AUA does not have standing to assert the ABST claim.

## POINT III

## <u>THE AUA WAIVED THE ABST CLAIM</u>

31.     To the extent the AUA could ever articulate a claim for the ABST paid on the Project, it waived the claim and/or modified the Contract by paying the ABST on 27 separate requisitions.  Faced with this truth, the AUA now conveniently claims that it could not have waived its right to enforce the Contract provisions relating to the payment of taxes because "no ABST was, in fact, due in connection with" the Project.  AUA Memo of Law, p. 21.  The AUA's contention is without merit as it has repeatedly admitted that "there was confusion as to whether… ABST was required to be paid in the first instance …which confusion, the Government did not clear up…until after the Leeward completed its work on the Project….[I]t was because of the confusion that AUA determined that it would pay … the ABST ...."  AUA

Memo of Law, p. 24-25. Therefore, during the pendency of the Project, the AUA's payment of ABST on each and every payment requisition submitted by Leeward, without protest, constituted a waiver of General Conditions §3.6.1, to the extent the contract provision can be read to require payment of ABST by Leeward. *See* Wilken, § 3.15; The Kanchenjunga, I Lloyd's Rep. 391, 397-98 (House of Lords 1990) (explaining that waiver occurs when a party forbears from exercising a right upon the other party's breach); Chitty, § 22-040 ("Where one party voluntarily accedes to a request by the other that he should forbear to insist on the mode of performance fixed by the contract, the Court may hold that he has waived this right to require that the contract be performed in this respect according to its original tenor"); *Besseler Waechter Glover & Co., Ltd. v. South Derwent Coal Co., Ltd.*, 59 Lloyd's List Law Report 104, 108 (King's Bench 1937).

32.     Further, the AUA's assertion that it did not waive General Conditions §3.6.1 because there was no reliance on the AUA's failure to enforce the provision is without merit. Leeward relied upon the AUA's actions with the submission of each and every requisition. If the AUA had refused to pay the ABST or demonstrated to Leeward that the Project was ABST-exempt, Leeward would not have charged ABST on the next requisition or any requisitions going forward. However, the evidence demonstrates and the AUA openly admits, that it never questioned the inclusion of ABST on any of the payment requisitions Leeward submitted and indeed believed that it was required to pay ABST during the pendency of the Project. *See* AUA Memo of Law, p. 23-24.

33.     Finally, the Contract, read in conjunction with the ABST Act required Leeward to: (a) collect 15% ABST from the AUA on the payments the AUA made to Leeward for the goods and services Leeward provided under the Contract and (b) pay the Antiguan Government the ABST to the extent the ABST Leeward collected on all "outputs" exceeded the ABST it paid

on all work, labor, services, equipment, and materials during the relevant period. *See* Leeward

Motion to Dismiss, Point I(A).  General Conditions §13.4.1 of the Contract provides:

> Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be ***in addition to and not a limitation of*** duties, obligations, rights and remedies otherwise imposed or available by law.

Exhibit 1, General Conditions, § 13.4.1 (emphasis added).  General Conditions § 13.1.1 further

provides that the "Contract shall be governed by the law of the place where the Project is

located," to wit: Antigua.   Taken together, these provisions require that General Conditions

§3.6.1 be read in conjunction with the ABST Act which requires Leeward to charge and collect

ABST for goods and services it provided under the Contract.  *See* ABST Act, Part II (2006), *as

amended* (2008).   In fact, the ABST Act, itself provides that invoices are presumed to include

ABST, regardless of whether there is an express line item for ABST.  *See* ABST Act, Part XIV,

¶57(1) (2006), *as amended* (2008).  This method cannot be changed without the express approval

of the Commissioner of Inland Revenue.  *See* ABST Act, Part XIV, ¶57(5) (2006), *as amended*

(2008).  In the absence of a demonstrable exemption, Leeward was required to collect ABST

from the AUA on the Project.

## POINT IV

### THE AUA'S DEFECTIVE WORK CLAIMS ARE UNTIMELY UNDER THE CONTRACT

34.   In addition to being barred by *res judicata*, the AUA's claims for defective work

are also untimely and have been waived under the Contract because the AUA failed to give

Leeward timely notice of the alleged defects and an opportunity to cure them as required by the

Contract.  *See* Leeward Motion to Dismiss, Point II(B), ¶¶84-89.

35.     General Conditions §2.4 of the Contract provides that the Owner is only allowed to correct work not in accordance with the Contract after providing the Contractor with written notice of the alleged defects.  If the Contractor does not correct the work within seven days after receiving the initial notice of the defects, the Owner is required to send the Contractor a second notice.  If the Contractor fails to begin to correct the work within three days after receiving the second notice, then the Owner may correct the work itself and seek damages from the Contractor.  (A copy of General Conditions §2.4 is annexed hereto as Exhibit "68".)

