AUA also seeks damages against the Leeward arising from defects and deficiencies in the Leeward's construction of AUA's campus building in Antigua.

Dated:  August 1, 2013
        New York, New York

American University of Antigua College of Medicine

By: _____
Leonard A. Sclafani, Esq.
Law Offices of Leonard A. Sclafani, Esq.
Attorneys for Respondent AUA
One Battery Park Plaza, 33rd Fl.
New York, New York 10004
(Tel.) 212-696-988
 email: l.a.s@mindspring.com

been tiled; others have not yet been tiled or are in the process of being tiled. To date, AUA has expended $266,310 EC AUA has also contracted, and partially paid for additional tile and roof leak repair work at a cost in excess of $94,150 EC.
5. Scuppers and pipes in the drain system were improperly sized leading to flooding in the building during heavy rains. The collection area of the roof and the 4-inch drains connect to 2 ½-inch storm water pipes at ground level.. Some repairs have been made at a cost of $8,500 EC; however, these repairs have not fully alleviated the problem. As a result, AUA expends approximately $8,500 EC each time the building is flooded due to the improper sizing of the scuppers. These events occur on average three times each year.
6. Windows in the lobby and third floor of the building were improperly installed without removal of the packing materials. As a result, every window leaked both internally into the walls and externally into the interior of the building. The external leaks caused damage to floors and finish of the interior walls. The water that leaked inside the walls caused damage to the finished exterior walls. The improperly installed windows were refitted without the packaging material. The cost of this repair was $129,385 EC.
7. Roof tiles throughout the entire roofing areas were of poor quality resulting in discoloration. This condition has not been repaired. The estimated cost of replacement of the defective tiles. Flashing is missing throughout the project is $ 639,792 EC.
8. The tracery and fascia throughout the building are failing and continue to disengage from the building. This condition has not been repaired as of today's date. The estimated cost of repair is $115,592.60 EC.
9. The flat roof area slopes toward the building. This condition coupled with the lack of flashing and the improper installations of roof tiles (see item 4 above) have resulted in ponding on the roof and leaking into the building. See items 3 and 4 for the costs associated with the repairs of these conditions to date and the estimate for completion of these repairs. It is estimated that an additional sum of $ 110,216 will be required for repair of these conditions.
10. The elevator shafts were not square. AUA estimates the cost of repair of the shafts to be in the amount of $168,130 EC
11. Several areas of the concrete floors of the building were uneven and not properly graded. The floors on the third floor wings needed to be screeded at a total cost of $56,675 EC.

The Leeward would determine how much had been paid to date by keeping a running tally of the prior progress payments, exclusive of ABST, which it submitted with its payment applications. With respect to the EC $ 83,083.24 ABST payment at issue, the Leeward, according to its claim, mistakenly recorded the total amount paid by AUA, including ABST, in its running tally. As a result, when the Leeward issued the following payment application, the amount of money Leeward reflected as having been paid by AUA in prior progress payments was EC $ 83,083.24 more than it should have been. The so-called concession was simply an acknowledgment of this alleged error and by implication assumed that AUA was obligated to pay the misapplied ABST in the first place, nothing more. Because, as demonstrated above, AUA was not obligated to pay ABST, the Leeward's misapplication of the money serves to reimburse AUA for a small fraction of the ABST Leeward wrongfully collected.

In sum, AUA respectfully requests that the Leeward's claim be denied and that an award issue in AUA's favor declaring for the amount of the ABST that the Leeward was wrongfully paid; to wit, EC $3,614,552.

AUA also seeks damages against the Leeward for defects in its work on the project. These claims have been submitted to the project architect in accordance with the requirements of the parties' contract. More than 30 days has expired since AUA submitted its claim to the architect. As of the date hereof, the architect has not rendered any determination on them. Under the terms of the parties contract, failure of the architect to respond to a submission of a claim within 30 days of the date that it is submitted to him entitles the claimant, in this case AUA, to proceed to advance its claims through arbitration.

Below is a list of the defects.

1. The risers on staircases in the building are of uneven height creating a safety hazard. The defect has not been repaired as of today's date. Repair would require the removal and reconstruction of the staircases. AUA estimates its damages for this defect at $241,200 EC.
2. Wall surfaces throughout the building were improperly finished. The integrity of the structure of the masonry wall systems throughout the project is lacking resulting in cracking which continues to reveal itself in multiple locations throughout the project. Additionally, the wall finish is uneven and unacceptable in its appearance The defect has not been repaired as of today's date. AUA estimates the cost of repair at $268,000 EC.
3. Common to all roofs throughout the building is the absence of needed flashing. The failure to provide and install flashing has resulted in incursion of storm water into the interior spaces of the building, leaking and flooding. AUA estimates the cost or repair to be upward of $536,000 EC.
4. Tiles had to be installed on the roofs of the building in order to mitigate against leaks due to improper roof installation. Some areas have already

