UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

AMERICAN UNIVERSIT OF ANTIGUA
COLLEGE OF MEDICINE,

Case No. 14 CV 8410 (DLC)

Petitioner,

-against-

LEEWARD CONSTRUCTION COMPANY, LTD

Respondent

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ---X


MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENT'S CROSS-MOTION TO
DENY ENFORCEMENT, VACATE AND MODIFY THE ARBITRATION AWARD AND IN
FURHTER SUPPORT OF AUA'S PETITON TO CONFIRM THE AWARD


Law Offices of Leonard A. Sclafani, Esq.
Attorneys for Defendant
One Battery Park Plaza, 33rd Fl.
New York, New York, 10004
212-696-9880
l.a.s@mindspring.com

By: _____
Leonard A. Sclafani, Esq. (8306)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................1

THE LEGAL STANDARD...........................................................…......3

THE UNDISPUTED FACTS UNDERLYING THE ARBITRATION.................5

    The Parties' First Arbitration.........................................................7
    The Instant Arbitrtion...............................................................8
    The Parties' Dispositive Motions and the Final Award............................9

POINT 1
All OF THE ISSUES THAT THE ARBIRATORS DECIDED
WERE WITHIN THEIR AUTHORITY AND THE SCOPE OF
THE PARTIES' ARBITRATION AGREEMENT.........................................9

  **a.**  Having fully participated in the Arbitration, Leeward may
      not now challenge the authority of the Arbitrators to decide
      the issues raised in the Arbitration.........................................…....10

  **b.**  Leeward was, in fact, unjustly enriched.......................…....…......10

  **c.**  The issue of whether Leeward was unjustly enriched was
      within the scope of the arbitration clause at issue and within
      the Arbitrators' authority to determine.................................…......11

  d.  AUA did not abandon its claim of unjust enrichment.
      exhaustive litigation of AUA's claim by the parties................…..............13

POINT II
THE ARBITRATORS' AWARD IS UNAMBIGUOUS,
CLEAR, AND FINAL.................................................................…......16

POINT III
THE AWARD WAS FULLY JUSTIFIED. IT DOES
NOT CONSTITUTE A "MANIFEST DISREGARD OF THE LAW"...............18

  i.  Leeward's Res Judicata Defense is "Unavailing" As the
     Arbitrators Found.................................................................19

  ii.  Leeward's Waiver Defense is "Unavailing" As the
      Arbitrators Found.................................................................22

CONCLUSION............................................................................25

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT................................................................1

THE LEGAL STANDARD..........................................................…........3

THE UNDISPUTED FACTS UNDERLYING THE ARBITRATION................5

    The Parties' First Arbitration................................................7
    The Instant Arbitrtion...........................................................8
    The Parties' Dispositive Motions and the Final Award................9

POINT 1
All OF THE ISSUES THAT THE ARBIRATORS DECIDED
WERE WITHIN THEIR AUTHORITY AND THE SCOPE OF
THE PARTIES' ARBITRATION AGREEMENT..........................................9

  **a.**  Having fully participated in the Arbitration, Leeward may
      not now challenge the authority of the Arbitrators to decide
      the issues raised in the Arbitration.................................…....10

  **b.**  Leeward was, in fact, unjustly enriched..............................…......10

  **c.**  The issue of whether Leeward was unjustly enriched was
      within the scope of the arbitration clause at issue and within
      the Arbitrators' authority to determine.................................…......11

  d.  AUA did not abandon its claim of unjust enrichment.
      exhaustive litigation of AUA's claim by the parties..................…...13

POINT II
THE ARBITRATORS' AWARD IS UNAMBIGUOUS,
CLEAR, AND FINAL.................................................................…......16

POINT III
THE AWARD WAS FULLY JUSTIFIED. IT DOES
NOT CONSTITUTE A "MANIFEST DISREGARD OF THE LAW"................18

  i.  Leeward's Res Judicata Defense is "Unavailing" As the
    Arbitrators Found...........................................................................19

  ii.  Leeward's Waiver Defense is "Unavailing" As the
     Arbitrators Found..........................................................................22

CONCLUSION...................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Am. Postal Workers Union v. United States Postal Serv.,*

    2014 U.S. App. LEXIS 10641 (2d Cir. June 6, 2014)..............................…... 4

*Bessler, Glover & Co., Ltd. v. South Derwent Coal Company, Ltd.,*

    [1937] 59 Lloyd's List Law Rep. 104...........................................…... 25

*Bremer Handelgesellschaft M.B.H. v. C. Mackprang Jr.,*

    1 Lloyd's Rep. 221 (Court of Appeal 1979)....................................…... 23

*D.H. Blair & Co. v. Gottdiener,*

    462 F.3d 95, 110 (2d Cir. 2006)...........................................…... 3

*DuBois v. Macy's Retail Holdings, Inc.,*

    533 F. App'x 40, 41 (2d Cir. 2013)........................................... 2, 4

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,*

    333 F.3d 383, 388 (2d Cir. 2003)..........................................…... 4

*Favara, Skahan, Tabaczyk, Ltd. v. Ewing,*

    1992 U.S. Dist. LEXIS 4570 (S.D.N.Y. Apr. 8, 1992).......................... 10

*Fed. Ins. Co. v. Bergesen D.Y. Asa Oslo,*

    2012 U.S. Dist. LEXIS 127838 (S.D.N.Y. Sept. 7, 2012)................... 1, 19

*Hall Street Associates, L.L.C. v. Mattel, Inc.,*

    552 U.S. 576, 585 (2008)..................................................…... 19

*Halley Optical Corp. v. Jagar Int'l Mktg. Corp.,*

    752 F. Supp. 638, 639 (S.D.N.Y. 1990)...................................... 10

*Hamerslough v. Hipple,*

    2012 U.S. Dist. LEXIS 154837 (S.D.N.Y. Oct. 24, 2012)................... 3, 4

*Henderson v. Henderson,*

    34 Hare 100, 114-115 (1942)...............................................…... 20

*Ibar Ltd. v. Am. Bureau of Shipping,*

2003 U.S. Dist. LEXIS 7386 (S.D.N.Y. May 1, 2003), *aff'd*, 92 F. App'x 820

(2d Cir. 2004)..................................................................................... 19

*InterDigital Commc'ns Corp. v. Nokia Corp.,*

407 F. Supp. 2d 522, 531 (S.D.N.Y. 2005)........................................... 19

*Int'l Longshoremen's Ass'n v. West Gulf Maritime Ass'n,*

594 F. Supp. 670, 674 (S.D.N.Y. 1984), aff'd, 765 F.2d 135 (2d Cir. 1985)................ 10

*Konkar Maritime Enterprises, S.A. v. Compagnie Belge D'Affretement,*

668 F.Supp. 267, 271 (S.D.N.Y. 1987)............................................. 18

*Mavis Henry v. Tyrone Walker,*

Claim No. ANUHCV 2000/2007, East. Carib. Sup. Ct. (2009)................................ 20

