UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
AMERICAN UNIVERSITY OF ANTIGUA –
COLLEGE OF MEDICINE,

               Plaintiff,

      v.

LEEWARD CONSTRUCTION COMPANY,
LTD.,

          Defendant.
-----------------------------------------------------------------x

Case No. 1:14-CV-08410-DLC/GWG
Honorable Denise L. Cote
United States District Judge

**DECLARATION OF
LEONARD A. SCLAFANI**

Leonard Sclafani, being duly sworn, deposes and says:

1.    I am the Senior Vice President and General Counsel of Manipal Education Americas, LLC, agent for American University of Antigua Inc. College of Medicine ("AUA"), and unless otherwise stated, I am fully familiar with all of the facts and circumstances set forth herein. I submit this declaration in support of AUA's motion for (i) an order of attachment under Federal Rule of Civil Procedure 64 and C.P.L.R. Articles 62 and 75 attaching Defendant Leeward Construction Company, Ltd.'s ("Leeward") interest in the Corrected Amended Judgment (the "First Judgment" or "Leeward's Judgment"), entered on June 11, 2013, Docket No. 1:12-CV-06280 (Kaplan, J.), and the related *supersedeas* bond and (ii) a preliminary injunction enjoining Leeward from enforcing the First Judgment in violation of its Stay Agreement with AUA dated May 8, 2013 (the "Stay Agreement").

### Leeward's Insolvency

2.    Leeward is currently a defunct business and admittedly "has not conducted significant, if any, business since it completed the [AUA] Project back in 2009." Attached

hereto as **Exhibit 1** is a true and correct copy of an October 22, 2013 letter from Leeward's counsel, J. Scott Greer, to the arbitration panel and me so stating.

      3.    During the time Leeward was working on the AUA project, Leeward's offices and principal place of business were located at All Saints Road, St. John's, Antigua. These offices have been closed since approximately 2009. I am not aware of Leeward occupying any other location on Antigua or performing any work on Antigua since that time. Attached hereto as **Exhibit 2** is a true and correct copy of an October 11, 2013 letter from Leeward's counsel, Veronica A. McMillan, to me stating that "Leeward Construction Company, Ltd. is not currently operating, its office facility is closed . . ."

      4.    These 2013 representations from Leeward's counsel are consistent with and confirm what Leeward's Director and co-owner, Eric Linde, admitted during the First Arbitration. True and correct copies of Mr. Linde's witness statement and hearing testimony from the First Arbitration are attached as **Exhibits 16 and 17** to my prior declaration, sworn to on June 27, 2013, in *Leeward Constr. Co. v. American University of Antigua – College of Medicine*, Docket No. 1:12-CV-06280 ("First Action"). My prior declaration in the First Action can be found at DE # 40.

      5.    AUA has repeatedly expressed its concern that Leeward is an insolvent shell corporation with no assets, other than the First Judgment against AUA from the First Arbitration in the amount of $966,026.79. AUA first raised this concern in the second arbitration between the parties (the 'Second Arbitration"), which Leeward commenced on February 7, 2013, while the parties were awaiting a decision on Leeward's Petition to confirm the First Arbitration Award in the First Action.

6.      Leeward's insolvency became highly relevant when AUA asserted counterclaims in the Second Arbitration that exceeded the amount AUA owed Leeward under the First Judgment. Because Leeward had admitted it was no longer in business, and AUA had reason to believe Leeward had no assets other than the First Judgment to satisfy AUA's claim, the primary value of AUA's counterclaims in the Second Arbitration is to set off the First Judgment.

7.      AUA has continued to voice its concern regarding Leeward's insolvency, doing so in the Second Arbitration, in its Order to Show Cause papers, at oral argument before Judge Kaplan, and in mediation before the Second Circuit. Not once has Leeward disagreed that it is insolvent. On the contrary, Leeward represented that it had no assets when it sought to stay AUA's construction defects counterclaims in the Second Arbitration and when conferring with the Second Circuit case manager regarding the pros and cons of entering into a Local Rule 42.1 stay.

8.      In addition to admitting its insolvency, Leeward has done nothing to alleviate AUA's very real and well-founded fear that, if given the opportunity, Leeward would execute on the First Judgment, dissipate those funds, and leave AUA to execute its anticipated judgment against an empty shell.

9.      As set forth in detail in my prior declaration and in the prior declaration of Jonathan S. Jemison in the First Action, dated June 28, 2013, Docket No. 1:12-CV-06280, DE # 39, Leeward's insolvency was the driving force behind the parties' desire to enter into the Stay Agreement.

