UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

AMERICAN UNIVERSITY OF ANTIGUA –
COLLEGE OF MEDICINE,

               Petitioner,

    v.

LEEWARD CONSTRUCTION COMPANY,
LTD.,

               Respondent.

-------------------------------------------------------------x

Case No. 1:14-CV-08410-DLC/GWG

Honorable Denise L. Cote
United States District Judge

---

## AMERICAN UNIVERSITY OF ANTIGUA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION SEEKING ATTACHMENT AND A PRELIMINARY INJUNCTION

---

SILLS CUMMIS & GROSS P.C.
101 Park Avenue, 28th Floor
New York, New York 10178

LAW OFFICES OF LEONARD A.
SCLAFANI, ESQ.
One Battery Park Plaza, 33rd Floor
New York, New York 10004

*Attorneys for Petitioner*
*American University of Antigua*
*College of Medicine*

**Of Counsel and On the Brief:**
James Hirschhorn
Gregory E. Reid
Leonard A. Sclafani

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 3

LEGAL ARGUMENT ......................................................................................................... 11

I.     AUA IS ENTITLED TO AN ORDER OF ATTACHMENT PURSUANT
TO FED. R. CIV. P. 64 AND C.P.L.R. 6212 AND 7502 .................................... 11

     A.     AUA Has Shown a Cause of Action and a Probability of Success
on the Merits ........................................................................................... 12

          i.     The Issues that the Arbitrators Decided Were Within the
Scope of the Parties' Broad Arbitration Clause ........................... 13

          ii.    The Award is Final and Leeward Should be Estopped from
Arguing Otherwise ....................................................................... 15

          iii.   The Award Was Fully Justified and Does Not Constitute a
"Manifest Disregard" of the Law ................................................. 16

     B.     AUA's Award Will Be Rendered Ineffectual in the Absence of
Attachment .............................................................................................. 19

     C.     The Amount Demanded Exceeds All of Leeward's Claims .................... 21

II.    IN ADDITION AND IN THE ALTERNATIVE, AUA IS ENTITLED TO
A PRELIMINARY INJUNCTION ENJOINING LEEWARD FROM
ENFORCING LEEWARD'S JUDGMENT IN VIOLATION OF THE
STAY AGREEMENT ......................................................................................... 21

     A.     AUA Will Suffer Irreparable Harm in the Absence of an Injunction ...... 22

     B.     The Balance of Hardships Weighs Strongly in Favor of an
Injunction ................................................................................................ 24

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania,*
934 F.2d 30 (2d Cir. 1991)........................................................................................................22

*Brenntag Int'l Chems., Inc. v. Bank of India,*
175 F.3d 245 (2d Cir. 1999)......................................................................................................23

*Candelaria v. Baker,*
2006 U.S. Dist. LEXIS 13238 (W.D.N.Y. 2006) ....................................................................21

*Centauri Shipping Ltd. v W. Bulk Carriers KS,*
528 F. Supp. 2d 186 (S.D.N.Y. 2007)......................................................................................23

*Chevron Corp. v. Donziger,*
974 F. Supp. 2d 362 (S.D.N.Y. 2014).................................................................................19, 23

*CRP/Extell Parcel I, L.P. v. Cuomo,*
394 F. App'x 779 (2d Cir. 2010) ..............................................................................................23

*Devose v. Herrington,*
42 F.3d 470 (8th Cir. 1994) .....................................................................................................21

*Hamerslough v. Hipple,*
2012 U.S. Dist. LEXIS 154837 (S.D.N.Y. Oct. 24, 2012) ......................................................12

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
596 F.2d 70 (2d Cir. 1979) .......................................................................................................23

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614 (1985)..................................................................................................................13

*Moore v. Consol. Edison Co. of New York, Inc.,*
409 F.3d 506 (2d Cir. 2005)......................................................................................................21

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,*
460 U.S. 1 (1983)......................................................................................................................13

*Philip Morris USA Inc. v. Scott,*
131 S. Ct. 1 (2010)....................................................................................................................23

-i-

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010)..................................................................................22

*Salzman v. KCD Financial, Inc.*,
2011-cv-5865 (DLC), 2011 U.S. Dist. LEXIS 147170 (S.D.N.Y. Dec. 21, 2011) .................16

*Shah v. Commercial Bank*,
09-cv-6121, 2010 U.S. Dist. LEXIS 19717 (S.D.N.Y. Mar. 4, 2010)....................................19

*SiVault Systems, Inc. v. Wondernet, Ltd.*,
2005-cv-0890 (RWS), 2005 U.S. Dist. LEXIS 4635, 2005 WL 681457 (S.D.N.Y.
Mar. 25, 2005)......................................................................................................11

*STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*,
648 F.3d 68 (2d Cir. 2011)..................................................................................17

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)............................................................................................16

*T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
592 F.3d 329 (2d Cir. 2010)...........................................................................16, 17

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960)............................................................................................13

*Warner Vision Entm't. Inc. v. Empire of Carolina, Inc.*,
101 F.3d 259 (2d Cir. 1996)................................................................................22

*WestLB AG v. BAC Fla. Bank*,
2012 U.S. Dist. LEXIS 108594 (S.D.N.Y. Aug. 2, 2012)....................................23

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
126 F.3d 15 (2d Cir. 1997)..................................................................................11

*Zeiler v. Deitsch*,
500 F.3d 157 (2d Cir. 2007)................................................................................11

**FEDERAL STATUTES**

9 U.S.C. § 10(a) .......................................................................................................12

**STATE STATUTES**

C.P.L.R § 6201..........................................................................................................11

C.P.L.R. § 6212(a) ...................................................................................................10

C.P.L.R. § 7502(c) ..................................................................................................................10, 11

**RULES**

Fed. R. Civ. P. 62 ..............................................................................................................................2

Fed. R. Civ. P. 64 ..........................................................................................................................10

Fed. R. Civ. P. 65 ..........................................................................................................................22

Second Circuit Court of Appeals Local Rule 42.1 ........................................................................7

