UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,

         Petitioner,

   -against-


LEEWARD CONSTRUCTION COMPANY, LTD.,

         Respondent.
--------------------------------------------------------------x

Case No. 1:14-CV-8410-DLC/GWG
(ECF CASE)


## RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S MOTION FOR AN ORDER OF ATTACHMENT AND PRELIMINARY INJUNCTION


Dated: Poughkeepsie, New York
   March 6, 2015

        Respectfully Submitted:

        **LEWIS & GREER, P. C.**
        *Attorney for Respondent,*
        *Leeward Construction Company, Ltd.*
        510 Haight Avenue, P. O. Box 2990
        Poughkeepsie, New York 12603
        Telephone: 845-454-1200


OF COUNSEL:
Veronica A. McMillan, Esq.
J. Scott Greer, Esq.

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS ......................................................................................3

    I.      The First Arbitration Proceeding ...............................................3

    II.     The Second Arbitration Proceeding...........................................6

POINT I ..........................................................................................................8

    AUA IS NOT ENTITLED TO AN ORDER OF ATTACHMENT
    PURSUANT TO FED. R. CIV. P. 64 AND CPLR § 6212, *et seq.* ....................8

    A.  The Tribunal Decided Issues Outside of Its Authority and the
        Scope of the Arbitration Agreement ..........................................10

          i.     The Tribunal Decided a Claim That Was Not Presented to It ..................10

          ii.    The Tribunal Decided an Issue Related to the Application
                 of Tax Law That is Outside Its Authority and the Scope
                 of the Arbitration Agreement......................................................11

    B.  The Award is Non-Final and Ambiguous.....................................12

    C.  The Partial Final Award Constitutes a Manifest Disregard of the Law......................14

    D.  AUA's Award Will Not be Rendered Ineffectual Nor Will It be
        Irreparably Injured in the Absence of Attachment ......................17

    E.  The Balance of Equities Weighs in Leeward's Favor ................18

POINT II ........................................................................................................19

    THE AUA IS NOT ENTITLED TO A PRELIMINARY INJUNCTION
    ENJOINING LEEWARD FROM ENFORCING THE FIRST
    JUDGMENT ............................................................................................19

CONCLUSION...................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                    PAGE(S)

*American Fire & Casualty Co.* v. *Finn*, 341 U.S. 6 (1951)............................................................20

*Bender* v. *Williamsport Area School Dist.*, 475 U.S. 534 (1986).....................................................20

*Benjamin v. Traffic Executive Assoc. Eastern Railroads*, 869 F.2d 107
      (2d Cir. 1989)..............................................................................................14

*Besseler Waechter Glover & Co., Ltd. v. South Derwent Coal Co., Ltd.,*
      59 Lloyd's List Law Report 104 (King's Bench 1937) ...........................................16

*Bremer Handelsgesellschaft v. C. Mackprang Jr.,* 1 Lloyd's Rep
      221 (Court of Appeal 1979)...........................................................................16

*Burack v. Burack*, 251 A.D.2d 661 (2nd Dep't 1998) .....................................................9

*Carte Blanche (Singapore) v. Carte Blanche Int'l*, 888 F.2d 260 (2d Cir. 1989) ........................14

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)...............................................................21

*DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818 (2d Cir. 1997)................................10

*Dworkin-Cosell Interair Courier Services, Inc. v. Avraham*, 728 F.Supp.
      156 (SDNY 1989) ...........................................................................................12

*Essex Cement Co. v. Italmare, S.p.A.*, 763 F.Supp. 55 (SDNY 1991)..............................14

*Ferolito v. Vultaggio*, 36 Misc.3d 1227(A) (Sup. Ct. NY Cty. 2012). ......................18, 23

*Fiat S.p.A. v. Ministry of Finance and Planning*, 1989 U.S. Dist. LEXIS
      11995 (SDNY 1989).........................................................................................21

*GM, LLC v. Lewis Bros., LLC*, 2012 U.S. Dist. LEXIS 125263 (WDNY 2012) .........................22

*Habitations, Ltd. v. BKL Realty Sales Corp.*, 160 A.D.2d 423 (1st Dep't 1990).............................9

*Heller v. Frota Oceanica E. Amazonic, S.A.*, 856 N.Y.S.2d 24 (Sup. Ct.
      Kings Cty. 2007)...........................................................................................9

*Henderson v Henderson*, 3 Hare 100 (1943) ...............................................................14

*Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141 (2d Cir. 1992) .....................................10

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) .........................................21, 22

*Leeward Constr. Co. v. Am. Univ. of Antigua*, 2013 U.S. Dist. LEXIS
     43350 (SDNY 2013) ..........................................................................................5

*Mavis Henry v. Tyrone Warner,* Claim No. ANUHCV 2000/0277, Eastern
     Caribbean Supreme Court (2009) .........................................................14

*McNutt* v. *General Motors Acceptance Corp.*, 298 U.S. 178 (1936) ............................20

*Mey'er v. Gilmer,* 18 NZLR 129 ...................................................................................16

*Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411 (2d Cir. 1980) ....................12, 13

*Motor Oil Hellas (Corinth) Refineries  SA v. Shipping Corp. of India,*
     1 Lloyd's Rep. 391 (House of Lords 1990) ............................................15

*N.L.R.B. v. United Technologies,* 706 F.2d 1254 (2d Cir. 1988)....................................15

*North River Insurance Co. v. Allstate Insurance Co.,* 866 F. Supp. 123
     127 (S.D.N.Y. 1994) ..........................................................................14

*Pearl Seas Cruises, LLC v. Irving Shipbuilding, Inc.*, 2001
     U.S. Dist. LEXIS 87728 (Dist. of Conn. 2011) .....................................12

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174
     (2d Cir. 1998)........................................................................................13

*Saferstein v. Wendy*, 137 Misc.2d 1032 (Sup. Ct. NY Cty. 1987)...................................9

*Schaad v. Susquehanna Capital Group*, 2004 U.S. Dist. LEXIS
     15772 (SDNY 2004) ........................................................................... 21

*SG Cowen Sec. Corp v. Messih*, 224 F.3d 79 (2nd Cir. 2000)........................................9

*Sylmark Holdings Ltd. v. Silicone Zone Intern, Ltd.*, 5 Misc3d 285
     (Sup. Ct. NY Cty. 2004) .......................................................................9

