## INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
### International Arbitration Tribunal

**In the Matter of the Arbitration between**

**Leeward Construction Corp.,**

>    *Claimant/Counter-Respondent*,

**and**                                    **Case No. 50 110 T 00118 13**

**American University of Antigua College of Medicine,**

>    *Respondent/Counter-Claimant*.

## PARTIAL FINAL AWARD AND SECOND DECISION ON THE PARTIES' DISPOSITIVE MOTIONS AND RELATED CROSS-MOTIONS

WE, THE UNDERSIGNED ARBITRATORS, having been appointed in accordance with the arbitration agreement entered into between the above-named Parties and dated 25 September, 2008 (the "Arbitration Agreement"), and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby, issue this Partial Final Award and Second Decision on the Parties' Dispositive Motions and Related Cross-Motions where we FIND and AWARD, as follows:

1.     These proceedings are brought under the Construction Industry Arbitration Rules (including the Procedures for Large, Complex Construction Disputes) of the American Arbitration Association in effect as from 1 October, 2009, and are administered

through the International Centre for Dispute Resolution of the American Arbitration Association.

2.    Leeward Construction Corp. ("Leeward") and American University of Antigua College of Medicine ("AUA") submitted motions for dispositive relief, which were addressed in the Tribunal's February 6, 2014 Decision on the Parties' Dispositive Motions and Related Cross-Motions (the "First Decision"), which is attached hereto as Annex I. Both Parties then requested to be given a chance to elaborate further on their arguments in support of their respective motions, and to answer any questions that the Tribunal may have regarding the substance of their motions. In making this request the Parties averred that there are no material facts in dispute regarding the matter of the motions, and that the Tribunal should make final determinations on their motions.[1] The Tribunal granted this request and it was agreed by the Tribunal and the Parties that oral argument would be held on the dispositive and related cross-motions.

3.    Oral argument was held on April 28, 2014. For the convenience of the Parties and the Tribunal, it was agreed that the oral argument would be held in the offices of the American Arbitration Association in Miami, Florida, while the seat of arbitration would remain to be Saint John, Antigua, Antigua and Barbuda, as per the Parties' arbitration agreement. Having heard oral argument by the Parties, having reviewed and considered the Parties' written submissions, and having reviewed the Parties'

---

[1] In the First Decision (¶17), the Tribunal found that not all claims and defenses had been subjected to dispositive motions. Under the further submissions made by the Parties, dispositive motions and cross-motions were made for and against all claims and defenses by both parties.

2

resubmitted motions, the Tribunal issues this Partial Final Award and Second Decision on the Parties' Dispositive Motions and Related Cross-Motions (the "Second Decision"). This Second Decision hereby incorporates the First Decision, and makes further final decisions on these motions as set forth herein. Except to the extent defined otherwise herein, all capitalized terms shall have the meaning ascribed to them in the First Decision.

4.      As discussed in the First Decision, each of the Parties has submitted one or more claims, and also defenses to the other Party's claims. In short, Claimant Leeward has submitted an Antigua and Barbuda Sales Tax (ABST) Claim, and Respondent AUA has submitted an ABST Counterclaim and a Construction Counterclaim.[2] In the Parties' motions and related submissions –as supplemented, in each case, after the First Decision– each party seeks the dismissal of the other party's claims and defenses.

5.      This Second Decision is issued by a majority, and includes a partial dissenting opinion of this same date, issued by Arbitrator Carlos Romero Jr.

## I.   The Claims, Counterclaims and Defenses

### a.   General Defenses: The Arguments of Res Judicata and Estoppel

---

[2] Under ¶37(i) of the First Decision, the Tribunal found that "Both Parties agree in their submissions that the Windows Counterclaim is to be excluded from the arbitration before this Tribunal. Accordingly, the Windows Counterclaim is dismissed without prejudice." As a result, only the Construction Counterclaim remaining after deduction of the Window Counterclaim –as defined in the First Decision– is still pending before this Tribunal, and this Second Decision only refers to such reduced scope of the Construction Counterclaim.

6. In general terms, and in addition to certain other defenses, Claimant Leeward has argued that all of Respondent AUA's Counterclaims were precluded under either or both res judicata or estoppel, by reason of the scope or decisions of the Prior Proceedings.

7. The Tribunal finds the arguments regarding res judicata or estoppel unconvincing. In particular, the arguments proposed by Leeward fail to satisfy any tenable test for precluding the claims submitted by Respondent AUA based on either or both res judicata or estoppel.

8. Claimant Leeward's proposed test that any claim arising under the same transaction as the claims debated in the Prior Proceedings should be precluded is not persuasive.[3] The Tribunal has found the additional arguments that the AUA's ABST arguments should have been submitted before –at the time of the Prior Proceedings or even before that– and that Leeward's defense of res judicata should prevail even in light of its own ABST claim, are similarly not persuasive.

9. Accordingly, all defenses against Respondent AUA's Counterclaims based on either res judicata or estoppel are rejected.

   **b. The ABST Claim and ABST Counterclaim**

---

[3] The preclusive effect of a prior arbitration decision on a subsequent arbitration is a matter for the arbitrator to decide. This has been ratified by recent, persuasive decisions, in several jurisdictions. *See, e.g.,* in the United States, *Employers Insurance Company of Wausau et al. v. OneBeacon American Insurance Company et al.* (1st Cir., February 26, 2014).

