UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,                                         Case No. 1:14-CV-8410-DLC/GWG
                                                            (ECF CASE)
                              Petitioner,

              -against-

LEEWARD CONSTRUCTION COMPANY, LTD.,

                              Respondent.
-------------------------------------------------------------------x


**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION
TO DENY ENFORCEMENT, VACATE AND/OR MODIFY AND IN OPPOSITION TO
THE PETITION AND MOTION TO CONFIRM ARBITRATION AWARD**


Dated: Poughkeepsie, New York
       December 11, 2014

                                        Respectfully Submitted:

                                        **LEWIS & GREER, P. C.**
                                        *Attorney for Respondent,*
                                        *Leeward Construction Company, Ltd.*
                                        510 Haight Avenue, P. O. Box 2990
                                        Poughkeepsie, New York 12603
                                        Telephone: 845-454-1200


OF COUNSEL:
Veronica A. McMillan, Esq.
J. Scott Greer, Esq.

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT.................................................................................. 1

STATEMENT OF FACTS .................................................................................... 3

    I.     The Parties.................................................................................... 3

    II.    The First Arbitration Proceeding ........................................................ 3

    III.   The Second Arbitration Proceeding...................................................... 6

ARGUMENT ...................................................................................................... 9

    THE AWARD IS SUBJECT TO VACATUR OR MODIFICATION
    AND IS NOT ENFORCEABLE UNDER THE CONVENTION AND
    FAA.......................................................................................... 9

    A.  The Tribunal Decided Issues Outside of Its Authority and the
       Scope of the Arbitration Agreement ........................................... 11

      i.   The Tribunal Decided a Claim That Was Not Presented to It .............. 11

      ii.  The Tribunal Decided an Issue Related to the Application
         of Tax Law That is Outside Its Authority and the Scope
         of the Arbitration Agreement. ................................................. 13

    B.  The Award is Non-Final and Ambiguous ....................................... 15

    C.  The Partial Final Award Constitutes a Manifest Disregard of the Law...... 16

CONCLUSION .................................................................................................. 22

**TABLE OF AUTHORITIES**

CASES                                                                                          PAGE(S)

*Benjamin v. Traffic Executive Assoc. Eastern Railroads,*
    869 F.2d 107 (2d Cir. 1989)................................................................. 18

*Besseler Waechter Glover & Co. Ltd. v. South Derwent Coal Co., Ltd.*
    59 Lloyd's List Report 104 (King's Bench 1937) ............................ 20

*Bremer Handelsgesellschaft v. C. Mackprang Jr.,*
    1 Lloyd's Rep 221 (Court of Appeal 1979)................................ 20, 21

*Carte Blanche (Singapore) v. Carte Blanche Int'l.,*
    888 F.2d 260 (2d Cir. 1989)................................................................. 16

*Commercial Risk Reinsurance Company Limited. v. Security Insurance Company of Hartford,*
    526 F.Supp.2d 424 (SDNY 2007)................................................... 9, 10

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,*
    70 N.Y.2d 382 (1987) ........................................................................ 13

*DiRussa v. Dean Witter Reynolds, Inc.,*
    121 F.3d 818 (2d Cir. 1997)................................................................. 11

*Dworkin-Cosell Interair Courier Services, Inc. v. Avraham,*
    728 F.Supp. 156 (SDNY 1989)........................................................... 15

*Essex Cement Co. v. Italmare, S.p.A.,*
    763 F.Supp. 55 (SDNY 1991) ............................................................ 16

*Fibrosa Spolka Akcyina v. Fairbarin Lawson Combe Barbour Ltd,*
    [1943] A.C. 32 ............................................................................... 12, 13

*Henderson v Henderson,*
    3 Hare 100 (1943) ....................................................................... 17, 18

*Iran Aircraft Indus. v. Avco Corp.,*
    980 F.2d 141 (2d Cir. 1992)................................................................. 11

*Leeward Constr. Co. v. Am. Univ. of Antigua,*
    2013 U.S. Dist. LEXIS 43350 (SDNY 2013) ................................ 5, 6

*Mavis Henry v. Tyrone Warner,*
    Claim No. ANUHCV 2000/0277, Eastern Caribbean Supreme Court (2009) .......... 17, 18

*Mey'er v. Gilmar,*
    18 NZLR 129 ........................................................................................................ 20

*Michaels v. Mariforum Shipping, S.A.,*
    624 F.2d 411 (2d Cir. 1980) .............................................................................. 15

*Motor Oil Hellas (Corinth) Refineries  SA v. Shipping Corp. of India ("The Kanchenjunga"),*
    1 Lloyd's Rep. 391 (House of Lords 1990) ...................................................... 20

*N.L.R.B. v. United Technologies,*
    706 F.2d 1254 (2d Cir. 1988) ............................................................................ 18

*North River Insurance Co. v. Allstate Insurance Co.,*
    866 F.Supp. 123 (S.D.N.Y. 1994) ..................................................................... 18

*Pearl Seas Cruises, LLC v. Irving Shipbuilding, Inc.,*
    2001 U.S. Dist. LEXIS 87728 (Dist. of Conn. 2011) ..................................... 15

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,*
    157 F.3d 174 (2d Cir. 1998) .............................................................................. 15

*Scandinivian Reins Co. Ltd. v. St. Paul Marine & Fire Ins. Co.,*
    668 F.3d 60 (2d Cir. 2012) ................................................................................ 10

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
    450 F.3d 100 (2d Cir.2006) ............................................................................... 10

*Superintendent of Ins. v. Ochs,*
    377 F.3d 209 (2d Cir. 2004) .............................................................................. 13

*Westdeutsche Landesbank Girozentrale v. Islington London Borough Council,*
    [1996] 2 WLR 802(HL) ..................................................................................... 13

*Woods v. Dunlop Tire Co.,*
    972 F.2d 36 (2d Cir. 1992) ................................................................................ 18

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,*
    126 F.3d 15 (2d Cir. 1997). ........................................................................ 5, 10

*Zeiler v. Deitsch,*
    500 F.3d 157 (2d Cir. 2007) .......................................................................... 9, 10

**STATUTES**                                                                    **PAGE(S)**

9 U.S.C. § 1 ........................................................................................ 5

9 U.S.C. § 9-11 ............................................................................. 9, 10

9 U.S.C. § 10 ................................................................................... 11

9 U.S.C. § 10(a) .............................................................................. 11

9 U.S.C. § 10(a)(3) ......................................................................... 11

9 U.S.C. § 10(a)(4) ......................................................................... 11

9 U.S.C. § 11 ................................................................................... 11

9 U.S.C. § 11(2) .............................................................................. 11

9 U.S.C. § 201 *et seq.* ................................................................. 5, 10

9 U.S.C. §§ 201-208 .......................................................................... 9

9 U.S.C. § 207 ............................................................................. 9, 10

21 U.S.T. 2517 .................................................................................. 9

Fed. R. Civ. P. 12(b)(6) ..................................................................... 5

Federal Arbitration Act, 9 U.S.C. §1 *et seq* ................................... 5

Local Rule 42.1 ................................................................................. 6

**OTHER AUTHORITIES**                                                            **PAGE(S)**

Antigua Arbitration Act ..................................................................... 15

ABST Act (2006), *as amended* (2008) ................................. 13,14, 22

**TREATISES**

Chitty on Contracts ...................................................................... 20, 21

Wilken and Villiers: The Law of Waiver, Variation and Estoppel 2d .................................. 20, 21

## PRELIMINARY STATEMENT

This proceeding arises out of a contract between the American University of Antigua – College of Medicine ("Petitioner" or "AUA") and Leeward Construction Company, Ltd. ("Respondent" or "Leeward") for the construction of a medical school in St. Johns, Antigua. Pursuant to the terms of the parties' contract, Leeward initiated arbitration proceedings against the AUA with the American Arbitration Association International Center for Dispute Resolution in February, 2011, to arbitrate claims arising out of or related to the Contract (the "First Arbitration Proceedings"). The First Arbitration Proceedings resulted in a Final Award certified on June 22, 2012 and modified on August 8, 2012, awarding Leeward damages in the amount of $976,421.37, plus interest at the rate of 7% per annum as provided in the Award. The Final Award also awarded AUA liquidated damages in the amount of $58,500.00, plus interest at the rate of 7% per annum as provided in the Award (the "First Arbitration Award"). Thereafter, Leeward successfully petitioned this Court for confirmation of the First Arbitration Award. On June 11, 2013, the Court's Clerk entered a Corrected Amended Judgment in favor of Leeward in the net amount of $910,804.49 plus interest at a rate of 7% per annum until the judgment is paid ("the First Judgment"). AUA appealed the First Judgment and on August 16, 2013, the Court entered a Stipulation and Consent Order staying enforcement of the First Judgment pending the outcome of AUA's appeal. AUA is required to perfect its appeal to the United States Court of Appeals for the Second Circuit on or before February 2, 2015.

The instant petition to confirm concerns a second arbitration between the parties arising out of the same contract and concerning the same construction project. On February 7, 2013, Leeward commenced a second arbitration proceeding against AUA with the American Arbitration Association International Center for Dispute Resolution to arbitrate a small amount

of money (US $30,762.00) outstanding after the First Arbitration Proceeding (the "Second Arbitration Proceeding").   During the First Arbitration Proceeding, the AUA admitted it was liable to pay to Leeward the outstanding amount as a result of a mis-tabulation during invoicing on the project.  The First Arbitration Proceeding Tribunal held that it could not award the amount to Leeward because it was not part of the First Arbitration Proceeding and indeed, did not come to light until the hearings.  In the Second Arbitration Proceeding, AUA asserted for the first time claims relating to Antigua and Barbuda Sales Tax ("ABST") it paid and construction defect claims related to the project.  AUA's claims in the Second Arbitration Proceeding amount to several million dollars in alleged damages above and beyond those alleged in the First Arbitration Proceeding.   AUA knew about these claims at the time of the First Arbitration Proceeding but intentionally elected not to bring the claims at that point in time.

The parties agreed to submit their claims to the Tribunal for decision in the nature of motions for summary judgment.  On February 6, 2014, the Tribunal issued a decision which did not resolve any of the major issues in the proceeding.  On April 28, 2014, at the joint request of the parties, the Tribunal conducted a day-long oral argument in Miami, Florida in which it heard from counsel for both parties.  On September 18, 2014, the Tribunal issued a Partial Final Award which, *inter alia*, dismissed Leeward's claim and granted the AUA's ABST claim. The Partial Final Award included a twenty page vigorous Dissenting Opinion in which Arbitrator Romero pointed out five significant problems with the Partial Final Award.

The AUA's petition to confirm the Partial Final Award should be denied and Leeward's cross-motion to deny enforcement, vacate or modify the award and reinstate Leeward's claim should be granted because in making the Partial Final Award, the Tribunal exceeded the scope of

its authority and the arbitration agreement between the parties; the Partial Final Award is non-final and ambiguous; and the Partial Final Award constitutes a manifest disregard for the law.

<b><u>STATEMENT OF FACTS</u></b>

### I.    The Parties

Leeward is a corporation duly organized and existing under the laws of the Commonwealth of Antigua and Barbuda, with office and principal place of business at All Saints Road, St. Johns, Antigua.  The AUA is a corporation duly organized and existing under the laws of Antigua and Barbuda, with office and principal place of business at University Park, Jabberwock Beach Road, Coolidge, Antigua.  The AUA also has an office in New York State through its principal/agent.

