```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
 AMERICAN UNIVERSITY OF ANTIGUA        :
 COLLEGE OF MEDICINE,                  :
                         Petitioner,   :      14cv8410 (DLC)
            -v-                        :
                                       :     OPINION & ORDER
 LEEWARD CONSTRUCTION COMPANY, LTD.,   :
                         Respondent.   :
--------------------------------------X
```

APPEARANCES

For petitioners American University of Antigua College of
Medicine:

Leonard A. Sclafani
LAW OFFICES OF LEONARD A. SCLAFANI, ESQ.
1 Battery Park Plaza, 33rd Floor
New York, NY 10004

For respondent Leeward Construction Company, Ltd.:

Veronica A. McMillan
J. Scott Greer
LEWIS & GREER, P.C.
510 Haight Avenue, P.O. Box 2990
Poughkeepsie, NY 12603

DENISE COTE, District Judge:

     Petitioner American University of Antigua College of

Medicine ("AUA") moves to confirm an international arbitral

award against respondent Leeward Construction Company, Ltd.

("Leeward").  Leeward cross-moves to deny enforcement of,

vacate, or modify the arbitral award, arguing that the award is

non-final and ambiguous; that the Arbitration Tribunal

("Tribunal") exceeded its authority; and that the award

constitutes a "manifest disregard for the law."  AUA also moves

for an order of attachment and a preliminary injunction
regarding a related arbitral award against it that is currently
on appeal.  For the reasons stated below, AUA's petition to
confirm is granted; Leeward's motion to deny enforcement of,
vacate, or modify the award is denied; and AUA's motion for an
order of prejudgment attachment is denied as moot.

## BACKGROUND

AUA and Leeward are corporations organized under the laws
of Antigua and Barbuda.  On September 25, 2008, AUA and Leeward
executed a contract for the construction of a medical school
("Contract").  Two sections of the Contract set out arbitration
provisions (the "Arbitration Provisions"): Section 4.6.1, which
provided that "[a]ny claim arising out of or related to the
Contract . . . shall . . . be subject to arbitration," and
Section 4.6.2, which provided that any arbitration "shall be in
accordance with the Construction Industry Arbitration Rules of
the American Arbitration Association currently in effect."

The medical school was constructed in the Antigua and
Barbuda Free Trade and Processing Zone, where certain business
activities were by law exempt from Antigua and Barbuda Sales Tax
("ABST").  During the period of construction, it was unclear
whether AUA's construction project would be subject to ABST; if
so, that tax would be paid by Leeward, which was transacting

business in the Zone.  Accordingly, with each invoice submitted
to AUA, Leeward included a sum -- 15% of the amount invoiced --
intended to pay any ABST assessed against it.  Ultimately, AUA
paid $1,338,712 to Leeward for this purpose.[1]

Unbeknownst to AUA, however, Leeward never filed ABST tax
returns with nor remitted corresponding ABST tax to the tax
authorities at any time during or after construction.  In
December 2009, after it had paid Leeward the amount above, AUA
concluded on the basis of its communications with the government
that the construction project was, in fact, exempt from ABST.
Although informed at that time that the proper recourse was to
recoup the ABST amounts it had paid to its vendors from those
vendors, including Leeward, AUA intended to seek a tax refund
from the government because it believed that its vendors,
including Leeward, had been paying ABST to the government all
along.  By the end of 2009, Leeward had ceased all business
operations.

---

[1] The sums at issue were all paid in East Caribbean Dollars
("XCD") and the Tribunal awarded damages in XCD.  The parties'
most recent motions differ in their conversions to U.S. Dollars.
Dollar values here will be calculated using the exchange rate as
of April 21, 2015, which is 2.7 XCD to the dollar.  XE Currency
Converter,
http://www.xe.com/currencyconverter/convert/?Amount=1&From=XCD&To=USD (last visited April 21, 2015).