36.     In its opposition the AUA admits that it did not give Leeward the required notice and opportunity to cure because "providing the Leeward with the opportunity to cure the defects involved herein would have been a futile act."   Simon Affm., ¶15   As with many of the statements in his affirmation, Mr. Simon's assertion that providing Leeward with notice of alleged defects and an opportunity to cure would have been futile is a self-serving and has no basis in fact.  The actual fact is that the notice was not provided as required by the Contract; Leeward was not given any opportunity to cure; and as a result, the AUA's claims for defective work have been waived.  *See* 13 Lord, Williston on Contracts § 38:6 (Express provisions in a building contract "must be literally met or exactly performed in order to create liability on the contract, and the fact that nonperformance of the condition or incomplete performance of it has caused no injury to the promisor is immaterial."); *see also*, *Bremer Handelsgesellschaft v. C. Mackprang Jr.,* 1 Lloyd's Rep 221 (Court of Appeal 1979) (A person waives contractual right by words or conduct that is knowing, intentional, and unequivocal); Wilken, §3.15.

**POINT V**

**THE AUA IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE ABST
CLAIM OR THE DEFECTIVE WORK CLAIMS**

37.     In support of its cross-motion for summary judgment, the AUA requests that the

Tribunal "strike each of the defenses that the Leeward advances in support of its motion". AUA

Memo of Law, p. 35.   However, the AUA has not demonstrated that Leeward's defenses are

without merit.   Thus, the AUA is not entitled to summary judgment on either of its claims.

38.     Even had the AUA established that it was entitled to have Leeward's defenses

stricken, it still would not be entitled to summary judgment.   Part 15.2 of the Civil Procedure

Rules ("CPR") 2000 states:

> The Court may give summary judgment in the Claim or on a
> particular issue if it considers that the − (a) Claimant has no real
> prospect of succeeding on the claim or the issue; or (b) Defendant
> has no real prospect of successfully defending the claim or the
> issue.

(CPR 2000, Part 15.2)  In so doing, the Court may only examine the documents filed with the

case as pleaded to make the determination of whether the party against whom the complaint is

made has no real prospect in succeeding on the claim.   To do so, the Court must "[assess] the

prospects of success … based upon the case as a whole.   The test is not one of probability; it is

the absence of reality."  *Alfa Telecom Turkey Limited v. Cukurova Finance International Limited*

*and Cukurova Holdings AS*, HCVAP 2009/001; *see also Clearlee Todman-Brown v. Nat'l. Bank*

*of the Virgin Islands, Ltd.*, BVIHCV 64/2013 *(*citing *Three Rivers District Council v. Bank of*

*England (No.3)*, [2001] 2 All ER 4513).

39.     Aside from failing to prove that it will be successful on the merits of its claims, the AUA has wholly failed to demonstrate that Leeward cannot defend against the AUA's claims. In fact, the opposite is true. Leeward has provided the AUA with thousands of pages of documents evidencing the ABST that it paid, not only related to the Project, but to all vendors with whom it did business, during each tax period at issue. In the face of Leeward's voluminous production, the AUA has not and cannot demonstrate that during the relevant tax period, Leeward paid less in ABST than it collected.

**WHEREFORE,**   Claimant Leeward Construction Company, Ltd. respectfully requests that the Arbitrators grant the Claimant's motion for an order (a) dismissing the Respondent American University of Antigua -- College of Medicine's First Counterclaim for repayment of EC $3,614,552.41 in ABST; (b) dismissing the Respondent's Second Counterclaim for  damages relating to certain alleged defective works performed by Leeward; and (c) for such other and further relief as the Arbitrators may deem appropriate and deny the AUA's cross-motion for summary judgment in its entirety.

Dated: Poughkeepsie, New York
       November 22, 2013

J. Scott Greer, Esq.
**LEWIS & GREER, P.C.**
*Attorney for Claimant,*
*Leeward Construction Company, Ltd.*
510 Haight Avenue, P. O. Box 2990
Poughkeepsie, New York 12603
Telephone: (845) 454-1200

TO:    Diego Brian Gosis
       175 SW 7th Street, Suite 2110
       Miami, FL 33130
       Tel: +1 305 856 7723
       Email: diego.gosis@gommsmith.com

       Judith B. Ittig

Ittig & Ittig, P.C.
1420 Ninth Street, NW
Washington, DC 20001-3344
Tel: +1 202 387 5508
Email: jbi@ittig-ittig.com

Carlos A. Romero Jr.
3195 Ponce de Leon Blvd. Suite 400
Coral Gables, FL 33134
Tel: +1 305 445 0014
Email: car@postandromero.com

Carolina Cardenas-Soto
Senior Case Manager
International Centre for Dispute Resolution
1633 Broadway, l0th Floor
New York, New York 10019
Email: cardenasc@adr.org

Leonard Sclafani, Esq.
*Law Offices of Leonard Sclafani, Esq.*
*Attorney for Respondent AUA*
One Battery Park Plaza, 33rd Floor
New York, New York  10004
Email: las@lasattorney.com