Lastly, AUA asserts that it submitted its claim for a reimbursement of the said sum to the Project Architect, R. Sundaram, Sundaram Architects as required by the parties contract; and that the Project Architect has approved the claim. AUA is therefore entitled to this sum. (see the attached correspondence)

In this regard, AUA states the following:

Section 3.6.1 of the General Conditions to the Contract, entitled "Taxes," unambiguously obligates the Contractor, Leeward, to "pay sales, consumer, use and similar taxes for the Work provided by the Contractor … ." This obligation plainly includes the Antigua and Barbuda Sales Tax ("ABST"). Notwithstanding this clear mandate, as evidenced by the payment applications submitted by the Leeward (*e.g.*, Ex. A to the Leeward's December 21, 2012 letter to the Project Architect), throughout the Project Leeward charged AUA ABST at a rate of 15% for all the work the Leeward performed on the Project. As the invoices AUA approved for payment reflect, AUA paid the ABST charged by the Leeward. See Ex. 1, hereto. Our records reflect that the Leeward wrongfully charged, and AUA mistakenly paid, no less than EC $3,614,552.41 in ABST. Accordingly, AUA is entitled to a ruling that the Leeward was obligated to pay ABST, and the Leeward, in turn, is therefore obligated to reimburse AUA for all the ABST it collected from AUA.

In its November 20, 2012 claim, the Leeward contends that AUA conceded during a prior arbitration that it was obligated to pay the Leeward EC $83,083.24 in progress payment, because that payment was a payment for ABST in connection with Payment Requisition No. 22 and wrongfully applied. However, the Leeward's claim for this money, and the alleged concession made by AUA's counsel during opening arguments at the prior arbitration, are both premised on the mistaken belief that AUA was responsible to pay ABST and on the assumption to the Leeward actually paid Antigua EC $ 83,083.24 for the ABST collected at that time.[1]

As set forth in the Leeward's December 21, 2012 supplemental submission to the Project Architect on its claim herein, what the parties called at the arbitration the "ABST Error" and what the Leeward has now labeled a "mis-tabulation" was a product of the manner in which the Leeward tracked payments on the Project. Generally speaking, the Leeward issued monthly payment applications for the work it completed on the Project since the last payment application, which amounts were based upon measuring the work done and applying the predetermined unit rates set forth in the Bill of Quantities that was made a part of the Contract. The Leeward's payment application would calculate the amount earned to date for its Work and then subtract the total amount that had been paid to date. The Leeward would then bill AUA for this difference, separately charge AUA 15% in ABST and request payment for the sum. AUA would then pay the sum, including ABST.

---

[1] AUA's wrongful payment of ABST, in general, was not at issue in the prior arbitration.

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CONSTRUCTION INDUSTRY ARBITRATION RULES
AMENDED ANSWER AND COUNTERCLAIMs

TO: Leeward Construction Company, Ltd.
   c/o Lewis & Greer, P.C.
   Attorneys for Claimant
   510 Haight Avenue
   Poughkeepsie, New York 12603

Re: 50 110 T 00118 13
   Leeward Construction Corp. v. American University of Antigua College of Medicine

PLEASE TAKE NOTICE that American University of Antigua College of Medicine ("AUA") hereby amends its Answer to the the Statement of Claim of Leeward Construction Company, Ltd. and Counterclaims as per Procedural Order No. 1 dated July 19, 2013, (which, inter alia, permitted AUA to amend its Answer and Counterclaims to include counterclaims for construction defects)as follows:

   Claimant claims entitlement to EC$83, 059.56/US$30,762/80 which said sum derives from an alleged "mis-tabulation as Antigua and Barbuda Sales Tax ("ABST") during the requisition process.
   There is no issue that the sum was paid to the Leeward. The claim here is that the sum was paid as reimbursement for ABST that AUA allegedly owed to the Leeward, but was subsequently added to the amount that was paid to the Leeward as a progress payment so that, when the Leeward was paid on the following requisition, the amount allegedly "mis-tabulated" was deducted from that requisition leaving the Leeward short on the payment of the requisition in the amount of the sum above stated.
   AUA asserts herein, first, that the Leeward has not provided any evidence that it actually paid the Government of Antigua and Barbuda the ABST in connection with the requisition at issue or in connection with any prior or subsequent requisition.
   AUA further asserts that, even if the Leeward establishes that it paid this, or any other amount of ABST, it was its responsibility and obligation to do so under the terms of the parties contract, such that the amount that the Leeward was paid for the requisition at issue was correctly added to the amount of its progress payment. The Leeward was not entitled to a separate or additional payment for reimbursement of ABST.
   AUA further asserts by way of a defense and a counterclaim that it paid ABST to the Leeward in addition to, and not as a part of its progress payments in all but the one from which the Leeward's claim herein originates in the sum of EC$3,614,552.41 as a result of error, mis-tabulation and mutual mistake, despite that the sLeeward provided no proof of payment of the tax and, in any event, was, itself, obligated to pay the tax without reimbursement by AUA.