*Meyer v. Gilmer,*

[1889] 18 NZLR 129................................................................... 24

*Millicom Int'l V N.V., v. Motorola, Inc.,*

2002 U.S. Dist. LEXIS 5131 (S.D.N.Y. Mar. 27, 2002)........................................ 18

*Mobius Mgmt. Sys. v. Technologic Software Concepts Inc.,*

2002 U.S. Dist. LEXIS 17789 (S.D.N.Y. Sept. 20, 2002)..................................... 10

*Motor Oil Hellas (Corinth) Refineries S.A.V. Shipping Corp. of India (the Kanchenjunga),*

1 Lloyd's Rep. 391 (House of Lords 1990)....................................... 24

*NLRB v. United Technologies Corp.,*

706 F2d 1254 (2d Cir. 1983).......................................................... 20

*North River Insurance Co. v. Allstate Insurance Co.,*

866 F. Supp. 123 (SDNY, 1994)...................................................... 12

*Oxford Health Plans LLC v. Sutter,*

- U.S. -, 133 S. Ct. 2064, 2068 (2013)................................................... 4

*Premium Nafta Products, Ltd. et al.  v. Fili Shipping Co Ltd et al.,*

2007 UKHL 40 (House of Lords 2007)............................................... 12

*Ricks v. Goderich Aircraft, Inc.,*

  2014 U.S. Dist. LEXIS 18506 (S.D.N.Y. Feb. 13, 2014)………………………….….. 1

*Sea Shipping Inc. v. Half Moon Shipping, LLC,*

  848 F. Supp. 2d 448, 455 (S.D.N.Y. 2012)……………………………………….... 18

*Smiga v. Dean Witter Reynolds, Inc.,*

  766 F.2d 698 (2d Cir. 1985)…………………………………………………………. 10

*STMicroelectronics, N.V. v. Credit Suisse Sec.*

  (USA) LLC, 648 F.3d 68, 74 (2d Cir. 2011)………………………………..…….. 3, 4

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*

  559 U.S. 662, 672 n.3 (2010)……………………………………………….....…. 19

*T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.,*

  592 F.3d 329, 339 (2d Cir. 2010)……………………………………………….… 19

*United Paperworkers Int'l Union v. Misco, Inc.,*

  484 U.S. 29, 38 (1987)……………………………………………………………… 3

*Wallace v. Buttar,*

  378 F.3d 182, 190 (2d Cir. 2004)…………………………………………….....…. 3

*Walzer v. Muriel Siebert & Co., Inc.,*

  2011 U.S. Misc. LEXIS 2817 (Sup. Ct. New York County June 13, 2011)………….....… 3

*Westerbeke Corp. v. Daihatsu Motor Co.,*

  304 F.3d 200, 220-222 (2d Cir. 2002)……………………………………………… 19

*Willemijn Houdstermaatshappij v. Std. Microsystems Corp.,*

  103 F.3d 9, 12 (2d Cir. 1997)……………………………………………….....…. 2, 3

*Woodhouse v. Nigerian Produce Marketing Co. Ltd*

  [1972 1 Lloyd's Rep. 439; [1972] A.C. 741 at pp. 445 and 735)………………………. 24

*Woods v. Dunlop Tire Corp.,*

  972 F.2d 36 (2d Cir. 1992.)……………………………………………………… 20

**Statues and Other Authorities**

FAA, Section 4.................................................................... 10

FAA, Section 9................................................................ 18

FAA, § 10.................................................................. 19

Labor Management Relations Act, Section 301................................... 19

*Chitty on Contracts,* 22, 23.................................................. 24

## PRELIMINARY STATEMENT

Presented for determination by a panel of three arbitrators selected by the parties from a list provided by the AAA in accordance with its Rules were: a.) Leeward's single claim against AUA for a sum that it claimed to have erroneously invoiced, and which was paid by AUA, as part of a progress payment for work that it had provided to AUA in connection with its construction of AUA's medical school building in Antigua rather than invoicing the sum separately as Antigua and Barbuda Sales Tax ("ABST"). Leeward claimed that this "mis-tabulation" resulted in a shortage in the total amount due it for its work under its contract with AUA ("Leeward's ABST Claim"); b.) AUA's counterclaims for return of all of the monies that Leeward had invoiced and that AUA had paid to Leeward as ABST under the parties' contract ("AUA's ABST Counterclaims," and, together with "Leeward's ABST Claim," "the Parties' Respective ABST Related Claims"); and, c.) AUA's counterclaims for damages for defects in Leeward's work and materials in the construction of AUA's building ("AUA's Construction Defects Counterclaims").

By and through their Partial Final Arbitration Award, the Arbitrators fully and finally resolved all of the Parties' Respective ABST Related Claims, leaving only AUA's unrelated Construction Defects Counterclaims and incidental matters such as costs, attorneys' fees etc. to be arbitrated.

Paying no heed to the "severely limited"[1] scope of review on a petition to confirm an arbitration award, Leeward devotes most of its cross-motion to contentions that the Arbitrators made wrong decisions on the record before them.  The simple answers to Leeward's arguments

---

[1] *Ricks v. Goderich Aircraft, Inc.*, 2014 U.S. Dist. LEXIS 18506, at *4-5 (S.D.N.Y. Feb. 13, 2014); *Fed. Ins. Co. v. Bergesen D.Y. Asa Oslo*, 2012 U.S. Dist. LEXIS 127838, at *10 (S.D.N.Y. Sept. 7, 2012)

are: (a) the Arbitrators weren't wrong, and (b) it doesn't matter.

While it dresses its arguments in the rubrics of " manifest disregard of law" and "lack of authority of the Arbitrators," Leeward's arguments are nothing more than a rehash of the very same arguments that it had made in the arbitration and that the parties had exhaustively litigated through their dispositive motions. They raise the same issues and present the same facts that were properly submitted for the Arbitrators to decide, and that the Arbitrators did properly decide . They are based on the same authorities that Leeward had presented to the arbitrators, and that the Arbitrators expressly, and properly, rejected.

Herein, AUA has submitted all of the briefs, affidavits and exhibits that the Arbitrators had before them for consideration. We did so only to demonstrate the degree to which the issues determined by the Arbitrators were litigated and to leave no doubt that, in a matter so vigorously contested, the issues were fully submitted to the Arbitrators, who had far more than the "barely colorable"[2] justification necessary for this Court to confirm their Award. We do not mean to suggest that, by submitting these additional materials, this Court should, or is empowered to, reevaluate the merits of the issues decided by the Arbitrators other than to determine that they were within the scope of the Arbitrators' task of deciding issues raised by the parties relating to the parties' contract.  Any deeper examination of the merits, which Respondents improperly invite, is antithetical to "the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."[3]

Leeward has also submitted herein extensive documentation from the Arbitration at issue. However, unlike AUA, Leeward has done so solely to support of its attempt to re-litigate the same issues for which the Leeward had submitted the documents to the Arbitrators. AUA, as

---

[2] *DuBois v. Macy's Retail Holdings, Inc.*, 533 F. App'x 40, 41 (2d Cir. 2013) (citation omitted)
[3] *Willemijn Houdstermaatschappij v. Std. Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)

a result, feels compelled to discuss those issues at a level of detail far more than is required to answer the basic question on a petition to confirm: were the Arbitrators "even arguably construing or applying the contract and acting within the scope of their authority"[4]

## THE LEGAL STANDARD

The Second Circuit has repeatedly held that, "[t]he court's function in confirming or vacating an arbitration award is severely limited." E.g., *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted). The extremely narrow scope of judicial review is necessary to avoid undermining "the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn*, 103 F.3d at 12. "Vacatur of arbitral awards is extremely rare, and justifiably so. " *Hamerslough v. Hipple*, 2012 U.S. Dist. LEXIS 154837, at *8 (S.D.N.Y. Oct. 24, 2012).