10.     When Leeward attempted to breach the Stay Agreement, AUA was forced to file an Order to Show Cause before Judge Kaplan seeking a stay of enforcement of the First Judgment under either the Stay Agreement or the Court's inherent powers.

3

11.     During oral argument on AUA's petition, Judge Kaplan stated that AUA would be irreparably harmed if Leeward were permitted to execute the First Judgment before resolution of the Second Arbitration. Judge Kaplan stated: "You [Leeward] have a writ of execution which means that you can go grab their property without notice any minute, right? . . . What you have now is court process that allows you to grab their property. . . . Are you telling me you have no intention of doing that?" To which Leeward's counsel responded, "No, I'm not telling you that, your Honor." Judge Kaplan then continued, "So, obviously you do have an intention of doing that, or at least there's a credible threat that you do. **In light of what has been said about the status of Leeward, and it seems to me that there is a manifest threat that if you were to do that, the property would be dissipated and that would be the end of it. It would be irreparable**." (First Action DE # 48, June 28, 2013 Tr. at 12:10-12, 17-25, 13:1-2) (emphasis added).

12.     However, because the First Judgment had already been rendered in that action and the case closed, the court questioned whether it had jurisdiction to stay the First Judgment, indicating AUA may need to achieve that through collateral litigation. (June 28, 2013 Tr. at 9:5-18, 19:22-20:8).

### The Standstill Agreement

13.     Thereafter, on July 11, 2013, the parties agreed to avoid the time and expense of litigating their disputes over the Stay Agreement while the Second Arbitration was pending by entering into a Standstill Agreement. As was the case with the Stay Agreement, Leeward's insolvency was the driving force behind the parties' desire to enter into the Standstill Agreement. A true and correct copy of the Standstill Agreement is attached hereto as **Exhibit 3**.

4

14.     Under the Standstill Agreement, AUA agreed, among other things, to withdraw its motion pending before Judge Kaplan without prejudice and to convert its existing bond to a *supersedeas* bond, which would effectively stay enforcement of the First Judgment pending a final disposition of AUA's appeal. (*Id.* at ¶¶ 2, 5).

15.     Leeward agreed, among other things, to cease any and all efforts to execute on the First Judgment so long as the *supersedeas* bond remained in place. (*Id.* at ¶ 4).

16.     As a result of mediation at the Second Circuit, the parties further agreed to avoid the time and expense of prosecuting AUA's appeal while the Second Arbitration was pending by entering into a series of Local Rule 42.1 stipulations withdrawing the appeal without prejudice, subject to reinstatement by agreed upon dates. (*Id.* at ¶¶ 1-2; *see* 2d Circuit Docket No. 13-1708, DE 53, 57, 62, 64, 70).

**Leeward Undermines the Second Arbitration and this Confirmation Proceeding**

17.     By Partial Final Award certified September 18, 2014, the arbitrators in the Second Arbitration ruled in favor of AUA and directed Leeward to pay damages in the amount of US $1,344,588.25 (the "Second Award").

18.     On October 21, 2014, AUA commenced these proceedings seeking to confirm the Second Award and requesting a judgment in the amount of $1,344,588.25 (the "Anticipated Judgment").

19.     Knowing that entry of the Anticipated Judgment confirming AUA's award in the Second Arbitration would more than fully offset Leeward's Judgment from the First Arbitration, Leeward has engaged in behavior designed to render the Anticipated Judgment a nullity.

20.     In furtherance of these efforts, Leeward has refused to consent to an extension of the Local Rule 42.1 stay in the Second Circuit, thereby forcing AUA to reinstate its appeal in

order to preserve the stay or risk suffering the consequences of Leeward executing on the First Judgment and dissipating those funds before this Court rules on AUA's pending motion to confirm the Second Award. AUA reinstated its Second Circuit appeal on February 2, 2015. (DE 52). AUA has repeatedly told Leeward that once it abandons its attempt to renege on the Stay Agreement, AUA will withdraw the appeal consistent with its obligations under the Stay Agreement. In this regard, AUA stands ready, willing and able to withdraw the appeal.

21.    Additionally, Leeward has opposed AUA's motion to confirm the Second Award by arguing, in part, that the award is non-final because AUA's unrelated construction defects counterclaims are still pending. (*See* DE 25, at 16; DE 35, at 10).