**OTHER AUTHORITIES**

Douglas Laycock, *The Death of the Irreparable Injury Rule*, 103 HARV. L. REV. 687, 716. (1990) ..................................................................................................................................17

Wright, Miller & Kane, *Federal Practice and Procedure*, 11A Civil 2d § 2948, at 133-34 (2d Ed. 1995) ............................................................................................................................25

## PRELIMINARY STATEMENT

In this case, Petitioner American University of Antigua College of Medicine ("AUA") seeks to enforce an arbitration award under which it was decided that respondent Leeward Construction Co. Ltd. ("Leeward") was required to return to AUA $1,344,588.25 in funds that Leeward had collected from AUA purportedly for Antigua and Barbuda Sales Tax ("ABST") on Leeward's work on a construction project that AUA contracted with Leeward to perform (hereinafter, the "Second Award"). In fact, there was no ABST due for Leeward's work on the project and, in any case, Leeward had failed to remit the sums that it collected from AUA as ABST to the Government of Antigua and Barbuda or to account to the Government for its collection of those sums. It simply pocketed the money and went out of business, thereby insuring that AUA would not be able to recoup the sums either from Leeward or from the Government. As of today's date, Leeward has represented that it has no assets other than the sums due it under a judgment ("Leeward's Judgment") that it obtained against AUA in this Court enforcing a $966,026.79 award in a prior arbitration proceeding ("First Award"). *Leeward Constr. Co. v. American Univ. of Antigua – College of Medicine* Docket No. 1:12-CV-06280 (June 11, 2013) (Kaplan, J.), currently on appeal to the Second Circuit. AUA has posted a *supersedeas* bond in connection with its appeal.[1] Because of Leeward's insolvency, the principal value to AUA of the Second Award, if the Award is confirmed and judgment entered thereon, will not be the amount of the Award, but merely a full setoff of the lesser amounts due Leeward under Leeward's Judgment.

On May 8, 2013, Leeward and AUA entered a Stay Agreement staying enforcement of Leeward's Judgment pending final determination of AUA's claims in a second arbitration

---

[1] *See* Docket No. 1:12-CV-06280 (Kaplan, J.), DE # 46, Ex. A (Bond Number 3349772) undertaken by SureTec Insurance Company.

between the parties that resulted in the Second Award (the "Second Arbitration"). However, Leeward immediately repudiated the Stay Agreement.

AUA now brings this application in order to preserve the setoff, its only means of even partially recovering on the Second Award and its remaining claims against Leeward in the Second Arbitration by (1) an order of attachment under Federal Rule of Civil Procedure 64 and C.P.L.R. Articles 62 and 75 attaching Leeward's interest in Leeward's Judgment and the related *supersedeas* bond; and (2) a preliminary injunction enjoining Leeward from enforcing Leeward's Judgment in violation of its Stay Agreement.

AUA filed this suit to confirm the Second Award, in part to offset Leeward's Judgment. The amount awarded to AUA in the Second Award exceeds the amount of Leeward's Judgment. AUA has additional claims separate and apart from the claims that were upheld in the Second Award that remain pending in the Second Arbitration. If this Court enters judgment confirming the Second Award (the "Anticipated Judgment"), or, AUA does not ultimately obtain judgment against Leeward on its claims giving rise to the Second Award but is successful against Leeward on the claims remaining against Leeward in the Second Arbitration, AUA will be able to set off the amount due it against the amount that it owes Leeward under Leeward's Judgment; thereby satisfying Leeward's Judgment in full. AUA will then be able to seek termination of the *supersedeas* bond and the return of the sums that it posted to the insurer as security for the bond. Based on Leeward's own admissions in the Second Arbitration, Leeward is insolvent with no assets, other than the Leeward Judgment. Leeward has admitted that it is not active and has not transacted any business since 2009. If Leeward is able to execute on Leeward's Judgment before AUA is able to secure a judgment against Leeward on the Second Award and/or its remaining claims against Leeward in the Second Arbitration, Leeward will be able to dissipate the sums

2

that it recovers, and AUA will be irreparably injured by the loss of its set-off from a final judgment in this case and/or on its remaining claims against Leeward.

AUA therefore requests two forms of relief: (1) attachment of , Leeward's only known asset, pursuant to Fed. R. Civ. P. 64 and C.P.L.R. §§ 6212 and 7502, on the ground that the award in this action will be rendered ineffectual if Leeward's Judgment is not attached, and (2), a preliminary injunction enforcing the Stay Agreement between AUA and Leeward dated May 8, 2013, under which Leeward agreed not to enforce Leeward's Judgment pending conclusion of proceedings in the Second Arbitration.

## STATEMENT OF FACTS

AUA and Leeward have participated in two arbitrations arising out of a contract for Leeward to construct AUA's medical school complex in Antigua. Although the arbitrations are "related" in the sense that they involve the same parties and arise out of the same construction contract, the claims and issues in the arbitrations are entirely different.

In the First Arbitration, Leeward obtained an award against AUA, which was confirmed by Judge Kaplan and is reflected in Leeward's Judgment in the amount of $966,026.79, plus 7% interest per annum. *Leeward Constr. Co. Ltd. v. American University of Antigua College of Medicine*, Docket No. 1:12-cv-6280, DE # 37. Pursuant to Fed. R. Civ. P. 62 and a *supersedeas* bond, enforcement of Leeward's Judgment is currently stayed pending final disposition of AUA's appeal before the Second Circuit Court of Appeals, under Docket No. 13-1708. *See* Docket No. 1:12-CV-06280, DE # 46.

This case arises out of the Second Arbitration between AUA and Leeward. By way of background, the parties presented the following claims in the Second Arbitration: (a) Leeward's

3

single claim against AUA for a sum it claimed to have erroneously invoiced, and which was paid by AUA, as part of a progress payment for work it had performed in connection with its construction of AUA's medical school building in Antigua, rather than invoicing the sum separately as ABST. Leeward claimed this "mis-tabulation" resulted in a shortage in the total amount due it for work under its contract with AUA ("Leeward's ABST Claim"); (b) AUA's counterclaim for return of all monies that Leeward had invoiced, and that AUA paid to Leeward, as ABST under the parties' contract ("AUA's ABST Counterclaims," and together with Leeward's ABST Claim, the "ABST Claims"); and (c) AUA's counterclaims for damages for defects in Leeward's work materials in the construction of AUA's building ("AUA's Construction Defects Counterclaims"). (*See* DE 34, at 1).