*Tinaway v. Merrill Lynch & Co.*, 658 F.Supp. 576 (SDNY 1987)................................21

*Turner* v. *Bank of North-America*, 4 U.S. 8 (1799) .......................................................20

*United for Peace & Justice v. Bloomberg*, 5 Misc.3d 845 (Sup. Ct. NY
     Cty. 2004) ............................................................................................18

*United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298 (2d Cir. 1994)...............................20

*United States v. Hudson*, 11 U.S. (7 Cranch) 32 (1812)..................................................22

*United for Peace & Justice v. Bloomberg*, 5 Misc.3d 845 (Sup. Ct. NY Cty. 2004) ....................................................................................23

*Willy* v. *Coastal Corp.*, 503 U.S. 131 (1992)..............................................................20

*Woods v. Dunlop Tire Co.*, 972 F.2d 36 (2d Cir. 1992).................................................14

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15 (2d Cir. 1997)........................................................................4

## STATUTES                                                                                    PAGE(S)

Fed. R. Civ. P. 64.........................................................................................8, 9, 23

Fed. R. Civ. P. 65................................................................................................19

New York State Civil Practice Law and Rules Article 62......................................8, 9, 23

New York State Civil Practice Law and Rules Article 75......................................8, 9, 23

9 U.S.C. § 10(a)(3)...............................................................................................10

9 U.S.C. § 10(a)(4)...............................................................................................10

9 U.S.C. § 11(2)....................................................................................................10

9 U.S.C. § 201 *et seq.* ...........................................................................................4

28 U.S.C. §1331.....................................................................................................21

Federal Arbitration Act, 9 U.S.C. §1 *et seq* .............................................................5

## OTHER AUTHORITIES                                                                            PAGE(S)

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards.................4, 21

Antigua Arbitration Act ...................................................................................................13

ABST Act (2006), *as amended* (2008) ........................................................7, 11, 12, 17

**TREATISES**

Chitty on Contracts .........................................................................................................16

Wilken and Villiers: The Law of Waiver, Variation and Estoppel 2d....................................15, 16

## PRELIMINARY STATEMENT

This proceeding arises out of a contract between the American University of Antigua – College of Medicine ("Petitioner" or "AUA") and Leeward Construction Company, Ltd. ("Respondent" or "Leeward") for the construction of a medical school in St. Johns, Antigua. Pursuant to the terms of the parties' contract, Leeward initiated arbitration proceedings against the AUA with the American Arbitration Association International Center for Dispute Resolution in February, 2011, to arbitrate claims arising out of or related to the Contract (the "First Arbitration Proceedings"). The First Arbitration Proceedings resulted in a Final Award certified on June 22, 2012 and modified on August 8, 2012, awarding Leeward damages in the amount of $976,421.37, plus interest at the rate of 7% per annum as provided in the Award. The Final Award also awarded AUA liquidated damages in the amount of $58,500.00, plus interest at the rate of 7% per annum as provided in the Award (the "First Arbitration Award"). Thereafter, Leeward successfully petitioned this Court for confirmation of the First Arbitration Award. On June 11, 2013, the Court's Clerk entered a Corrected Amended Judgment in favor of Leeward in the net amount of $910,804.49 plus interest at a rate of 7% per annum until the judgment is paid ("the First Judgment"). AUA appealed the First Judgment and on August 16, 2013, the Court entered a Stipulation and Consent Order staying enforcement of the First Judgment pending the outcome of AUA's appeal. *See* McMillan Declaration, Exhibit A. AUA has perfected its appeal to the United States Court of Appeals for the Second Circuit. The Stipulation and Consent Order staying Leeward's enforcement of the First Judgment as well as the *supersedeas* bond AUA posted in conjunction therewith remain in full force and effect thereby protecting the AUA's position.

The underlying petition to confirm herein concerns a second arbitration between the parties arising out of the same contract and concerning the same construction project. On February 7, 2013, Leeward commenced a second arbitration proceeding against AUA with the American Arbitration Association International Center for Dispute Resolution to arbitrate a small amount of money (US $30,762.00) outstanding after the First Arbitration Proceeding (the "Second Arbitration Proceeding"). During the First Arbitration Proceeding, the AUA admitted it was liable to pay to Leeward the outstanding amount as a result of a mis-tabulation during invoicing on the project. The First Arbitration Proceeding Tribunal held that it could not award the amount to Leeward because it was not part of the First Arbitration Proceeding and indeed, did not come to light until the hearings. In the Second Arbitration Proceeding, AUA asserted for the first time claims relating to Antigua and Barbuda Sales Tax ("ABST") it paid and alleged construction defect claims related to the project. AUA's claims in the Second Arbitration Proceeding amount to several million dollars in additional alleged damages above and beyond those it alleged in the First Arbitration Proceeding. AUA knew about these claims at the time of the First Arbitration Proceeding but intentionally elected not to bring the claims at that point in time.

The parties agreed to submit their claims to the Tribunal for decision in the nature of motions for summary judgment. On February 6, 2014, the Tribunal issued a decision which did not resolve any of the major issues in the proceeding. On April 28, 2014, at the joint request of the parties, the Tribunal conducted a day-long oral argument in Miami, Florida in which it heard from counsel for both parties. On September 18, 2014, the Tribunal issued a Partial Final Award which, *inter alia*, dismissed Leeward's claim and granted the AUA's ABST claim. The Tribunal has not yet adjudicated the AUA's construction defect claims. The Partial Final Award included

2

a twenty page vigorous Dissenting Opinion in which Arbitrator Romero pointed out five significant problems with the Partial Final Award.

The AUA's petition to confirm and Leeward's cross-motion to vacate, modify and/or deny enforcement of the Partial Final Award are *sub judice* before the Court. Despite the stay in effect during the pendency of its appeal, the AUA has now opted to bring the instant application seeking an order of attachment and/or a preliminary injunction enjoining Leeward from enforcing the First Judgment. Worse, the AUA asks this Court to issue a preliminary injunction against Leeward through the conclusion of the Second Arbitration. AUA is not entitled to the relief it seeks; even if it were, it has not satisfied the standards required to obtain the relief; and this Court does not have jurisdiction to grant all the relief the AUA requests. Accordingly, the AUA's motion should be denied in its entirety.