4

10.  During the course of the project, Leeward invoiced for –and AUA paid– an amount equal to 13% of the sums otherwise invoiced, which was identified in those invoices – and generally throughout these proceedings– as ABST-related payments calculated in connection with work, labor, materials and services provided by Leeward on the project. The Parties agree that AUA in fact made such payments with respect to 26 of the 27 requisitions for payment made under the Contract. Leeward does not dispute that it never filed any ABST tax returns with, nor paid any corresponding ABST tax to, the tax authorities of Antigua and Barbuda during or after the construction project.

11.  As a threshold issue, Leeward argues that the Parties' arbitration agreement does not encompass AUA's ABST Counterclaim. That argument is rejected.

12.  The Parties' arbitration agreement covers "[a]ny Claim arising out of or related to the Contract . . . ." That provision is sufficiently broad to apply to the ABST Claim and the ABST Counterclaim, and Claimant Leeward itself is seeking an award of damages based on a claim that –as per the Contract or under a separate promise–[4] certain funds mis-tabulated in the payments received should have been paid as ABST.

13.  In the First Decision, the Tribunal determined that the ABST Counterclaim falls within the scope of the Parties' arbitration agreement. That determination remains unchanged.

---

[4] Claimant Leeward has sought to identify its claim as not being an ABST claim but a different claim based on a contract shortfall or a separate promise received during the First Proceedings, and which would not be affected by res judicata. The Tribunal is not persuaded by these arguments.

14.     Leeward maintains that the only mechanism by which AUA can obtain a refund of ABST is to seek relief from the Antiguan Government pursuant to the ABST Act. AUA contends that no ABST was in fact due because of the location of the construction project in a Trade Free Zone. The Tribunal need not determine whether AUA's assertion is accurate.

15.     Claimant Leeward makes an additional argument that Respondent AUA should have asserted with the first of Leeward's invoices that it did not need to pay ABST. Leeward argues that AUA's failure to do so was a waiver that bars it from recovery now. Regardless of whether AUA mistakenly paid the ABST to Leeward, as it originally contended in this arbitration, or whether it had an oral agreement with Leeward to collect the ABST pending a determination by the government, as it asserted at oral argument, Leeward has not established sufficient facts to prove waiver. In light of this Tribunal's findings discussed below, the argument of waiver, even if proven, would not change the determination of the ABST Claims.

16.     Under these circumstances, where the Antiguan government is not holding any ABST monies from Leeward, there are no ABST monies in the possession of the government from which AUA can seek a refund. Leeward's collection of ABST –or sums due to be paid as ABST– from AUA places Leeward in the position of the holder, but not the owner, of funds which it labeled as ABST. The record does not contain credible indication of any title or ownership in favor of Leeward entitling it to keep or retain these monies.

17.     Inasmuch as Leeward failed to pay over to the government the sums that it invoiced and collected from AUA as ABST related to the project, Leeward would be unjustly enriched if it were permitted to retain those monies.[5]  Contrary to Leeward's position, equitable claims such as unjust enrichment are within the scope of the Parties' arbitration agreement, and Rule R-45 of the AAA's Construction Industry Arbitration Rules grants the authority to the Tribunal to make this ruling.

18.     Claimant Leeward's defenses regarding unjust enrichment as a basis for the ABST Counterclaim were two-tiered.  It maintained that

    (i)     if AUA's claim for unjust enrichment were considered to be a contractual claim, it would be precluded under the doctrine of res judicata by reason of the decision issued in the Prior Proceedings;

    (ii)    in the alternative, if that claim were considered not to be contractual, it would fall beyond the scope of the arbitration clause in the Contract, and thus would be unarbitrable.

19.     The Tribunal has already found that Claimant Leeward's res judicata and non-arbitrability defenses were rejected, which, in this context, means that Claimant Leeward has not submitted any valid defense to the claim for unjust enrichment included as one of the avenues argued by Respondent AUA for maintaining the entirety of the ABST Counterclaim.

---

[5] Respondent AUA has formulated its counterclaim such that it includes a claim for unjust enrichment (AUA's Statement of Defense and Counterclaim, §I.E), and the Parties' subsequent oral and written submissions have addressed this unjust enrichment claim (See, eg,  Leeward's Motion, ¶6, and AUA's Motion, pp.  2, 3, 5 and 36).

20.    Respondent AUA has submitted alternative avenues supporting its claim for the same amounts claimed under unjust enrichment, both under contract and under law. Claimant Leeward has submitted certain other defenses to those alternative avenues. As the Tribunal has found that there was no valid defense to AUA's claims under unjust enrichment, and all alternative avenues would lead to the same result, the Tribunal considers it unnecessary to dwell in detail in each such construction.

21.    Accordingly, AUA is entitled to the return from Claimant Leeward of the funds it collected from AUA as ABST in the amount of XCD $3,614,522.41, and the Tribunal hereby orders Leeward to pay AUA the sum of XCD $3,614,522.41.