### II.    The First Arbitration Proceeding

On September 25, 2008, Leeward, as contractor, and the AUA, as owner, executed a contract for the construction of a medical school in St. Johns, Antigua (the "Contract"). Section 4.6 of the General Conditions to the Contract contained an arbitration agreement that reads as follows:

> § 4.6 ARBITRATION
>
> § 4.6.1  Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration.
>
> § 4.6.2  Claims shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect.  The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a

> copy shall be filed with the Architect.  Location of any Arbitration
> will be Antigua.

(A copy of the Contract containing the arbitration agreement is annexed to AUA's Petition as

Exhibit A.)

On February 3, 2011, Leeward commenced the First Arbitration Proceeding with the

American Arbitration Association International Center for Dispute Resolution ("AAA") to

arbitrate claims arising out of or related to the Contract.  On or about October 14, 2011, Leeward

served and filed an Amended Demand for Arbitration requesting an award for breach of contract

in the amount of US $2,518,931.97/EC $6,800,572.28[1]; interest on late payments as provided in

the Contract from the date the payments were due until the date the payments were made at the

legal rate of interest in Antigua as determined by the Arbitrators; and legal fees and expenses,

including the cost and expense of arbitration, as determined by the Arbitrators in accordance

with the laws of Antigua. (A copy of Leeward's Amended Demand for Arbitration in the First

Arbitration Proceeding is annexed to the McMillan Declaration as Exhibit "1".)

On or about November 30, 2011, the AUA filed a reply to the Amended Demand that

included counterclaims for liquidated delay damages in the amount of US $117,000.00 and in the

alternative, actual delay damages in the amount of US $371,955.31/EC $1,004,199.00. (The

AUA withdrew its counterclaim for actual delay damages on April 11, 2012.) (A copy of the

AUA's November 30, 2011 reply in the First Arbitration Proceeding is annexed to the McMillan

Declaration as Exhibit "2".)

---

[1] Leeward's breach of contract claim alleged that the AUA repeatedly breached the contract by failing to issue change orders/change directives for additional contract work; failing to pay for additional work that the AUA authorized and directed Leeward to perform; failing to pay Leeward's payment applications in accordance with the terms of the Contract; failing to certify the Project as substantially complete; failing to issue a final certificate of payment; failing to make final payment to Leeward in accordance with the terms of the Contract; failing to pay the mobilization fee as provided in the Contract; failing to authorize overtime as provided in the Contract; failing to coordinate the work of other contractors as required in the Contract; and failing to properly administer the Contract as provided in the Contract documents. (McMillan Declaration, Exhibit 1)

In March, 2012, the Tribunal conducted evidentiary hearings in San Juan, Puerto Rico. On May 22, 2012, the hearings were closed following the submission of the parties' lengthy post-hearing findings of fact and conclusions of law. The Tribunal issued the First Arbitration Award certified June 22, 2012 and modified August 8, 2012, in which the Arbitrators directed the AUA to pay damages to Leeward in the amount of $976,421.37, plus interest at the rate of seven percent (7%) per annum as provided in the Award.  The First Arbitration Award also granted the AUA damages in the amount of $58,500.00, plus interest at the rate of 7% per annum as provided in the Award.  (A copy of the Final Arbitration Award certified on June 22, 2012, and the August 8, 2012 modified Final Award is annexed to the McMillan Declaration as Exhibit "3".)

On August 16, 2012, Leeward commenced a proceeding in this Court styled *Leeward Construction Company, Ltd. v. American University of Antigua – College of Medicine, et ano.*, 12-CV-062080-LAK/GWG, for an order confirming the First Arbitration Award and for the entry of a money judgment against AUA in the amounts stated in the First Arbitration Award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards as codified at 9 U.S.C. §201 *et seq.* (the "Convention").[2]  On September 25, 2012, AUA cross-moved to dismiss pursuant to the *Forum Non Conveniens* Doctrine and Fed. R. Civ. P. 12(b)(6) or in the alternative, to vacate or modify the award pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*  On March 26, 2013, the Court entered a Memorandum Opinion which, *inter alia*, granted Leeward's petition. *See Leeward Constr. Co. v. Am. Univ. of Antigua*, 2013 U.S.

---

[2] The Convention, also known as the "New York Convention" and the "1958 Convention," was enacted on June 10, 1958 and ratified by the United States on December 29, 1970. S*ee Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15-18 n.1. (2d Cir. 1997).  The Commonwealth of Antigua and Barbuda ratified the Convention on February 2, 1989. *See* http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html.

Dist. LEXIS 43350 (SDNY 2013)   (A copy of the opinion is annexed to the McMillan Declaration as Exhibit "4".)   On June 11, 2013, the Court's Clerk entered the First Judgment. (A copy of the June 11, 2013 First Judgment is annexed to the McMillan Declaration as Exhibit "5".)

On April 29, 2013, AUA filed a Notice of Appeal and thereafter, moved the Court for a stay of enforcement of the First Judgment pending the outcome of its appeal.   On August 9, 2013, AUA filed a *supersedeas* bond in the amount of $1,073,000.   On August 16, 2013, the Court entered a Stipulation and Consent Order staying the enforcement of the First Judgment pending the outcome of AUA's appeal. (A copy of the Court's August 16, 2013 Stipulation and Consent Order is annexed to the McMillan Declaration as Exhibit "6".)   Pursuant to subsequent Local Rule 42.1 stipulations between the parties, AUA now has until February 2, 2015 to reinstate and perfect its appeal. (A copy of the parties' November 18, 2014 stipulation extending the AUA's deadline to reinstate and perfect its appeal is annexed to the McMillan Declaration as Exhibit "10".)

### III.    The Second Arbitration Proceeding

On February 7, 2013, Leeward commenced a second arbitration proceeding against AUA with the American Arbitration Association International Center for Dispute Resolution to arbitrate a small amount of money (US$30,762.00) outstanding after the First Arbitration Proceeding (the "Second Arbitration Proceeding"). (A copy of Leeward's February 7, 2011 Demand for Arbitration is annexed to the AUA's Petition as Exhibit B.)   During the First Arbitration Proceeding, the AUA admitted on multiple occasions that it was liable to pay to Leeward the outstanding amount as a result of a mis-tabulation during invoicing on the project. Neither party was aware of the outstanding amount until the AUA pointed it out during the

hearings.   Thus, the First Arbitration Proceeding Tribunal held that it could not award the amount to Leeward because it was not part of the First Arbitration Proceeding. (McMillan Declaration, Exhibit 3, First Arbitration Award, pp. 11-12)   Leeward attempted to obtain payment from the AUA for this amount but was refused.

The AUA pled its answer and counterclaims in the Second Arbitration Proceeding several times.  In its initial Answer and Counterclaim, dated February 27, 2013, the AUA denied that it owes Leeward the monies for the invoice mis-tabulation (despite admitting the liability on multiple occasions during the First Arbitration Proceeding) and, as a counterclaim, the AUA asserted, for the very first time, that it is entitled to a refund of all of the ABST that it paid to Leeward on the project, in the amount of EC$3,614,522.41/US$1,338,723.00 (the "ABST claim").   (A copy of AUA's Answer and Counterclaim is annexed to the AUA's Petition as Exhibit C.)  Subsequently, the AUA amended its answer to assert an additional counterclaim alleging various construction defect claims in the amount of EC$2,642,450.00/US$978,685.00 (the "Defective Work claims").   The AUA's Defective Work claims allege defects with respect to the staircases, wall surfaces, roof, scuppers and pipes, windows, tracery and fascia, elevator shafts, and concrete installed on the Project. (A copy of the AUA's Revised Statement of Counterclaims is annexed to the AUA's Petition as Exhibit D.)  Thereafter, the AUA served an Amended Answer and Counterclaims dated August 1, 2013.  The AUA failed to include a copy of this final pleading with its petition. (A copy of the AUA's August 1, 2013 Amended Answer and Counterclaims is annexed to the McMillan Declaration as Exhibit "13".)  The AUA was aware of its ABST claim and Defective Work claims at the time of the First Arbitration Proceeding. (A copy of Leeward's Exhibits 1-65 in the motion practice before the Tribunal is annexed to the Sclafani Affirmation, dated November 20, 2014, as Exhibit B; documents

evidencing the AUA's awareness of its claims are contained at Leeward's Exhibits 46, 50, 60-65 within Sclafani Affirmation Exhibit B.)

The parties agreed to submit their claims in the Second Arbitration Proceeding to the Tribunal for decision in the nature of motions for summary judgment. In its motion, Leeward argued that AUA's ABST claim should be dismissed because (a) the AUA was required under the Contract, read in conjunction with the ABST Act, to pay Leeward ABST; (b) the doctrine of *res judicata* bars the ABST claim; (c) the AUA lacks standing to bring the ABST claim; (d) the doctrines of waiver and/or modification bar the ABST claim; and (e) the ABST claim does not arise under the Contract and, therefore, is not subject to arbitration. With regard to the AUA's defective work claims, Leeward argued that the claims were subject to dismissal because (a) the doctrine of *res judicata* bars the Defective Work claims; (b) the AUA failed to comply with the required notice provision under the Contract and, as a result, the Defective Work claims are untimely; and (c) the windows portion of the Defective Work claims is not subject to arbitration because the windows work was performed under a separate contract. The AUA moved for summary judgment on its ABST claim and for dismissal of several of Leeward's defenses. (A copy of the parties' submissions to the Tribunal is annexed to the Sclafani Affirmation, dated November 20, 2014 as Exhibits A through I. Respondent's reply in further support of its motion to dismiss (which was omitted from the Sclafani Affirmation) is annexed to the McMillan Declaration as Exhibit "12".)

On February 6, 2014, the Tribunal issued a decision which failed to resolve any of the major issues in the proceeding. (A copy of the Decision on the Parties' Dispositive Motions and Related Cross-Motions is annexed to the AUA's Petition as Exhibit E.) On April 28, 2014, at the joint request of the parties, the Tribunal conducted a day-long oral argument in Miami, Florida in

which it heard from counsel for both parties.  On September 18, 2014, the Tribunal issued a

Partial Final Award which, *inter alia*, dismissed Leeward's claim and granted AUA's ABST

claim.  (A copy of the Partial Final Award is annexed to the AUA's Petition as Exhibit F.)  The

Partial Final Award contained a lengthy dissenting opinion which detailed the errors in the

Partial Final Award.   The AUA failed to include the dissenting opinion with its Petition to

Confirm. (A copy of the complete Partial Final Award, including the "Dissenting Opinion" is

annexed to the McMillan Declaration as Exhibit "7".)