I. The First Arbitration

In February 2011, Leeward initiated arbitration proceedings against AUA before the American Arbitration Association, alleging that AUA breached the Contract by withholding money owed Leeward for elements of the project AUA unilaterally struck from the construction plans; that it was due a "mobilization" fee; and that it was owed penalties for delays occasioned by AUA (the "First Arbitration").  AUA counterclaimed for liquidated delay damages.  During the course of the arbitration, AUA discovered an apparent mistake in Leeward's ABST invoicing -- one that would have benefitted Leeward in the amount of $30,762.80 -- and brought it to Leeward's attention.  In June 2012, the arbitration tribunal awarded Leeward $976,421.37 plus 7% interest per annum and awarded AUA $58,500 in liquidated damages plus 7% interest per annum (the "First Award").[2]  The tribunal refused, however, to include the apparent $30,762.80 discrepancy in its award.

Leeward subsequently sought confirmation of the First Award in the United States District Court for the Southern District of New York.  On March 26, 2013, the Hon. Judge Lewis A. Kaplan granted Leeward's petition, Leeward Const. Co. v. Am. Univ. of

---

[2] The First Award was modified in August of 2012 to correct clerical errors.

<u>Antigua-Coll. of Med.</u>, No. 12cv6280 (LAK), 2013 WL 1245549, at *5 (S.D.N.Y. Mar. 26, 2013), entering judgment for Leeward in the amount of $966,026.79.  AUA filed a notice of appeal on April 29.  On May 8, 2013, the parties executed an agreement staying enforcement of Leeward's judgment for the First Award (the "Stay Agreement") pending resolution of a second arbitration proceeding begun earlier that year (the "Second Arbitration").  Under the terms of that Agreement, AUA filed a payment bond in the amount of $1,073,000 to secure Leeward's judgment and waived its appellate rights as to the First Award.

Almost immediately, Leeward repudiated the Stay Agreement, claiming AUA had not adequately informed it of the nature of AUA's counterclaims in the Second Arbitration, and obtained a Writ of Execution.  On June 29, AUA sought a stay of Leeward's judgment from the court, pursuant to either the Stay Agreement or the court's inherent powers.  Before this motion was resolved, however, the parties entered into a Standstill Agreement, by which terms AUA withdrew its motion to stay and converted its existing bond into a <u>supersedeas</u> bond, and Leeward agreed not to seek enforcement of the First Award pending the outcome of AUA's appeal.  On August 13, 2013, the court entered a Stipulation and Consent Order staying enforcement of the judgment.  Pursuant to Local Rule 42.1, the parties agreed that AUA would withdraw its appeal without prejudice and subject to

reinstatement.  AUA reinstated its appeal on February 2, 2015, and appellate briefs were fully submitted on March 30.  Oral argument has not yet been scheduled.

II. The Second Arbitration

On February 7, 2013, Leeward commenced a Second Arbitration proceeding against AUA to recover the purportedly mis-tabulated $30,762.80 it was unable to obtain in the First Arbitration ("Leeward's ABST Claim").  On February 27, AUA counterclaimed, seeking to recover the $1,338,712 it had paid to Leeward for ABST on the grounds of fraud or misrepresentation, mutual mistake, and unjust enrichment ("AUA's ABST Counterclaim").  AUA subsequently amended its answer to include a counterclaim seeking $978,685.18 in damages for numerous alleged construction defects ("Defects Counterclaim"), and on August 13 filed a further amended answer.  This final answer did not explicitly mention AUA's allegation of unjust enrichment.

The parties agreed to submit their claims to the arbitration tribunal ("Tribunal") for decision, in an arbitral equivalent of a motion for summary judgment.  In its motion, Leeward asserted a cornucopia of defenses to AUA's ABST Counterclaim, including that it was barred by res judicata, that AUA lacked standing to bring it, that the doctrine of waiver applied, and that the claim was not encompassed by the Arbitration Provisions.  AUA and Leeward submitted lengthy

6

memoranda of law to the Tribunal; both parties' memoranda addressed whether a claim of unjust enrichment could be maintained.  Ultimately, in a decision of February 6, 2014, the Tribunal concluded that it could not decide the issues on the basis of motion practice and, at the request of the parties, held day-long oral argument in Miami, Florida on April 28. Among the issues addressed at oral argument was AUA's claim of unjust enrichment.