Arbitrators are not required to provide an explanation for their award, nor does the failure of arbitrators to set forth their findings or reasoning constitute a basis to vacate the award.  See, *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004); *Walzer v. Muriel Siebert & Co., Inc.*, 2011 U.S. Misc. LEXIS 2817, at *10-11 (Sup. Ct. New York County June 13, 2011) (internal quotations and citations omitted).

"[A] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high. " *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011). "It is well established that courts must grant an

---

[4] *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)

arbitration panel's decision great deference." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). In view of the substantial deference afforded arbitrators, even errors made by arbitrators will not suffice to disturb their award. "[T]he court does not consider whether the arbitrator correctly decided the issue. As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Hamerslough*, 2012 U.S. Dist. LEXIS 154837, at *11 (citations omitted). "Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *DuBois v. Macy's Retail Holdings, Inc.*, 533 F. App'x 40, 41 (2d Cir. 2013) (citation omitted). Under the FAA, "[i]t is not enough . . . to show that the [arbitrator] committed an error — or even a serious error. . . [A]n arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Am. Postal Workers Union v. United States Postal Serv.*, 2014 U.S. App. LEXIS 10641, at *10 (2d Cir. June 6, 2014) (citing *Oxford Health Plans LLC v. Sutter*, - U.S. -, 133 S. Ct. 2064, 2068 (2013)).

Section 9 of the Fedeal Arbitration Act provides that the court <u>must</u> grant an order confirming the award unless the award is vacated, modified, or corrected as narrowly prescribed in sections 10 and 11 of the Act. See, e.g., *STMicroelectronics N.V. v. Credit Suisse Sec.* (USA) LLC, 648 F.3d 68, 74 (2d Cir. 2011).

The Award here is entitled to the deference required under the very modest standard governing review. The parties submitted to arbitration under a broad clause covering "any Claim arising out of, or related to" the Contract. This claims presented in this arbitration indisputably arose out of and/or are related to that Contract. The procedures employed under the rules of the American Arbitration Association were those provided under the Contract.

For well over a year, having initiated it, Leeward participated fully in the Arbitration, serving its demand for arbitration, and Statement of Claims, joining in the selection of Arbitrators, complying with the Arbitrators' interim rulings or moving against them, serving document requests, producing documents of their own, making motions, submitting briefs, and actively litigating at an all day hearing.  The Arbitration was fairly administered; both parties were represented by experienced counsel; the issues were squarely within the scope of the Arbitrators to determine; the documentation and legal briefing submitted by both sides was extensive; and the Arbitrators rendered the Award based on issues submitted and contested by both sides for their determination.  There has never been the slightest claim of corruption, fraud, partiality or undue means.

## THE UNDISPUTED FACTS UNDERLYING THE ARBITRATION

The facts underlying the Parties' Respective ABST Claims are not in dispute[5]. They are set forth in the Affidavit and Supplemental Affidavit of Neal Simon and the two Affidavits of Douglas McLaren, Deputy Commissioner of the Antigua and Barbuda Department of Inland Revenue (Exhibits D, E, F, and I to the Affirmation of Leonard A. Sclafani submitted in support of AUA's Petition herein (the "Sclafani Aff.") and can be summarized as follows:

On September 25, 2008, Leeward, as contractor, and the AUA, as owner, executed a contract for the construction of a medical school building on AUA's campus in Antigua (the "Contract")(Exhibit A to AUA's Petition). Section 4.6 of the General Conditions to the Contract contains an arbitration agreement that provides in pertinent part that: "Any Claim

---

[5] When the Arbitrators initially determined through their first decision on the parties' dispositive motions that there were issues of fact that precluded them from granting all but one issue litigated by the parties through their motions (the issue of whether AUA's claims were arbitrable, which issue the arbitrators decided in favor of AUA), the parties jointly advised the Arbitrators to the contrary and sought and obtained the Arbitrators' agreement to reconsider their first decision. It was upon that reconsideration, and after a full day of oral arguments on the motions that the Arbitrators issued their Partial Final Arbitration Award that AUA herein seeks to have confirmed.

arising out of or related to the Contract…shall…be subject to arbitration."

Thereafter, Leeward constructed of AUA's building and, over the course of construction, submitted to AUA invoices for progress payments that AUA paid. Each with the exception of one invoiced in two separate columns the amount of due Leeward for its to the date of the invoice and a sum equal to 15% of that amount purportedly as and for ABST. One invoice, however, lumped both the progress payment amount and the sum for ABST together under the progress payment column so that, when Leeward calculated the final payment due it for its work, it included the sum ($ 83,059.56 EC/ $30,762.80 US) that it was to have been for ABST in the one invoice as having been already paid for Leeward's actual work thereby effecting the total demanded by Leeward in its final invoice by the amount of that sum.

AUA's campus is located in the Antigua and Barbuda Free Trade and Processing Zone; as such, work on AUA's project was to have been free of ABST; however, as of the time that Leeward commenced work on AUA's building, the ABST Act, which imposed ABST on the providers of goods and services in Antigua, was relatively new and the Government of Antigua and Barbuda had not yet established processes and procedures for how those who provided goods and services that should not have been subject to ABST would be assured that they would not be held responsible for the taxes on those goods and services.  As a result, providers refused to provide their goods and services even where it appeared that they would not be subject to ABST without collecting from the receivers of them an amount equal to the ABST that would be due were the goods and services subject to the tax and AUA was unsure as to whether it was appropriate to pay the sums that suppliers invoiced as taxes and seek recoupment from the Government when the suppliers remitted the sums to it or refuse to pay.

Faced with this problem, AUA sought guidance from the taxing authorities in Antigua as to how to proceed; however, it was not until after Leeward's work was completed that the Government's guidance was forthcoming. In the interim, AUA was left with little choice if it wanted its project to go forward but to pay the amounts invoiced as ABST and seek recoupment later. Accordingly, it paid all of Leeward's invoices including the amounts that Leeward had invoiced as ABST.