22.    What Leeward has not disclosed to this Court is that Leeward has recently stopped paying its required arbitration fees. On December 22, 2014, the tribunal suspended arbitration proceedings on AUA's remaining construction defects counterclaims because of Leeward's failure to pay its arbitration fees. Attached hereto as **Exhibit 4** is a true and correct copy of a December 22, 2014 letter from the American Arbitration Association International Centre for Dispute Resolution ("AAA") to counsel for AUA and Leeward so stating.

23.    Subsequently, the AAA has confirmed that AUA has no outstanding arbitration fees and that Leeward owes $24,996.37 in arbitration fees. Attached hereto as **Exhibit 5** is an e-mail chain between Carolina Cardenas-Venino of the AAA and me so stating.

24.    Thus, Leeward has refused to cooperate with arbitration while simultaneously asking this Court to indefinitely postpone confirmation of AUA's Award until the arbitrators rule on AUA's construction defects counterclaims. Leeward is actively preventing the arbitration panel from resolving AUA's unrelated construction defects counterclaims and then using that same impediment—an impediment Leeward created—to argue that AUA's award is non-final

6

and not ripe for confirmation because "it does not resolve all claims between the parties and in fact, contemplates further proceedings." (DE 25, at 16).

25.     According to Leeward, as long as it refuses to participate in the Second Arbitration, this Court cannot enter the Anticipated Judgment. If Leeward can delay the Second Arbitration and avoid entry of the Anticipated Judgment long enough, the Second Circuit might decide AUA's appeal in Leeward's favor in time for Leeward to disappear with AUA's assets.

26.     The consequences of permitting Leeward to execute on the First Judgment would be dire for AUA. AUA stands to lose the benefit of its bargain under the Stay Agreement and is in danger of losing approximately $1 million that it will never be able to get back. Leeward, on the other hand, is already fully secured by the bond AUA obtained, including interest on the First Judgment for two years. Thus, Leeward has nothing to lose if the Court grants the relief sought herein. The relief sought is necessary to preserve the *status quo* to ensure that Leeward does not obtain a windfall before the resolution of the claims between the parties. On these facts, no harm can come fashioning a remedy that ensures justice for both Leeward and AUA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
LEONARD A. SCLAFANI, ESQ.

Dated: February 16, 2015

7

# EXHIBIT 1



LOU LEWIS
J. SCOTT GREER
VERONICA A. MCMILLAN*†

JOAN QUINN**
PAUL E. DENBAUM
ALANA R. BARTLEY*

*ALSO ADMITTED IN NEW JERSEY
**ALSO ADMITTED IN MASSACHUSETTS
†REGISTERED NURSE

510 HAIGHT AVENUE
POUGHKEEPSIE, NEW YORK 12603

(845) 454-1200
FAX (845) 454-3315
WWW.LEWISGREER.COM

MAILING ADDRESS
———
P.O. BOX 2990
POUGHKEEPSIE. NY 12603

October 22, 2013

**VIA ELECTRONIC MAIL**

Diego Brian Gosis, Chair
175 SW 7th Street, Suite 2110
Miami, FL 33130
Email: diego.gosis@gommsmith.com

Judith B. Ittig
Ittig & Ittig, P.C.
1420 Ninth Street, NW
Washington, DC 20001-3344
Email: jbi@ittig-ittig.com

Carlos A. Romero Jr.
3195 Ponce de Leon Blvd.
Suite 400
Coral Gables, FL 33134
Email: car@postandromero.com

     Re:    Case No. 50 110 T 00118 13
              Leeward Construction Company Limited v. American University of Antigua -
              College of Medicine
              Our File No.:  966-04

Dear Tribunal:

       This office represents the Claimant, Leeward Construction Company, Ltd. in the above referenced. We submit this letter in opposition to the American University of Antigua - College of Medicine's Application for a Preclusion Order and Other Relief, dated October 17, 2013 (the "AUA's Application").  Leeward respectfully requests that the Tribunal deny the AUA's Application in its entirety.

       As we understand the AUA's Application, the AUA objects to Leeward's document production with respect to Leeward's "collection of ABST and payment of ABST to third parties covering the periods that the Leeward was engaged in the construction of the AUA's campus building in Antigua." The AUA seeks an order precluding Leeward from asserting its defense that it paid more ABST to third parties than it collected from the AUA. The AUA also requests sanctions due to Leeward's alleged "bad faith."

       The AUA concedes that Leeward has produced over 2000 bates stamped documents in response to this request (*see* AUA Application, p. 4), but fails to advise the Tribunal that, on August 16, 2013, Leeward also identified substantial documentation responsive to the AUA's document demands that the AUA already has within its possession, custody and control.  (A copy of Leeward's August 16, 2013 letter to Leonard Sclafani is annexed hereto as Exhibit 1.)