On September 18, 2014, the arbitration panel in the Second Arbitration certified an Award in favor of AUA in the amount of $1,344,588.25. The Award fully and finally resolved the ABST Claims, leaving only AUA's unrelated Construction Defects Counterclaims to be arbitrated. In this action, AUA seeks confirmation of that Award, and asks that the Court enter judgment in the amount of $1,344,588.25 as provided in the Second Award.

Because the Second Award is more than $375,000 greater than Leeward's Judgment, it is extremely likely that the Second Award, once confirmed, will more than off-set Leeward's Judgment. Moreover, Leeward's potential liability is not limited to the Second Award. AUA still has its Construction Defects Counterclaims pending. With this fact in mind, after judgment was entered in the First Arbitration, AUA's counsel notified Leeward's counsel that AUA was going to seek a stay of execution of Leeward's Judgment pending resolution of the Second Arbitration. (Declaration of Jonathan S. Jemison, sworn to on June 28, 2013, Docket No. 1:12-

4

CV-06280, DE # 39 ("Prior Jemison Decl."), ¶ 6).[2]  AUA was going to seek the stay because AUA's claims in the Second Arbitration exceeded the amount AUA owed Leeward under Leeward's Judgment, and because Leeward is a defunct business with no assets other than Leeward's Judgment to satisfy AUA's claim. (*Id.*)

Leeward has admitted that it has no assets and "has not conducted significant, if any, business since it completed the [AUA] Project back in 2009." (Declaration of Leonard Sclafani ("Sclafani Decl."), Ex. 1 (Oct. 22, 2013 letter from Leeward's counsel to the arbitration panel)). Leeward's offices have been closed for years and Leeward is currently an empty shell without assets. (*Id.* at Ex. 2 (Oct. 11, 2013 letter from Leeward's counsel to L. Sclafani); *see also* Prior Declaration of Leonard Sclafani, sworn to on June 27, 2013, Docket No. 1:12-CV-06280, DE # 40, ("Prior Sclafani Decl."), Ex. 16 (Feb. 2012 witness statement of Leeward's Director and co-owner, Eric Linde)).[3]

On May 8, 2013, the parties executed an agreement that obviated AUA's need to seek judicial relief. The Stay Agreement stays the enforcement of Leeward's Judgment from the First Arbitration pending resolution of the Second Arbitration. (Prior Sclafani Decl., Ex. 1, ¶ 1)  The Stay Agreement also ensures prompt payment to whichever party is ultimately entitled to a net award when considering both Leeward's Judgment and any award issued in the Second Arbitration. (*Id.* at ¶¶ 5-6).  In consideration of the stay granted by Leeward, and in fulfillment

---

[2] AUA incorporates by reference the Prior Jemison Declaration and the exhibits thereto. For ease of reference, AUA has included a hard copy of the Prior Jemison Declaration in the courtesy copies submitted to chambers and opposing counsel. The Prior Jemison Declaration can also be found at Docket No. 1:12-CV-06280, DE # 39.

[3] AUA incorporates by reference the Prior Sclafani Declaration and the exhibits thereto. For ease of reference, AUA has included a hard copy of the Prior Sclafani Declaration in the courtesy copies submitted to chambers and opposing counsel. The Prior Sclafani Declaration can also be found at Docket No. 1:12-CV-06280, DE # 40.

of its obligations under the Stay Agreement, AUA obtained a payment bond that fully secures Leeward's Judgment (plus interest for two years) and AUA agreed to waive its appellate rights.[4] (*Id.* at ¶ 3, *see also* Prior Sclafani Decl., Ex. 15 (bond in the amount of $1,073,000)). As a result, Leeward is fully secured and protected against any possible prejudice.

Two days after the parties exchanged the fully executed Stay Agreement, Leeward repudiated it, claiming that it was deceived by AUA because AUA did not volunteer that it planned to amend its answer and counterclaims in the Second Arbitration to include construction defect counterclaims against Leeward. Leeward later purportedly "rejected" the Stay Agreement, and proceeded to breach it by causing the District Court Clerk to issue a Writ of Execution. (Prior Sclafani Decl., ¶¶ 26-33, Ex. 6).

Leeward's challenge to the enforceability of the Stay Agreement is belied by documentary evidence. Leeward claimed that it never would have agreed to a stay if it knew AUA planned to pursue a counterclaim for construction defects in the Second Arbitration. However, months before the parties negotiated the Stay Agreement, AUA expressly advised Leeward and the arbitration panel, in writing, that it planned to assert such counterclaims. (*Id.* at ¶¶ 11-12, Exs. 8-9). Leeward agreed to the stay without ever asking AUA about its intentions with respect to its construction defects counterclaims or any other counterclaims or any defenses that it then might subsequently have raised in the Second Arbitration or requesting that any stay be subject to AUA waiving its rights to add any new claims or counterclaims in the Second Arbitration. AUA never represented that it would not add further claims.

---

[4] AUA obtained the requisite bond, but has not yet withdrawn its appeal because, as discussed below, Leeward indicated it would not honor the Stay Agreement. AUA has repeatedly told Leeward that once it abandons its attempt to renege on the Stay Agreement, AUA will withdraw the appeal consistent with its obligations under the Stay Agreement.

On July 28, 2013, AUA filed an Order to Show Cause before Judge Kaplan seeking a stay of enforcement of Leeward's Judgment under either the terms of the Stay Agreement or the Court's inherent powers.  Judge Kaplan issued a temporary restraining order preventing Leeward from enforcing Leeward's Judgment pending resolution of AUA's motion.  (Docket No. 1:12-CV-06280 (Kaplan, J.) DE #38).