## STATEMENT OF FACTS

### I.    The First Arbitration Proceeding

On September 25, 2008, Leeward, as contractor, and the AUA, as owner, executed a contract for the construction of a medical school in St. Johns, Antigua (the "Contract"). Section 4.6 of the General Conditions to the Contract contained an arbitration agreement that reads as follows:

> § 4.6 ARBITRATION
> § 4.6.1  Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration.
>
> § 4.6.2  Claims shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the

3

> Contract and with the American Arbitration Association, and a
> copy shall be filed with the Architect.  Location of any Arbitration
> will be Antigua.

(A copy of the Contract containing the arbitration agreement is annexed to AUA's Petition as

Exhibit A.) *See* McMillan Declaration, Exhibit B.

On February 3, 2011, Leeward commenced the First Arbitration Proceeding with the

American Arbitration Association International Center for Dispute Resolution ("AAA") to

arbitrate claims arising out of or related to the Contract.   Following extensive pleadings,

evidentiary hearings and post-hearing submissions, the Tribunal issued the First Arbitration

Award certified June 22, 2012 and modified August 8, 2012, in which the Arbitrators directed

the AUA to pay damages to Leeward in the amount of $976,421.37, plus interest at the rate of

seven percent (7%) per annum as provided in the Award.   The First Arbitration Award also

granted the AUA damages in the amount of $58,500.00, plus interest at the rate of 7% per annum

as provided in the Award. *See* McMillan Declaration, Exhibit C.

On August 16, 2012, Leeward commenced a proceeding in this Court styled *Leeward*

*Construction Company, Ltd. v. American University of Antigua – College of Medicine, et ano.*,

12-CV-062080-LAK/GWG, for an order confirming the First Arbitration Award and for the

entry of a money judgment against AUA in the amounts stated in the First Arbitration Award

pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards as

codified at 9 U.S.C. §201 *et seq.* (the "Convention").[1]   On September 25, 2012, AUA cross-

moved to dismiss pursuant to the *Forum Non Conveniens* Doctrine and Fed. R. Civ. P. 12(b)(6)

---

[1] The Convention, also known as the "New York Convention" and the "1958 Convention," was enacted on June 10, 1958 and ratified by the United States on December 29, 1970.  S*ee Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15-18 n.1. (2d Cir. 1997).   The Commonwealth of Antigua and Barbuda ratified the Convention on February 2, 1989. *See* http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/ NYConvention_status.html.

or in the alternative, to vacate or modify the award pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* On March 26, 2013, the Court entered a Memorandum Opinion which, *inter alia*, granted Leeward's petition. *See Leeward Constr. Co. v. Am. Univ. of Antigua*, 2013 U.S. Dist. LEXIS 43350 (SDNY 2013), McMillan Declaration, Exhibit D.  On June 11, 2013, the Court's Clerk entered the First Judgment. *See* McMillan Declaration, Exhibit E.

On April 29, 2013, AUA filed a Notice of Appeal and thereafter, moved the Court for a stay of enforcement of the First Judgment pending the outcome of its appeal.  The AUA points out in its memorandum of law herein that during the pendency of its first motion for a stay of enforcement, the Court "questioned whether it had jurisdiction to stay" Leeward's enforcement of the First Judgment. *See* AUA Memorandum of Law, p. 8.  Thereafter, on July 11, 2013, the parties agreed to enter into a Standstill Agreement, *inter alia*, agreeing that the AUA would post the *supersedeas* bond and Leeward would refrain from enforcing the First Judgment during the pendency of the AUA's appeal. *See* Sclafani Declaration, Exhibit 3.  In the Standstill Agreement, the AUA acknowledged that to enforce the Stay Agreement and to seek equitable and/or injunctive relief to stay enforcement of the First Judgment, it would have to commence an action for specific performance in the Supreme Court of New York. *See* Sclafani Declaration, Exhibit 3, p. 2.

On August 9, 2013, AUA filed a *supersedeas* bond in the amount of $1,073,000 and on August 16, 2013, the Court entered a Stipulation and Consent Order staying the enforcement of the First Judgment pending the outcome of AUA's appeal. *See* McMillan Declaration, Exhibit A. Thereafter, the parties entered into several Local Rule 42.1 stipulations extending the AUA's time to reinstate its appeal through February 2, 2015, almost two full years after the execution of the Standstill Agreement.  The AUA has now perfected its appeal to the United States Court of

5

Appeals for the Second Circuit. Leeward's brief in opposition is due on or before March 16, 2015. The Stipulation and Consent Order as well as the *supersedeas* bond remain in full force and effect.

## II.     The Second Arbitration Proceeding

On February 7, 2013, Leeward commenced a second arbitration proceeding against AUA with the American Arbitration Association International Center for Dispute Resolution to arbitrate a small amount of money (US $30,762.00) outstanding after the First Arbitration Proceeding (the "Second Arbitration Proceeding"). During the First Arbitration Proceeding, the AUA admitted on multiple occasions that it was liable to pay to Leeward the outstanding amount as a result of a mis-tabulation during invoicing on the project. Neither party was aware of the outstanding amount until the AUA pointed it out during the hearings. Thus, the First Arbitration Proceeding Tribunal held that it could not award the amount to Leeward because it was not part of the First Arbitration Proceeding. *See* McMillan Declaration, Exhibit C, pp. 11-12. Leeward attempted to obtain payment from the AUA for this amount but was refused.

In opposition to the Second Arbitration Proceeding, the AUA asserted, for the very first time, counterclaims seeking a refund of all of the Antigua and Barbuda Sales Tax it paid to Leeward on the project, in the amount of EC $3,614,522.41/U S$1,338,723.00 (the "ABST claim") as well as various alleged construction defect claims in the amount of EC $2,642,450.00/US $978,685.00 (the "Defective Work claims"). The AUA was aware of its claims at the time of the First Arbitration Proceeding. *See* McMillan Declaration, Exhibit F.