22.    The Tribunal further finds and orders, though, that to the extent that Leeward is later required by the Antigua and Barbuda tax authorities to account for, and pay to, the Antigua and Barbuda authorities ABST on this construction project, AUA shall then be required to indemnify Leeward from any double liability by it –*i.e.*, liability to both AUA and the tax authorities– arising from Tax Deficiencies (as defined below) as follows: [6]

    a.   For purposes hereof, "Tax Deficiencies" shall mean any tax deficiency or liability asserted by the Antigua and Barbuda tax authorities against Leeward for failing to collect from AUA, for reimbursing to AUA, or for failing to pay to the tax authorities, ABST relating to the taxable supplies provided by Leeward to AUA

---

[6] Based on the submissions by the Parties, the Tribunal finds this to be a necessary corollary of the principles embodied in §45 of the ABST Act, and also to be an order permitted to be adopted under the scope of Rule R-45 of the Rules governing this arbitration.

during the construction of the school project.  AUA shall not be liable for penalties or interest asserted for non-collection from AUA or reimbursement to AUA or nonpayment to the tax authority of the ABST tax in question, or for not filing any required tax returns with any relevant tax authority.

b. If a Tax Deficiency is validly asserted against Leeward, then AUA shall indemnify Leeward by paying to the relevant Antigua and Barbuda tax authority, upon due notice, an amount not to exceed the Indemnity Cap (as defined below).  All obligations of indemnification by AUA hereunder shall be limited to making any payments described hereunder.  In the event that no payment is due hereunder, then no indemnification obligation by AUA to Leeward shall be deemed to exist.

c. For purposes hereof, "Indemnity Cap" shall mean any sums that Leeward has paid AUA under the ABST Counterclaim hereunder in cash or through any valid set-off or reciprocal claims agreed by the parties or finally ordered by a competent authority.

### c.  Construction Counterclaim

23.    Claimant Leeward argues that the Construction Counterclaim is untimely because of Respondent AUA's failure to give the required notices of defects.  Leeward's argument was rejected in the Tribunal's First Decision, and that decision to deny Leeward's motions as to untimeliness of the Construction Counterclaim remains unchanged.

24.    Claimant Leeward also contends that AUA's claims are barred by res judicata by reason of the decision issued in the Prior Proceedings.  The Tribunal has rejected the

defenses based on res judicata, and, as a consequence, these proceedings shall continue with respect to the Construction Counterclaim.

## II. Decision

25.   For the reasons discussed above, this Tribunal finds that all of the claims currently before it[7] are arbitrable under the Contract and, having considered all arguments and evidence before it, ORDERS as follows:

(i)      That Claimant Leeward's ABST Claim is hereby dismissed with prejudice;

(ii)     That Claimant Leeward's motion to dismiss Respondent AUA's Counterclaims is hereby dismissed with prejudice, with the exception that the Windows Counterclaim was dismissed without prejudice under the First Decision;

(iii)    That Respondent AUA's cross-motion for a summary judgment on its ABST Counterclaim is hereby granted, and Claimant Leeward is ordered to pay Respondent AUA the amount of XCD $3,614,522.41;

(iv)     That in the event that Leeward is later required by the Antigua and Barbuda tax authorities to account for, and pay to, the Antigua and Barbuda authorities ABST on this construction project, AUA shall then be required to indemnify Leeward from any double liability –

_____

[7] This excludes the Windows Counterclaim as per the First Decision, §37(i).

10

*i.e.*, liability to both AUA and the tax authorities– arising from Tax Deficiencies as follows:

    a. If a Tax Deficiency is validly asserted against Leeward, then AUA shall indemnify Leeward by paying to the relevant tax authority, upon due notice, an amount not to exceed the Indemnity Cap. All obligations of indemnification by AUA hereunder shall be limited to making any payments described hereunder. In the event that no payment is due hereunder, then no indemnification obligation by AUA to Leeward shall be deemed to exist.

(v)     That Respondent AUA's Construction Counterclaim is to be arbitrated by this Tribunal. The Tribunal will hold a telephone conference with the Parties at the earliest convenient date in order to schedule the following steps of these proceedings;

(vi)     That each Party shall bear its own costs and expenses, and one half of the arbitration costs and expenses, in both cases with respect to all procedural activity up to this stage of the proceedings;

(vii)     That all other requests included in the Motions are hereby denied.

The undersigned arbitrators hereby certify that, for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Partial Final Award was made as in St. John, Antigua, Antigua and Barbuda.

11

Signed on 18 September, 2014


_____
Judith B. Ittig

_____
Diego Brian Gosis
(Chair)

State of ___Florida___ )

) SS:

County of ___Miami-Dade___ )


I, Diego Brian Gosis do hereby affirm upon my oath as Arbitrator that I am the individual

described in and who executed this instrument, which is our Partial Final Award.

___9/18/2014___                                    ___[signature]___
Date                                               Diego Brian Gosis, Arbitrator


State of ___Florida___ )

) ss:

County of ___Miami-Dade___ )


On this __18__ day of September, 2014, before me personally came and appeared Diego Brian

Gosis, to me known and known to me to be the individual described in and who executed the

foregoing instrument and he acknowledged to me that he executed the same.

13

Notary Public

State of _____        )

                         )   SS:

County of_____           )


I, Judith Ittig do hereby affirm upon my oath as Arbitrator that I am the individual described in and

who executed this instrument, which is our Partial Final Award.