## ARGUMENT

## THE AWARD IS SUBJECT TO VACATUR OR MODIFICATION AND IS NOT ENFORCEABLE UNDER THE CONVENTION AND FAA

AUA seeks confirmation of the Partial Final Award and entry of judgment in accordance

therewith pursuant to the Convention, 21 U.S.T. 2517, as incorporated into the Federal

Arbitration Act (the "FAA"), 9 U.S.C. §§201-208.  The Court will note that the Convention

applies to international arbitrations between citizens of signatory states.  The Commonwealth of

Antigua and Barbuda ratified the Convention on February 2, 1989. *See* footnote 1 *supra*; *see*

*also*, 9 U.S.C. §207; *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007); *Commercial Risk*

*Reinsurance Company Limited. v. Security Insurance Company of Hartford*, 526 F.Supp. 2d 424,

427 (SDNY 2007).  The Convention governs the confirmation of the Partial Final Award herein

because Leeward and the AUA are incorporated under the laws of Antigua; their principal

offices and places of business are in Antigua; the underlying dispute concerns the construction of

a medical school in Antigua; and the contract between Leeward and the AUA for the

construction of the medical school, specifically provides that Antiguan Law shall apply to the

interpretation of the Contract.  *See Zeiler,* 500 F.3d at 164 (even though the arbitration took place

in New York it is international arbitration for the purposes of the FAA and subject to the

Convention given the fact that the parties chose a foreign law to govern the arbitration and the commercial transactions issued in the arbitration had a clear international character); *see also, Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (the Convention applies to a domestic arbitration between two non-domestic parties and a United States corporation with respect to the performance of a contract in the Middle East); *Commercial,* 526 F.Supp 2d at 427 (the Convention applies to arbitration proceedings held in the United States involving at least one party that is not a United States citizen).   Since the proceedings to date have been held in the United States (oral argument was held in Miami, Florida and the Partial Final Award, including the Dissenting Opinion were executed in the United States), the confirmation petition herein is also governed by the FAA. *See Zeiler*, 500 F.3d at 164 (citing *Yusuf*, 126 F.3d at 21-23); *see also, Scandinivian Reins Co. Ltd. v. St. Paul Marine & Fire Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012), *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102 n.1 (2d Cir. 2006)

The Convention and the FAA provide several bases upon which an arbitration award can be denied enforcement, vacated or modified. *See* 9 U.S.C. §§9-11 and 201-207.   Article V of the Convention provides a total of seven defenses for denying enforcement of an award under the Convention.[3]   In addition, Section 10 and 11 of the FAA provides a number of additional

---

[3] Under Article V of the Convention, the grounds for vacating an arbitration award are: (a) incapacity of a party to the Arbitration Agreement; (b) failure to provide proper notice of the appointment of the arbitrator or of the arbitration proceeding; (c) the award exceeds the scope of the arbitration agreement; (d) the composition of the arbitral authority or procedure was not in accordance with the arbitration agreement; or (e) "the award has not yet become binding on the parties, or has been satisfied or suspended by a competent authority of the country in which, or under the law of which, that award was made."

Article V(2) of the Convention further provides that a court may refuse to enforce an arbitration award if the subject matter of the dispute is not capable of resolution by arbitration or if recognition or enforcement of the award would be contrary to public policy. *See Yusuf*, 126 F.3d at 19.

defenses for vacating or modifying an arbitration award.[4]  Applying these defenses requires the Court vacate and/or modify the Partial Final Award herein.

### A. The Tribunal Decided Issues Outside of Its Authority and the Scope of the Arbitration Agreement

Both the FAA and the Convention allow for vacatur of an arbitration award where the arbitrators have exceeded their authority in the parties' arbitration agreement. *See* 9 U.S.C. §10(a)(4); *see also*, 9 U.S.C. §11(2) and Article V of the Convention.  A court's inquiry in this regard focuses on "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue…" *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 824 (2d Cir. 1997)  A tribunal's actions in passing on a matter not before it or outside the scope of its authority invokes questions of due process in violation of 9 U.S.C. §10(a)(3) and Article V(1)(b) of the Convention and should not be countenanced in a petition to confirm. *See*, *e.g.*, *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d Cir. 1992) (These provisions protect "the fundamental requirement of due process …the opportunity to be heard at a meaningful time and in a meaningful manner.")

### i.     The Tribunal Decided a Claim That Was Not Presented to It

In his Dissenting Opinion, Arbitrator Romero points out that the Tribunal based its decision in favor of the AUA on its ABST claim on the theory of unjust enrichment which was outside the scope of the matters submitted to them for decision. (McMillan Declaration, Exhibit 7, Dissenting Opinion, pp.8-12)   Arbitrator Romero succinctly traces the pleadings to

---

[4] 9 U.S.C. §10(a) provides that an arbitration award may be vacated where (1) the award was procured by corruption, fraud or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, hearing pertinent and material evidence or any other misbehavior that prejudiced the rights of a party; and (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, definite award upon the subject matter was not made. *See* 9 U.S.C. §10.

9 U.S.C. §11 provides that an arbitration award may be modified or corrected where (1) there was a material miscalculation of figures or an evident material mistake; (2) the arbitrators awarded upon a matter not submitted to them; and (3) the award is imperfect in manner of form. *See* 9 U.S.C. §11

demonstrate that AUA did not have a claim of unjust enrichment before the Tribunal for decision.  While AUA indicated that it was going to assert such a claim based on the "common law of Antigua and Barbuda" (AUA Petition, Exhibit D, Item I.E), AUA's final pleading filed in August, 2013, makes no mention of unjust enrichment and thus, dropped the claim. (McMillan Declaration, Exhibit 7, Dissenting Opinion, pp. 8-9)  The AUA did not provide a copy of the August, 2013 pleading with its petition herein. (A copy of AUA's Amended Counterclaims and Defenses, dated August 1, 2013 is annexed to the McMillan Declaration as Exhibit "13".)

Further, without exploring the elements of a cause of action for unjust enrichment or even concluding that the AUA had established its entitlement to relief under this equitable theory, the Tribunal summarily concluded that Leeward failed to present any valid defense to a claim. (McMillan Declaration, Exhibit 7, Dissenting Opinion, p. 10-11)  In basing their decision to award the AUA EC\$3,614,522.41 in ABST repayments on a claim that the AUA dropped in its final amended pleading in August, 2013, the Tribunal violated Leeward's due process and exceeded its authority. (McMillan Declaration, Exhibit 7, Dissenting Opinion, pp. 8-12)

Even if the AUA had retained its claim for unjust enrichment, as Leeward pointed out in its motion papers, such claim was outside the parties' arbitration agreement and beyond the scope of the Tribunal's review. (Leeward's Motion to Dismiss AUA's Counterclaims, Point IE1 as annexed to the Sclafani Affirmation as Exhibit A)  The AUA admitted as much in its own pleading when it pled that its unjust enrichment claim would be based on the common law of Antigua and Barbuda as opposed to the Contract, itself. (AUA Petition, Exhibit D, Item I.E)  A claim for unjust enrichment is an equitable, restitution claim that is independent of any contract. *See Fibrosa Spolka Akcyina v. Fairbarin Lawson Combe Barbour Ltd,* [1943] A.C. 32, 61 (holding that the obligation to refund or repay a mistaken payment on the basis of unjust

enrichment is imposed by law and not by contract); *Westdeutsche Landesbank Girozentrade v. Islington London BC,* [1996] 2 WLR 802(HL) (holding that the obligation to refund or repay a mistaken payment on the basis of unjust enrichment is imposed by law and not by contract); *see also, Superintendent of Ins. v. Ochs*, 377 F.3d 209, 213 (2d Cir. 2004) ("[U]njust enrichment would only exist where no prior agreement govern the rights of the parties ...'[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'") (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382 (1987)) (A copy of *Fribosa Spolka Akcyina* and *Westdeutsche Landesbank Girozentrade* is annexed to the McMillan Declaration as part of Exhibit "11".) To the extent that the AUA's ABST claim arises out of a claim for unjust enrichment, it cannot "arise under" or relate to the Contract and is not subject to the parties' arbitration agreement. *See* Section 4.6 of the General Conditions to the Contract (AUA Petition, Exhibit A)  Awarding the AUA damages based on a theory of unjust enrichment, is outside the scope of the Tribunal's authority in violation of the FAA and the Convention.  The Partial Final Award should be denied enforcement, vacated and/or modified and Leeward's claim reinstated.

### ii.    The Tribunal Decided an Issue Related to the Application of Tax Law That is Outside Its Authority and the Scope of the Arbitration Agreement

The Partial Final Award also makes findings with regard to the Antigua and Barbuda ABST Act which are outside the Tribunal's authority and the scope of the arbitration agreement. Again, directing the Court's attention to the Dissenting Opinion, Arbitrator Romero concisely explains the issues present in the Partial Final Award with regard to the ABST Act. (McMillan Declaration, Exhibit 7, Dissenting Opinion, pp. 13-16)  Most significantly, in deciding the

AUA's ABST claim, the Tribunal has cross over into tax law enforcement – a right only granted to the Antigua and Barbuda tax authorities – not to the Tribunal or the AUA.

Nothing in the ABST Act creates or contemplates a private right of action or otherwise authorizes a private person to enforce the ABST Act.  *See generally* ABST Act (2006), *as amended* (2008). (A copy of the ABST Act (2006), as amended (2008) is annexed to the McMillan Declaration as Exhibit "9".)   In fact, the ABST act expressly contemplates the opposite: the Antiguan government is the only person with the right to enforce the Statute. *See* ABST Act, Part XI (2006), *as amended* (2008)   Therefore, if the AUA inadvertently or mistakenly paid ABST to Leeward, then its only remedy is to seek a refund of the ABST from the Antiguan government pursuant to the ABST Act. *See, e.g.,* ABST Act, Part XVII, 44 (2006), *as amended* (2008).  Similarly, if Leeward failed to remit ABST to the Antiguan government that it lawfully collected from the AUA, *see* ABST Act, Part II (2006), *as amended* (2008), then the statutory remedy is not for the AUA to seek recovery of the ABST that it was legally obligated to pay to Leeward; but rather, for the Antiguan government to commence enforcement proceedings against Leeward for failing to remit any ABST that it might owe. *See, e.g.,* ABST Act, Part XVI (2006), *as amended* (2008).

In issuing the Partial Final Award, the Tribunal has granted the AUA relief that it is not otherwise entitled to under the terms of the ABST Act. Further, the Tribunal has countenanced the AUA's failure to adhere to the statutory requirements for obtaining an ABST refund.  The ABST Act provides that refund requests must be made within three years.  Thus, the Tribunal has also breathed life back into an otherwise time barred claim under the ABST Act. *See* ABST Act, Part XVII, 44(5) (2006), *as amended* (2008).  The ABST Act provides exclusive procedures for dealing with the AUA's ABST claim and the "Tribunal should not exercise its powers to

administer the tax laws of that country and should not interfere with the administration and enforcement of the tax laws of Antigua and Barbuda." (McMillan Declaration, Exhibit 7, Dissenting Opinion, p. 15)  The Tribunal has acted outside the scope of its authority and as such, the Partial Final Award should be denied enforcement, vacated and/or modified and Leeward's claim reinstated.

### B.  The Award is Non-Final And Ambiguous

This Court has held that for an arbitration award to be enforced under the FAA and the Convention, it must be final, particularly where the laws of the country in which the arbitration is conducted require finality. *See, e.g.*, *Dworkin-Cosell Interair Courier Services, Inc. v. Avraham*, 728 F.Supp. 156, 161 (SDNY 1989)  To be a final, an arbitration award:

> 'must be intended by the arbitrators to be their complete determination of all claims submitted to them' and 'an arbitrator award, to be final, must resolve all issues submitted to arbitration, and … it must resolve them definitely enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication,' including both liability and damages.

*Pearl Seas Cruises, LLC v. Irving Shipbuilding, Inc.*, 2001 U.S. Dist. LEXIS 87728, *5 (Dist. of Conn. 2011) (quoting *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413-414 (2d Cir. 1980) and *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998)) Additionally, the laws of Antigua and Barbuda also require that an arbitration award be final before it can be enforced. *See generally,* Antiguan Arbitration Act, Chapter 33 of the Laws of Antigua and Barbuda (A copy of the Antiguan Arbitration Act, Chapter 33 of the Laws of Antigua and Barbuda is annexed to the McMillan Declaration as Exhibit "8".)