On September 18, 2014, the Tribunal issued a decision and partial final award (the "Second Award") denying Leeward's ABST Claim on the merits, rejecting Leeward's defenses to AUA's ABST counterclaim, and granting AUA's ABST Counterclaim in the amount of $1,338,712.  It explained that the Second Award was granted on AUA's claim of unjust enrichment.  The Tribunal declined, however, to decide AUA's Defects Counterclaim.

On October 16, AUA petitioned this Court to confirm the Second Award pursuant to 9 U.S.C. § 201.  Leeward filed its opposition on December 11, cross-moving to deny enforcement of, vacate, and/or modify the Second Award.  The motions were fully submitted on January 9, 2015.

On February 17, asserting that Leeward is effectively a shell corporation and that its only asset is the judgment on the First Award, AUA moved for an order of attachment of Leeward's First Award pursuant to Fed. R. Civ. P. 64 and New York Civil

Practice Law and Rules §§ 6212 & 7502.  AUA moved as well for a
preliminary injunction to enforce the parties' Stay Agreement of
May 8, 2013.  That motion was fully submitted on March 13, 2015.


                              DISCUSSION

     Both the petition for confirmation and cross-motion to
vacate or modify invoke the provisions of the Convention on the
Recognition and Enforcement of Foreign Arbitral Awards, June 10,
1958, 21 U.S.T. 2517 ("New York Convention"), as implemented by
the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 et seq.  The
New York Convention applies "to the recognition and enforcement
of arbitral awards made in the territory of a State other than
the State where the recognition and enforcement of such awards
are sought" and "arbitral awards not considered as domestic
awards in the State where their recognition and enforcement are
sought."  New York Convention, art. I(1).

     Confirming an arbitration award "ordinarily is a summary
proceeding that merely makes what is already a final arbitration
award a judgment of the court."  Citigroup, Inc. v. Abu Dhabi
Inv. Auth., 776 F.3d 126, 132 (2d Cir. 2015) (citation omitted).
The FAA provides that a court confronted with a motion to
confirm an arbitral award governed by the New York Convention
"shall confirm the award unless it finds one of the grounds for
refusal or deferral of recognition or enforcement of the award

                                 8

specified in the said Convention." 9 U.S.C. § 207. The New York Convention provides seven defenses to enforcement, and "[g]iven the strong public policy in favor of international arbitration, the party seeking to avoid summary confirmance of an arbitral award has the heavy burden of proving that one of the seven defenses applies." VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P., 717 F.3d 322, 325 (2d Cir. 2013) (citation omitted). Among other things, the Convention allows the defense that an arbitration "award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration," New York Convention, art. V(2)(c), and that "[t]he party against whom the award is invoked . . . was . . . unable to present his case," id., art. V(2)(b).

Where an award "was entered in the United States, however, the domestic provisions of the FAA also apply." Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012). Among the FAA's grounds for vacatur is that the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). In addition, courts have "recognized a judicially-created ground, namely that an arbitral decision may be vacated when an

arbitrator has exhibited a manifest disregard of law." Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 (2d Cir. 2011) (citation omitted).  This ground has been "consistently accorded the narrowest of readings." Id. at 122 (citation omitted).

Leeward opposes confirmation of and seeks to vacate the Second Arbitration Award on three grounds.  First, it argues that the Tribunal exceeded its authority, in violation of Article (V)(1)(c) of the Convention and 9 U.S.C. 10(a)(4).[3] Second, it argues that the award is "non-final and ambiguous" and thus does not satisfy the condition of finality under 9 U.S.C. 10(a)(4).  Third, it argues that the Tribunal acted with "manifest disregard for the law."  None of these arguments has merit.