In all, Leeward invoiced and collected from AUA $ 3,614,552 EC/$1,409,307.67 US purportedly as and for ABST. However, Leeward did not either account to the Government for the sums it had collected from AUA as ABST, nor did it remit any of those sums to the Government.  Instead, it simply pocketed the sums, converting them for its own use and enjoyment. Shortly after it completed AUA's project, it closed its business.

**The Parties' First Arbitration:**

In early February, 2011, Leeward commenced an arbitration against AUA in which it sought: a.) monies that it claimed were due it under the parties' contract for work that AUA deleted from the project's scope without Leeward's consent; b.) a "mobilization" fee, and c.) penalties for delays that Leeward claimed were occasioned by AUA. AUA, in turn, counterclaimed for delay penalties.

During the course of preparing for the arbitration, AUA's outside counsel noticed the discrepancy in Leeward's invoicing of AUA for ABST as above set forth. He assumed, incorrectly, that he had discovered a mistake in Leeward's invoicing that had resulted in Leeward receiving less than it was entitled on its invoices. He felt it his duty to advise Leeward of the situation and did so during opening statements at the arbitration notwithstanding that the matter was not relevant to any of the matters that the parties were litigating.

7

At no time thereafter did the matter of the counsel's discovery of an "error" in Leeward's invoicing of ABST arise again until the close of the hearings on the arbitration. At that time, Leeward made application to the hearing panel to include in an award to it the amount of the "error" that AUA's outside counsel had earlier advised he had found. AUA's counsel vigorously objected, asserting that the matter was not part of the arbitration or of any of the issues presented in it, and the panel agreed and refused Leeward's application.

**The Instant Arbitration:**

Some months after the arbitrators issued their Final Award in the first arbitration, Leeward made demand of AUA for the sum that outside counsel had said were due Leeward as a result of its "error." By then, AUA had been informed by the Government that, because AUA's project was exempt from ABST, it regarded the sums that Leeward had collected from AUA as taxes as overpayments by AUA of the Contract price and not taxes and, also that, in any case, because the ABST Act imposes the liability for taxes on suppliers and because Leeward was the supplier in this matter, AUA was not entitled to the refund it had sought for those sums. The Government informed AUA that its remedy was to recoup directly from Leeward what it paid to Leeward erroneously as ABS. The Government later additionally advised that, because Leeward had not accounted to it for the monies it collected from AUA purportedly as ABST and because Leeward had failed to remit any of those sums to it, it did not have the sums in its possession to return to AUA even if AUA could establish its right to a refund.

AUA, therefore, refused Leeward's demand and Leeward, thereafter, commenced the arbitration at issue through which it asserted the single claim of entitlement to the sum it had demanded solely on the basis that AUA's outside counsel had stated in the first arbitration that Leeward was entitled to the sum.

AUA, in turn, counterclaimed for return of the all of the sums that it had paid to Leeward as ABST on several theories, including, that Leeward was obliged under the parties' contract and the law of Antigua and Barbuda to pay any tax due for its work and services and not AUA, fraud and misrepresentation in invoicing AUA for sums as taxes that it intended wrongfully to convert to its own use, and did wrongfully convert to its own use, mutual mistake and unjust enrichment. AUA subsequently amended its Answer also to include its Construction Defects Counterclaim.

**The Parties' Dispositive Motions and the Partial Final Award:**

There is no real question that that AUA actually owed Leeward the sums that it had paid ABST. Accordingly, Leeward's claims of entitlement to those sums are principally limited to arguments that that the Arbitrators could not find that Leeward is required to pay the sums back to AUA due to lack of arbitrability of AUA's claims and under doctrines of res judicata and waiver. Leeward advanced each of these claims and arguments both in support of its motion to dismiss AUA's claims and in opposition to AUA's cross-motion for summary judgment striking Leeward's single claim against AUA and its defenses to AUA's claims and awarding AUA the sums it paid Leeward as ABST. After due consideration, the Arbitrators rejected Leeward's arguments as unavailing, granted AUA's motion striking claim and its defenses to AUA's claims for recoupment of the sums it paid Leeward as ABST, awarding AUA those sums. The Arbitrators left for further arbitration AUA's Construction Defects Claims.

## POINT 1

## All OF THE ISSUES THAT THE ARBIRATORS DECIDED WERE WITHIN THEIR AUTHORITY AND THE SCOPE OF THE PARTIES' ARBITRATION AGREEMENT

**a. Having fully participated in the Arbitration, Leeward may not now challenge the authority of the Arbitrators to decide the issues raised in the Arbitration.**

It is well-established that, "[o]ne who voluntarily participates in arbitration will not thereafter be heard to complain that the arbitrator was without authority to act*." Int'l Longshoremen's Ass'n v. West Gulf Maritime Ass'n*, 594 F. Supp. 670, 674 (S.D.N.Y. 1984), aff'd, 765 F.2d 135 (2d Cir. 1985).

"Under [Section 4 of the FAA], the proper procedure for a party to challenge whether it is subject to an arbitration agreement is to move for a stay of arbitration." *Halley Optical Corp. v. Jagar Int'l Mktg. Corp.,* 752 F. Supp. 638, 639 (S.D.N.Y. 1990) (citing *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698 (2d Cir. 1985)). Many cases hold that a party who submits to arbitration, rather than seeking a stay, thereby waives the right to later challenge the arbitrators' jurisdiction over him. E.g., *Mobius Mgmt. Sys. v. Technologic Software Concepts Inc.*, 2002 U.S. Dist. LEXIS 17789, at *4 (S.D.N.Y. Sept. 20, 2002) (president of signatory company who did not seek a stay was bound by the arbitration award holding him jointly liable); *Favara, Skahan, Tabaczyk, Ltd. v. Ewing,* 1992 U.S. Dist. LEXIS 4570, at *4 (S.D.N.Y. Apr. 8, 1992) (same); *Halley Optical*, 752 F. Supp. at 640 (same). "To find otherwise would allow a party to participate in an arbitration, with the assurance that if it loses it may later challenge whether it had ever agreed to arbitration. Such a result is contrary to the clear policy favoring arbitration." Id. Here, where Leeward, after a highly adversarial arbitration in which it fully participated for more than a year, suddenly asserts that the Award is not enforceable against it, the law finds no favor in its *claim.*

**b. Leeward was, in fact, unjustly enriched.**

There is not any real issue as to whether Leeward was unjustly enriched when it invoiced and collected from AUA sums as and for ABST over the course of more than a year sums it never

10

intended to treat as ABST, and did not treat as ABST and that, in fact, were not due as ABST. It neither remitted the sums that it collected as ABST to the Government nor accounted for receipt of the sums by filing monthly tax returns as the ABST Act required. It simply pocketed the money and shortly after receiving the last of the monies, closed its offices and went out of business.

There was certainly much, much more than a "barely colorable justification" for the Arbitrators' determination that Leeward had been unjustly enriched and for their Award to AUA of the sums that it paid to Leeward as ABST.

### c. The issue of whether Leeward was unjustly enriched was within the scope of the arbitration clause at issue and within the Arbitrators' authority to determine.