AAA Tribunal
October 22, 2013
Page 2 of 4

     With respect to Leeward's collection of ABST, the AUA has previously conceded that the payment requisitions demonstrate the amount of ABST Leeward collected from the AUA. (A copy of an e-mail from Leonard Sclafani, dated September 5, 2013, is annexed hereto as Exhibit 2.) These requisitions were stipulated into evidence in the Prior Arbitration as Exhibits 2-23. (*See* AUA Application, Exhibit D.) Therefore, the payment requisitions submitted by Leeward and paid by the AUA represent all of the ABST that Leeward collected during this time.

     With respect to ABST that Leeward paid to third parties, Leeward has produced checks that evidence the extensive amount of ABST that Leeward paid to third parties during the time period that Leeward worked on the Project, because under the ABST Act, the amounts paid are presumed to include a 15% charge for ABST:

> A price charged by a taxable person in respect of a taxable supply includes an amount representing the ABST chargeable on that supply, whether or not the person included an amount for ABST when determining the price, stated that the price included an amount for ABST, or otherwise took ABST into account in setting the price.

ABST Act, Part XIV, Paragraph 57(1) (2006), *as amended* (2008). (For the convenience of the Tribunal, a copy of Part XIV of the ABST Act is annexed hereto as Exhibit 3.) Therefore, the checks allow the AUA to determine exactly how much ABST Leeward paid during the relevant time period. The AUA is then able to compare the amount of ABST Leeward paid to the amount of ABST Leeward collected to determine whether Leeward ultimately owed ABST during that time.

     The Tribunal should note that Leeward has not conducted significant, if any, business since it completed the Project back in 2009. As a result, it no longer possesses each and every invoice for the Project. We obviously cannot produce what Leeward no longer possesses.[1] Nevertheless, Leeward previously produced a large number of invoices to the AUA during the Prior Arbitration. (Exhibit 1) Specifically, Prior Arbitration Exhibits 8, 8A, 9, 13 and 16 contain invoices that include the ABST that Leeward paid with respect to the Project, and those invoices correspond to the checks that Leeward produced herein. The AUA's contention that Leeward produced no invoices responsive to its demands is simply not true; rather, the AUA did not review all of the documentation that Leeward identified as responsive.

     The AUA's attempt to impeach Leeward through Robert Winwood's testimony in the Prior Arbitration is without merit. While the AUA correctly notes that Robert Winwood organized and maintained an electronic archive of many project documents, the AUA incorrectly assumes that Robert Winwood maintained and organized a detailed archive that contains all of the Project documents, including vendor invoices. The electronic archive that Robert Winwood

---

[1] The Tribunal should note that Leeward is continuing to search for additional documents. In fact, Leeward is preparing to produce additional documents that have just been received from Antigua this morning. If further documents are located, they will be provided.

AAA Tribunal
October 22, 2013
Page 3 of 4

created and maintained consists of project documentation that specifically concerns the construction of the Project, such as contract documents, specifications, requests for information, communications between the AUA, Leeward, and the Project Architect, etc. While the electronic archive includes Leeward's payment requisitions to the AUA, some of which contain invoices, the archive does not include all documentation concerning payments that Leeward made to third parties or Leeward's accounting information.

The AUA's accusation that Leeward is "guilty of spoliation of evidence" is also without merit. If the AUA wanted Leeward to preserve each and every invoice relating to the ABST Leeward paid to all third parties during the pendency of the Project, then the AUA should have sent Leeward a Notice to Preserve Evidence in November 2009, when the Antiguan Department of Inland Revenue advised the AUA to seek a refund of ABST from the Project vendors.[2] (A copy of the November 17, 2009 e-mail from the Department of Inland Revenue to the AUA, which was produced by the AUA in this arbitration, is annexed hereto as Exhibit 4.) The AUA could have also sent the Notice to Preserve Evidence to Leeward on December 10, 2009, when the AUA generally decided to deduct the ABST that it paid to vendors from the amount due on unpaid invoices. (A copy of an e-mail from Corey Greenberg to Col. Antony, Nagesh, et. al., dated December 10, 2009, which was produced by the AUA in this arbitration, is annexed hereto as Exhibit 5.) Indeed, the AUA should have specifically notified Leeward to maintain documents concerning ABST on December 11, 2009, when the AUA schemed to deduct the ABST that it paid to Leeward from the contract balance due Leeward with respect to the Project. (A copy of an e-mail from Col. Antony to Leonard Sclafani, Corey Greenberg, et. al., dated December 11, 2009, which was produced by the AUA in this arbitration, is annexed hereto as Exhibit 6.)