During oral argument, Judge Kaplan noted that Leeward's argument that the Stay Agreement was unenforceable was "probably a dead loser."    (Docket No. 1:12-CV-06280 (Kaplan, J.), DE # 48, June 28, 2013 Tr. at 15:6-7).  As Judge Kaplan reasoned:

> Just to be frank about this.  You are in an adversary negotiation with your judgment creditor about a stay, and the judgment creditor has already told you – I guess they're the judgment debtor, excuse me – has already told you he's going to make defective work claims against you, and you are somehow trying to conjure out of this a duty to remind you over and over again.  Well, I don't think it flies.

(*Id.* at 15:7-13).

Judge Kaplan also stated that AUA would be irreparably harmed if Leeward were permitted to execute Leeward's Judgment before resolution of the Second Arbitration.  Judge Kaplan stated: "You [Leeward] have a writ of execution which means that you can go grab their property without notice any minute, right? . . . What you have now is court process that allows you to grab their property. . . . Are you telling me you have no intention of doing that?"  To which Leeward's counsel responded, "No, I'm not telling you that, your Honor."  Judge Kaplan then continued, "So, obviously you do have an intention of doing that, or at least there's a credible threat that you do. **In light of what has been said about the status of Leeward, and it seems to me that there is a manifest threat that if you were to do that, the property would be dissipated and that would be the end of it.  It would be irreparable**." (June 28, 2013 Tr. at 12:10-12, 17-25, 13:1-2) (emphasis added).

However, because Leeward's Judgment had already been rendered in that action and the case closed, the court questioned whether it had jurisdiction to stay Leeward's Judgment, indicating AUA may need to achieve that through collateral litigation. (June 28, 2013 Tr. at 9:5-18, 19:22-20:8). Thereafter, on July 11, 2013, the parties agreed to avoid the time and expense of litigating their disputes over the Stay Agreement while the Second Arbitration was pending by entering into a Standstill Agreement. (Sclafani Decl., Ex. 3). Under the Standstill Agreement, AUA agreed, among other things, to withdraw its motion pending before Judge Kaplan without prejudice and to convert its existing bond to a *supersedeas* bond, which would effectively stay enforcement of Leeward's Judgment pending a final disposition of AUA's appeal. (*Id.* at ¶¶ 2, 5). Leeward agreed, among other things, to cease any and all efforts to execute on Leeward's Judgment so long as the *supersedeas* bond remained in place. (*Id.* at ¶ 4).

As a result of mediation at the Second Circuit, the parties further agreed to avoid the time and expense of prosecuting AUA's appeal while the Second Arbitration was pending by entering into a series of Local Rule 42.1 stipulations withdrawing the appeal without prejudice, subject to reinstatement by agreed upon dates. (*Id.* at ¶¶ 1-2; *see* 2d Circuit Docket No. 13-1708, DE 53, 57, 62, 64, 70). On February 2, 2015, AUA was forced to reinstate its appeal because Leeward refused to consent to an extension of the Local Rule 42.1 stay. (Sclafani Decl., ¶ 20).

AUA has repeatedly told Leeward that once it abandons its attempt to renege on the Stay Agreement, AUA will withdraw the appeal consistent with its obligations under the Stay Agreement. In this regard, AUA stands ready, willing and able to withdraw the appeal. However, the stay pending appeal is currently the only thing preventing Leeward from wrongfully seizing AUA's assets. Given that the Anticipated Judgment will entitle AUA to a net award—a net award that the defunct Leeward cannot pay—and considering that AUA still has

8

nearly $1 million in Construction Defects Counterclaims pending, increasing the amount of an uncollectable award through a successful appeal of Leeward's Judgment is of no practical value. AUA would prefer to avoid wasting time, money, and judicial resources on such an appeal. In light of Leeward's stated intentions and exiguous financial condition, AUA currently has no choice but to pursue the appeal. AUA filed its Second Circuit appellate brief and the joint appendix on February 13, 2015. (*See* 2d Circuit Docket No. 13-1708, DE 82-84).

As noted above, on September 18, 2014, by and through the Second Award, the arbitration panel in the Second Arbitration fully and finally resolved the ABST Claims, leaving only AUA's unrelated Construction Defects Counterclaims to be arbitrated. On October 21, 2014, AUA commenced these proceedings seeking to confirm the Second Award and requesting a judgment in the amount of $1,344,588.25 in accordance with the Second Award. Knowing that entry of the Anticipated Judgment confirming AUA's award in the Second Arbitration would wipe out Leeward's Judgment from the First Arbitration, Leeward has engaged in behavior designed to render the Anticipated Judgment a nullity. In furtherance of these efforts, Leeward has opposed AUA's motion to confirm the Second Award by arguing, in part, that the award is non-final because AUA's unrelated Construction Defects Counterclaims are still pending. (*See* DE 25, at 16; DE 35, at 10).

Leeward has not disclosed to this Court that Leeward has recently stopped paying its required arbitration fees, which led the tribunal to suspend proceedings on AUA's remaining Construction Defects Counterclaims on December 22, 2014. (Sclafani Decl., Ex. 4). The arbitration will not resume until Leeward pays its required fees. (*Id.*) On January 7, 2015, the American Arbitration Association International Centre for Dispute Resolution confirmed that AUA has no outstanding arbitration fees and that Leeward owes $24,996.37 in arbitration fees.

(*Id.* at Ex. 5).  Because Leeward's claim in the arbitration was dismissed as per the Second Award and, in any case, is not for much more than the amount of the fees that it owes, it has every incentive to refuse payment and leave AUA without a remedy while, at the same time, arguing herein that the Court should deny AUA's petition on the ground that the Second Award is not final because AUA still has claims remaining in the Second Arbitration.

Thus, Leeward is actively preventing the arbitration panel from resolving AUA's unrelated Construction Defects Counterclaims and then using that same impediment—an impediment Leeward created—to argue that AUA's award is non-final and not ripe for confirmation because "it does not resolve all claims between the parties and in fact, contemplates further proceedings." (DE 25, at 16).  According to Leeward, as long as it refuses to participate in the Second Arbitration, this Court cannot enter the Anticipated Judgment.  If Leeward can string out the Second Arbitration and avoid entry of the Anticipated Judgment long enough, the Second Circuit might decide AUA's appeal in Leeward's favor in time for Leeward to disappear with AUA's assets.