The parties agreed to submit their claims in the Second Arbitration Proceeding to the Tribunal for decision in the nature of motions for summary judgment. In its motion, Leeward argued that AUA's ABST claim should be dismissed because (a) the AUA was required under the

6

Contract, read in conjunction with the ABST Act, to pay Leeward ABST; (b) the doctrine of *res judicata* bars the ABST claim; (c) the AUA lacks standing to bring the ABST claim; (d) the doctrines of waiver and/or modification bar the ABST claim; and (e) the ABST claim does not arise under the Contract and, therefore, is not subject to arbitration. With regard to the AUA's defective work claims, Leeward argued that the claims were subject to dismissal because (a) the doctrine of *res judicata* bars the Defective Work claims; (b) the AUA failed to comply with the required notice provision under the Contract and, as a result, the Defective Work claims are untimely; and (c) the windows portion of the Defective Work claims is not subject to arbitration because the windows work was performed under a separate contract. The AUA moved for summary judgment on its ABST claim and for dismissal of several of Leeward's defenses.

On February 6, 2014, the Tribunal issued a decision which failed to resolve any of the major issues in the proceeding. On April 28, 2014, at the joint request of the parties, the Tribunal conducted a day-long oral argument in Miami, Florida in which it heard from counsel for both parties. On September 18, 2014, the Tribunal issued a Partial Final Award which, *inter alia*, dismissed Leeward's claim and granted AUA's ABST claim (the "Partial Final Award"). The Partial Final Award contained a lengthy dissenting opinion which detailed the errors in the Partial Final Award. *See* McMillan Declaration, Exhibit G.

Thereafter, the AUA filed the underlying petition to confirm the Partial Final Award. *See* McMillan Declaration, Exhibit B. In response, Leeward cross-moved to vacate or modify the Partial Final Award and/or deny its enforcement arguing that the AUA is not entitled to enforcement of the Partial Final Award because the Tribunal decided issues outside of its authority and the scope of the parties' arbitration agreement; the award is non-final and

ambiguous; and the award constitutes a manifest disregard for the law.  *See* McMillan Declaration, Exhibit H[2].

On February 17, 2015, the AUA filed the instant application seeking an order of attachment and/or preliminary injunction.  In its application, the AUA makes unsupported allegations about Leeward and its actions, namely a claim that Leeward is intentionally seeking to delay the Second Arbitration by failing to pay the AAA arbitration fees and then using it as a basis to claim that the Partial Final Award is unenforceable. *See* AUA Memorandum of Law, pp. 9-10.  The Partial Final Award is unenforceable for more than one reason, including that it is non-final and ambiguous.  Moreover, contrary to the AUA's assertion, Leeward has not paid an outstanding balance in fees to the AAA because it is currently engaged in a review of the fees charged to date for the Second Arbitration.  The Tribunal's charges have been exorbitant and excessive with no explanation.  The parties have expended in excess of $100,000.00 in fees to date with no end in sight. *See* McMillan Declaration, Exhibit I.  The expenditure is particularly distressing given that Leeward's claim in the arbitration is for only a little more than $30,000.00.


## POINT I

### AUA IS NOT ENTITLED TO AN ORDER OF ATTACHMENT PURSUANT TO FED. R. CIV. P. 64 AND CPLR §6212, *et seq.*

In the instant motion, the AUA seeks an order of attachment of the First Judgment and the *supersedeas* bond it posted pursuant to Fed. R. Civ. P. 64 and New York State Civil Practice Law and Rules ("CPLR") Articles 62 and 75.  Fed. R. Civ. P. 64 governs seizure of property and states in relevant part:

---

[2] A copy of Leeward's memorandum of law, dated December 11, 2014 and reply memorandum of law, dated January 9, 2015 in support of its cross-motion and in opposition to AUA's petition to confirm together with the McMillan Declaration, dated December 11, 2014, is annexed hereto as Exhibit H.  The exhibits attached to Leeward's cross-motion have not been included but can be found at DE #33.

> At the commencement of and throughout an action, every remedy
> is available that, under the law of the state where the court is
> located, provides for seizing a person or property to secure
> satisfaction of the potential judgment.

Fed. R. Civ. P. 64(a).  In New York State, CPLR Article 62 provides a mechanism for attachment where appropriate.  In the context of arbitration, however, CPLR §7502(c) provides that the sole basis for attachment is that the award may be rendered ineffectual. *See* CPLR §§6201; 7502(c); *see also, Habitations, Ltd. v. BKL Realty Sales Corp.*, 160 A.D.2d 423 (1st Dep't 1990); *Burack v. Burack*, 251 A.D.2d 661 (2nd Dep't 1998).  To obtain an order of attachment, a movant must demonstrate not only that the arbitration award will be ineffectual but also a likelihood of success on the merits; irreparable injury if the relief is withheld and a balance of equities in the movant's favor. *See SG Cowen Sec. Corp v. Messih,* 224 F.3d 79 (2nd Cir. 2000); *Saferstein v. Wendy*, 137 Misc.2d 1032 (Sup. Ct. NY Cty. 1987)  Granting an order of attachment is discretionary and "even where the statutory requisites are met, the order may be denied." *Heller v. Frota Oceanica E. Amazonic, S.A.*, 856 N.Y.S.2d 24 (Sup. Ct. Kings Cty. 2007) (citing *Sylmark Holdings Ltd. v. Silicone Zone Intern, Ltd.*, 5 Misc3d 285 (Sup. Ct. NY Cty. 2004))  Here, the AUA has not made a sufficient case to obtain an order of attachment against the First Judgment.  Accordingly, its motion should be denied.

First and foremost, the AUA has not demonstrated a likelihood of success on the merits. In its opposition to the AUA's petition to confirm, Leeward made clear that there are several significant defects within the Partial Final Award requiring its vacatur or modification.  First, the Tribunal decided issues outside of its authority and the scope of the parties' arbitration agreement.  Second, the Partial Final Award is non-final and ambiguous.  Third, the Partial Final

Award constitutes a manifest disregard for the law.  For the sake of brevity, Leeward has included its memorandum of law and reply memorandum of law in support of its cross-motion to deny enforcement, vacate and/or modify and in opposition to the AUA's petition to confirm the Partial Final Award as part of Exhibit H to the McMillan Declaration submitted herein.  Leeward briefly discusses the defects in the Partial Final Award in the following sections.