_____          _____

Date                              Judith B. Ittig, Arbitrator


State of _____        )

                         )  ss:

County of _____          )


On this _____ day of September, 2014, before me personally came and appeared Judith B. Ittig, to

me known and known to me to be the individual described in and who executed the foregoing

instrument and she acknowledged to me that he executed the same.

14

---------------------------------------------------------------

Notary Public

Signed on 18 September, 2014

Judith B. Ittig

Diego Brian Gosis
(Chair)

_____

Notary Public


State of _____              )

                                )    SS:

County of_____                 )



I, Judith Ittig do hereby affirm upon my oath as Arbitrator that I am the individual described in and

who executed this instrument, which is our Partial Final Award.

_9- 23 -14_____                      _Judith B. Ittig_____

Date                                  Judith B. Ittig, Arbitrator


State of _____                )

                                )  ss:

County of _____                 )


On this 23 day of September, 2014, before me personally came and appeared Judith B. Ittig, to

me known and known to me to be the individual described in and who executed the foregoing

instrument and she acknowledged to me that he executed the same.


14

District of Columbia: SS

Subscribed and Sworn to before me

this 23 day of Sept , 2014

Notary Public, D.C.

My commission expires 11-30-2017

15

### INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
### International Arbitration Tribunal

---

**In the Matter of the Arbitration between**

**Leeward Construction Company Ltd., Claimant**

**And**                                    **Case No. 50 2013 110 T 00118 13**

**American University of Antigua College of Medicine, Respondent**

---

### DISSENT TO
### PARTIAL FINAL AWARD AND SECOND DECISION ON THE PARTIES'
### DISPOSITIVE MOTIONS AND RELATED CROSS-MOTIONS

---

The majority of the Tribunal issued a Partial Final Award.  I dissent with respect to specific subject matters and concur on others.  (The same defined terms used in the Partial Final Award will be adopted unless expressly noted otherwise.)

1

Case No. 50 2013 110 T 00118 13

A summary of the undisputed facts (as submitted by the parties in their respective dispositive and related motions filed February 6, 2014, and at oral arguments held on April 28, 2014) will provide a relevant backdrop to this dissent.

### Undisputed Material Facts.-

1.       Leeward Construction Company Ltd. ("Leeward") and American University of Antigua College of Medicine ("AUA") disagree on whether Leeward is entitled to retain the Antigua and Barbuda sales tax ("ABST") in the amount of XCD $3,614,522.41 that Leeward collected from AUA during the construction project.  This tax is imposed by the Antigua and Barbuda Sales Tax Act, 2006 (as amended) ("ABST Act") and enforced by the Commissioner of Inland Revenue (the tax authority).

2.       During the construction project, Leeward billed AUA, among materials and labor, ABST taxes.  AUA paid all billed ABST taxes without protest (excepting a small amount of less than US $40,000, which is not relevant for purposes of this dissent).

3.       Leeward had an obligation to file with the tax authority, on a monthly basis, a tax return and to pay the ABST taxes collected (net of any credit that Leeward might have been entitled to claim, if any).  Leeward never filed a return.  Leeward never reported or paid the collected ABST

2

taxes to the tax authority.  Leeward improperly kept the ABST taxes collected from AUA.

4.    AUA conceded at oral arguments that it never filed formally with the tax authority a claim for refund.

5.    After the project was completed and the taxes paid, the tax authority informally advised AUA that any filing of a refund claim would be denied by the tax authority, because Leeward never paid to the tax authority the ABST taxes collected from AUA.  AUA does not identify a single provision in the ABST Act supporting the denial of a refund claim based on nonpayment by collecting taxpayer (Leeward) that collected the tax from the paying taxpayer (AUA).

6.    At pages 24-25 of the AUA's Memorandum of Law (undated but filed on or about November 2013), AUA conceded and admitted that it voluntarily paid the ABST tax, because there was uncertainty on whether the ABST tax applied to the project and whether the project was exempt from this tax altogether.  The tax authority did not resolve this controversy; until after the project was completed, and after the taxes had been paid by AUA to Leeward.  AUA "determined that it would pay...the ABST that would otherwise be due on the Leeward's Work and seek a refund from the Government".  *Id.* at 25.  It did so voluntarily and with full knowledge.

3

*At all relevant times, AUA believed that it had no choice but to pay the ABST that the Leeward had invoiced and, thereafter, obtain a refund of those sums from the Government until such time as the Government acceded to AUA's long standing and repeated requests for written certification that ABST need not be paid to suppliers on its Project at all.*

*AUA had asked the Government for confirmation that no ABST should be paid ab initio in connection with its Project; but did not receive that confirmation until after it had paid all of the sums to the Leeward as ABST that are in dispute herein.*

*...which confusion [refering to whether ABST did apply to the project] the Government did not clear up despite AUA's efforts, until after the Leeward completed the Work on the Project.*

*...because of the confusion AUA determined that it would pay what it believed to be the ABST that otherwise would be due on the Leeward's Work and seek a refund from the Government.*

*AUA did not know until after the Leeward commenced this arbitration, that in paying th sums that the Leeward invoiced to AUA as ABST, it would not be entitled to a refund from the Government because...the Leeward...failed to account to the Government for those sums by filing tax returns...*

*...AUA paid the ABST that the Leeward invoiced with the understanding and expectation that it the Leeward would treat the sums as ABST and both account to the Government for what it had inoviced and collected through the filing of required monthly tax returns and pay over those sums...to the Government so that AUA could obtain a refund of those sums from Government.*  Id. at 24-25.