The Partial Final Award as rendered is non-final and ambiguous.  (McMillan Declaration, Exhibit 7)  As the dissenting arbitrator's opinion makes clear, the Partial Final Award opens Leeward to double liability – payment to the AUA now and possible payment to the Antigua and Barbuda tax authority at a later date. (McMillan Declaration, Exhibit 7, Dissenting Opinion, pp. 16-17)  Further, while it provides for the AUA to indemnify Leeward at some future date should Leeward be "later required by the Antigua and Barbuda tax authorities to account for, and pay to, the Antigua and Barbuda authorities ABST on this construction project," the award completely fails to address the possibility that the Antigua and Barbuda tax authorities may find that Leeward had no outstanding tax obligation on the project because it had already satisfied its obligations by paying ABST to contractors and vendors down the stream of commerce from it for services and materials purchased for the project.  Finally, it does not resolve all claims between the parties and in fact, contemplates further proceedings.  Thus, the Partial Final Award is non-final and ambiguous.  The award should be denied enforcement, vacated and/or modified and Leeward's claim reinstated.

### C.  The Partial Final Award Constitutes a Manifest Disregard of the Law

A manifest disregard for the law occurs where an arbitrator makes an error that is "'obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. … [T]he governing law alleged to have been disregarded by the arbitrators must be 'well defined, explicit and clearly applicable.'" *Essex Cement Co. v. Italmare, S.p.A.*, 763 F.Supp. 55, 57 (SDNY 1991) (quoting *Carte Blanche (Singapore) v. Carte Blanche Int'l*, 888 F.2d 260, 265 (2d Cir. 1989))  Here, as Arbitrator Romero's Dissenting Opinion makes apparent, the Tribunal ignored the obvious applicability of the doctrines of *res judicata*,

collateral estoppel, claim preclusion and issue preclusion. (McMillan Declaration, Exhibit 7, Dissenting Opinion, pp. 17-18)  In his dissent, Arbitrator Romero states:

> Leeward presented persuasively its position that either res judicata, collateral estoppel, claim preclusion, or issue preclusion apply.  In the first arbitration proceeding (which covered the period of February 2011 through August 2012, when the amended award was issued), AUA had full knowledge of the ABST taxes paid to Leeward, AUA contested in the first arbitration the final accounting and the ABST taxes appearing on the bills (and affidavits submitted by AUA expressly confirmed such review and knowledge), AUA made open representations in the first proceeding confirming not only that AUA agrees with the computations and payments it made to Leeward but also corrected and overpayment by AUA and expressed admitted owing more taxes in the approximate amount of US $33,000. AUA openly agreed to pay it outside of the first proceeding. … AUA openly represented in the first proceeding (at a time AUA had full knowledge of the issues concerning the unwillingness of the tax authority to certify nonapplicability of ABST tax as to the providers of the project), with full knowledge of the issues concerning ABST tax, that it agreed with the final accounting excepting the items challenged and damages raised.

(McMillan Declaration, Exhibit 7, Dissenting Opinion, pp. 17-18)

In its motion papers before the Tribunal, Leeward provided ample evidence of the applicability of these doctrines to the AUA's ABST claim and Defective Work claims both under Antiguan law as well as federal law.  Under Antiguan law, *res judicata* requires a party to present its whole case concerning the same subject matter at the same time and precludes a party from asserting causes of action concerning the same subject matter in multiple litigations. *See, e.g., Mavis Henry v. Tyrone Warner,* Claim No. ANUHCV 2000/0277, Eastern Caribbean Supreme Court (2009) (citing *Henderson v Henderson,* 3 Hare 100, 114-115 (1943).  As the Eastern Caribbean Supreme Court stated in *Mavis Henry*:

> where a given matter becomes the subject of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires that the parties to that litigation to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the subject of litigation in respect of matter which might have been brought forward as part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted part of their case. The plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.

*Mavis Henry v. Tyrone Warner,* Claim No. ANUHCV 2000/0277, Eastern Caribbean Supreme Court (2009) (citing *Henderson v Henderson,* 3 Hare 100, 114-115 (1943) [emphasis omitted]). (A copy of *Mavis Henry* and *Henderson* is annexed to the McMillan Declaration as a part of Exhibit 11.) The Antiguan doctrine of *res judicata* is very similar to the United States Common Law, where a "final judgment on the merits bars further claims that were or could have been raised in that action." *Benjamin v. Traffic Executive Assoc. Eastern Railroads,* 869 F.2d 107, 111 (2d Cir. 1989); *North River Insurance Co. v. Allstate Insurance Co.,* 866 F. Supp. 123, 127 (S.D.N.Y. 1994). It is the identity of the facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which the individual chooses to frame his complaint. *See Woods v. Dunlop Tire Co.,* 972 F.2d 36, 37 (2d Cir. 1992). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Technologies,* 706 F.2d 1254, 1260 (2d Cir. 1988).

The AUA's ABST claim and Defective Work claims herein are barred by *res judicata* because they concern the same subject matter that was previously adjudicated in the First Arbitration Proceeding, to wit: the scope of the Contract, the administration of the Contract, payments under the Contract, and Leeward's performance under the Contract.  In addition, the same series of transactions that were at issue within the First Arbitration Proceeding are at issue within the ABST claim, namely the 27 payment requisitions that Leeward submitted to the AUA and the AUA reviewed, processed and paid, including the payment of ABST. (Leeward Exhibits 2-30 as annexed to the Sclafani Affirmation at Exhibit B)  Lastly, the same evidence and facts are needed to support both the claims made within the First Arbitration Proceeding and the ABST claim asserted by the AUA herein.  (Leeward Exhibits 1-8, 10-11, 13, 15-30, 47 as annexed to the Sclafani Affirmation at Exhibit B)  Indeed, each of the payment requisitions at issue in the First Arbitration Proceeding had a line item for ABST, which the AUA paid without protest even though the AUA now claims- after losing the First Arbitration Proceeding -  that it was never contractually required to pay ABST in the first place.  As a result, the AUA could have and should have asserted the ABST claim in the Prior Arbitration.

The AUA began utilizing the project on or about August 1, 2009. (Leeward Exhibit 36, p. 744:1-15 as annexed to Sclafani Affirmation at Exhibit B)  Leeward completed the Contract on October 31, 2009. (Leeward Exhibit 39, p. 31 as annexed to Sclafani Affirmation at Exhibit B)  Leeward commenced the First Arbitration Proceeding on February 3, 2011. (McMillan Declaration, Exhibit 1)  Thus, the AUA's Defective Work claims would have and should have been known to the AUA at the time the First Arbitration Proceeding was commenced.  In fact, the AUA admitted in these proceedings that it had knowledge of its alleged defects prior to the commencement of the First Arbitration Proceeding, but failed to assert the claims. (Leeward

Exhibit 48 as annexed to the Sclafani Affirmation at Exhibit B)  The AUA could have and should have brought a counterclaim against Leeward for any alleged defects in the First Arbitration Proceeding.

Finally, while not pointed out by Arbitrator Romero, the Tribunal also improperly disregarded the fact that the AUA's ABST claim is barred by the doctrines of waiver and modification.  At common law, a contractual provision is waived when a party represents, in word or deed: (1) that it will forbear to enforce a right it holds by that provision; or (2) that it will not insist on the other party's performance of an obligation under that provision, and the other party acts accordingly. *See* Sean Wilken, Wilken and Villiers: The Law of Waiver, Variation and Estoppel 2d ("Wilken"),§ 3.15; *Motor Oil Hellas (Corinth) Refineries  SA v. Shipping Corp. of India ("The Kanchenjunga',* 1 Lloyd's Rep. 391, 397-98 (House of Lords 1990) (explaining that waiver occurs when a party forbears from exercising a right upon the other party's breach); 1  Chitty on Contracts ("Chitty"), § 22-040 ("Where one party voluntarily accedes to a request by the other that he should forbear to insist on the mode of performance fixed by the contract, the Court may hold that he has *waived* this right to require that the contract be performed in this respect according to its original tenor") (emphasis in original); *Besseler Waechter Glover & Co., Ltd. v. South Derwent Coal Co., Ltd.,* 59 Lloyd's List Law Report 104, 108 (King's Bench 1937). *See also Mey'er v. Gilmer,* 18 NZLR 129, 136-37.  The parties' conduct or course of dealing can constitute a waiver of a contractual provision.  *See* Chitty, § 22-041 ("A waiver may be oral or written or inferred from conduct."); *see also* Wilken,§ 4.07.  Conduct constitutes a waiver if, in light of all circumstances, it clearly evinces a party's decision to forbear from insisting on its rights. *See* Wilken, §§ 4.07-4.08; *see, e.g., Bremer Handelsgesellschaft v. C. Mackprang Jr.,* 1 Lloyd's Rep 221, 230 (Court of Appeal 1979). A party that waives a provision of a contract loses

"his right to require that the contract be performed in this respect according to its original tenor," and cannot recover it *(i.e.,* revoke his waiver) except with adequate notice in limited circumstances.   Chitty, §§ 22-040 and 22-043; *see also* Wilken, § 4.01.   Specifically in commercial contexts, a party's conduct constitutes a waiver where the party "persists in the residual contractual relationship" and/or continues to accept benefits arising therefrom, notwithstanding the other party's nonconforming performance of an obligation. *Bremer* at 230; Wilken, § 4.08 (unequivocal conduct constituting a waiver includes "[v]oluntary acceptance after breach of benefits arising from the contract"). (A copy of the above-referenced precedent is annexed to the McMillan Declaration as a part of Exhibit 11.)

The AUA waived the applicable contract terms by repeatedly approving, in writing, the inclusion of ABST in each and every one of Leeward's 27 payment requisitions. (Leeward Exhibits 2-30 as annexed to the Sclafani Affirmation at Exhibit B)  The AUA's waiver of the applicable contract terms is evidenced in its express approval and payment of each and every payment requisition including ABST without protest. (Leeward Exhibits 2-30, 45 annexed to the Sclafani Affirmation at Exhibit B)  Thus, the AUA has waived its right (to the extent it had one) to seek repayment of the ABST under the terms of the Contract.  Even assuming, *arguendo,* that the AUA's course of conduct and written documentation does not meet the formal requirements of waiver, the AUA's written approval of the payment of ABST, without protest, in each of the 27 payment applications constitutes a modification of the Contract's tax payment provisions.  The Contract provides that any modifications must be in writing and signed by both parties. (Exhibit 1, General Conditions, §§ 1.1.1, 1.1.2, pg. LC000025/ADA000025)  The AUA's written approval of the payment of ABST on each and every  payment application submitted by Leeward constitutes a modification of the Contract's tax payment provisions to

provide that the AUA will pay the ABST that Leeward is required to charge under the ABST Act. These written modifications of the Contract's tax payment provisions are binding upon the AUA, and remove the AUA's right to seek repayment under the Contract.

The Tribunal completely ignored the applicability of these doctrines and their impact on the AUA's ABST claim and Defective Work claims. In so doing, the Tribunal acted with manifest disregard for the law. Accordingly, the Partial Final Award was made in error and should be denied enforcement, vacated and/or modified and Leeward's claim reinstated.

## CONCLUSION

For the reasons set forth herein, Respondent Leeward Construction Company, Ltd. respectfully requests that this Court deny Petitioner's petition to confirm and grant Respondent's cross-motion and opposition herein and deny enforcement, vacate or modify the arbitration award against it and in favor of Petitioner, American University of Antigua -- College of Medicine, including reinstatement of Respondent's claim against Petitioner.