I. The Tribunal "Exceeded Its Authority."

Leeward first argues that the Tribunal exceeded its powers, citing the FAA, 9 U.S.C. 10(a)(4), and Article V of the New York Convention.  Strictly speaking, only the FAA applies: "That an arbitration panel exceeded its powers is not . . . one of the

---

[3] The Tribunal's Second Award decision states as follows: "The undersigned arbitrators hereby certify that, for the purposes of Article 1 of the New York Convention . . . this Partial Final Award was made as in St. John, Antigua, Antigua and Barbuda." Both parties assume that the FAA's statutory defenses apply, and thus assume that the Second Award was entered in the United States.  The Court therefore understands this language not to establish otherwise.

seven exclusive grounds for denying enforcement under the New York Convention." Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 92 (2d Cir. 2005). Under the FAA, a party seeking to overturn an award because the arbitrator has exceeded her powers "bears a heavy burden," Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013), and "vacatur under the excess-of-powers standard is appropriate only in the narrowest of circumstances." Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 754 F.3d 109, 113 (2d Cir. 2014) (citation omitted). "It is not enough to show that the arbitrator committed an error -- or even a serious error." Id. (citing Sutter, 133 S. Ct. at 2068). The "sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." Sutter, 133 S. Ct. at 2068. Leeward argues that the Tribunal exceeded its powers in two ways.

A. Unjust Enrichment Claim Improperly Presented

Leeward contends that the Tribunal erroneously awarded damages on the basis of an unjust enrichment claim that, for two reasons, was not properly presented. This, it contends, exceeded its powers.

1. AUA Waived Its Unjust Enrichment Claim.

First, Leeward invokes Article V(1)(b) of the New York Convention to argue that the Tribunal "violated Leeward's due

process" when it decided the AUA unjust enrichment claim because
AUA "waived" that claim by dropping it from its final pleading.
Article V(2)(b) permits vacatur if "[t]he party against whom the
award is invoked . . . was . . . unable to present his case,"
New York Convention, art. V(2)(b).  This provision "essentially
sanctions the application of the forum state's standards of due
process," and accordingly "due process rights are entitled to
full force under the Convention as defenses to enforcement."
Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 145 (2d Cir.
1992) (citation omitted).  The Tribunal concluded that AUA
"formulated its counterclaim such that it includes a claim of
unjust enrichment . . . and the Parties' subsequent oral and
written submissions have addressed this unjust enrichment
claim."  A review of the factual record discloses no reason to
disagree with the Tribunal.  Leeward has failed to establish
that it was denied "an opportunity to be heard at a meaningful
time and in a meaningful manner."  Iran Aircraft, 980 F.2d at
146 (citation omitted).

        2. The Tribunal Lacked Power to Decide the Claim.

    Second, Leeward argues that because unjust enrichment is an
equitable claim, it cannot by definition be a dispute "arising
out of or related to the Contract."[4]  Leeward is wrong.  To begin

---

[4] Although the New York Convention does not provide an "excess-of-powers" defense, it does allow a defense that arbitrators

with, the Tribunal's conclusion that the claim was encompassed
by the Arbitration Provisions is accorded great deference.  See
Schneider v. Kingdom of Thailand, 688 F.3d 68, 73 (2d Cir.
2012).  Moreover, under broad arbitration clauses, claims of
unjust enrichment predicated on parties' obligations under a
contract are presumptively arbitrable.  See, e.g., JLM Indus.,
Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 167, 183 (2d Cir. 2004)
(holding common-law claim of unjust enrichment was encompassed
by clause providing for arbitration of "[a]ny and all
differences and disputes of whatsoever nature arising out of"
the agreement); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d
840, 856 (2d Cir. 1987) (holding that unjust enrichment claim
"predicated on the defendants' contractual duty to bill . . .
accurately . . . arises under" contract).  A clause, like these
Arbitration Provisions, that "submit[s] to arbitration 'any
claim or controversy arising out of or relating to the
agreement' is the paradigm of a broad clause," Collins & Aikman
Products Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995),
and AUA's claim -- that Leeward improperly invoiced and

---

decided matters "not contemplated by or not falling within the
terms of the submission to arbitration, or it contains decisions
on matters beyond the scope of the submission to arbitration."
New York Convention, art. V(2)(c).  Although Leeward does not
cite this provision, it is assumed that Leeward meant to invoke
it.

collected money it was not legally owed -- is clearly predicated
on Leeward's obligations under the contract.  The unjust
enrichment claim was properly subject to arbitration.