Leeward re-hashes its argument that "unjust enrichment is an equitable, restitution claim that is independent of any contract," and, therefore, it was "outside the parties' arbitration agreement and beyond the scope of the Tribunal's review." (Leeward Memorandum of Law in Support of its Cross-Motion herein at p. 11). Leeward first plead this defense to AUA's claim in its Reply to AUA's Counterclaim. It next advanced its argument in Claimant's Motion to Dismiss Respondent's Counterclaims" (Exhibit A to the Sclafani Aff. at para's 8, 70-75)

AUA vigorously responded to Leeward's argument in its Memorandum of Law in Support of its Cross-Motion for summary judgment (Exhibit C to the Sclafani Aff. at pg's 1-9). AUA also responded to Leeward's argument in its Reply Memorandum of Law. (Exhibit H to the Sclafani Aff. at para's 1-18) and during oral argument on the parties respective motions.

Essentially, AUA argued, correctly, that that the arbitration provision in the parties' contract was of the broadest nature and, that, by its terms it required the parties to arbitrate not only disputes that "arise under" the contract, but also disputes that are "related to" the contract.

In the case of *Premium Nafta Products, Ltd. et al.  v. Fili Shipping Co Ltd et al.*, 2007 UKHL 40 (House of Lords 2007), the House of Lords that:

> the construction of an arbitration clause should start from the assumption that the parties, as rational businessmen are likely to have intended any dispute arising out of the relationship into which they had entered or purported to enter to be decided by the same tribunal. The clause should be construed in accordance with this presumption unless the language makes it clear that certain questions were intended to be excluded from the arbitrator's jurisdiction.

In the present case, the parties did not leave to chance the possibility that a court or an arbitration tribunal would attempt to draw a distinction between disputes "arising under" and "arising out of" the Contract as Leeward contends. Rather, the parties provided explicitly that not only disputes that "arise under" the Contract but also disputes that are "related to" the Contract would be subject to arbitration.

The modern law on interpretation of the scope of arbitration clauses is set out in the case of *North River Insurance Co. v. Allstate Insurance Co.,* 866 F. Supp. 123 (SDNY, 1994); The Court summarized the guiding principles for determining whether a party's claim falls within the scope of an arbitration clause as follows:

> Any doubts concerning the scope of arbitrable issues "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language or an allegation of waiver, delay, or a like defense to arbitrability." Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 144,121 (2d Cir. 1991) (quoting Moses H. Cone at 24-25). See also, Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington, 820 F.2d 31, 35 (2d Cir. 1987)(presumption of arbitrability is so strong that arbitration will be ordered even if claim appears frivolous)(citing AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649-50 (1986)); Government of the United Kingdom v. Boeing Co., 998 F.2d 68, 72 (2d Cir. 1993) (arbitration agreements enforced even if such enforcement creates inefficiencies or "piecemeal litigation").
>
> .....
>
> If a court concludes that an arbitration clause is broad, then "it will order arbitration and any subsequent construction of the contract and of the parties' rights and obligations of arbitrability applies with greater force when an arbitration clause is a broad one." Id. (citing AT&T Technologies at 650). See also Concourse Village, Inc. v. Local 32D, Service Employees Int'l Union, 822 F. 2d 302, 302, 304 (2d Cir. 1987) ("unless it can be said 'with positive assurance that the arbitration clause is not susceptible to

arbitration.")(quoting <u>United Steel Workers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960)); 9 U.S.C. § 3.

....

The use of the term "any" makes it clear that the parties intended the clause to be broad. <u>See Wagoner</u> at 121 (arbitration clause that purports to refer "all disputes" to arbitration is broad, and should be afforded strong presumption of arbitrability) (citations omitted); Rochdale <u>Village, Inc. v. Public Service Employees Union, Local No. 80,</u> 605 F. 2d 1290, 1295 (2d Cir. 1979) (same).[6]

It is beyond peradventure that AUA's Counterclaims are subject to arbitration under the arbitration clause of the Contract. The language of the clause leaves no room for doubt that the parties intended that all disputes deriving from or relating to the parties' relationship as owner and contractor on the Project be submitted to arbitration regardless of their nature or of the law that must be considered in resolving the disputes[7].

### d. AUA did not abandon its claim of unjust enrichment. exhaustive litigation of AUA's claim by the parties.

Leeward advances for the first time, the argument that AUA had abandoned its cause for unjust enrichment because it was not specifically set forth in its Amended Answer that added for arbitration its Construction Defects Claims. Leeward relies heavily on the fact that Arbitrator Romero so contended in his Dissenting Opinion. However, neither did Arbitrator Romero, nor does Leeward, explain why, if such was the case, long after AUA submitted that Amended Answer, the parties spent so much time, effort and labor on their respective dispositive motions

---

[6] AUA submits that the law in Antigua is to the same effect and that Leeward, itself, cited the above authorities on its motion and cannot be heard to complain now that the law as set forth therein is not the law that this Court should apply in determining the issue of the arbitrability of AUA's claims.

[7] AUA also aptly pointed out the parties Contract (Exhibit A to the Petition) included, at Sections 13.4.1 and 13. 4 "Rights and Remedies" that the rights and remedies, duties and obligations of the parties "shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law" and that Supplemental Conditions 21 modifying Article 13. 1. 1 of the parties' contract expressly provides that "the Contract shall be governed by and construed according to the laws for the time being in force in Antigua." AUA also pointed out that the ABST Act and the common law rights and claims of unjust enrichment are laws of Antigua that were in force at the relevant time to which the parties were subject and that govern their rights and obligations under their contract. (Exhibit H to the Sclafani Aff.-Reply Memorandum of Law at para.'s 7-9).

litigating for and against granting an Award to AUA on its claim of unjust enrichment. Leeward began the debate on the issue itself by advancing arguments on it on its own motion long after the pleadings phase of the arbitration had concluded. (Exhibit A to the Sclafani Aff. at para.s 43,70-75), It continued the debate during a full day of oral argument on the parties' motions. Leeward had a full and fair opportunity to litigate AUA's unjust enrichment claim and availed itself of that opportunity. Under the circumstances, there was more than a "barely colorable justification" for the Arbitrators to determine that Leeward was unjustly enriched.

**e.  The Arbitrators Were Well Within Their Power And Authority To Decide AUA's Claim for Return of the Monies It Paid to Leeward As ABST.**

Leeward contends that AUA's claims seeking return of the sums that it remitted to Leeward as ABST were outside the scope of the parties' agreement to arbitrate disputes and were outside the authority of the arbitrators to determine because the issue involves "tax law enforcement." These issues were fully litigated through the parties' dispositive motions. On its dispositive motion, Leeward advanced these same arguments under the rubric of AUA's "lack of standing" to enforce tax laws. (See Exhibit A to the Sclafani Aff.- Leeward's Motion to Dismiss AUA's Counterclaims- at para.s 56-59). Leeward now rehashes the same arguments that the Arbitrators correctly rejected.