If anyone is being disingenuous and deserving of sanctions for "bad faith," it is the AUA. No amount of grandstanding on the part of the AUA and its attorney change the fact that the AUA's own documentation demonstrates that the AUA decided in December, 2009 to recover the ABST that it paid to Leeward from the remaining balance due on the Contract for the Project (Exhibit 6). Mr. Sclafani was intimately involved in this decision (Exhibit 6); yet, the AUA never asserted the claim for the ABST in the Prior Arbitration that Leeward commenced on February 3, 2011, to recover the Contract balance. Indeed, the AUA has repeatedly represented in this arbitration that it could not have asserted the ABST claim in the Prior Arbitration because it did not know that it had a claim for ABST:

- In its Answer with Counterclaim and again in its Amended Answer with Counterclaims, the AUA asserted that the AUA paid ABST due to the "mistaken belief that AUA was responsible to pay ABST" and acknowledged that the "AUA's wrongful payment of ABST, in general, was not at issue in the prior arbitration."

---

[2] The Inland Revenue Department's advice explicitly contradicts Part XI of the ABST Act, which requires a person to seek a refund of ABST paid from the Government of Antigua and Barbuda. *See* ABST Act, Part XI (2006), *as amended* (2008). (A copy of Part XI of the ABST Act is annexed hereto as Exhibit 8.)

3

AAA Tribunal
October 22, 2013
Page 4 of 4

- In its Request for Production of Documents, the AUA stated that it will "assert and establish that, at all times during the prior arbitration between the parties herein, AUA was unaware, and had no reason to know or believe, that it had the claims and defenses relating to the Leeward Construction Company's collection of ABST from AUA…"

- In its Document Demand Chart, the AUA stated that it will "assert and establish that, at all times during the prior arbitration between the parties herein, AUA was unaware, and had no reason to know or believe, that it had the claims and defenses relating to the Leeward Construction Company's collection of ABST from AUA…"

(A copy of the AUA's Answer and Counterclaim, AUA's Request for Documents, AUA's Amended Answer and Counterclaims, and the AUA's Document Demand Chart are annexed hereto as Exhibit 7 [Oversized Exhibit].)  As indicated in the December 11, 2009 e-mail from the AUA's Project Representative to Mr. Sclafani, the AUA decided fourteen months before the commencement of the Prior Arbitration to recoup ABST from Leeward's Contract balance "at the appropriate time." (Exhibit 6)  What should be obvious is that the AUA decided that the "appropriate time" is now—after losing the Prior Arbitration.  The AUA's Application should be denied in its entirety.

Lastly, to put an end to this nonsense, we respectfully request the Tribunal limit the AUA's Reply to three pages.

Very truly yours,

LEWIS & GREER, P.C.

J. Scott Greer, Esq.

JSG/mlb
cc:  Leonard Sclafani, Esq. (*via E-mail*)
     Eric Linde, Chairman - Leeward Const. Co. (*via E-mail*)
     Carolina Cárdenas-Soto (*via E-mail*)

# EXHIBIT 2



LOU LEWIS
J. SCOTT GREER
VERONICA A. McMILLAN*†

JOAN QUINN**
PAUL E. DENBAUM
ALANA R. BARTLEY*

*ALSO ADMITTED IN NEW JERSEY
**ALSO ADMITTED IN MASSACHUSETTS
†REGISTERED NURSE

510 HAIGHT AVENUE
POUGHKEEPSIE, NEW YORK 12603

(845) 454-1200
FAX (845) 454-3315
WWW.LEWISGREER.COM

MAILING ADDRESS
—
P.O. BOX 2990
POUGHKEEPSIE, NY 12603

October 11, 2013

**VIA ELECTRONIC MAIL**
Leonard Sclafani, Esq.
Law Offices of Leonard A. Sclafani, Esq.
One Battery Park Plaza, 33rd Fl.
New York, New York 10004

   Re: Leeward Construction Corp. v AUA College of Medicine
     ICDR Case # 50-110-T-00118-13
     Our File No. 966-04

Dear Mr. Sclafani:

   Attached please find bates stamped documents LC ABST 000234 to LC ABST 002285 in response to AUA's Document Demand No. 3, the response to which was ordered by the Tribunal's Procedural Order No. 3. Please be advised that since Leeward Construction Company, Ltd. is not currently operating, its office facility is closed, and invoices from the relevant time period are no longer available. However, pursuant to the ABST Act, Part XIV, Paragraph 59 (2006), as amended (2008), all invoices and payments made are presumed to include 15% for ABST. Accordingly, the cancelled checks and vendor details include herewith evidence the extensive amounts of ABST paid to vendors during the relevant time period.