On these facts, no harm can come from fashioning a remedy that ensures justice for both Leeward and AUA.  As set forth below, this Court can preserve a just outcome by attaching Leeward's interest in Leeward's Judgment and the related *supersedeas* bond and/or issuing a preliminary injunction enjoining Leeward from executing Leeward's Judgment in violation of the Stay Agreement pending resolution of this action.

## **LEGAL ARGUMENT**

### I.  **AUA IS ENTITLED TO AN ORDER OF ATTACHMENT PURSUANT TO FED. R. CIV. P. 64 AND C.P.L.R. 6212 AND 7502**

Rule 64 of the Federal Rules of Civil Procedure dictates that state law governs the availability of the provisional remedy of attachment in this Court.  *See* Fed. R. Civ. P. 64(a). Fed. R. Civ. P. 64(a) provides: "At the commencement of and throughout an action [in federal district court], every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Rule 64(b) specifically includes attachment as an available remedy.  Articles 62 and 75 of the C.P.L.R. provide attachment remedies to secure satisfaction of a potential judgment in connection with a cause of action or arbitrable controversy.  A Court "may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitration that is pending . . . outside this state . . . but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." C.P.L.R. § 7502(c).  That section also incorporates C.P.L.R. Article 62, related to attachments, "except that the sole ground for the granting of the remedy shall be as stated above [the "rendered ineffectual" standard]."  *Id.*

Thus, under Article 62 and Article 75, AUA may obtain an order of attachment by showing evidence that (1) there is a cause of action; (2) they will probably succeed on the merits; (3) the award would be rendered ineffectual without the attachment; and (4) the amount demanded exceeds all known counterclaims.  *See* C.P.L.R. §§ 6212(a); 7502(c).

As to the third prong, as this Court has pointed out, § 6212(a) technically states that a plaintiff must show "one or more grounds for attachment provided in section 6201," which

includes 6201(1): "the defendant is a non-domiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." On its face, 6201(1) would appear to provide a basis for relief here, as Leeward is a foreign corporation not qualified to do business in New York. However, § 7502, which specifically governs attachments "in connection with an arbitration," states that "the sole ground for the granting of the remedy" is that the "award . . . may be rendered ineffectual without" the attachment. § 7502(c). This Court has interpreted these statutory provisions to mean that, when faced with an application for attachment in connection with an arbitration, judges should not consider the grounds in § 6201, and only consider whether the award would be "rendered ineffectual" without attachment. *See, e.g.,* *SiVault Systems, Inc. v. Wondernet, Ltd.*, 2005-cv-0890 (RWS), 2005 U.S. Dist. LEXIS 4635, at *3 n.1 (S.D.N.Y. Mar. 25, 2005) (collecting cases).

### A.   AUA Has Shown a Cause of Action and a Probability of Success on the Merits

AUA plainly meets the first prong under § 6212(a) because this is a cause of action seeking an order confirming an arbitration award and for entry of a money judgment. The second prong, probability of success on the merits, has been fully briefed in this case. To avoid repetition, AUA incorporates by reference the briefing in support of its motion to confirm the Award and in opposition to Leeward's cross-motion to deny enforcement, vacate, and modify the Award. (*See generally* DE 1, 2, and 34). AUA's previously submitted arguments are summarized below.

The confirmation of an arbitration award pursuant to the Convention and the FAA is a summary proceeding that merely converts what is already a final arbitration award into an enforceable judgment of the Court. The party opposing confirmation—Leeward—bears the

12

heavy burden of proof to show that the award should not be enforced. *See Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997). "Vacatur of arbitral awards is extremely rare, and justifiably so." *Hamerslough v. Hipple*, 2012 U.S. Dist. LEXIS 154837, at *8 (S.D.N.Y. Oct. 24, 2012).

To summarize, Leeward attempts to overcome its substantial burden to avoid enforcement with three arguments: (1) the arbitrators exceeded their powers by deciding matters not within the scope of the arbitration agreement; (2) the award is non-final; and (3) the award constitutes a manifest disregard for the law. As briefly explained below, and addressed at length in AUA's prior submissions to this Court, Leeward's arguments lack merit.

### i.   The Issues that the Arbitrators Decided Were Within the Scope of the Parties' Broad Arbitration Clause[5]

As to the scope of the arbitration clause, there is no dispute that the parties expressly agreed to arbitrate "*[a]ny* Claim *arising out of or related to* the Contract," subject to certain exceptions not relevant here. (Prior Sclafani Decl., Ex. 12, ¶ 4.6.1) (emphasis added). There is a well-established and strong federal policy in favor of resolving disputes through arbitration, that "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). A court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

---

[5] AUA's prior briefing on this point can be found at DE 34, brief pp. 10-16.

Perplexingly, Leeward has argued that the arbitral tribunal lacked authority to determine that Leeward had been unjustly enriched by retaining sums it improperly collected from AUA as purported taxes for work done *under the contract*.  There is no meaningful dispute regarding whether Leeward was in fact unjustly enriched when it collected sums from AUA it invoiced as taxes.  No such taxes were ever due.  Leeward neither remitted the sums it collected as taxes to the government nor accounted for receipt of the sums.  It simply pocketed the money, closed its offices, and went out of business.

Undeterred, Leeward makes the unsubstantiated and flawed argument that because unjust enrichment is "based on the common law of Antigua and Barbuda as opposed to the Contract, itself," it somehow follows that such a claim cannot "arise out of or relate to" the contract between the parties.  In other words, Leeward maintains that the tribunal was powerless to remedy the sham tax windfall Leeward pocketed because AUA's claims somehow did not arise under or relate to the contract.  This makes no sense.  The language of the arbitration agreement is broad—"[a]ny Claim arising out of or related to the Contract"—and leaves no doubt that the parties intended for all disputes deriving from or relating to the parties' relationship as owner and contractor on the construction project to be submitted to arbitration.  It is hard to imagine a claim that more closely relates to the contract than a claim that Leeward wrongfully invoiced and retained purported tax payments for work done under the contract.