### A. The Tribunal Decided Issues Outside of Its Authority and the Scope of the Arbitration Agreement

Both the FAA and the Convention allow for vacatur of an arbitration award where the arbitrators have exceeded their authority in the parties' arbitration agreement. *See* 9 U.S.C. §10(a)(4); *see also*, 9 U.S.C. §11(2) and Article V of the Convention.  A court's inquiry in this regard focuses on "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue…" *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 824 (2d Cir. 1997)  A tribunal's actions in passing on a matter not before it or outside the scope of its authority invokes questions of due process in violation of 9 U.S.C. §10(a)(3) and Article V(1)(b) of the Convention and should not be countenanced in a petition to confirm. *See*, *e.g.*, *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d Cir. 1992) (These provisions protect "the fundamental requirement of due process …the opportunity to be heard at a meaningful time and in a meaningful manner.")

### i.     The Tribunal Decided a Claim That Was Not Presented to It

In his Dissenting Opinion, Arbitrator Romero points out that the Tribunal based its decision in favor of the AUA on its ABST claim on the theory of unjust enrichment which was outside the scope of the matters submitted to them for decision. *See* McMillan Declaration, Exhibit G, Dissenting Opinion, pp. 8-12.  Arbitrator Romero succinctly traces the pleadings to

10

demonstrate that AUA did not have a claim of unjust enrichment before the Tribunal for decision. See McMillan Declaration, Exhibit H, pp. 11-15.

Further, without exploring the elements of a cause of action for unjust enrichment or even concluding that the AUA had established its entitlement to relief under this equitable theory, the Tribunal summarily concluded that Leeward failed to present any valid defense to a claim. *See* McMillan Declaration, Exhibit G, Dissenting Opinion, p. 10-11.  In basing their decision to award the AUA EC $3,614,522.41 in ABST repayments on a claim that the AUA dropped in its final amended pleading in August, 2013, the Tribunal violated Leeward's due process and exceeded its authority. *See* McMillan Declaration, Exhibit G, Dissenting Opinion, pp. 8-12. Even if the AUA had retained its claim for unjust enrichment, such claim was outside the parties' arbitration agreement and beyond the scope of the Tribunal's review.  A claim for unjust enrichment is an equitable, restitution claim that is independent of any contract. See McMillan Declaration, Exhibit H, Memorandum of Law pp. 11-15; Reply Memorandum of Law, pp. 3-10. To the extent that the AUA's ABST claim arises out of a claim for unjust enrichment, it cannot "arise under" or relate to the Contract and is not subject to the parties' arbitration agreement. Awarding the AUA damages based on a theory of unjust enrichment, is outside the scope of the Tribunal's authority in violation of the FAA and the Convention.

ii.    **The Tribunal Decided an Issue Related to the Application of Tax Law That is Outside Its Authority and the Scope of the Arbitration Agreement**

The Partial Final Award also makes findings with regard to the Antigua and Barbuda ABST Act which are outside the Tribunal's authority and the scope of the arbitration agreement. Again, directing the Court's attention to the Dissenting Opinion, Arbitrator Romero concisely explains the issues present in the Partial Final Award with regard to the ABST Act. *See*

McMillan Declaration, Exhibit G, Dissenting Opinion, pp. 13-16.  Most significantly, in deciding the AUA's ABST claim, the Tribunal has cross over into tax law enforcement – a right only granted to the Antigua and Barbuda tax authorities – not to the Tribunal or the AUA.

Nothing in the ABST Act creates or contemplates a private right of action or otherwise authorizes a private person to enforce the ABST Act. *See* McMillan Declaration, Exhibit H, Memorandum of Law, pp. 11-15; Reply Memorandum of Law, pp. 3-10.  In issuing the Partial Final Award, the Tribunal has granted the AUA relief that it is not otherwise entitled to under the terms of the ABST Act.  Further, the Tribunal has countenanced the AUA's failure to adhere to the statutory requirements for obtaining an ABST refund.  The ABST Act provides that refund requests must be made within three years.  Thus, the Tribunal has also breathed life back into an otherwise time barred claim under the ABST Act. *See* ABST Act, Part XVII, 44(5) (2006), *as amended* (2008).  The ABST Act provides exclusive procedures for dealing with the AUA's ABST claim and the "Tribunal should not exercise its powers to administer the tax laws of that country and should not interfere with the administration and enforcement of the tax laws of Antigua and Barbuda." McMillan Declaration, Exhibit G, Dissenting Opinion, p. 15.   The Tribunal has acted outside the scope of its authority and as such, the Partial Final Award should be denied enforcement, vacated and/or modified and Leeward's claim reinstated.

**B.  The Award is Non-Final And Ambiguous**

This Court has held that for an arbitration award to be enforced under the FAA and the Convention, it must be final, particularly where the laws of the country in which the arbitration is conducted require finality. *See, e.g., Dworkin-Cosell Interair Courier Services, Inc. v. Avraham*, 728 F.Supp. 156, 161 (SDNY 1989); *see also, Pearl Seas Cruises, LLC v. Irving Shipbuilding, Inc.*, 2001 U.S. Dist. LEXIS 87728, *5 (Dist. of Conn. 2011) (quoting *Michaels v. Mariforum*

*Shipping, S.A.*, 624 F.2d 411, 413-414 (2d Cir. 1980) and *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998))  The laws of Antigua and Barbuda also require that an arbitration award be final before it can be enforced. *See generally,* Antiguan Arbitration Act, Chapter 33 of the Laws of Antigua and Barbuda.

The Partial Final Award as rendered is non-final and ambiguous.  First, the Partial Final Award opens Leeward to double liability – payment to the AUA now and possible payment to the Antigua and Barbuda tax authority at a later date. See McMillan Declaration, Exhibit H, Memorandum of Law, pp. 15-16; Reply Memorandum of Law, pp. 10-12.  Further, while it provides for the AUA to indemnify Leeward at some future date should Leeward be "later required by the Antigua and Barbuda tax authorities to account for, and pay to, the Antigua and Barbuda authorities ABST on this construction project," the award completely fails to address the possibility that the Antigua and Barbuda tax authorities may find that Leeward had no outstanding tax obligation on the project because it had already satisfied its obligations by paying ABST to contractors and vendors down the stream of commerce from it for services and materials purchased for the project.