7.     Although AUA claims that sometime after completion of the project, the tax authority agreed <u>informally</u> that AUA was exempt from the ABST tax, AUA never produced in evidence a single <u>official</u> determination or <u>official</u> certificate issued by the tax authority evidencing agreement with AUA's claimed or asserted exempt status.  And AUA presented no evidence

4

showing whether the informal confirmation by the tax authority concerning the "exempt" status of AUA or its project indicated a retroactive or prospective view of the tax authority. Thus, at oral arguments, there was no official evidence from the tax authority as to whether AUA was ever exempt during the construction of the project. In any event, during the construction of the project through its completion, AUA believed that it owed the ABST (in light of the unwillingness of the tax authority to resolve the exemption status of AUA), and it willingly and knowingly paid with a view of seeking in the future a refund from the tax authority[1].

8.    During the course of the project and when ABST taxes were paid to Leeward, there was no issue of any overpayment by AUA, and there was no issue of any erroneous payment by AUA of the ABST taxes paid to Leeward. After all, AUA willingly and knowingly paid all ABST taxes billed by Leeward.

---

[1] See Affidavit of Neal Simon, President of AUA, dated November 11, 2013. The suppliers to the project were unwilling to extend exempt or zero tax rate to the supplies and forego collection of the ABST tax absent "an official statement from the Government expressly providing that it [the supplier] would not be held responsible for ABST on supplies that AUA requested..." Par. 40. AUA requested from the Prime Minister, the Attorney General, Minister of Finance, and the Ambassador of the United States for assurances that AUA was exempt from such tax. "Unfortunately, these officials provided much by way of oral assurances...and that official written clarification to this effect would soon be forthcoming, but official clarification was not forthcoming for some time to come." Par. 44-45. "AUA received assurances from these officials that, if AUA would so proceed to pay its suppliers any ABST that would otherwise be due..., AUA would receive a refund form the Government of the ABST that it paid." Par. 47. "Having received these assurances, AUA proceeded to advise its suppliers that it would pay ABST on supplies that they provided..." Par. 48. "Despite its efforts, and all of the Government oral assurances that AUA would receive the declaration that it required, nothing official was forthcoming from the Government for more than two years, during which time, construction...was virtually completed." Par. 56. The affidavit fails to identify any official declaration or certificate issued by the tax authority confirming expressly that no ABST tax was due whether by virtue of the project being exempt or the zero tax rate being applicable to the suppliers. There is simply nothing in the record that such declaration or certificate was ever issued.

Case No. 50 2013 110 T 00118 13

9.     There is no evidence (or claim by AUA) that AUA ever exhausted the administrative remedies provided to a taxpayer under the ABST Act or ever sought a judicial determination in Antigua and Barbuda.

10.     There is no evidence that AUA has standing to sue the collecting taxpayer (Leeward) under the ABST Act.

11.     Leeward never claimed ownership to the ABST taxes collected from AUA.   Leeward has admitted at oral arguments that it had an obligation to file returns and remit the collected taxes (net of any credits to which Leeward might be entitled) to the tax authority. [2]   Leeward also admitted not having done so.

12.     Leeward's position is that AUA's sole remedy is to seek from and file a claim for refund with the tax authority.

---

[2]   The position of Leeward is consistent with the ABST Act.  Under Part III, sections 9-12 of the ABST Act, a person must register under the act under specific circumstances (and collecting the ABST tax is one of them).  "A person who fails to apply for registration when required to do so [as was the case with Leeward] when required is treated as registered from (a) the first day of the tax period which the person was required to apply for registration..."  Thus, Leeward is treated as being registered, even if it did not register with the government.  Under Part X of the ABST Act, ABST returns must be filed generally on a monthly basis.  Under section 41(1) of the ABST Act, "[t]he ABST payable by a taxable person [like Leeward] to the Commissioner...**is due and payable** by the due date for lodgement of the ABST return for the period." (Emphasis supplied.)  And section 41(2) provides that "[t]he liability to pay an amount of ABST arises by operation of this section and does not depend on the Commissioner making an assessment of the ABST due."  And under section 105 of the ABST Act, if a company fails to pay ABST taxes, the company and its directors are jointly and severally liable to the government.

Thus, on the due date of each monthly return that Leeward failed to file, the ABST taxes collected by Leeward became an ABST tax due and owning, by operation of law, to the government.  Likewise, Leeward, did not, and could not, owe the same amount to AUA under unjust enrichment that Leeward by operation of law owed to and become liable to the government for the ABST taxes collected as the monthly tax returns became due.  To allow AUA recovery of the same ABST taxes under the unasserted theory of unjust enrichment (that the Tribunal charges Leeward to justify its Final Partial Award) as Leeward owed the government by operation of law would constitute an unjust enrichment by AUA at the expense of imposing on Leeward a double liability by virtue of the Partial Final Award.  The recovery that the Tribunal grants AUA disregards the operation of the revenue laws of the country.  (More on the subject matter of revenue laws is set forth below.)

6

13.    AUA has never obtained (before or after the completion of the project) from the tax authority a formal ruling on whether AUA was exempt from the ABST tax during the construction of the school facility.