Dated: December 11, 2014
      Poughkeepsie, New York

                                     Veronica A. McMillan (VM 1107)
                                     **LEWIS & GREER, P.C.**
                                     *Attorney for Respondent,*
                                     *Leeward Construction Company, Ltd.*
                                     510 Haight Avenue, Suite 202
                                     Poughkeepsie, New York 12603
                                     Telephone: (845) 454-1200

To:    Leonard A. Sclafani, Esq.
        Law Offices of Leonard A. Sclafani, Esq.
        *Attorney for Petitioners,*
        *American University of Antigua -- College of Medicine*
        1 Battery Park Plaza, 33rd Floor
        New York, New York 10004
        Telephone: (212) 696-9880

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LEEWARD CONSTRUCTION COMPANY, LTD.

                        Petitioner,

        -against-

AMERICAN UNIVERSITY OF ANTIGUA --
COLLEGE OF MEDICINE AND MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR, LLC

                        Respondents.
-----------------------------------------------------------------x

Case No. 14-CV-8410-DLC/GWG
(ECF CASE)

**DECLARATION OF
VERONICA A. MCMILLAN**

**VERONICA A. MCMILLAN**, being duly sworn, deposes and says:

    1.     I am a member of the law firm of Lewis & Greer, P.C., counsel for the Respondent, Leeward Construction Company, Ltd. ("Respondent" or "Leeward"), and am fully familiar with all the facts and circumstances set forth herein.

    2.     I submit this declaration in support of Respondent's Notice of Cross-Motion for an Order denying enforcement, vacating or modifying the Final Partial Award, dated September 18, 2014, and reinstating Respondent's claim pursuant to the Federal Arbitration Act, 9 U.S.C. §§1, *et seq.* and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and for such other relief as the Court deems just and proper.

<b><u>The Parties</u></b>

    3.     Leeward is a corporation duly organized and existing under the laws of the Commonwealth of Antigua and Barbuda, with office and principal place of business at All Saints Road, St. John's, Antigua.

    4.     The Petitioner, American University of Antigua – College of Medicine ("Petitioner" or "AUA") is a corporation organized and existing under the of Antigua and

Barbuda, with office and principal place of business at University Park, Jabberwock Beach Road,

Coolidge, Antigua.  The AUA also has an office in New York State through its principal/agent.

### The First Arbitration Proceeding

5.      On September 25, 2008, Leeward, as contractor, and the AUA, as owner, executed

a contract for the construction of a medical school in St. Johns, Antigua (the "Contract").  Section

4.6 of the General Conditions to the Contract contained an arbitration agreement that reads as

follows:

> § 4.6 ARBITRATION
>
> § 4.6.1  Any Claim arising out of or related to the Contract, except
> Claims relating to aesthetic effect and except those waived as
> provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after
> decision by the Architect or 30 days after submission of the Claim to
> the Architect, be subject to arbitration.
>
> § 4.6.2  Claims shall be decided by arbitration which, unless the
> parties mutually agree otherwise, shall be in accordance with the
> Construction Industry Arbitration Rules of the American Arbitration
> Association currently in effect.  The demand for arbitration shall be
> filed in writing with the other party to the Contract and with the
> American Arbitration Association, and a copy shall be filed with the
> Architect.  Location of any Arbitration will be Antigua.

(A copy the Contract containing the arbitration agreement is annexed to the AUA's Petition as

Exhibit A.)

6.      On February 3, 2011, Leeward commenced the an arbitration proceeding with the

American Arbitration Association International Center for Dispute Resolution ("AAA") to

arbitrate claims arising out of or related to the Contract (the "First Arbitration Proceeding").  On

or about October 14, 2011, Leeward served and filed an Amended Demand for Arbitration

requesting an award for breach of contract in the amount of US $2,518,931.97/EC $6,800,572.28[1]; interest on late payments as provided in the Contract from the date the payments were due until the date the payments were made at the legal rate of interest in Antigua as determined by the Arbitrators; and legal fees and expenses, including the cost and expense of arbitration, as determined by the Arbitrators in accordance with the laws of Antigua. (A copy of Leeward's Amended Demand for Arbitration in the First Arbitration Proceeding is annexed hereto as Exhibit 1.)

7.      On or about November 30, 2011, the AUA filed a reply to the Amended Demand that included counterclaims for liquidated delay damages in the amount of US $117,000.00 and in the alternative, actual delay damages in the amount of US $371,955.31/EC $1,004,199.00. (The AUA withdrew its counterclaim for actual delay damages on April 11, 2012.) (A copy of the AUA's November 30, 2011 reply in the First Arbitration Proceeding is annexed hereto as Exhibit 2.)

8.      In March, 2012, the Tribunal conducted evidentiary hearings in San Juan, Puerto Rico. On May 22, 2012, the hearings were closed following the submission of the parties' lengthy post-hearing findings of fact and conclusions of law. The Tribunal issued the First Arbitration Award certified June 22, 2012 and modified August 8, 2012, in which the Arbitrators directed the AUA to pay damages to Leeward in the amount of $976,421.37, plus interest at the rate of seven percent (7%) per annum as provided in the Award. The First Arbitration Award also granted the

---

[1]Leeward's breach of contract claim alleged that the AUA repeatedly breached the contract by failing to issue change orders/change directives for additional contract work; failing to pay for additional work that the AUA authorized and directed Leeward to perform; failing to pay Leeward's payment applications in accordance with the terms of the Contract; failing to certify the Project as substantially complete; failing to issue a final certificate of payment; failing to make final payment to Leeward in accordance with the terms of the Contract; failing to pay the mobilization fee as provided in the Contract; failing to authorize overtime as provided in the Contract; failing to coordinate the work of other contractors as required in the Contract; and failing to properly administer the Contract as provided in the Contract documents. (McMillan Declaration, Exhibit 1)

3

AUA damages in the amount of $58,500.00, plus interest at the rate of 7% per annum as provided

in the Award.  (A copy of the Final Arbitration Award certified on June 22, 2012, and the August

8, 2012 modified Final Award is annexed hereto as Exhibit 3.)

      9.     On August 16, 2012, Leeward commenced a proceeding in this Court styled

*Leeward Construction Company, Ltd. v. American University of Antigua – College of Medicine, et*

*ano.*, 12-CV-062080-LAK/GWG, for an order confirming the First Arbitration Award and for the

entry of a money judgment against AUA in the amounts stated in the First Arbitration Award

pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards as

codified at 9 U.S.C. §201 *et seq*. (the "Convention").[2]  On September 25, 2012, AUA cross-moved

to dismiss pursuant to the *Forum Non Conveniens* Doctrine and Fed. R. Civ. P. 12(b)(6) or in the

alternative, to vacate or modify the award pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et*

*seq*.  On March 26, 2013, the Court entered a Memorandum Opinion which, *inter alia*, granted

Leeward's petition. *See Leeward Constr. Co. v. Am. Univ. of Antigua*, 2013 U.S. Dist. LEXIS

43350 (SDNY 2013) (A copy of the opinion is annexed hereto as Exhibit 4.)   On June 11, 2013,

the Court's Clerk entered the Corrected Amended Judgment. (A copy of the June 11, 2013

Corrected Amended Judgment is annexed hereto as Exhibit 5.)

      10.    On April 29, 2013, AUA filed a Notice of Appeal and thereafter, moved the Court

for a stay of enforcement of the First Judgment pending the outcome of its appeal.  On August 9,

2013, AUA filed a *supersedeas* bond in the amount of $1,073,000.  On August 16, 2013, the Court

entered a Stipulation and Consent Order staying the enforcement of the First Judgment pending

---

[2] The Convention, also known as the "New York Convention" and the "1958 Convention," was enacted on June 10, 1958 and ratified by the United States on December 29, 1970. S*ee Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15-18 n.1. (2d Cir. 1997).  The Commonwealth of Antigua and Barbuda ratified the Convention on February 2, 1989. *See* http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/ NYConvention_status.html.

the outcome of AUA's appeal. (A copy of the Court's August 16, 2013 Stipulation and Consent Order is annexed hereto as Exhibit 6.)   Pursuant to subsequent Local 42.1 stipulations between the parties, AUA now has until February 2, 2015 to reinstate and perfect its appeal. (A copy of the parties' November 18, 2014 stipulation extending the AUA's deadline to reinstate and perfect its appeal is annexed hereto as Exhibit 10.)

### The Second Arbitration Proceeding

11.     On February 7, 2013, Leeward commenced a second arbitration proceeding against AUA with the American Arbitration Association International Center for Dispute Resolution to arbitrate a small amount of money ($30,762.00) outstanding after the First Arbitration Proceeding (the "Second Arbitration Proceeding"). (A copy of Leeward's February 7, 2011 Demand for Arbitration is annexed to the AUA's Petition to Confirm as Exhibit B.)   During the First Arbitration Proceeding, the AUA admitted it was liable to pay to Leeward the outstanding amount as a result of a mis-tabulation during invoicing on the project. (Exhibit 3, pp. 11-12)  Neither party was aware of the outstanding amount until the AUA pointed it out during the hearings.  Thus, the First Arbitration Proceeding Tribunal held that it could not award the amount to Leeward because it was not part of the First Arbitration Proceeding. (Exhibit 3)   Leeward attempted to obtain payment from the AUA for this amount but was refused.

12.     The AUA has pled its answer and counterclaims in this matter several times.  In its initial Answer and Counterclaim, dated February 27, 2013, the AUA denied that it owes Leeward the monies for the invoice mis-tabulation (despite admitting the liability on multiple occasions during the First Arbitration Proceeding (Exhibit 3)) and, as a counterclaim, the AUA asserted, for the very first time, that it is entitled to a refund of all of the ABST that it paid to Leeward on the project, in the amount of EC $3,614,522.41/US$1,338,723.00 (the "ABST claim").   (A copy of

5

AUA's Answer and Counterclaim is annexed to the AUA's Petition to Confirm as Exhibit C.) Subsequently, the AUA amended its answer to assert an additional counterclaim alleging various construction defect claims in the amount of EC$2,642,450.00/US$978,685.00 (the "Defective Work claims").   The AUA's Defective Work claims allege defects with respect to the staircases, wall surfaces, roof, scuppers and pipes, windows, tracery and fascia, elevator shafts, and concrete installed on the Project. (A copy of the AUA's Revised Statement of Counterclaims is annexed to the AUA's Petition to Confirm as Exhibit D.)  Thereafter, the AUA served an Amended Answer and Counterclaims dated August 1, 2013.  The AUA failed to include a copy of this final pleading with its petition. (A copy of the AUA's August 1, 2013 Amended Answer and Counterclaims is annexed hereto as Exhibit 13.)  The AUA has admitted herein that these claims were known to the AUA at the time of the First Arbitration Proceeding. (A copy of Leeward's moving papers before the Tribunal is annexed to the Sclafani Affirmation, dated November 20, 2014 at Exhibits A and B; *see* Leeward Exhibits 46, 50, 60-65 as annexed to the Sclafani Affirmation, Exhibit B)

13.    The parties agreed to submit their claims to the Tribunal for decision in the nature of motions for summary judgment.  In its motion, Leeward argued that AUA's ABST claim should be dismissed because (a) the AUA was required under the  Contract, read  in conjunction with the  ABST  Act, to pay Leeward  ABST;  (b) the doctrine of *res judicata* bars the ABST claim; (c) the AUA lacks standing  to bring the ABST claim; (d) the doctrines of waiver and/or modification bar the ABST claim; and (e) the ABST claim does not arise under the Contract and, therefore, is not subject to arbitration.  With regard to the AUA's defective work claims, Leeward argued that the claims were subject to dismissal because (a) the doctrine of *res judicata* bars the Defective Work claims; (b) the AUA failed to comply with the required notice provision under the Contract and, as a result, the Defective Work claims are untimely; and (c) the windows portion of the Defective Work

claims is not subject to arbitration because the windows work was performed under a separate contract.  The AUA moved for summary judgment on its ABST claim and for dismissal of several of Leeward's defenses.  (Copies of the parties' submissions to the Tribunal are annexed to the Affirmation of Leonard Sclafani, dated November 20, 2014 as Exhibits A through I.  A copy of Leeward's moving papers is annexed thereto as Exhibits A and B.  Leeward's reply in further support of its motion to dismiss was not included and is annexed hereto as Exhibit 12.)