    B. The Tribunal Improperly "Enforced" Tax Laws.

    Leeward also argues that, in awarding damages for the ABST
money it collected from AUA, the Tribunal exceeded its authority
by engaging in "tax law enforcement -- a right only granted to
the Antigua and Barbuda tax authorities."  But AUA is not
seeking to collect taxes from Leeward on behalf of the Antiguan
government.  This is not a suit to enforce a tax judgment or
obtain a tax refund, as would be presumptively barred under the
"revenue rule."  See United States v. Federative Republic of
Brazil, 748 F.3d 86, 92 n.6 (2d Cir. 2014) ("The 'revenue rule'
. . . provides that courts of one sovereign will not enforce
final tax judgments or unadjudicated tax claims of other
sovereigns." (citation omitted)).  Rather, AUA is seeking the
return of money it paid to Leeward, and which Leeward has to
date retained.  The money may have been earmarked for ABST
payments, but that does not make it an ABST payment.  And while
the Tribunal was required to review provisions of the ABST law
in rendering its decision, this does not make the arbitrator --
or, for that matter, the Court -- a de facto Antigua and Barbuda
tax collector.  This matter clearly fell within the scope of the
Arbitration Clause, and the Tribunal offered an adequate

explanation for its decision.  That decision will not be
disturbed.

II. The Award Is "Non-Final and Ambiguous."

Leeward also argues that the Second Arbitration Award is
not a "final decision" as required by 9 U.S.C. § 10(a)(4).
"[A]n arbitration award is final if it resolves all issues
submitted to arbitration, and determines each issue fully so
that no further litigation is necessary to finalize the
obligations of the parties."  Rocket Jewelry Box, Inc. v. Noble
Gift Packaging, Inc., 157 F.3d 174, 177 (2d Cir. 1998) (citation
omitted).  Moreover, the decision "must resolve [the issues]
definitively enough so that the rights and obligations of the
two parties, with respect to the issues submitted, do not stand
in need of further adjudication."  Id. at 176.  This standard
"does not require that the arbitration award resolve every
outstanding issue that might arise in later litigation between
the parties."  Id. at 177.  Indeed, an award that "finally and
conclusively dispose[s] of a separate and independent claim . .
. may be confirmed although [it does] not dispose of all the
claims that were submitted to arbitration."  Zeiler v. Deitsch,
500 F.3d 157, 169 (2d Cir. 2007) (citing Metallgesellschaft A.G.
v. M/V Capitan Constante, 790 F.2d 280, 283 (2d Cir. 1986)).

Leeward claims that the Second Arbitration Award is non-
final and ambiguous because it leaves Leeward open to potential

"double liability" if the Antigua and Barbuda tax authorities
end up seeking ABST from them after all.  Leaving aside that
this speculation is unsupported by the factual record, the Award
includes an indemnification provision to shield Leeward against
exactly such an unlikely contingency.  Providing for possible
future occurrences does not make the award any less definite or
final.  Although partial, the Second Award finally and
conclusively disposes of the two claims now before the Court.
The Tribunal made findings of fact and conclusions of law
regarding liability and awarded damages accordingly.  It
preemptively addressed Leeward's "double liability" scenario
with its indemnification provision.  The only issues left
unresolved are AUA's separate and independent counterclaim
alleging construction defects and awards of attorneys' fees and
costs, if any.  As <u>Zeiler</u> and <u>Metallgesellschaft</u> make clear,
this is no bar to confirmation.