For the same reasons, that AUA advanced at the Arbitration, Leeward's contentions are without merit as the Arbitrators correctly determined. See Exhibit C to the Sclafani Aff.- AUA's Memorandum of Law in support of is Cross-motion for Summary Judgment and in opposition to Leeward's motion to dismiss AUA's counterclaims-at pg.s 9-16. See also, Exhibit H to the Sclafani Aff.-AUA's Reply Memorandum of Law In Further Support of its Cross-Motion for Summary Judgment and in Opposition to Leeward's Motion to Dismiss AUA's Counterclaims-at para.s 1-52. The fact that AUA's ABST Counterclaims and AUA's defenses to Leeward's

arguments against them involve some understanding and interpretation of the ABST Act does not place AUA's ABST Counterclaims outside of the scope of the parties' contract or outside of the authority of the Arbitrators to decide them; Antigua's tax laws are not different than any other laws of that country. The parties expressly agreed that their contract and the respective rights and obligations of the parties to it would be governed by, and construed under, those laws. See Point I (b.) hereof.

Notably, Leeward provides neither authority nor good reason for its argument that disputes between the parties that involve taxes or the tax laws of Antigua or the respective rights and obligations of the parties under their contract that involve in any way taxes are beyond the scope or authority of the Arbitrators to decide. They are not. Moreover, as set forth in the affidavits of Douglas McLaren, Deputy Commissioner of Antigua and Barbuda Department of Inland Revenue (Exhibits F and I to the Sclafani Aff.), AUA's claims for the monies it paid to Leeward as ABST are not claims seeking to enforce the ABST Act or the tax laws of Antigua, nor are they claims for a "tax refund". They are claims to recoup sums paid to Leeward to which Leeward was not entitled under the contract.

Deputy Commissioner Douglas McLaren was, at the relevant times, the Director of ABST Implementation Section of the Antigua and Barbuda Department of Inland Revenue. Through his two affidavits, he makes clear that, contrary to Leeward's arguments, the duty to pay ABST under the ABST Act lies with the supplier of goods and services (in our case, Leeward) and not with the receiver of supplies (AUA). He also makes clear that, because AUA's construction project is in the Antigua and Barbuda Free Trade and Processing Zone, no ABST was due in connection with Leeward's work on AUA's project. The result of this, he attests, is that because there was no tax due on Leeward's work, and, in any case, it was Leeward and not AUA who

was liable for payment of any taxes due on its work: i.) the moneys that AUA paid to Leeward as ABST were, in fact, not taxes at all; ii.) those monies were nothing more than an overpayment to Leeward of the sums due Leeward for Leeward's work; iii.) AUA's remedy for overpaying Leeward is to seek reimbursement of the overpayment directly from Leeward; iv.) AUA was not entitled to a tax refund from the Government for those monies. Mr. McLaren supported his testimony with analysis of specific provisions of the ABST Act. He also included as an exhibit to the first of his affidavits correspondence that he had sent to AUA in which he had advised AUA of the foregoing

Accordingly, the Arbitrators were more than justified in deciding that AUA was entitled to recoup from Leeward what Leeward had collected from it as ABST and, even if they were not, given the extensive arguments of the parties and the testimony and evidence before them, they had more than a colorable justification for so deciding.

## POINT II

## THE ARBITRATORS' AWARD IS UNAMBIGUOUS, CLEAR, AND FINAL

Leeward baldly asserts that the Award herein is ambiguous; however, nowhere in Leeward's moving papers is there even a hint of a suggestion as to why or what about the Award is ambiguous. It is not. Leeward also contends that the Award is not final; however, neither does it, nor can it legitimately, provide a basis for its assertion.

Contrary to Leeward's argument, the Award fully and finally resolved all of the Parties Respective ABST Related Claims, leaving to be arbitrated through further proceedings only AUA's wholly unrelated Construction Defects Claims[8] and such incidental matters as attorney's

---

[8] AUA has not addressed Leeward's motion insofar as it seeks relief from the Arbitrators' refusal to strike AUA's Construction Defects Counterclaims. As to these, the Arbitration Award was not final. It would be patently inappropriate for this Court to interject itself in those claims before the Arbitrators reach final determination of

fees and costs. Through the Award, the Arbitrators conclusively, unambiguously and finally rejected Leeward's sole claim against AUA. The claim is fully and finally dismissed.  No aspect of it remains to be arbitrated or decided by the Arbitrators. Similarly, the Arbitrators conclusively, unambiguously and finally found in AUA's favor on its claims against Leeward for return of the sums it paid Leeward as ABST. Having so decided, no aspect of AUA's claims seeking the return of the sums it paid Leeward as ABST remain to be determined.

Leeward also contends that the Award exposes it to "double liability" because it provides that, upon payment of the amount of the Award, Leeward will be entitled to indemnity from AUA in the event that the taxing authorities in Antigua require it to pay ABST on AUA's project. Here Leeward argues that it may be that "the Antigua and Barbuda tax authorities may find that Leeward had no outstanding tax obligation on the project because had already satisfied is obligations by paying ABST to contactors and vendors down the stream of commerce from it for services and materials purchased for the project."  Leeward's Memorandum in support of its Cross-Motion at pg. 16) However, a finding of no tax liability on AUA's project will not expose Leeward to paying to the Government any of the "ABST" that the Award requires Leeward to return to AUA[9].

There can be no issue that the Arbitrators were well within their authority in fashioning the remedy that they did.  The Award here was wholly justified by the voluminous evidence and legal briefing submitted by both sides, and the remedies provided were well within the Arbitrator's broad discretion to fashion remedies, which even extend to "grant[ing] equitable

---

them. Notably, Leeward's cross-motion for judgment striking AUA's Construction Defects Counterclaims runs contrary to its argument that the Award is not final.

[9] Significantly, the Government, through its November 17, 2009 correspondence with AUA (which is attached to Deputy Commissioner McLaren's November 4, 2013 affidavit) has already expressly determined that, because AUA's project is located in the Antigua and Barbuda Free Trade and Processing Zone, no ABST is due on its construction project.

relief that a Court could not." *Konkar Maritime Enterprises, S.A. v. Compagnie Belge D'Affretement*, 668 F.Supp. 267, 271 (S.D.N.Y. 1987); see also *Millicom Int'l V N.V., v. Motorola, Inc.*, 2002 U.S. Dist. LEXIS 5131, at *19 (S.D.N.Y. Mar. 27, 2002) ("Arbitrators [] enjoy broad discretion to create remedies unless the parties' agreement specifically limits this power.") (citation omitted)

Accordingly, pursuant to the express mandate of Section 9 of the FAA, the Court should confirm the Award in its entirety.