   Leeward is continuing to assemble documents. Any additional document production will be forthcoming as soon as it has been compiled.

   Thank you for your attention to this matter.

        Very truly yours,

        LEWIS & GREER, P.C.

        Veronica A. McMillan

VAM/mlb
Enclosure

# EXHIBIT 3

## STANDSTILL AGREEMENT

This Agreement (the "Standstill Agreement") is made as of July 11, 2013, by and between Leeward Construction Company, Ltd., an Antiguan corporation ("Leeward") and American University of Antigua – College of Medicine, an Antiguan corporation ("AUA").

WHEREAS, on March 28, 2013, a Judgment was entered by the United States District Court for the Southern District of New York in *Leeward Construction Company, Ltd. v. American University of Antigua – College of Medicine, et al.*, Case No. 12-CV-06280 (LAK), as amended by the Corrected Amended Judgment entered on June 11, 2013 (the "Judgment");

WHEREAS, on April 29, 2013, AUA filed a Notice of Appeal of the Judgment under 2nd Circuit Docket No.: 13-1708 (the "Appeal"), which Appeal is currently due to be perfected on or before August 30, 2013;

WHEREAS, as of May 8, 2013, AUA and Leeward entered into an agreement (the "Stay Agreement") regarding the stay of enforcement of the Judgment pending the resolution of an arbitration between Leeward and AUA before the American Arbitration Association International Center for Dispute Resolution under Case No. 50 110 T 00118 13 (the "Arbitration"), pursuant to which AUA obtained a bond fully securing the Judgment (the "Stay Bond");

WHEREAS, certain disputes arose over the enforceability of the Stay Agreement;

WHEREAS, as a result of those disputes, on June 28, 2013, AUA filed an Order to Show Cause For a Stay of Judgment Enforcement Proceedings, and the Court issued an Order staying execution of the Judgment pending resolution of AUA's application (the "Motion");

1

WHEREAS, AUA has indicated its intention to commence an action for specific performance of the Stay Agreement in the Supreme Court of New York and to seek equitable and/or injunctive relief to stay enforcement of the Judgment; and

WHEREAS, AUA and Leeward mutually agree to avoid the time and expense of litigating their disputes over the Stay Agreement and prosecuting the Appeal for at least one year while they litigate the Arbitration;

NOW, THEREFORE, Leeward and AUA agree as follows:

1.     AUA and Leeward agree to delay the prosecution of the Appeal for at least one year by executing and filing a Stipulation pursuant to Local Rule 42.1 to withdraw the appeal without prejudice subject to reinstatement by August 30, 2014.

2.     AUA shall replace the Stay Bond with a supersedeas bond in the same amount as the Stay Bond ($1,073,000) (the "Appeal Bond"), which bond shall remain in place pending either: (a) in the event AUA reinstates the Appeal in accordance with Local Rule 42.1, the resolution of the Appeal; or (b) in the event AUA does not reinstate the Appeal in accordance with Local Rule 42.1, the dismissal of the Appeal with prejudice and the issuance of a mandate pursuant to Fed. R. App. Pr. 41.

3.     The parties shall cooperate and sign any and all such documents that may be necessary to release the current Stay Bond and/or have the Stay Bond converted to the Appeal Bond, including the Release attached hereto as Exhibit A.  The parties shall also cooperate by consenting to the issuance of the stay pending appeal as provided in Paragraph 2 above upon AUA obtaining the Appeal Bond, including executing the Stipulation and Consent Order attached hereto as Exhibit B.

2

4.      Leeward shall cease any and all efforts to execute on the Judgment (as amended) so long as the Appeal Bond remains in place.

5.      AUA shall withdraw the Motion without prejudice.

6.      Subject to the terms of Paragraph 8 herein, AUA and Leeward shall not file any further motions or actions with respect to the Stay Agreement while the time to perfect the Appeal is subject to a Court-approved delay.

7.      AUA and Leeward agree to determine by no later than August 1, 2014 whether to seek a further delay to the prosecution of the Appeal, and if so, shall jointly apply to the Second Circuit for such further extension.