Similarly, Leeward argues that the arbitrators had no authority to decide AUA's claims to recoup sums paid to Leeward to which Leeward was not entitled under the contract because Leeward invoiced these payments as ABST, and therefore, AUA's "only remedy is to seek a refund of the ABST from the Antiguan government pursuant to the ABST Act."  (DE 25, at 14).  Leeward does not assert either that the overpayments actually were ABST or that it ever remitted

the monies to the government as ABST.   The fact that Leeward improperly labeled these payments ABST does not mean that AUA was seeking to enforce the ABST Act or the tax laws of Antigua, nor does it transform AUA's claims for money that Leeward pocketed to claims for the refund of taxes Leeward never paid.   Moreover, Leeward fails to address the fact that it commenced the Second Arbitration by asserting its own ABST claim.   Simply put, AUA's claims were to recoup sums paid to Leeward to which Leeward was not entitled under the contract.   It defies logic to suggest that such claims did not arise out of or relate to the contract.

Lastly, Leeward argues that AUA "abandoned" its exhaustively litigated unjust enrichment claim because it was not specifically set forth in its Amended Answer adding its Construction Defects Counterclaims.   Leeward fully litigated AUA's unjust enrichment claim in the Second Arbitration without ever suggesting that it had somehow been waived.   The parties engaged in motion practice and oral argument on the merits of AUA's unjust enrichment claim long after the pleadings phase had concluded.   Leeward had a full and fair opportunity to litigate AUA's unjust enrichment claim and availed itself of that opportunity.   Leeward lost on the merits and now attempts to whitewash the record by disingenuously arguing that AUA abandoned its unjust enrichment claim.   Under these circumstances, there was more than a "barely colorable justification" for the panel's ruling that Leeward was unjustly enriched.

ii.   **The Award is Final and Leeward Should be Estopped from Arguing Otherwise[6]**

Leeward argues that the Court should deny enforcement of the Award because "it does not resolve all claims between the parties and in fact, contemplates further proceedings." (DE 25, at 16).   Contrary to Leeward's assertion, the Award fully and finally resolved all of the

---

[6] AUA's prior briefing on this point can be found at DE 34, brief pp. 16-18.

parties' ABST related claims, leaving open only AUA's wholly unrelated Construction Defect Counterclaims.  No aspect of AUA's ABST Counterclaim remains to be determined.  Similarly, the arbitrators conclusively, unambiguously, and finally rejected Leeward's ABST Claim, its sole claim against AUA.

In an effort to preserve its argument that the Award is non-final, Leeward has refused to pay its required arbitration fees, thereby thwarting arbitration proceedings on AUA's remaining Construction Defects Counterclaims.  (Sclafani Decl., ¶¶ 22-26).  Leeward has refused to cooperate with arbitration while simultaneously asking this Court to indefinitely postpone confirmation of the Award until the arbitrators rule on AUA's Construction Defects Counterclaims.  Such gamesmanship should not be countenanced.  Leeward cannot prevent the arbitrators from completing unrelated aspects of the Second Arbitration and then use the very impediment it created to argue that the Award is non-final for as long as it refuses to participate in the arbitration.  Therefore, Leeward should be precluded from arguing that the Award is non-final.

In any event, Leeward's bad faith efforts are for naught, as the Award fully and finally resolved all of the parties' ABST Claims.

### iii.   The Award Was Fully Justified and Does Not Constitute a "Manifest Disregard" of the Law[7]

Leeward's third and final argument against confirmation of the Award is that the Award constitutes a "manifest disregard" of the law because Leeward disagrees with the tribunal's rulings rejecting Leeward's arguments of *res judicata*, waiver, and modification.  (DE 25, at 16-17).  This argument merits little discussion.

_____

[7] AUA's prior briefing on this point can be found at DE 34, brief pp. 18-25.

As an initial matter, "the future of the 'manifest disregard' standard is unsettled." *Salzman v. KCD Financial, Inc.*, 2011-cv-5865 (DLC), 2011 U.S. Dist. LEXIS 147170, at *12 (S.D.N.Y. Dec. 21, 2011) (citing *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010) (stating that the Supreme Court would "not decide whether 'manifest disregard' survives"). "[I]n this circuit, 'manifest disregard' has been reconceptualized as 'a judicial gloss' on the FAA's specific grounds for vacatur, and so interpreted, 'remains a valid ground for vacating arbitration awards.'" *Id.* (quoting *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340 (2d Cir. 2010) (citation omitted)).

Arbitral awards may be vacated for manifest disregard "only in those exceedingly rare instances when some egregious impropriety on the part of the arbitrator is apparent." *Sea Shipping Inc. v. Half Moon Shipping, LLC*. 848 F. Supp. 2d 448, 455 (S.D.N.Y. 2012) (quoting *T. Co Metals*, 592 F. 3d at 339). Thus, arbitral awards "should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Id.* (citation omitted). An award should not be vacated "because of a simple error in law or a failure by the arbitrators to understand or apply it[,] but only when a party clearly demonstrates that the panel *intentionally defied* the law." *STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (emphasis added).

Here, not only is there no basis for concluding that the arbitration panel "intentionally defied the law" or committed any "egregious impropriety," but the facts and evidence presented to the tribunal plainly established that Leeward's *res judicata*, waiver, and modification arguments were "unavailing," as the arbitrators concluded.

As to Leeward's *res judicata* argument, as set forth in detail in AUA's briefing in support

of its motion to confirm the Award and in opposition to Leeward's cross-motion to deny enforcement, vacate, and modify the Award (*see e.g.*, DE 34), the matters and issues raised by AUA in the Second Arbitration were not the subject of the First Arbitration. The claims in the First Arbitration were limited to: (a) Leeward's claims that AUA breached the contract by deleting work without Leeward's consent and by failing to pay for: the deleted work, a mobilization fee, and project delays; (b) Leeward's claims that AUA was liable to Leeward for interest; and (c) AUA's counterclaims for damages caused by Leeward's delays.