Finally, it does not resolve all claims between the parties and in fact, contemplates further proceedings.  With regard to the further proceedings, the AUA claims that Leeward is not entitled to raise this issue because it currently has an outstanding balance for fees with the AAA which has apparently prompted a suspension of the Second Arbitration Proceeding.  First, Leeward is entitled to engage in a review of the extensive fees that have already been charged to date particularly given the size of Leeward's claim in the Second Arbitration.  Second, if the AUA does not want to wait for the dispute to be resolved, it has legal recourse open to it. Attempting to unfairly disparage Leeward in front of this Court should not be countenanced.  In

13

making its claim that Leeward is "stalling" the continuation of the Second Arbitration Proceeding, the AUA admits of course, that the matter has not concluded. Thus, the Partial Final Award is non-final and ambiguous.

### C. The Partial Final Award Constitutes a Manifest Disregard of the Law

Finally, the Partial Final Award constitutes a manifest disregard for the law. A manifest disregard for the law occurs where an arbitrator makes an error that is "'obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. … [T]he governing law alleged to have been disregarded by the arbitrators must be 'well defined, explicit and clearly applicable.'" *Essex Cement Co. v. Italmare, S.p.A.*, 763 F.Supp. 55, 57 (SDNY 1991) (quoting *Carte Blanche (Singapore) v. Carte Blanche Int'l*, 888 F.2d 260, 265 (2d Cir. 1989)) Here, the Tribunal ignored the obvious applicability of the doctrines of *res judicata*, collateral estoppel, claim preclusion and issue preclusion. *See* McMillan Declaration, Exhibit H, Memorandum of Law, pp. 16-22; Reply Memorandum of Law, pp. 12-15.

Under both Antiguan law and United States Common Law, a "final judgment on the merits bars further claims that were or could have been raised in that action." *Benjamin v. Traffic Executive Assoc. Eastern Railroads,* 869 F.2d 107, 111 (2d Cir. 1989); *North River Insurance Co. v. Allstate Insurance Co.,* 866 F. Supp. 123, 127 (S.D.N.Y. 1994); *see also, Mavis Henry v. Tyrone Warner,* Claim No. ANUHCV 2000/0277, Eastern Caribbean Supreme Court (2009) (citing *Henderson v Henderson,* 3 Hare 100, 114-115 (1943). It is the identity of the facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which the individual chooses to frame his complaint. *See Woods v. Dunlop Tire Co.,* 972 F.2d 36, 37 (2d Cir. 1992). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the

same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Technologies,* 706 F.2d 1254, 1260 (2d Cir. 1988).

The AUA's ABST claim and Defective Work claims herein are barred by *res judicata* because they concern the same subject matter that was previously adjudicated in the First Arbitration Proceeding, to wit: the scope of the Contract, the administration of the Contract, payments under the Contract, and Leeward's performance under the Contract.  In addition, the same series of transactions that were at issue within the First Arbitration Proceeding are at issue within the ABST claim.  The same evidence and facts are needed to support both the claims made within the First Arbitration Proceeding and the ABST claim asserted by the AUA herein. Further, the AUA admitted that it had knowledge of its alleged defects prior to the commencement of the First Arbitration Proceeding, but failed to assert the claims. *See* McMillan Declaration, Exhibit F.  The AUA could have and should have asserted the ABST claim in the First Arbitration Proceeding.

Finally, the Tribunal also improperly disregarded the fact that the AUA's ABST claim is barred by the doctrines of waiver and modification. *See* McMillan Declaration, Exhibit H, Memorandum of Law, pp. 16-22; Reply Memorandum of Law, pp. 12-15.  At common law, a contractual provision is waived when a party represents, in word or deed: (1) that it will forbear to enforce a right it holds by that provision; or (2) that it will not insist on the other party's performance of an obligation under that provision, and the other party acts accordingly. *See* Sean Wilken, Wilken and Villiers: The Law of Waiver, Variation and Estoppel 2d ("Wilken"),§ 3.15; *Motor Oil Hellas (Corinth) Refineries  SA v. Shipping Corp. of India ("The Kanchenjunga',* 1 Lloyd's Rep. 391, 397-98 (House of Lords 1990) (explaining that waiver occurs when a party forbears from exercising a right upon the other party's breach); 1  Chitty on Contracts ("Chitty"),

§ 22-040 ("Where one party voluntarily accedes to a request by the other that he should forbear to insist on the mode of performance fixed by the contract, the Court may hold that he has *waived* this right to require that the contract be performed in this respect according to its original tenor") (emphasis in original); *Besseler Waechter Glover & Co., Ltd. v. South Derwent Coal Co., Ltd.,* 59 Lloyd's List Law Report 104, 108 (King's Bench 1937). *See also Mey'er v. Gilmer,* 18 NZLR 129, 136-37.  The parties' conduct or course of dealing can constitute a waiver of a contractual provision.  *See* Chitty, § 22-041 ("A waiver may be oral or written or inferred from conduct."); *see also* Wilken,§ 4.07.  Conduct constitutes a waiver if, in light of all circumstances, it clearly evinces a party's decision to forbear from insisting on its rights. *See* Wilken, §§ 4.07-4.08; *see, e.g., Bremer Handelsgesellschaft v. C. Mackprang Jr.,* 1 Lloyd's Rep 221, 230 (Court of Appeal 1979). A party that waives a provision of a contract loses "his right to require that the contract be performed in this respect according to its original tenor," and cannot recover it *(i.e.,* revoke his waiver) except with adequate notice in limited circumstances.  Chitty, §§ 22-040 and 22-043; *see also* Wilken,§ 4.01.  Specifically in commercial contexts, a party's conduct constitutes a waiver where the party "persists in the residual contractual relationship" and/or continues to accept benefits arising therefrom, notwithstanding the other party's nonconforming performance of  an obligation. *Bremer* at 230; Wilken, § 4.08 (unequivocal conduct constituting a waiver includes "[v]oluntary acceptance after breach of benefits arising from the contract").