14.    The construction project was completed on October 31, 2009.

15.    By around November 2009, all ABST taxes billed by Leeward were paid by AUA.

### The decision of the Tribunal.

16.    The Tribunal concludes that where the tax authority "is not holding any ABST monies from Leeward, there are no ABST monies in the possession of the government from which AUA can seek a refund". Second, Leeward's collection of the ABST tax places it "as the holder, but not owner, of" the taxes. Leeward presented no evidence of ownership to the funds. Third, Leeward would be unjustly enriched if allowed to retain the funds. Fourth, Leeward presented no valid defense to the unjust enrichment claim of AUA.

17.    I dissent.

Case No. 50 2013 110 T 00118 13

**AUA did not present in its dispositive motion the cause of action founded on unjust enrichment. Thus, the Tribunal had no authority to decide an issue not submitted in the dispositive motion. Also, if the Tribunal decides to address an issue that has not been presented by the parties, the Tribunal must provide constitutionally adequate advance notice to the parties with an opportunity to object and respond.**

18.    AUA filed on February 27, 2013, its defenses and counterclaims. Nowhere is unjust enrichment asserted as a defense. At best, AUA claims (at page 2) that "...the Leeward wrongfully charged, and AUA mistakenly paid" ABST taxes.  AUA focused on mutual mistake and fraud.

19.    AUA filed on June 23, 2013, its counterclaims.  Among them, AUA simply noted that "Leeward is liable to AUA for the monies it received from AUA for ABST under a cause for unjust enrichment".

20.    Then AUA also filed (in late June 2013) its amended defenses and counterclaims asserting the following claim (item I.E.):

> *An alternative claim sounding in unjust enrichment in that Leeward has received from AUA sums in the above stated amount as and for reimbursement for ABST that Leeward did not pay, and has not paid, directly or indirectly to the government of Antigua and Barbuda. This claim is based on the common law of Antigua and Barbuda.*

21.    Then, AUA filed yet again on August 13, 2013, another amended counterclaims and defenses.  In its amended filing, AUA makes no mention of unjust enrichment.   It only mentions instead that "...the Leeward

8

wrongfully charged, and AUA mistakenly paid" ABST taxes.  AUA focused on mutual mistake and fraud.

22.   At this juncture, AUA's last filed amended defenses and counterclaims supersedes its prior filings and, thus, drops the unjust enrichment claim.

23.   Subsequently, AUA filed its Memorandum of Law (undated but filed around November 2013).  AUA raises the following six defenses and counterclaims:

- Point I (that ABS tax is arbitrable),

- Point II (that AUA has standing against Leeward to recover ABST),

- Point III (that AUA has rights under the ABST Act and the contract entitling AUA to recovery),

- Point IV (that the waiver defense of Leeward should be dismissed),

- Point V (that AUA is entitled to restitution and is not barred by res judicata), and

- Point VI (that Leeward's defenses should be stricken).

24.   Nowhere does AUA raise in its Memorandum of Law the claim of unjust enrichment.  (Thus, even if one were to argue that the amended counterclaim and defenses filed on August 13, 2013, did not override the prior filings, unjust enrichment claim was not raised in the dispositive motion.  For the purposes of this dissent, the same grounds set forth below for dissenting apply here with equal force.)

9

25.    At best, the Memorandum of Law, at page 5, mentions in passing "unjust enrichment" in the following context and section.  In the Memorandum of Law, at Point I titled "AUA's Claims For Recovery of the Sums That It Paid to the Leeward As ABST Are Subject to Arbitration" addresses whether ABST tax is arbitrable.  In justifying why ABST tax is arbitrable, AUA makes the passing comment as follows:

> ...*AUA's counterclaim seeks restitution of the sums that the Leeward improperly over invoiced and that AUA paid to the Leeward in the mistaken belief that it was required to do so...These claims, including AUA's unjust enrichment claim, indisputably 'arise under the Contract'.*

26.    The reference to "unjust enrichment" is limited to the arguments favoring AUA's position that ABST tax is arbitrable in this proceeding.  It was not presented for any other count in the brief.  And all other five counts of the brief do not assert nor involve the claim of unjust enrichment.  Thus, the unjust enrichment claim was not submitted it to the Tribunal for resolution.  (Indeed, AUA never explains what the elements of the count of unjust enrichment, the common law of Antigua and Barbuda for this claim, or the legal basis for asserting the claim.)  Thus, AUA never requested the Tribunal to decide whether AUA is entitled to recover under the doctrine of unjust enrichment.

27.    Yet, in the Partial Final Award, the Tribunal concludes not only that AUA submitted "the same amount claimed under unjust enrichment,

both under contract and under law," but that Leeward presented no valid defense to this claim. The Tribunal does not analyze the cause of action of unjust enrichment, does not identify the source of law that gives rise to such claim, and does not even conclude that AUA has established its entitlement to unjust enrichment. (Indeed, AUA never identifies the common law basis or the elements of the cause of action of unjust enrichment under the laws of Antigua and Barbuda. Whatever that law or elements might be still remain unknown. Yet, the Tribunal disregards this void in finding in favor of AUA and never identifies the common law case or cases of Antigua and Barbuda on which its finding is grounded.) Instead, the Tribunal concludes that because Leeward failed to present any "valid defense", then "[a]ccordingly, AUA is entitled to the return from Claimant Leeward of the funds it collected from AUA as ABST..."