14.     On February 6, 2014, the Tribunal issued a decision which failed to resolve any of the major issues in the proceeding. (A copy of the Decision on the Parties' Dispositive Motions and Related Cross-Motions is annexed to the AUA's Petition to Confirm as Exhibit E.)  On April 28, 2014, at the joint request of the parties, the Tribunal conducted a day-long oral argument in Miami, Florida in which it heard from counsel for both parties.  On September 18, 2014, the Tribunal issued a Partial Final Award which, *inter alia*, dismissed Leeward's claim and granted AUA's ABST claim.  (A copy of the Partial Final Award is annexed to the AUA's Petition to Confirm as Exhibit F.)  The Partial Final Award contained a lengthy dissenting opinion which detailed the errors in the Partial Final Award.  The AUA failed to include the dissenting opinion with its Petition to Confirm. (A copy of the complete Partial Final Award, including the dissenting opinion is annexed hereto as Exhibit 7.)

15.     Leeward opposes the AUA's petition and motion to confirm the Partial Final Award and cross-moves the Court for an Order denying enforcement, vacating or modifying the Final Partial Award, dated September 18, 2014, and reinstating Respondent's claim pursuant to the Federal Arbitration Act, 9 U.S.C. §§1, *et seq*. and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and for such other relief as the Court deems just and proper.

16.     For the Court's convenience, a copy of the Antiguan Arbitration Act is annexed hereto as Exhibit 8.

17.     For the Court's convenience, a copy of the ABST Act (2006), as amended (2008) is annexed hereto as Exhibit 9.

18.     For the Court's convenience, copies of all non-U.S. precedent relied upon by Leeward before the Tribunal during the parties' motion practice is annexed hereto as Exhibit 11.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:       December 11, 2014

_____
                                          Veronica A. McMillan, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,                                    Case No. 1:14-CV-8410-DLC/GWG
                                                        (ECF CASE)
                                    Petitioner,

                    -against-

LEEWARD CONSTRUCTION COMPANY, LTD.,

                                    Respondent.
-------------------------------------------------------------x


**RESPONDENT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF CROSS-MOTION TO DENY ENFORCEMENT, VACATE AND/OR MODIFY
AND IN OPPOSITION TO THE PETITION AND MOTION TO CONFIRM
<u>ARBITRATION AWARD</u>**


Dated: Poughkeepsie, New York
       January 9, 2015

                                    Respectfully Submitted:

                                    **LEWIS & GREER, P. C.**
                                    *Attorney for Respondent,*
                                    *Leeward Construction Company, Ltd.*
                                    510 Haight Avenue, P. O. Box 2990
                                    Poughkeepsie, New York 12603
                                    Telephone: 845-454-1200


OF COUNSEL:
Veronica A. McMillan, Esq.
J. Scott Greer, Esq.

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ............................................................................................................3

THE PARTIAL FINAL AWARD IS SUBJECT TO VACATUR
OR MODIFICATION AND IS NOT ENFORCEABLE UNDER
THE CONVENTION AND FAA ...............................................................................3

A.  The Tribunal Decided Issues Outside of Its Authority and the
Scope of the Arbitration Agreement .............................................................3

    i.   The Tribunal Decided a Claim That Was Not Presented to It .................4

    ii.  The Tribunal Decided an Issue Related to the Application
of Tax Law That is Outside Its Authority and the Scope
of the Arbitration Agreement.................................................................8

B.  The Award is Non-Final and Ambiguous....................................................10

C.  The Partial Final Award Constitutes a Manifest Disregard of the Law.......12

CONCLUSION........................................................................................................16

## TABLE OF AUTHORITIES

CASES                                                      PAGE(S)

*Benjamin v. Traffic Executive Assoc. Eastern Railroads,*
    869 F.2d 107 (2d Cir. 1989)...................................................................................13

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382 (1987) ...........................5

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 23 (2d Cir. 1995)....................5, 6, 9

*DiRussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818 (2d Cir. 1997)..............................3

*Dworkin-Cosell Interair Courier Services, Inc. v. Avraham,*
    728 F.Supp. 156 (SDNY 1989)...............................................................................10

*Fibrosa Spolka Akcyina v. Fairbarin Lawson Combe Barbour Ltd,*
    [1943] A.C. 32 ...........................................................................................................4

*Henderson v Henderson,* 3 Hare 100 (1943) ........................................................12

*Iran Aircraft Indus. v. Avco Corp.,* 980 F.2d 141 (2d Cir. 1992) ....................................4

*Kuklachev v. Gelfman,* 600 F.Supp.2d 437, 459-460, 466 (EDNY 2009)..................................5, 6

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.,*
    252 F.3d 218, 224 (2d Cir. 2001)...........................................................................5, 9

*Mavis Henry v. Tyrone Warner,* Claim No. ANUHCV 2000/0277,
    Eastern Caribbean Supreme Court (2009) .............................................................12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930,
    933-934 (2d Cir. 1986) ...........................................................................................12

*Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411 (2d Cir. 1980) ..........................10

*N.L.R.B. v. United Technologies,* 706 F.2d 1254 (2d Cir. 1988)...................................13

*North River Insurance Co. v. Allstate Insurance Co.,*
    866 F.Supp. 123 (S.D.N.Y. 1994) ..........................................................................13

*Pearl Seas Cruises, LLC v. Irving Shipbuilding, Inc.,*
    2001 U.S. Dist. LEXIS 87728 (Dist. of Conn. 2011) ...........................................10

*People v. Evans,* 94 N.Y.2d 499, 503 (2000) ........................................................12

*Price v. Cushman & Wakefield, Inc.*, 808 F.Supp.2d 670, 700-701 (SDNY 2011) ...................5, 9

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*,
    157 F.3d 174 (2d Cir. 1998)......................................................................................11

*Superintendent of Ins. v. Ochs*, 377 F.3d 209 (2d Cir. 2004) ...........................................5

*T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339
    (2d Cir. 2010)), *aff'd.*, 2012 U.S. App. LEXIS 1069 (2d Cir. 2012)....................13

*Westdeutsche Landesbank Girozentrale v. Islington London Borough Council*,
    [1996] 2 WLR 802(HL) ...........................................................................................4

*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209
    (2d Cir. 2002)...........................................................................................................12

*Westminster Secs. Corp.*, 2011 U.S. Dist. LEXIS 5167, *12 (SDNY 2011)..................13

*Woods v. Dunlop Tire Co.*, 972 F.2d 36 (2d Cir. 1992).................................................13


STATUTES

9 U.S.C. § 10(a)(3).............................................................................................................4

9 U.S.C. § 10(a)(4).............................................................................................................3

9 U.S.C. § 11(2).................................................................................................................3

21 U.S.T. 2517...................................................................................................................3


OTHER AUTHORITIES

Antigua Arbitration Act ...................................................................................................11

ABST Act (2006), *as amended* (2008) .......................................................................8, 9, 10

## PRELIMINARY STATEMENT

This proceeding arises out of a contract between the American University of Antigua – College of Medicine ("Petitioner" or "AUA") and Leeward Construction Company, Ltd. ("Respondent" or "Leeward") for the construction of a medical school (the "Contract") in St. Johns, Antigua (the "Project"). The parties have been engaged in arbitration before a Tribunal established by the American Arbitration Association International Center for Dispute Resolution. The underlying arbitration is the second arbitration proceeding between the parties concerning the Contract and the Project.

On February 7, 2013, Leeward commenced the underlying proceeding to arbitrate a small amount of money (US $30,762.00) outstanding after the First Arbitration Proceeding (the "Second Arbitration Proceeding"). During the First Arbitration Proceeding, the AUA admitted it was liable to pay to Leeward the outstanding amount as a result of a mis-tabulation during invoicing on the Project. *See* McMillan Declaration, Exhibit 3, First Arbitration Award, pp. 11-12. The First Arbitration Proceeding Tribunal held that it could not award the amount to Leeward because it was not part of the First Arbitration Proceeding and indeed, did not come to light until the hearings. In the Second Arbitration Proceeding, AUA asserted for the first time claims relating to Antigua and Barbuda Sales Tax ("ABST") it paid and construction defect claims related to the Project. AUA's claims in the Second Arbitration Proceeding amount to several million dollars in alleged damages above and beyond those it alleged in the First Arbitration Proceeding. AUA knew about these claims at the time of the First Arbitration Proceeding, but intentionally elected not to bring the claims at that point in time. See Sclafani Affirmation, Exhibit B, Leeward's Exhibits 46, 50, 60-65 as contained therein.[1]

---

[1] A copy of Leeward's Exhibits 1-65 in the motion practice before the Tribunal is annexed to the Sclafani Affirmation, dated November 20, 2014, as Exhibit B.

1

On September 18, 2014, the Tribunal issued a Partial Final Award which, *inter alia*, dismissed Leeward's claim and granted the AUA's ABST claim. The Partial Final Award included a twenty-page vigorous Dissenting Opinion in which Arbitrator Romero pointed out five significant problems with the Partial Final Award. (A copy of the complete Partial Final Award, including the "Dissenting Opinion" is annexed to the McMillan Declaration as Exhibit 7.)  The defects in the Partial Final Award include the fact that the Tribunal exceeded the scope of its authority and the arbitration agreement between the parties; the Partial Final Award is non-final and ambiguous; and the Partial Final Award constitutes a manifest disregard for the law. The AUA has petitioned this Court to confirm the Partial Final Award without regard to the significant defects contained therein.  Leeward has cross-moved the Court to deny enforcement and vacate and/or modify the Partial Final Award, including reinstatement of Leeward's claim. Given the fatal defects in the Partial Final Award, the AUA's petition to confirm should be denied and Leeward's cross-motion should be granted.

## ARGUMENT

### THE PARTIAL FINAL AWARD IS SUBJECT TO VACATUR OR MODIFICATION AND IS NOT ENFORCEABLE UNDER THE CONVENTION AND FAA

AUA seeks confirmation of the Partial Final Award and entry of judgment in accordance therewith pursuant to the Convention, 21 U.S.T. 2517, as incorporated into the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§201-208. Leeward has cross-moved pursuant to the Convention and the FAA for an order denying enforcement and vacating and/or modifying the Partial Final Award, including reinstatement of its claim against the AUA as the Tribunal decided issues outside the scope of its authority and the arbitration agreement between the parties; the Partial Final Award is non-final and ambiguous; and the Tribunal manifestly disregarded the law. In reply, the AUA disputes each of these claims. In doing so the AUA interjects untrue, irrelevant and unsupported facts that were not part of the underlying motion practice. The AUA's objections do not overcome the illegitimacy of the Tribunal's actions. As such, the Partial Final Award should be denied enforcement and vacated and/or modified, including the reinstatement of Leeward's claim against the AUA.