III. The Tribunal Showed "Manifest Disregard for the Law."

        Finally, Leeward argues that the Tribunal acted with a
"manifest disregard for the law" because it "completely ignored"
the doctrines of <u>res judicata</u> and contractual waiver and
modification.  Again, it is wrong.  "[A]wards are vacated on
grounds of manifest disregard only in those exceedingly rare
instances where some egregious impropriety on the part of the
arbitrator is apparent."  <u>T.Co Metals, LLC v. Dempsey Pipe &</u>

Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) (citation omitted).  The disregard must be "more than error or misunderstanding with respect to the law" or an "arguable difference regarding the meaning or applicability of laws urged upon an arbitrator," and "[t]he award should be enforced . . . if there is a barely colorable justification for the outcome reached."  Id. (citation omitted).  "[T]o apply the manifest disregard standard, the court must consider, first, whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable, and, second, whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it."  Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 452 (2d Cir. 2011) (citation omitted).[5]

Leeward's argument is unavailing.  The doctrines of res judicata and waiver and modification are certainly well defined, explicit, and clearly applicable.  The Tribunal obviously knew that these doctrines existed because, in its decision, it explicitly rejected applying them on the grounds that Leeward's

---

[5] This standard has also been described in this Circuit as having "three components": whether the law was clear and applicable; whether the law was improperly applied, leading to an erroneous outcome; and whether the arbitrator actually knew of the law and its applicability to the matter.  See, e.g., T.Co Metals, 592 F.3d at 339.

arguments were unpersuasive.  And the Tribunal manifestly did not "ignore" or "pay no attention to" these doctrines; instead, it explicitly considered and rejected applying both doctrines, and in each case had more than "barely colorable justification" to do so.

Arbitrators decide the claim-preclusive effect of arbitration awards that have been confirmed by federal courts. Citigroup, 776 F.3d at 133-34.  It was thus well within the Tribunal's authority to decide the applicability of res judicata.  Here, the Tribunal determined that Leeward's res judicata arguments were "unconvincing" because Leeward's proposed standard -- that "any claim arising under the same transaction as the claims debated in the Prior Proceedings should be precluded" -- was "unpersuasive."[6]  The parties' memoranda heatedly, and at some length, contested whether Leeward's asserted res judicata standard was consistent with governing law.  The Tribunal's discussion indicates that it agreed with AUA's position.  This is sufficient to require enforcement of the Tribunal's decision.

---

[6] The Tribunal also explicitly rejected Leeward's "additional arguments that the AUA's ABST arguments should have been submitted before -- at the time of the Prior Proceeding or even before that -- and that Leeward's defense of res judicata should prevail even in light of its own ABST claim."

The Tribunal also offered sufficient justification for its rejection of Leeward's waiver and modification claims.  After describing the nature of Leeward's arguments, the Tribunal concluded that Leeward had "not established sufficient facts to prove waiver."  The Tribunal did not "completely ignore" the doctrine's applicability; it explicitly found that it could not be applied on these facts.  As to modification, because the Tribunal's conclusion rested on the ground of unjust enrichment, the Tribunal did not feel it necessary to address modification or any "other defenses to alternative avenues" of argument because they would "lead to the same result."  Leeward disagrees, but the belief that the Tribunal was wrong and a desire to relitigate the decision cannot transform arguable conclusions of law into "manifest disregard."

CONCLUSION

AUA's October 16, 2014 petition to confirm the Second Award is granted, and its motion for an order of attachment and preliminary injunction is denied as moot.  Leeward's December 11, 2014 cross-motion to deny enforcement, vacate, or modify the arbitral award is denied.  Accordingly, the Clerk of Court is directed to enter judgment in the amount of $1,338,712 and to close the case.

SO ORDERED:

Dated:     New York, New York
           May 1, 2015

                              _____
                              DENISE COTE
                       United States District Judge