## POINT III

### THE AWARD WAS FULLY JUSTIFIED. IT DOES NOT CONSTITUTE A "MANIFEST DISREGARD OF THE LAW"

Leeward attempts to re-litigate several of the issues it raised in the Arbitration, under the heading of "manifest disregard of the law." Under that heading, Leeward re-hashes its contentions based on the doctrines of res judicata, waiver and modification. Neither are these arguments meritorious as AUA demonstrated during the Arbitration (See, Exhibit C to the Sclafani Aff.- AUA's Memorandum of Law in support of its Cross-Motion for Summary Judgment - at pg.s 27-35. See also, Exhibit H to the Sclafani Aff.- AUA's Reply Memorandum in Further Support of its Cross-Motion – at para.s 53-93.) Nor, even if there was any merit to Leeward's contentions does the Arbitrators rejection of them constitute a "manifest disregard of the law" that would permit this Court to vacate or modify the award or refuse to confirm it.

Arbitral awards may be vacated for manifest disregard "only in those exceedingly rare instances when some egregious impropriety on the part of the arbitrator is apparent." *Sea Shipping Inc. v. Half Moon Shipping, LLC*, 848 F. Supp. 2d 448, 455 (S.D.N.Y. 2012) (quoting *T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010)). "[A]wards should be enforced as long as there is a 'barely colorable justification for the outcome

reached.'" Id. (quoting *T. Co. Metals*, 592 F.3d at 339). "A court should only vacate an award when a party clearly demonstrates that the panel intentionally defied the law." Id. (emphasis in original; citation omitted). To the same effect, see *Fed. Ins. Co. v. Bergesen D.Y. Asa Oslo,* 2012 U.S. Dist. LEXIS 127838, at *13 (S.D.N.Y. Sept. 7, 2012)[10].

Here, not only is there no basis for concluding that the Arbitrators "intentionally defied the law" or committed any "egregious impropriety," but the facts and evidence presented to Arbitrators plainly established that Leeward's res judicata, waiver and modification arguments were, and are "unavailing" as the Arbitrators have found.

### i. Leeward's Res Judicata Defense is "Unavailing" As the Arbitrators Found

Leeward's contention that AUA was barred by the doctrines of res judicata from opposing Leeward's claim and from advancing its own counterclaims is premised on the erroneous proposition that because AUA had failed to present those claims and defenses in the first arbitration between the parties, it was precluded from raising them in the Arbitration now at issue. However, because the issues underlying AUA's claims and defenses in the present Arbitration were not relevant to a determination of any of the claims advanced by either of the parties in the prior arbitration and because it was not necessary in order to determine any of the claims or issues raised by either party in the first arbitration for the arbitrators in that arbitration to determine any of the issues in the instant arbitration, Leeward's contention must be rejected.

---

[10] We leave for another day the question of the unsettled future of the "manifest disregard of law" standard. *See, Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 672 n.3 (2010) (assuming without deciding that even after *Hall Street Associates, L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 585 (2008), "manifest disregard of the law" remains a valid judicial gloss on § 10 of the FAA). We do not, however, accede to Respondents' reliance on a doctrine they variously call "manifest disregard of the contract" or "essence of the agreement," concepts that are confined to review of collective bargaining arbitration awards under Section 301 of the Labor Management Relations Act, and are inapplicable to commercial arbitration awards governed by the FAA. *See Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 220-222 (2d Cir. 2002), *InterDigital Commc'ns Corp. v. Nokia Corp.,* 407 F. Supp. 2d 522, 531 (S.D.N.Y. 2005), *Ibar Ltd. v. Am. Bureau of Shipping,* 2003 U.S. Dist. LEXIS 7386, at *9 (S.D.N.Y. May 1, 2003), *aff'd,* 92 F. App'x 820 (2d Cir. 2004).

In the case of *Mavis Henry v. Tyrone Walker*, Claim No. ANUHCV 2000/2007, East. Carib. Sup. Ct. (2009), which case cites *Henderson v. Henderson*, 34 Hare 100, 114-115 (1942), and which Leeward cites as authoritative, the court summarized the doctrine of res judicata under the law of Antigua:

> The plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which **properly belonged to the subject of the litigation**, and which the parties, exercising reasonable diligence, might have brought forward at the time. (Emphasis added)

However, the Court went on to explain that a point "which properly belonged to subject of the [prior] litigation" was as a point "which the earlier court would have of necessity had to resolve had it been raised" in order to determine the issues presented in the prior litigation.

In the case of *NLRB v. United Technologies Corp.*, 706 F2d 1254 (2d Cir. 1983) cited by the Leeward in support of its res judicata affirmative defense, the Court advised:

> [T]he circumstance that several operative facts may be common to successive actions between the same parties does not mean that the claim asserted in the second is the same claim that was litigated in the first. Whether or not the first judgment will have preclusive effect depends in part on whether the same transactions or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first. See, e.g., Tucker v. Arthur Andersen & Co., 646 F.2d 721, 726-28 (2d Cir. 1981); *Herendeen v. Champion International Corp.*, 525 F. 2d 130, 133-34 (2d Cir 1975); Restatement (Second) of Judgments § 24 (1).

The above quoted language was quoted with approval in *Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (2d Cir. 1992.) In that case, the Court, in determining that the plaintiff's claims were barred by the doctrine of res judicata, the Court found that:

> [T]he present action involves the same transaction, and therefore the same cause of action, for res judicata purposes. The factual predicates of the employment termination challenged in Woods I and Woods II were the same, Essentially the same underlying occurrence was relevant to both the LMRA and Title VII claims, Both actions centered around Dunlop's firing of Woods, the reasons for termination, and her employment history, physical limitations, and qualifications.

. . .

"It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which Woods chose to frame her complaint. (Citations omitted). Whatever legal theory is advanced, when the factual predicates upon which the claims are based are substantially identical, the claims re deemed to be duplicative for purposes of res judicata. Expert Electric, Inc. v. Levine, 554 F.2d 1227, 1234 (2d Cir.) cert. denied, 434 U.S.903, 54 L. Ed 190, 98 Sup. Ct. 330 (1997).

Here, the prior arbitration did not involve any of the issues raised by either party in the instant Arbitration. The claims in the prior arbitration were limited to: Leeward's claims: a) that AUA breached the contract by deleting work without the Leeward's consent and by failing to pay for the deleted work, by failing to pay a mobilization fee and by failing to pay for delays that it caused in the completion of the Project; and b) that AUA was liable to the Leeward for interest on payments that it made, and to AUA's counterclaims for damages for delays occasioned by the Leeward. None of the issues presented in the prior arbitration were the same as any of the issues herein presented. None of the claims and none of the defenses to the claims in the prior arbitration involved any aspect of ABST or Construction Defects. The facts underlying the prior arbitration were significantly different than the facts underlying the present arbitration and no aspect of the claims and defenses in the instant arbitration was required to be determined in order for the claims and defenses in the prior arbitration to be adjudicated. No aspect of any of the claims or defenses raised in the present arbitration were "essential elements" of the prior arbitration and none of the evidence presented in support of the respective parties' claims in the present proceeding with the exception of the Leeward's invoices and AUA's payments were relied upon or required for the arbitrators to adjudicate the claims in the prior litigation.[11]

In short, the matters and issues raised by AUA in the present arbitration were not the "subject of the [prior] litigation."