8.      In the event such further extension is not obtained, either because both AUA and Leeward do not consent to any further extension or because the Court will not provide any such further extension, and AUA is obligated to reinstate its Appeal, upon such determination AUA and Leeward immediately shall have the right to commence any legal action or file any motion and, in connection therewith, assert any and all claims and defenses that they would otherwise have had the right to assert as of the date of this Standstill Agreement with respect to the enforcement of the Judgment and/or the Stay Agreement.  This right includes, without limitation, AUA's right to seek a stay of the Judgment pending confirmation of any award issued in the Arbitration and AUA's right to commence an action for specific performance of the Stay Agreement or for any other legal or equitable relief to stay enforcement of the Judgment, including the right to seek temporary and preliminary injunctive relief pending the resolution of any such action.  In such event, AUA and Leeward further expressly agree that in support of any claim or defense later asserted in any action, neither shall assert or argue that this Standstill Agreement and/or the passage of time that has occurred as a result of the Standstill Agreement

3

are relevant to any such claim or defense or any motion for temporary or preliminary injunctive relief filed in connection therewith.  This prohibition includes, without limitation, any argument that AUA is not entitled to specific performance of the Stay Agreement, a stay pending entry of a confirmed award in the Arbitration, and/or a temporary or preliminary injunctive relief staying enforcement of the Judgment on the grounds that it does not have a Stay Bond in place or because of the passage of time that has occurred as a result of this Standstill Agreement.

9.      Notwithstanding the foregoing, to the extent AUA seeks to compel specific performance of the Stay Agreement, any such application will condition the grant of a temporary restraining order, preliminary injunction, or other injunctive relief, on the posting of a bond in such amount and on such terms as set forth in the Stay Agreement.

10.     This Agreement constitutes the entire and complete understanding and agreement between the parties hereto concerning the matters set forth herein, and there are no understandings and agreements, oral or otherwise, that are not reflected herein.  This Agreement may not be clarified, modified, changed or amended except in a writing signed by each of the parties hereto.

11.     Leeward and AUA were represented by counsel and this Agreement was negotiated by counsel.  Each party and counsel for each party to this Agreement have reviewed this Agreement and have participated in its drafting and, accordingly, no party shall attempt to invoke the rule of construction to the effect that ambiguities, if any, are to be resolved against the drafting party.

12.     If any provision of this Agreement, or the application thereof to any person or circumstance, is invalid or unenforceable in any jurisdiction: (a) a substitute and equitable provision shall be substituted therefore in order to carry out, so far as may be valid and

4

enforceable in such jurisdiction, the intent and purpose of the invalid or unenforceable provision; and (b) the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall the invalidity or unenforceability of such provisions affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

13.      This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the doctrine of conflicts of law.  The Federal and States Courts within the State of New York shall have exclusive jurisdiction over any claim arising from this Agreement, and Leeward and AUA each consent and agree to be subject to the jurisdiction of said Courts for the limited purpose of adjudicating any such disputes arising out of this Agreement.  Further, the parties agree that service of any such action commenced pursuant to this paragraph of the Agreement shall be deemed effective if service is made by FedEx upon Leeward to its counsel of record: J. Scott Green, Esq., Lewis & Greer, P.C., 510 Haight Avenue, Suite 202, Poughkeepsie, New York 12603, and to AUA to its counsel of record:  Jonathan S. Jemison, Esq., Sills Cummis & Gross, P.C., 30 Rockefeller Center, New York, New York 10112.

14.      In the event either party breaches their obligations under this Standstill Agreement, the non-breaching party shall have the right to seek to file an action for specific performance of this Agreement and shall have the right to take any other action that would have otherwise been stayed as a result of this Agreement.

15.      This Agreement may be executed in one or more counterparts, each of which shall be an original as against the party who signed it, and all of which shall constitute one and the same instrument.  Signatures may be transmitted by facsimile or email.

5

IN WITNESS WHEREOF, the parties have signed this Agreement as of the date first written above.