None of the issues presented in the First Arbitration were the same as any of the issues presented in the Second Arbitration. None of the claims and none of the defenses in the First Arbitration involved any aspect of ABST or construction defects. The facts underlying the First Arbitration were significantly different than the facts underlying the Second Arbitration. For obvious reasons, the arbitration panel correctly rejected Leeward's *res judicata* argument.

As to Leeward's waiver and modification arguments, once again, Leeward simply rehashes the same arguments that the arbitration panel—correctly—rejected. As detailed in previous submissions to this Court (*see e.g.*, DE 34), and briefly summarized here, essentially, Leeward argues that AUA waived its right recover the amounts Leeward falsely invoiced as ABST because AUA paid "each and every payment requisition including ABST without protest." (DE 25, at 21). But AUA did not know that Leeward was pocketing what it called ABST when it paid Leeward's invoices. On the contrary, Leeward represented to AUA that these payments were required government taxes. They were not. Leeward kept all of the money it told AUA was going to the government. Leeward does not deny this, but boldly argues that because AUA did not object to paying what it believed were required **taxes**, it has waived its right to get the money back from **Leeward**. In the alternative, Leeward asserts that AUA's

18

payment of ABST, "without protest, . . . constitutes a modification of the Contract's tax payment provisions" to provide that Leeward was empowered to make additional profit, unbeknownst to AUA, by seizing payments AUA believed were due as government taxes.  It is plain to see why the arbitration panel found Leeward's waiver and modification arguments "unavailing."

For the foregoing reasons, and the reasons set forth in AUA's briefing in support of its motion to confirm the arbitration award and in opposition to Leeward's cross-motion to deny enforcement, vacate, and modify the award, AUA has established more than then the required probability of success of the merits.

### B.   AUA's Award Will Be Rendered Ineffectual in the Absence of Attachment

State and federal courts in New York construing the requirement that an arbitration award may be rendered ineffectual without an order of attachment have found the requirement to be satisfied where the petitioner demonstrated the respondent's potential insolvency; where the respondent has transferred its assets to another; where the respondent is a shell company without appreciable assets; where the respondent has historically failed to pay creditors; or where the respondent has stated an intent to remove assets from the jurisdiction.  *Shah v. Commercial Bank*, 09-cv-6121, 2010 U.S. Dist. LEXIS 19717, at *3 (S.D.N.Y. Mar. 4, 2010) (collecting cases).  A damages award and judgment against an insolvent or defunct entity is no remedy at all if the damages cannot be collected.  *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 638 (S.D.N.Y. 2014) ("Damages are no remedy at all if they cannot be collected, and most courts sensibly conclude that a damage judgment against an insolvent defendant is an inadequate remedy.") (quoting Douglas Laycock, *The Death of the Irreparable Injury Rule*, 103 HARV. L. REV. 687, 716. (1990)).

19

AUA has demonstrated Leeward's potential insolvency and that it is a defunct company. Without attachment of Leeward's Judgment, Leeward's only asset, the Second Award will be worthless. In the First Arbitration, Leeward's Director and co-owner, Eric Linde, submitted a witness statement. (Prior Sclafani Decl., Ex. 16). In his witness statement, Mr. Linde explained that Leeward is an Antiguan construction corporation that he formed with Andy Green in 2006. (*Id.*, ¶ 13). According to Mr. Linde, Leeward has not generated any revenues since it completed its work on the AUA construction project (the "Project"). Subsequently, Leeward's counsel confirmed that Leeward has not been engaged in active operations since it completed its work on the Project in 2009. (Sclafani Decl., Ex. 1). According to Leeward's counsel, Leeward's offices have been closed since approximately 2009. (*Id.* at Ex. 2).

It is readily apparent that Leeward has no assets other than the Judgment it holds against AUA and the related *supersedeas* bond, leaving AUA at risk of being left without a means to recover from Leeward upon entry of the Anticipated Judgment. In other words, the Anticipated Judgment will be rendered ineffectual. AUA has repeatedly voiced its concern regarding Leeward's insolvency, doing so in the Second Arbitration, in its Order to Show Cause papers, at oral argument before Judge Kaplan, and in mediation before the Second Circuit. Not once has Leeward disagreed that it is insolvent. On the contrary, Leeward represented that it had no assets when it sought to stay AUA's construction defects counterclaims in the Second Arbitration and when conferring with the Second Circuit case manager regarding the pros and cons of entering into a Local Rule 42.1 stay. (Sclafani Decl., ¶ 7).

In addition to admitting its insolvency, Leeward has done nothing to alleviate AUA's very real and well-founded fear that, if given the opportunity, Leeward would execute on Leeward's Judgment, dissipate those funds, and leave AUA to execute its Anticipated Judgment

against an empty shell. Far from alleviating AUA's (and Judge Kaplan's) concerns, Leeward does not deny that there is a "manifest threat that if [Leeward] were allowed to [execute on Leeward's Judgment] the property would be dissipated and that would be the end of it. It would be irreparable." (Docket No. 1:12-CV-06280 (Kaplan, J.), DE # 48, June 28, 2013 Tr. at 12:25 – 13:2).

As such, AUA's Award will be rendered ineffectual without an order attaching Leeward's Judgment and *supersedeas* bond.

### C.    The Amount Demanded Exceeds All of Leeward's Claims

The amount demanded from Leeward, $1,344,588.25, exceeds all of Leeward's known claims. At best, if AUA's appeal is unsuccessful, Leeward will have a setoff in the amount of its Judgment from the First Arbitration, $966,026.79, plus 7% interest per annum.[8] The attachment sought is properly limited to the amount of Leeward's property necessary to ensure that AUA's Award will not be rendered ineffectual.

### II.    IN ADDITION AND IN THE ALTERNATIVE, AUA IS ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING LEEWARD FROM ENFORCING LEEWARD'S JUDGMENT IN VIOLATION OF THE STAY AGREEMENT

AUA fully acknowledges that a preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted). This is such a case, and AUA has carried its burden.