The AUA waived the applicable contract terms by repeatedly approving, in writing, the inclusion of ABST in each and every one of Leeward's 27 payment requisitions.  The AUA's waiver of the applicable contract terms is evidenced in its express approval and payment of each and every payment requisition including ABST without protest. Thus, the AUA has waived its

right (to the extent it had one) to seek repayment of the ABST under the terms of the Contract. Even assuming, *arguendo,* that the AUA's course of conduct and written documentation does not meet the formal requirements of waiver, the AUA's written approval of the payment of ABST, without protest, in each of the 27 payment applications constitutes a modification of the Contract's tax payment provisions.  The Contract provides that any modifications must be in writing and signed by both parties.  The AUA's written approval of the payment of ABST on each and every payment application submitted by Leeward constitutes a modification of the Contract's tax payment provisions to provide that the AUA will pay the ABST that Leeward is required to charge under the ABST Act.  These written modifications of the Contract's tax payment provisions are binding upon the AUA, and remove the AUA's right to seek repayment under the Contract.

The Tribunal completely ignored the applicability of these doctrines and their impact on the AUA's ABST claim and Defective Work claims.  In so doing, the Tribunal acted with manifest disregard for the law.  In failing to truly address these items in the context of this motion, the AUA has failed to demonstrate a likelihood of success on the merits.

### D. AUA's Award Will Not be Rendered Ineffectual Nor Will It be Irreparably Injured in the Absence of Attachment

In addition to failing to demonstrate a likelihood of success on the merits, the AUA has failed to demonstrate that its award will be rendered ineffectual and/or that it will be irreparably injured in the absence of an order of attachment.  Regardless of Leeward's financial condition and/or ongoing operations, the fact remains that Leeward is currently stayed from enforcing the First Judgment. *See* McMillan Declaration, Exhibit A.  Until such time as the AUA's appeal is decided, Leeward will be precluding from enforcing the First Judgment.  The AUA's appeal is still in the early stages.  Oral argument and any ultimate decision are still months if not a year

17

away.  Thus, there is currently no possibility that the AUA's award will be rendered ineffective and/or that the AUA will be irreparably injured in the absence of an order of attachment.  At the very least AUA's motion is extremely premature.

### E.  The Balance of Equities Weighs in Leeward's Favor

A balancing of the equities in this matter actually tips in Leeward's favor.  The AUA has created the hardship that exists here.  Leeward completed the project and the AUA began to use the facility on August 1, 2009.  When a dispute was apparent between the parties, Leeward diligently commenced and prosecuted the First Arbitration Proceeding which resulted in the First Judgment.  At the time of the First Arbitration Proceeding, the AUA was aware of the ABST Claim and its Defective Works Claims.  Instead of bringing its allegations to the fore in the First Arbitration Proceeding and having them determined, it consciously chose to not assert the claims, instead laying in wait.  *See* McMillan Declaration, Exhibit F.  If the AUA brought its claims in the First Arbitration Proceeding, it would not need an order of attachment now.  The Court should not countenance the self-created situation the AUA has placed itself in by now granting it an order of attachment. *See, e.g.*, *United for Peace & Justice v. Bloomberg*, 5 Misc.3d 845 (Sup. Ct. NY Cty. 2004) ("In balancing the equities, the court should consider various factors, including… whether plaintiff has unclean hands."); *Ferolito v. Vultaggio*, 36 Misc.3d 1227(A) (Sup. Ct. NY Cty. 2012).

## POINT II

## THE AUA IS NOT ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING LEEWARD FROM ENFORCING THE FIRST JUDGMENT

As an alternative to its request for an order of attachment, the AUA moves the Court for a preliminary injunction "enjoining Leeward from enforcing [the First Judgment] in violation of the Stay Agreement." AUA Memorandum of Law, pp. 2, 21.  Incredibly, the AUA asks the Court not only to enjoin Leeward during the pendency of these confirmation proceedings but through the end of the Second Arbitration.  The AUA is not entitled to the relief it requests.  The Court does not have jurisdiction, subject matter or ancillary, to enforce the Stay Agreement.  Accordingly, the Stay Agreement cannot form the basis of a preliminary injunction pursuant to Fed. R. Civ. P. 65 and the AUA's motion herein should be denied.

This is not the first time the AUA has attempted to enforce the Stay Agreement in this Court.  Following the Court's issuance of the First Judgment in the First Confirmation Proceeding, the AUA moved the Court for a temporary restraining order and stay of enforcement pending the outcome of the Second Arbitration. During oral argument on the AUA's motion, the Court questioned its jurisdiction to enforce the Stay Agreement.  *See* AUA Memorandum of Law, p. 8.  On July 11, 2013, before the motion was decided, the parties entered into the Standstill Agreement. *See* Sclafani Declaration, Exhibit 3.  Thereafter, the AUA posted a *supersedeas* bond and on August 16, 2013, the Court entered a Stipulation and Consent Order staying enforcement of the First Judgment pending the outcome of AUA's appeal. *See* McMillan Declaration, Exhibit A.  The Stipulation and Consent Order as well as the *supersedeas* bond are still in place and will remain in force and effect until the conclusion of the AUA's appeal in the

Second Circuit.  Despite its protected position, the AUA is again moving for almost the identical relief.

The AUA expends a great deal of effort in its moving papers discussing the propriety of the Stay Agreement and what it perceives Judge Kaplan's opinion was about the Stay Agreement.  The AUA's discussion makes clear that the parties had an obvious disagreement over the circumstances leading up to and after the execution of the Stay Agreement and whether the agreement is in fact, enforceable.  However, the AUA completely ignores the jurisdictional question.  This oversight is perplexing given its own acknowledgement in the Standstill Agreement that to attempt to enforce the Stay Agreement, it would need to commence an action in New York State Supreme Court. *See* Sclafani Declaration, Exhibit 3, p. 2.  Judge Kaplan's suspicion about this Court's lack of jurisdiction to enforce the Stay Agreement was correct.  The Court does not have jurisdiction, subject matter or ancillary, to enforce the Stay Agreement.

Federal courts are courts of limited jurisdiction and only possess the power that is authorized by Constitution and statute. *See Willy* v. *Coastal Corp.*, 503 U.S. 131, 136-137 (1992); *Bender* v. *Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986).  Federal jurisdiction cannot be expanded by judicial decree. *See American Fire & Casualty Co.* v. *Finn*, 341 U.S. 6 (1951).  A cause of action is presumed to lie outside of a federal court's limited jurisdiction unless the party seeking to invoke the federal court's subject matter jurisdiction proves otherwise. *See Turner* v. *Bank of North-America*, 4 U.S. 8 (1799), *McNutt* v. *General Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936); *United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).