28.     Such analytical approach violates the due process of Leeward. Leeward had no notice that the Tribunal would be deciding an issue never presented to it by AUA. The Tribunal decided the issue of entitlement in favor of AUA by reason of Leeward failing to present a valid defense to a claim not presented to the Tribunal.

29.     How can Leeward present any defense in the dispositive motions and replies, if the issue was never submitted by AUA for resolution? Yet, the Tribunal found in favor of AUA, even though Leeward had no obligation

11

to present any defense to an <u>unpresented and unasserted</u> claim.  Thus, the Tribunal finds in favor of AUA for an unpresented claim by reason of an unpresented defense.  How can Leeward be afforded a fair proceeding, if the Tribunal enters an award against Leeward for failing to present a valid defense on a claim that is not before the Tribunal?

30.    How can Leeward raise a valid defense, if the Tribunal and AUA fail to identify the case or legal source giving rise to common law unjust enrichment – if it exists at all under the laws of that country?  The legal source of this claim remains a mystery.

31.    The failure to provide adequate notice to Leeward and then to find against Leeward for failing to present a defense to a claim that is not before the Tribunal violates not only procedural but substantive due process of the United States Constitution.

32.    Leeward is entitled constitutionally to notice by this Tribunal that it was going to decide an issue that was not presented in the dispositive motions and afforded an opportunity to present its objections and defenses.

### The doctrine of revenue rule requires that the Tribunal refuse jurisdiction on issues that pass judgment on the application of tax laws of foreign countries.

33.     The common law requires that our courts apply the revenue rule and refuse (and thereby avoid violating the principle of foreign comity) to entertain issues that interpret or enforce the tax laws of a foreign nation. The dispute between AUA and Leeward concerns, at its very core, a tax collection dispute, because the tax authority will not refund AUA the ABST taxes that Leeward collected.

34.     The tax authority has refused informally to refund the ABST taxes that AUA has paid Leeward.   The tax authority has the right to enforce its laws and collection process against Leeward, if the tax authority chooses to do so.   The tax authority has the right to cross its arms concerning any informal request for refund and do nothing until a formal claim for refund is filed.   Under the ABST Act, if a taxpayer does not file a claim for refund, no refund will be ever approved.

35.     In turn, under the statutory scheme of the ABST Act, Leeward has no obligation to refund AUA the collected ABST taxes.

36.     AUA, however, instead of filing a formal claim for refund with the tax authority (and, if denied, pursue its claim in the courts of Antigua

13

and Barbuda), AUA has chosen to short circuit all tax administrative and judicially related remedies there to sue in arbitration.

37.     The Federal Arbitration Act applies to this proceeding between parties engaged in interstate and foreign commerce.

38.     If the tax authority wants to deny AUA a refund (for which a claim has not been filed) and does not wish to collect from Leeward the ABST taxes collected from AUA, this Tribunal should not interfere with the administration of taxes by the tax authority.

39.     For example, if AUA has waited too late to file a tax refund, it is no longer entitled to a refund by application of the three year statute of limitation under Article 44(5) of the ABST Act. (A tax refund claim must be filed "within 3 years from the end of the tax period to which the overpayment relates".) The last tax period in which taxes were paid was in November 2009. It has been more than three years.[3]

40.     By statute, the refund must be applied for within three years. The last tax period of payment was in 2009. More than three years have lapsed and would appear that AUA cannot apply for a refund since December 2012.

---

[3] According to the documents filed, the first arbitration proceeding was initiated in February 2011 and resulted in an amended award being issued in August 2012. In that proceeding, AUA never challenged, in the final accounting the ABST taxes in paid in 2009 and 2010 to Leeward. Then, when Leeward initiated the second arbitration in February 2013, AUA raised its counterclaim (for the first time between the parties) to recoup all ABST taxes paid in 2009 and 2010. The three year period for filing a formal claim for refund with the tax authority appears to have expired around November 2012.

41.   This dispute concerns the administration of the tax authority and its province to decide against whom to collect taxes and to whom refunds should be granted.  This Tribunal should not exercise its powers to administer the tax laws of that country and should not interfere with the administration and enforcement of the tax laws of Antigua and Barbuda.

42.   Thus, the Tribunal should not allow AUA to collect indirectly (from Leeward) a tax for which AUA cannot seek directly (from the tax authority) a refund.  AUA is precluded by the ABST Act to file a claim for refund due to its failure to act on a timely basis.  If the Tribunal were to allow AUA to do so, the Tribunal would interfere, first, with the province of the tax authority to deny any refund for late filing past the three year window, and, second with the province of the tax authority to seek or forego collection against Leeward for ABST taxes it collected.

43.   Finally, the ABST Act provides for the exclusive procedures by which AUA can recover the paid ABST taxes.

44.   Section 44(4) of the ABST Act provides the sole remedy of AUA for any tax overpayment.

> *A taxable person who has erroneously overpaid ABST for a tax period may apply in writing to the Commissioner for an input tax credit equal to the amount overpaid, and if the Commissioner is satisfied that the amount was erroneously overpaid, he must allow the person an input tax credit for that amount, or such amount that the Commissioner is satisfied was erroneously paid...*

15

45.    Nowhere does the ABST Act condition the refund to require that Leeward file the returns and pay the collected taxes.    (AUA has not identified any such provision in the ABST Act in its brief of oral arguments.)