### A. The Tribunal Decided Issues Outside of Its Authority and the Scope of the Arbitration Agreement

Both the FAA and the Convention provide for vacatur of an arbitration award where the arbitrators have exceeded their authority as provided in the parties' arbitration agreement. *See* 9 U.S.C. §10(a)(4); *see also*, 9 U.S.C. §11(2) and Article V of the Convention. A court's inquiry in this regard focuses on "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue..." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 824 (2d Cir. 1997) A tribunal's actions in passing on a matter not before it or outside the scope of its authority invokes questions of due process in violation of 9

3

U.S.C. §10(a)(3) and Article V(1)(b) of the Convention and should not be countenanced in a petition to confirm. *See, e.g., Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d Cir. 1992) (These provisions protect "the fundamental requirement of due process …the opportunity to be heard at a meaningful time and in a meaningful manner.")

### i.   The Tribunal Decided a Claim That Was Not Presented to It

In granting the AUA's ABST claim on the theory of unjust enrichment, the Tribunal exceeded the scope of the matters submitted to them for decision. *See* Leeward Memorandum in Support of its Cross-Motion, Point I, Sub-section A, pp. 11-15; *see also*, McMillan Declaration, Exhibit 7, Dissenting Opinion, pp. 8-12. In its reply brief, the AUA claims that "having fully participated in the Arbitration, Leeward may not now challenge the authority of the Arbitrators to decide the issues raised in the Arbitration." AUA Reply Memorandum, Point I, Sub-section a, p. 10. AUA has mischaracterized the issue. The issue is not whether the Tribunal had any authority over the parties. Rather, the Tribunal's authority did not extend to a claim for unjust enrichment because the claim is equitable in nature; does not arise out of or relate to the Contract; and the AUA dropped the claim from its final pleading.

In an attempt to justify the Tribunal's decision, the AUA alleges that the Contract's arbitration clause is broad enough to encompass its unjust enrichment claim. *See* AUA Reply Memorandum, Point I, Sub-section c, pp. 11-13. The AUA's argument, however, is inapplicable because unjust enrichment is an equitable claim. As a claim sounding in equity, it cannot arise out of or relate to a contract. *See Fibrosa Spolka Akcyina v. Fairbarin Lawson Combe Barbour Ltd,* [1943] A.C. 32, 61 (holding that the obligation to refund or repay a mistaken payment on the basis of unjust enrichment is imposed by law and not by contract); *Westdeutsche Landesbank Girozentrade v. Islington London BC,* [1996] 2 WLR 802(HL) (holding that the obligation to

4

refund or repay a mistaken payment on the basis of unjust enrichment is imposed by law and not

be contract); *see also, Superintendent of Ins. v. Ochs*, 377 F.3d 209, 213 (2d Cir. 2004)

("[U]njust enrichment would only exist where no prior agreement govern the rights of the parties

…[t]he existence of a valid and enforceable written contract governing a particular subject

matter ordinarily precludes recovery in quasi contract for events arising out of the same subject

matter.")(quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382 (1987)).[2]

Further, even if the Contract's arbitration agreement was as broad as the AUA claims it is, it still

would not encompass the AUA's unjust enrichment claim because the claim does not

"implicate[] issues of contract construction or the parties' rights and obligations under it."

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995); *Price v. Cushman*

*& Wakefield, Inc.*, 808 F.Supp.2d 670, 700-701 (SDNY 2011) (quoting *Louis Dreyfus Negoce*

*S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)); *see also, Kuklachev*

*v. Gelfman*, 600 F.Supp.2d 437, 459-460, 466 (EDNY 2009) (equitable claim for unjust

enrichment held non-arbitrable under broad contract arbitration clause).

In *Kuklachev v. Gelfman*, the court interpreted an arbitration clause contained within an

agreement between the parties to promote theatrical performance in the United States.  The

arbitration clause provided that all matters "arising from" the contract would be arbitrated. *See*

*Id.* at 459.  The *Kuklachev* court found the subject arbitration clause to be broad in its scope.

However, the plaintiffs' claims were not ones arising from the parties' contract but rather, stem

from the plaintiffs' claim that the defendants stole from the plaintiffs.  Thus, even under the

terms of a broad arbitration clause, the plaintiffs' claims, including their claim for unjust

enrichment, fell outside the arbitration clause. *See Id.* at 459-460, 466.

---

[2] A copy of *Fibrosa Spolka Akcyina* and *Westdeutsche Landesbank Girozentrade* as well as all other foreign authorities referred to herein is annexed to the McMillan Declaration as Exhibit 11.

Here, the parties' arbitration agreement provides that all matters "arising out of or related to the Contract" will be subject to arbitration.  AUA Petition, Exhibit A, §4.6.1.  The arbitration clause at issue herein is not even as broad as the clause contained in the *Kuklachev* agreement.  Even were the Court to find that the Contract's arbitration clause is as broad as the *Kuklachevc* clause, however, the AUA's ABST claim still would not be subject to arbitration.  Broad arbitration clauses still only encompass a claim where the claim "implicates issues of contract construction or the parties' rights and obligations under it." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)  The AUA's ABST claim is based on a November 17, 2009 correspondence it received from the Antigua and Barbuda tax authorities instructing the AUA to seek ABST refunds from its vendors. See Sclafani Affirmation, Exhibit B, Leeward Exhibit 50 therein.  Essentially, AUA claims that based on this pronouncement (which was issued after the Project was completed and is contrary to the ABST Act) Leeward was unjustly enriched in collecting the ABST in the first instance.  But, whether or not ABST was due and payable on the Project is a question arising out of the ABST Act, itself not the Contract – the Project would have been subject to or exempt from ABST regardless of the existence of the Contract. *See* McMillan Declaration, Exhibit 9, ABST Act, Part II.  Further, the AUA previously acknowledged that its unjust enrichment claim did not arise out of or relate to the Contract. *See* AUA Petition, Exhibit D, Item I.E.  Thus, the AUA's claim by its very nature, stands by itself, separate and independent of any contract claim or claim arising out of the Contract. *See Kuklachev*, 600 F.Supp.2d at 459-460, 466.  Awarding the AUA damages based on a theory of unjust enrichment is outside the scope of the Tribunal's authority in violation of the FAA and the Convention.

The AUA also takes issue with Arbitrator Romero's conclusion that the AUA did not

have a claim for unjust enrichment before the Tribunal for decision.   Essentially, the AUA claims that because the parties referred to unjust enrichment in their motion papers, the claim was before the Tribunal.  *See* AUA Reply Memorandum, Point I, Sub-section d, pp. 13-14.  In fact, AUA pled its claims and defenses in this proceeding on three separate occasions, the last of which failed to refer to any unjust enrichment claim. *See* AUA Petition, Exhibits C and D; McMillan Declaration, Exhibit 13.   Arbitrator Romero correctly concluded that the AUA's unjust enrichment claim was dropped as of its final pleading – a pleading that along with Arbitrator Romero's dissenting opinion, the AUA conveniently neglected to provide to this Court with its petition papers. *See* McMillan Declaration, Exhibits 7 and 13.  Having dropped the unjust enrichment claim from its final pleading, the AUA did not have such a claim before the Tribunal for decision.  In basing their decision to award the AUA EC$3,614,522.41 in ABST repayments on a claim that the AUA dropped in its final amended pleading in August, 2013, the Tribunal violated Leeward's due process and exceeded its authority. *See* McMillan Declaration, Exhibit 7, Dissenting Opinion, pp. 8-12.  The Partial Final Award was made in error and should be denied enforcement, vacated and/or modified and Leeward's claim reinstated.

Finally, the AUA attempts to defend the Tribunal's decision by interjecting untrue, irrelevant and unsupported facts. *See* AUA Reply Memorandum, Point I, Sub-section b, pp. 10-11.  The AUA baldly claims that Leeward invoiced, collected and then "pocketed" ABST from the AUA.   There is no basis in the record for this assertion other than its own supposition.  Leeward collected the ABST from the AUA.   However, the AUA has no evidence and the Tribunal did not receive any evidence to conclude that Leeward "pocketed" the money.  Leeward was obligated to pay the ABST down the stream of commerce to its subcontractors and vendors for the purchase of services and materials for the Project. *See* McMillan Declaration, Exhibit 9,

7

ABST Act, Part VII, §27.  The AUA has no evidence to suggest that Leeward did not in fact, pay the funds forward.  Moreover, what Leeward did with the ABST after it was collected from the AUA is irrelevant to the question of whether it was required to collect the funds in the first instance pursuant to the ABST Act.  The AUA has repeatedly admitted throughout these proceedings that it was obligated to pay ABST on the Project because it could not demonstrate to Leeward or other contractors on the Project that ABST was not due and owing. *See* AUA Reply Memorandum, pp. 6-7; *see also*, Sclafani Affirmation, Exhibit B, Leeward Exhibits 50-65 therein.  Thus, Leeward was never unjustly enriched.

      ii.     **The Tribunal Decided an Issue Related to the Application of Tax Law That is Outside Its Authority and the Scope of the Arbitration Agreement**

The Partial Final Award also makes findings with regard to the Antigua and Barbuda ABST Act which are outside the Tribunal's authority and the scope of the arbitration agreement.  As with its unjust enrichment claim, the AUA claims the Tribunal was within its authority to review and interpret the ABST Act.  The AUA is incorrect.  Nothing in the ABST Act creates or contemplates a private right of action or otherwise authorizes a private person to enforce the ABST Act.  *See* McMillan Declaration, Exhibit 9, ABST Act.  In fact, the ABST Act expressly contemplates the opposite: the Antiguan government is the only person with the right to enforce the Statute. *See* McMillan Declaration, Exhibit 9, ABST Act, Part XI (2006), *as amended* (2008)  Therefore, if the AUA inadvertently or mistakenly paid ABST to Leeward, then its only remedy is to seek a refund of the ABST from the Antiguan government pursuant to the ABST Act. *See, e.g.*, McMillan Declaration, Exhibit 9, ABST Act, Part XVII, §44 (2006), *as amended* (2008).  Similarly, if Leeward failed to remit ABST to the Antiguan government that it lawfully collected from the AUA, *see* ABST Act, Part II (2006), *as amended* (2008), then the statutory remedy is

not for the AUA to seek recovery of the ABST that it was legally obligated to pay to Leeward; but rather, for the Antiguan government to commence enforcement proceedings against Leeward for failing to remit any ABST that it might owe. *See, e.g.*, McMillan Declaration, Exhibit 9, ABST Act, Part XVI (2006), *as amended* (2008).

Moreover, even under the broadest of arbitration agreements, the Tribunal's attempt to interpret and enforce the ABST Act does not involve contract construction issues or the rights and obligations of the parties under the contract. *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001); *Price v. Cushman & Wakefield, Inc.*, 808 F.Supp.2d 670, 700-701 (SDNY 2011)  Thus, the Tribunal's interpretation of the ABST Act does not fall within the arbitration agreement and as such, is not an arbitrable matter.

In deciding the AUA's ABST claim, the Tribunal has crossed over into tax law enforcement – a right only granted to the Antigua and Barbuda tax authorities – not the Tribunal or the AUA and has denied Leeward its statutory rights and remedies provided under the ABST Act. *See* McMillan Declaration, Exhibit 7, Dissenting Opinion, pp. 13-16.  Indeed, the Partial Final Award works to deny Leeward the due process safeguards provided it under the ABST Act. *See* McMillan Declaration, Exhibit 9, ABST Act.  For example, if the Antigua and Barbuda tax authorities were to find Leeward owed ABST on the Project, Leeward would be entitled to a right of appeal from that determination, including the opportunity to subpoena its suppliers, vendors and subcontractors on the Project to provide documentation to prove that Leeward paid its ABST obligations forward (as required by the ABST Act) when it purchased services and materials for use in constructing the Project. *See* McMillan Declaration, Exhibit 9, ABST Act, Parts XVI, XVIII and XIX, including §§96 and 98.