---

[11] With respect to those invoices and payments, the entries on those documents relating to ABST were not relevant to the issues in the prior case or to the determination of any of those issues.

21

It was strictly as an ancillary matter not relevant to any of the issues in the prior litigation and wholly collateral to them that AUA's outside counsel advised the Tribunal in his opening statement that he had discovered what he believed to by a "mutual error" of the parties in payment requisition of the Leeward in that sums that he believed should have been invoiced as ABST were invoiced as part of the contract sum[12].

Notably, in advising the Tribunal of the error that he thought that he uncovered, he specifically advised that the error was "outside the context of [the prior] arbitration." See, para. 80 of AUA's Proposed Findings of Fact and Conclusions of Law in the prior arbitration [Exhibit ?]. And, upon the Leeward's request at the end of the proceedings to include the amount of the "mutual error" as damages, the Tribunal in the prior arbitration found:

> Panel's Determination:
> This Panel determines that the ABST error was mutually acknowledged by both parties, and not having been submitted as a controversy of this Arbitration and having it been discovered and in good faith informed by an AUA representative during the hearings, we conclude that this issue should be resolved outside of the context of this Arbitration. (Emphasis added.) (Exhibit BB to Exhibit B of the Sclafani Aff.- Final Award in the prior arbitration at p. 27, 28, para. 30)

From the above, it is clear than, not only was there no "manifest disregard of the law" in the Arbitrators' determination that Leeward's defense to AUA's claims under the doctrine of res judicata was "unavailing," but the determination was fully in accord with applicable law.

### i. Leeward's Waiver Defense is "Unavailing" As the Arbitrators Found

Leeward's rehashes of its argument that, by paying Leeward's invoices that contained line items for ABST without protest, AUA waived the right to recoup those sums from it. AUA fully demonstrated to the Arbitrators that Leeward's waiver defense was unavailing, as the Arbitrators found. (See Exhibit Cto the Sclafani Aff-AUA's Memorandum in Support of its Motion for

---

[12] Counsel was, in fact correct. He did uncover a mutual error-or AUA's error and the Leeward's fraud. However, the error was not the one that he thought he had found.

Summary Judgment-at pg.s 20-26. See also, Exhibit H to the Sclafani Aff-AUA's Reply

Memorandum-at para.s 94-116). In summary, AUA argued:

In the first instance, Section 13.4. of Article 13. 4 "Rights and Remedies" of the parties'

contract (Exhibit A to the Petition) provides:

No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of
a right or duty afforded them under the Contract, nor shall such action or failure to act
constitute approval or acquiescence in a breach thereunder, except a may be specifically
agreed in writing.

This provision plainly barred Leeward from asserting the defense of waiver. At no time

did AUA ever agree in writing to waive its right to recover the sums that the Leeward

invoiced and collected as ABST. Moreover, the actions of AUA that it cites as the basis for its

defense of waiver satisfy the elements of the defense.

In *Bremer Handelgesellschaft M.B.H. v. C. Mackprang Jr.*, 1 Lloyd's Rep. 221 (Court of

Appeal 1979), a case cited by Leeward in support of its waiver defense, the Court ruled:

The modern law as to waiver was stated by this Court in *Panchaud Freres,* [1970] 1
Lloyd's Rep. 53 and *Alan & Co. v. El Nasr Export & Import Co. Ltd.* [1972] 1 Lloyd's
Rep. 313; [1972] 2 Q.B. 189, where [Lord Denning M.R.] said at pp. 323 and 213:
If one party, by his conduct, leads another to believe that the strict rights arising
under the contract will not be insisted upon **intending that the other should act
on that belief, and he does act on it,** then the first party will not afterwards be
allowed to insist on the strict legal right when it would be inequitable for him to
do so. . .(emphasis added)

Of similar import on the need for the a party to a contract to have relied to his determent on an

act or representation of the other party that that he claims constituted a waiver is the treatise

*Chitty on Contracts,* 22,23, which Leeward also cites as authority for its waiver defense:

Waiver in the sense of "waiver by estoppel" rather than "waiver by election" may also be
held to have occurred if, without any request, one party represents to the other that he will
forbear to enforce or rely on a term of the contract to be performed or observed ty the
other party, **and the other party acts in reliance on that representation. (Emphasis
added)**

23

In *Motor Oil Hellas (Corinth) Refineries S.A.V. Shipping Corp. of India (the Kanchenjunga)*, 1 Lloyd's Rep. 391 (House of Lords 1990), another of the authorities cited by Leeward in support of its waiver defense, the Court found as necessary elements of the defense that the party evidenced the waiver by conduct that was unequivocal. (See, *Woodhouse v. Nigerian Produce Marketing Co. Ltd* [1972 1 Lloyd's Rep. 439; [1972] A.C. 741 at pp. 445 and 735).The Court also opined:

> Generally, it is a prerequisite of election [to waive a contract right] that the party making the election must be aware of the facts which have given rise to the existence of his right.

In *Bessler, Glover & Co., Ltd. v. South Derwent Coal Company, Ltd.*, [1937] 59 Lloyd's List Law Rep. 104, another case cited by the Leeward in support of its waiver defense, the Court ruled that mere forbearance from insisting on a contract right is insufficient to constitute a waiver of that right.

Here, invoicing AUA for ABST and then pocketing the money, Leeward did not act to its detriment or rely on any act or failure to act of AUA. Nor did AUA pay Leeward's invoices with the knowledge that Leeward was pocketing what it collected as ABST for its own use. Each of Leeward's invoices that included a line item for ABST included, impliedly, Leeward's promise and representation that it would treat the sums that it invoiced as ABST as trust funds as the law required it to do. Leeward's invoicing carried with it the implied warranty that it would remit those sums to the Government and would account for them by filing monthly tax returns as the law required. It did not do so and AUA had no idea at any time that it was paying the invoices that the Leeward was issuing that the Leeward was not treating the funds that it invoiced as ABST trust funds.  AUA also had no idea that, as a result of Leeward's actions and failures to act and the Government's lack of response to its

24

inquiries, AUA would not be able to recover the sums that it was paying to Leeward as ABST from the Government.

Accordingly, Leeward's defense of waiver was meritless and the Arbitrators were correct in deciding against Leeward on it. They certainly committed no disregard of the law of any kind.

## CONCLUSION

On the basis of the foregoing, this Court must deny Leeward's Cross-motion in its entirety, grant AUA's Petition, confirm the Partial Final Arbitration Award and enter judgment in AUA's favor accordingly, together with such other relief as the Court deems appropriate.

Respectfully submitted:

Leonard A. Sclafani, Esq.
Law Offices of Leonard A. Sclafani, Esq.
Attorneys for Respondent AUA
One Battery Park Plaza, 33rd Fl.
New York, New York 10004
212-6967-9880
las@lasattorneys.com