Leeward Construction Company, Ltd.,

By: _____

Its: _DIRECTOR_____


American University of Antigua — College of Medicine

By: _____

Its: _Sr. V. P. & Gen. Counsel_

6

# EXHIBIT 4



<table>
<tr><td></td><td>International Centre<br/>Thomas Ventrone, Esq.<br/>Vice President<br/>120 Broadway, 21st Floor<br/>New York, NY 10271<br/>Telephone: (212)484-4181<br/>Fax: (212)246-7274</td></tr>
</table>

December 22, 2014

**Via Email Only**

J. Scott Greer, Esq.
Lewis & Greer, PC
510 Haight Avenue
Poughkeepsie, NY 12603
Via Email to: jsgreer@lewisgreer.com

Leonard Sclafani, Esq.
American University of Antigua College of Medicine
c/o Manipal Education Americas LLC
Agent for AUA
One Battery Park Plaza, 33rd Floor
New York, NY 10004
Via Email to: las@lasattorneys.com

Case Number: 50-20-1300-0118

Leeward Construction Company Ltd.
-vs-
American University of Antigua College of Medicine

Dear Counsel,

Please be advised the Tribunal has suspended the proceedings, as the deposits have not been paid pursuant to R-56 C of the Construction Arbitration Rules.

Upon receipt of the requested deposits, the resumed session with the Tribunal will take place.

In the event that payment has been made, please provide us with proof of payment.

Sincerely,

/s/

Carolina Cardenas-Venino, LL.M.
Senior International Case Counsel
(212)484-3281
CardenasC@adr.org

Cc:
Diego Brian Gosis
Judith B. Ittig, Esq.
Carlos A. Romero, Jr., Esq.

# EXHIBIT 5

| From: | Carolina Cardenas-Venino, LL.M. <Cardenasc@adr.org> |
|---|---|
| Sent: | Wednesday, January 07, 2015 8:50 AM |
| To: | Leonard A Sclafani |
| Subject: | RE: Case No. 50 110 T 00118 13 - Leeward v AUA - |

Dear Mr. Sclafani,

Although Leeward has made some partial payments recently, we still don't have enough funds to cover the incurred and future compensation of the Tribunal. The amount owed is US$24,996.37

Please let us know if you have any questions or require additional information.

Best regards
Carolina

 **Carolina Cardenas-Venino, LL.M.**
**International Senior Case Counsel**
American Arbitration Association
International Centre for Dispute Resolution
120 Broadway, 21st Floor
New York, NY 10271
www.icdr.org
T:+1 212 484 3281
F:+1 212 246 7274

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Leonard A Sclafani [mailto:las@lasattorneys.com]
**Sent:** Tuesday, January 06, 2015 5:54 PM
**To:** Carolina Cardenas-Venino, LL.M.
**Subject:** Re: Case No. 50 110 T 00118 13 - Leeward v AUA -

Good evening, Carolina, Have you any further info on the amount due from Leeward? Thanks

Leonard Sclafani

**From:** "<Carolina Cardenas-Venino>", "LL.M." <Cardenasc@adr.org>
**Date:** Tuesday, December 23, 2014 at 5:54 PM
**To:** Leonard Sclafani <las@lasattorneys.com>
**Subject:** RE: Case No. 50 110 T 00118 13 - Leeward v AUA -

Dear Mr. Sclafani,

You do not have any outstanding balance.

1

Best regards and happy holidays

Carolina

 **Carolina Cardenas-Venino, LL.M.**
**International Senior Case Counsel**
American Arbitration Association
International Centre for Dispute Resolution
120 Broadway, 21st Floor
New York, NY 10271
www.icdr.org
**T:**+1 212 484 3281
**F:**+1 212 246 7274

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Leonard A Sclafani [mailto:las@lasattorneys.com]
**Sent:** Monday, December 22, 2014 2:24 PM
**To:** Carolina Cardenas-Venino, LL.M.
**Subject:** Re: Case No. 50 110 T 00118 13 - Leeward v AUA -

To my knowledge, AUA has no outstanding balance. Please confirm. If we do, please forward the invoice that is outstanding. Thank you.

**From:** "<Carolina Cardenas-Venino>", "LL.M." <Cardenasc@adr.org>
**Date:** Monday, December 22, 2014 at 11:01 AM
**To:** Leonard Sclafani <las@lasattorneys.com>, "J. Scott Greer" <jsgreer@lewisgreer.com>
**Cc:** Melinda Benanti <mbenanti@lewisgreer.com>, Veronica McMillan <vamcmillan@lewisgreer.com>
**Subject:** Case No. 50 110 T 00118 13 - Leeward v AUA -

Dear Counsel,

Please refer to the attached communication in connection with this matter.

Best regards
Carolina

 **Carolina Cardenas-Venino, LL.M.**
**International Senior Case Counsel**
American Arbitration Association
International Centre for Dispute Resolution
120 Broadway, 21st Floor
New York, NY 10271
www.icdr.org
**T:**+1 212 484 3281
**F:**+1 212 246 7274

2

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.