Importantly, "[t]he purpose of issuing a preliminary injunction is to 'preserve the *status*

---

[8] It would take approximately 5 years of interest at 7%, compounded annually, for Leeward's potential claims to exceed the amount of AUA's Award.

*quo* and prevent irreparable harm until the court has an opportunity to rule on the . . . merits.'"
*Candelaria v. Baker*, 2006 U.S. Dist. LEXIS 13238, at *3 (W.D.N.Y. 2006) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)).  The purpose of a preliminary injunction is to preserve "the court's power to render a meaningful decision after a trial on the merits," not to provide the movant with ultimate relief.  *Warner Vision Entm't. Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261-62 (2d Cir. 1996).

In considering whether to enter a preliminary injunction under Rule 65, federal courts in this Circuit engage in an analysis of plaintiff's claims and potential harm.  First, the court must assess whether the plaintiff has demonstrated "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation." *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010).  As discussed in section I(A), *supra*, AUA has clearly established a likelihood of success on the merits.  Second, plaintiff must demonstrate that it is likely to suffer irreparable injury in the absence of an injunction.  Finally, a preliminary injunction may be entered only if the court concludes that the balance of hardships between the plaintiff and the defendant "tips in the plaintiff's favor."  *Id.* at 80.

### A.     AUA Will Suffer Irreparable Harm in the Absence of an Injunction

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."  *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30, 34 (2d Cir. 1991) (citations and internal quotation marks omitted).  An applicant for a preliminary injunction "must show that it is likely to suffer irreparable harm if equitable relief is denied."  *Id.* (citation omitted).  A mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction.  *Id.*

"As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (internal citations omitted).  However, the United States Supreme Court and the Second Circuit have acknowledged that an exception to this rule exists when the defendant is insolvent or on the brink of insolvency.  *See Philip Morris USA Inc. v. Scott*, 131 S. Ct. 1, 4 (2010) (while economic injury usually "is not considered irreparable, . . . that is because money can usually be recovered from the person to whom it is paid.   If the expenditures cannot be recouped, the resulting loss may be irreparable."); *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781-82 (2d Cir. 2010) ("[T]he exception to the general rule is rooted in the fact that insolvency may render otherwise compensable harm irreparable because there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.") (citations omitted); *Chevron Corp.*, 974 F. Supp. 2d at 638 ("Damages are no remedy at all if they cannot be collected, and most courts sensibly conclude that a damage judgment against an insolvent defendant is an inadequate remedy.") (internal citations and quotations omitted).

To be entitled to relief under this exception, a movant must show that the risk of insolvency is likely and imminent.  *Id.* (citations omitted).  "[M]onetary loss may support a finding of irreparable harm in situations where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy or is in a perilous financial state." *WestLB AG v. BAC Fla. Bank*, 2012 U.S. Dist. LEXIS 108594, at *5 (S.D.N.Y. Aug. 2, 2012) (internal quotation marks and citation omitted); *see also Centauri Shipping Ltd. v W. Bulk Carriers KS*, 528 F. Supp. 2d 186, 194 (S.D.N.Y. 2007) (same).

Here, Leeward has been out of business for years and has no assets other than the

23

Judgment it holds against AUA and its interest in the related *supersedeas* bond.  AUA has carried its burden of demonstrating that Leeward is in a "perilous financial state."  In the absence of injunctive relief, there is no evidence to suggest that Leeward will be able to pay the Anticipated Judgment.  Moreover, AUA's injury will not be limited to monetary loss.  Under paragraph 6 of the Stay Agreement, in the event that AUA is entitled to a net award after the Second Arbitration, Leeward's judgment against AUA shall be deemed satisfied in full and the bond will be released.  Without injunctive relief preventing Leeward from executing on Leeward's Judgment, AUA's contractually bargained for set-off right will become worthless.  Given Leeward's perilous financial status, and stated intention to grab AUA's property at its first opportunity, injunctive relief is necessary to maintain the *status quo* and preserve the Court's power to render a meaningful decision on the merits.

### B.   The Balance of Hardships Weighs Strongly in Favor of an Injunction

AUA is simply asking the Court to preserve the *status quo* to ensure that Leeward does not obtain a windfall before the resolution of the claims between the parties.

AUA stands to lose the benefit of its bargain under the Stay Agreement and is in danger of losing approximately $1 million that it will never be able to get back.  Leeward, on the other hand, is already fully secured by the bond AUA obtained, including interest on Leeward's Judgment for the two years.  Thus, Leeward has **nothing** to lose by the issuance of an injunction. This is particularly so given that Leeward appears to be a defunct entity.

Moreover, it is worth noting that the injunctive relief sought herein only seeks to preserve the *status quo*—the agreed upon stay of enforcement of Leeward's Judgment—pending the outcome of the litigation.  The balance of the equities must be struck to effect substantial justice

and tilts in favor of a plaintiff who merely seeks to maintain the *status quo*. *See* 11A Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 2d § 2948, at 133-34 (2d Ed. 1995). Maintaining the *status quo* pending a determination of the merits will not harm Leeward, and will allow AUA to avoid the harsh consequences of allowing Leeward the unfettered right to attach AUA's assets in direct violation of the Stay Agreement, with no ability to prevent Leeward from taking those assets to Antigua and dissipating them. Accordingly, the balance of the equities tips heavily in AUA's favor, and an injunction should be granted.

## CONCLUSION

AUA is entitled to attachment and/or injunctive relief enjoining Leeward from enforcing Leeward's Judgment in violation of the Stay Agreement. AUA will be severely harmed in the absence of such relief, while Leeward risks, and loses, nothing. For the reasons set forth above, AUA respectfully requests (1) the issuance of an order attaching Leeward's property interest in Leeward's Judgment and related *supersedeas* bond; and (2) the issuance of a preliminary injunction enjoining Leeward from enforcing Leeward's Judgment in violation of the Stay Agreement pending resolution of this action.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.

By: /s/ James Hirschhorn
      JAMES HIRSCHHORN

*Attorneys for Plaintiff*
*American University in Antigua College of*
*Medicine*

Dated: New York, New York
      February 17, 2015

25