This Court lacks subject matter jurisdiction to enforce the Stay Agreement because it is outside of the parties' arbitration agreement. The instant proceeding was commenced to confirm the Partial Final Award, a foreign arbitration award. As the AUA points out in its own petition, the Court's jurisdiction to confirm or vacate the Partial Final Award is pursuant to the Convention and 28 U.S.C. §1331 because the Convention is a United States treaty. *See* McMillan Declaration, Exhibit B. The Court's jurisdiction in this matter is severely limited. Its role is restricted to reviewing the arbitration award before it to determine whether or not it should be enforced and/or vacated under the FAA, including the Convention incorporated therein. *See, e.g.,* *Tinaway v. Merrill Lynch & Co.*, 658 F.Supp. 576 (SDNY 1987); *see also, Schaad v. Susquehanna Capital Group*, 2004 U.S. Dist. LEXIS 15772 (SDNY 2004); *Fiat S.p.A. v. Ministry of Finance and Planning*, 1989 U.S. Dist. LEXIS 11995 (SDNY 1989); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) Anything above and beyond this limited role is outside of the Court's jurisdiction under the Convention and the FAA.

The Court also does not have ancillary jurisdiction in this proceeding to enforce the Stay Agreement. "[T]he doctrine of ancillary jurisdiction … recognizes federal court's jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378. The Court, in *Kokkonen* found that jurisdiction to maintain ancillary proceedings may be exercised

> for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent … and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees, *see, e.g.,* *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (power to compel payment of opposing party's attorney's fees as sanction for

misconduct); *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34
(1812) (contempt power to maintain during proceedings).

*Kokkonen*, 511 U.A. at 379-80.  In *Kokkonen*, the U.S. Supreme Court held that a federal court did not maintain ancillary jurisdiction to hear disputes over a settlement agreement that was not entered as an order of the court. *See id.* at 381-82.

Here the same result is required as the Court does not have ancillary jurisdiction.  The facts underlying the AUA's petition to confirm and Leeward's cross-motion to vacate, modify and/or deny enforcement of the Partial Final Award and those underlying the AUA's claim for enforcement of the Stay Agreement have nothing to do with each other; they would not necessarily be adjudicated together.  Additionally, enforcing the Stay Agreement has no bearing on the Court's ability to "function successfully …, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 379-80.  Thus, the Court neither has subject matter nor ancillary jurisdiction to enforce the Stay Agreement as a basis for a preliminary injunction.

Even were the Court to find that it has jurisdiction to enforce the Stay Agreement, the AUA still is not entitled to a preliminary injunction.  To justify the issuance of an extraordinary and drastic remedy such as a preliminary injunction, the movant must demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation; a likelihood of irreparable harm in the absence of the injunction; and a balancing of hardships in favor of the movant. *See, e.g., GM, LLC v. Lewis Bros., LLC*, 2012 U.S. Dist. LEXIS 125263 (WDNY 2012)

As Leeward pointed out in Point I, *supra*, the AUA has not demonstrated the likelihood of its success in enforcing the Partial Final Award. *See* Point I, *supra*.  Moreover, it has not even

attempted to demonstrate the likelihood of success on the merits in enforcing the Stay Agreement, the agreement it claims forms the basis for the preliminary injunction. Further, AUA is in no danger of suffering irreparable harm. It is protected, and will be protected for the foreseeable future, by the Stipulation and Consent Order as well as the *supersedeas* bond. At the very least, the AUA's motion is extremely premature given the protection already in place.

Lastly, the balance of equities does not weigh in favor of an injunction against Leeward. In arguing that it is suffering a hardship, the AUA completely ignores the hardship it has created for Leeward. Leeward completed the project and the AUA began to use the facility on August 1, 2009. When a dispute was apparent between the parties, Leeward diligently commenced and prosecuted the First Arbitration Proceeding which resulted in the First Judgment. At the time of the First Arbitration Proceeding, the AUA was aware of the ABST Claim and its Defective Works Claims. Instead of bringing its allegations to the fore in the First Arbitration Proceeding, it consciously chose to not assert the claims, instead laying in wait. *See* McMillan Declaration, Exhibit F. This Court should not now countenance the AUA's self-created hardship. *See, e.g.,* *United for Peace & Justice v. Bloomberg*, 5 Misc.3d 845 (Sup. Ct. NY Cty. 2004) ("In balancing the equities, the court should consider various factors, including… whether plaintiff has unclean hands."); *Ferolito v. Vultaggio*, 36 Misc.3d 1227(A) (Sup. Ct. NY Cty. 2012). If anyone has suffered a hardship, Leeward has, not the AUA.

## CONCLUSION

For the reasons set forth herein, Respondent Leeward Construction Company, Ltd. respectfully requests that the Court deny the Petitioner American University of Antigua -- College of Medicine's application for (1) an order of attachment pursuant to Fed. R. Civ. P. 64 and CPLR Articles 62 and 75 attaching Respondent Leeward Construction Company, Ltd.'s interest in the Corrected Amended Judgment entered on June 11, 2013, Docket No. 1:12-CV-06280 (Kaplan, J.) and the related *supersedeas* bond; and (2) a preliminary injunction pursuant to Fed. R. Civ. P. 65 enjoining Leeward from enforcing the Corrected Amended Judgment in violation of a Stay Agreement dated May 8, 2013.

Dated: Poughkeepsie, New York
       March 6, 2015

                                       Veronica A. McMillan (VM 1107)
                                       **LEWIS & GREER, P.C.**
                                       *Attorney for Respondent,*
                                       *Leeward Construction Company, Ltd.*
                                       510 Haight Avenue, Suite 202
                                       Poughkeepsie, New York 12603
                                       Telephone: (845) 454-1200

To:    Leonard A. Sclafani, Esq.
        LAW OFFICES OF LEONARD A. SCLAFANI, ESQ.
        *Attorney for Petitioners,*
        *American University of Antigua -- College of Medicine*
        1 Battery Park Plaza, 33rd Floor
        New York, New York 10004
        Telephone: (212) 696-9880

        James Hirschhorn, Esq.
        SILLS CUMMIS & GROSS, P.C.
        *Attorney for Petitioners,*
        *American University of Antigua -- College of Medicine*
        101 Park Avenue, 28th Floor
        New York, NY  10178
        Telephone:  (973) 643-5288