46.    If the Tribunal allows AUA to recover taxes from Leeward contrary to the tax scheme, this Tribunal would be upsetting the legislative balance created by the fiscal and revenue laws of a foreign country.

47.    The Tribunal, by rendering its Partial Final Award, interferes improperly with the tax administration of the foreign tax revenue laws and violates the revenue rule.

### The remedy afforded to Leeward in the event of exposure to double liability (first, to AUA under the Partial Final Award and, second, to the tax authority if asserting an assessment against Leeward) is confusing.

48.    The remedy afforded Leeward in the Partial Final Award against double liability is confusing.    Confusing language may defeat, in the event of double exposure occurring, the well intended remedy.    The Tribunal should develop clear language and craft a remedy that can be enforced by a court should the need arise.

49.    For example, the indemnity to Leeward appears to apply only "[i]f a Tax Deficiency is validly asserted against Leeward".    By contrast, "Tax Deficiencies" is defined to "mean any tax deficiency or liability asserted by the Antigua and Barbuda tax authorities".    The word "validly" should be

stricken thereby allowing the indemnity in favor of Leeward to include any Tax Deficiency that the tax authority asserts against Leeward.  (In addition, if the word "validly" is retained, then AUA is most likely to refuse the indemnity until the liability has been proven by Leeward to be validly asserted.  Does that mean that the tax authority validly asserted the claim for ABST taxes unpaid by Leeward or must Leeward prove also that the taxes are owed to the tax authority?  Must the validity of the taxes be proven by a judicial determination from that country or a ruling from the tax authority?)

### The doctrine of res judicata, collateral estoppel, claim preclusion, or issue preclusion apply.

50.    Leeward presented persuasively its position that either res judicata, collateral estoppel, claim preclusion, or issue preclusion apply.  In the first arbitration proceeding (which covered the period of February 2011 through August 2012, when the amended award was issued), AUA had full knowledge of the ABST taxes paid to Leeward, AUA contested in the first arbitration the final accounting and the ABST taxes appearing on the bills (and affidavits submitted by AUA expressly confirmed such review and knowledge), AUA made open representations in the first proceeding confirming not only that AUA agrees with the computations and payments it made to Leeward, but also corrected an overpayment by AUA and

expressed admitted owning more taxes in the approximate amount of US $33,000. AUA openly agreed to pay it outside of the first proceeding.

51.   AUA is obligated to keep its promise and pay the additional amount AUA promised to pay. It made this promise as an inducement to Leeward not exclude it from the first proceeding and award.

52.   AUA openly represented in the first proceeding (at a time AUA had full knowledge of the issues concerning the unwillingness of the tax authority to certify nonapplicability of ABST tax as to the providers of the project), with full knowledge of the issues concerning ABST tax, that it agreed with the final accounting excepting the items challenged and damages raised.

53.   The authority cited by Leeward in its dispositive motions and related filings are persuasive. AUA is:

(a) estopped from adopting in this second arbitration (that ABST taxes are not due) proceeding a different and contradictory position that AUA adopted in the first arbitration proceeding (that ABST taxes were due and were properly paid)

(b) collaterally estopped from raising a challenge to the ABST tax that it could have raise (but chose not to) in the first proceeding, and

(c) precluded by res judicata from relitigating any matter that could have been litigated (but chose not to do so) in the first proceeding (when AUA had full knowledge of its disagreement with the applicability of ABST tax and the tax authority ongoing unwillingness to issue the requested certification for two years prior to the commencement of the first arbitration proceeding.

**The First Decision should not be incorporated into the Partial Final Award.**

54.     The Tribunal incorporates into the Partial Final Award the First Decision.  The First Decision was an interim decision and is not a partial award.  Including it in the Partial Final Award simply clouds the Second Decision and will complicate, unnecessarily, the confirmation, interpretation, and enforcement of the Partial Final Award by a court.  I therefore do not join the Partial Final Award and instead issue a concurrence on specific matters noted below.

*     *     *     *     *     *

For the reasons noted, I dissent.

By way of final comments, I concur, with the Partial Final Award solely on the following matters:

1.     That all issues presented to the Tribunal are arbitrable,

2.     That the Windows Counterclaim, by mutual agreement of the parties, is not part of and is not subject to this arbitration proceeding and will be pursued separately by the parties,

3.     That AUA and Leeward shall share equally in all costs and expenses to date incurred in this proceeding,

4.     That the Construction Counterclaims shall be scheduled for final hearing along with any issue related to them.

19

Case No. 50 2013 110 T 00118 13

Signed on 18 September, 2014

_____
Carlos A. Romero, Jr. - Arbitrator

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

      The foregoing instrument was acknowledged before me this 18th day of September, 2014, by CARLOS A. ROMERO, JR., who is personally known to me or who has produced _N/A_ as identification and who has not taken an oath.

_____
NOTARY PUBLIC, State of Florida

Print Name: _____

> MARILYN GONZALEZ
> Notary Public - State of Florida
> My Comm. Expires Jun 2, 2018
> Commission # FF 128373

Ver. 2014-08-31 Dissent Partial Final Award exe version

20