Finally, in awarding the Partial Final Award, the Tribunal has granted the AUA relief that it is not otherwise entitled to under the terms of the ABST Act.  The Tribunal has countenanced the AUA's failure to adhere to the statutory requirements for obtaining an ABST refund.  The ABST Act provides that refund requests must be made within three years.  Thus, the Tribunal has also breathed life back into an otherwise time barred claim under the ABST Act. *See* McMillan Declaration, Exhibit 9, ABST Act, Part XVII, 44(5) (2006), *as amended* (2008).  The ABST Act provides exclusive procedures for dealing with the AUA's ABST claim and as Arbitrator Romero found, the "Tribunal should not exercise its powers to administer the tax laws of that country and should not interfere with the administration and enforcement of the tax laws of Antigua and Barbuda." McMillan Declaration, Exhibit 7, Dissenting Opinion, p. 15.  The Tribunal has acted outside the scope of its authority and as such, the Partial Final Award should be denied enforcement, vacated and/or modified and Leeward's claim reinstated.

**B.  The Award is Non-Final And Ambiguous**

The FAA and the Convention require that an award be final before it can be enforceable. *See, e.g., Dworkin-Cosell Interair Courier Services, Inc. v. Avraham*, 728 F.Supp. 156, 161 (SDNY 1989)  Final arbitration awards are those

> intended by the arbitrators to be their complete determination of all claims submitted to them' and 'an arbitrator award, to be final, must resolve all issues submitted to arbitration, and … it must resolve them definitely enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication,' including both liability and damages.

*Pearl Seas Cruises, LLC v. Irving Shipbuilding, Inc.*, 2001 U.S. Dist. LEXIS 87728, *5 (Dist. of Conn. 2011) (quoting *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413-414 (2d Cir.

1980) and *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998)) Additionally, the laws of Antigua and Barbuda also require that an arbitration award be final before it can be enforced. *See generally,* McMillan Declaration, Exhibit 8, Antiguan Arbitration Act, Chapter 33 of the Laws of Antigua and Barbuda.

The Partial Final Award is also non-final and ambiguous because it completely fails to address the instance wherein the Antigua and Barbuda tax authorities find that Leeward has no outstanding ABST obligation on the Project because it has already satisfied its obligations by paying ABST to contractors and vendors down the stream of commerce from it for services and materials purchased for the Project. In that instance, the Partial Final Award would require Leeward to pay the AUA funds it has already expended and thus, leave Leeward open to a potential double liability. Moreover, the Partial Final Award contemplates further proceedings. Perhaps the best evidence of the non-finality of the award is the award itself, which states at Paragraph 25:

> (iv)    That in the event that Leeward is later required by the Antigua and Barbuda tax authorities to account for, and pay to, the Antigua Barbuda authorities the ABST on this construction project, AUA shall then be required to indemnify Leeward from any double liability – i.e., liability to both AUA and the tax authorities – arising from Tax Deficiencies as follows:
>
> a.  If a Tax Deficiency is validly asserted against Leeward, then AUA shall indemnify Leeward by paying to the relevant tax authority, upon due notice, an amount not to exceed the Indemnity Cap.    All obligations of indemnification by AUA hereunder shall be limited to making any payments described hereunder.    In the event that no payment is due hereunder, then no indemnification obligation by AUA to Leeward shall be deemed to exist.
>
> (v)    That Respondent AUA's Construction Counterclaim is to be arbitrated by this Tribunal. The Tribunal will hold a telephone

11

conference with the Parties at the earliest convenient date in order
to schedule the following steps of these proceedings;…

AUA Petition, Exhibit F, pp. 10-11.  The Partial Final Award is non-final and ambiguous and as

such, it should be denied enforcement, vacated and/or modified and Leeward's claim reinstated.

### C.  The Partial Final Award Constitutes a Manifest Disregard of the Law

The Partial Final Award constitutes a manifest disregard of the law as the Tribunal

ignored the applicability legal doctrines of *res judicata*, waiver and modification. *See* Leeward

Memorandum of Law in Opposition, Point I, Sub-section C, pp. 16-22.  Arbitrators manifestly

disregard the law where

> The 'governing law alleged to have been ignored by the arbitrators
> [was] well defined, explicit, and clearly applicable … [and] The
> arbitrator[s] must 'appreciate[] the existence of a clearly governing
> legal principle but decide[] to ignore or pay no attention to it.

*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir. 2002) (quoting *Merrill

Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933-934 (2d Cir. 1986))

*Res judicata* is a doctrine of rigid limitation and is not subject to discretion in its

application. *See, e.g., Westerbeke Corp.*, 304 F.3d at 219 (2d Cir. 2002) (citing *People v.

Evans*, 94 N.Y.2d 499, 503 (2000))  Under Antiguan law, *res judicata* requires a party to

present its whole case concerning the same subject matter at the same time and precludes a

party from asserting causes of action concerning the same subject matter in multiple litigations.

*See, e.g., Mavis Henry v. Tyrone Warner,* Claim No. ANUHCV 2000/0277, Eastern Caribbean

Supreme Court (2009) (citing *Henderson v Henderson,* 3 Hare 100, 114-115 (1943). (McMillan

Declaration, Exhibit 11)  Similarly, United States common law holds that a "final judgment on

the merits bars further claims that were or could have been raised in that action." *Benjamin v. Traffic Executive Assoc. Eastern Railroads,* 869 F.2d 107, 111 (2d Cir. 1989); *North River Insurance Co. v. Allstate Insurance Co.,* 866 F. Supp. 123, 127 (S.D.N.Y. 1994)  Important is the identity of the facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which the individual chooses to frame his complaint.  *See Woods v. Dunlop Tire Co.,* 972 F.2d 36, 37 (2d Cir. 1992).  "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Technologies,* 706 F.2d 1254, 1260 (2d Cir. 1988)

The Tribunal was well aware of the governing legal principles of *res judicata* and refused to apply them.  The Tribunal ignored this rigid doctrine that is well-defined, explicit, and clearly applicable to the case. *See Westminster Secs. Corp. v. Petrocom Energy, Ltd.,* 2012 U.S. App. LEXIS 1069 (2d Cir. 2012) Their failure to apply *res judicata* to the case at hand is more than an "error or misunderstanding with respect to the law, or an arguable difference regarding the meaning or applicability of law..." *Westminster Secs. Corp.,* 2011 U.S. Dist. LEXIS 5167, *12 (SDNY 2011) (quoting *T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.,* 592 F.3d 329, 339 (2d Cir. 2010)), *aff'd.,* 2012 U.S. App. LEXIS 1069 (2d Cir. 2012).  Rather, the Tribunal's failure to apply this rigid limitation rises to the level of a manifest disregard for the law.

In opposition, AUA incredibly argues that *res judicata* is inapplicable in the Second Arbitration Proceeding because

13

> the issues underlying AUA's claims and defenses in the present
> arbitration were not relevant to any determination of any of the
> claims advanced by either of the parties in the prior arbitration and
> because it was not necessary in order to determine and of the
> claims or issues raised by either party in the first arbitration for the
> arbitrators in that arbitration to determine any of the issues in the
> instant arbitration, Leeward's contention must be rejected.

AUA Reply Memorandum of Law, Point III, p. 19. AUA's contention could not be further from

the truth. Regardless of whether the AUA believed its ABST Claim and Defective Work claims

were "relevant" to the First Arbitration Proceeding is irrelevant to the question of whether the

AUA was required to raise the claims pursuant to the doctrine of *res judicata*. The fact remains

that the AUA's ABST claim and Defective Work claims herein are barred because they concern

the same subject matter – the Project – that was previously adjudicated in the First Arbitration

Proceeding. They also concern the same series of transactions that were at issue within the First

Arbitration Proceeding – the 27 payment requisitions Leeward submitted to the AUA and the

AUA reviewed, processed and paid, including the payment of ABST. See Sclafani Affirmation,

Exhibit B, Leeward Exhibits 2-30 therein. Indeed, each of the payment requisitions at issue in

the First Arbitration Proceeding had a line item for ABST, which the AUA paid without protest

even though the AUA now claims- after losing the First Arbitration Proceeding -  that it was

never contractually required to pay ABST in the first place. In fact, the AUA admits in its Reply

Brief that with little variation, the exact same evidence was submitted in both proceedings. *See*

AUA Reply Brief, Point III, p. 21. Finally, the AUA admitted in these proceedings that it had

knowledge of its alleged defects and its ABST claim prior to the commencement of the First

Arbitration Proceeding, but elected not to assert the claims. See Sclafani Affirmation, Exhibit B,

Leeward Exhibits 46, 50, 60-65 therein. The AUA failed to adhere to the doctrine of *res judicata*

and should not be permitted to circumvent its effect by allowing the Tribunal's manifest disregard of the law to stand.

Finally, the Tribunal also improperly disregarded the fact that the AUA's ABST claim is barred by the doctrines of waiver and modification. *See* Leeward Memorandum of Law in Opposition, Point I, Sub-section C, pp. 20-22.   In response to this claim, the AUA has essentially claimed that "invoicing AUA for ABST and then pocketing the money, Leeward did not act to its detriment or rely on any act or failure to act of AUA." AUA Reply Brief, Point III, p. 24. The AUA misrepresents the state of facts.  There is no basis in the record for this assertion other than its own supposition.   Leeward collected the ABST from the AUA.   However, the AUA has no evidence and the Tribunal did not receive any evidence to conclude that Leeward "pocketed" the money.  Leeward was obligated to pay the ABST down the stream of commerce to its subcontractors and vendors for the purchase of services and materials for the Project. Moreover, what Leeward did or did not do with the ABST is irrelevant to the question of whether or not the AUA waived its claims or modified the Contract.  The AUA has raised absolutely no issue or question in contravention to Leeward's waiver and modification claims.

In sum, the Tribunal manifestly disregarded the applicability of these doctrines and their impact on the AUA's ABST claim and Defective Work claims.  Accordingly, the Partial Final Award was made in error and should be denied enforcement, vacated and/or modified and Leeward's claim reinstated.

## CONCLUSION

For the reasons set forth herein as well as in its cross-motion, Respondent Leeward Construction Company, Ltd. respectfully requests that this Court deny Petitioner's petition to confirm and grant Respondent's cross-motion and opposition herein and deny enforcement, vacate or modify the arbitration award against it and in favor of Petitioner, American University of Antigua -- College of Medicine, including reinstatement of Respondent's claim against Petitioner.

Dated: January 9, 2015
      Poughkeepsie, New York

                                        Veronica A. McMillan (VM 1107)
                                        **LEWIS & GREER, P.C.**
                                        *Attorney for Respondent,*
                                        *Leeward Construction Company, Ltd.*
                                        510 Haight Avenue, Suite 202
                                        Poughkeepsie, New York 12603
                                        Telephone: (845) 454-1200

To:    Leonard A. Sclafani, Esq.
        Law Offices of Leonard A. Sclafani, Esq.
        *Attorney for Petitioner,*
        *American University of Antigua -- College of Medicine*
        1 Battery Park Plaza, 33rd Floor
        New York, New York 10004
        Telephone: (212) 696-9880